LEASE

[LEGAL NAME OF LANDLORD ENTITY],
LANDLORD,

AND

[LEGAL NAME OF TENANT],
TENANT

DATED: _____,

PREMISES: _____

# TABLE OF CONTENTS

**Page**

**ARTICLE 1:     PREMISES** ................................................................................................. 1

1.01    Lease of Premises ................................................................................................. 1

1.02    Acceptance of the Premises .................................................................................. 1

1.03    Permitted Encumbrances ...................................................................................... 1

1.04    Security Deposit .................................................................................................... 2

**ARTICLE 2:     LEASE TERM** ............................................................................................ 2

2.01    Lease Term ............................................................................................................ 2

2.02    Option to Extend ................................................................................................... 2

2.03    Holding Over ........................................................................................................ 2

2.04    Covenant of Quiet Enjoyment ............................................................................. 2

**ARTICLE 3:     USE OF PREMISES** .................................................................................. 3

3.01    Manner of Use ...................................................................................................... 3

3.02    Landlord's Access ................................................................................................ 3

**ARTICLE 4:     RENT** .......................................................................................................... 3

4.01    Base Rent .............................................................................................................. 3

4.02    Additional Rent .................................................................................................... 5

4.03    Interest ................................................................................................................... 5

4.04    Late Charge ........................................................................................................... 5

4.05    Operating Expenses .............................................................................................. 5

**ARTICLE 5:     TAXES** ....................................................................................................... 6

5.01    Real Property Taxes ............................................................................................. 6

5.02    Definition of Real Property Taxes ....................................................................... 7

5.03    Personal Property Taxes ....................................................................................... 7

5.04    Sales Tax ............................................................................................................... 7

**ARTICLE 6:     UTILITIES** ................................................................................................ 7

6.01    Utilities ................................................................................................................. 7

**ARTICLE 7:     COMPLIANCE WITH LAW** ................................................................... 7

7.01    Use ........................................................................................................................ 7

7.02    Legal Compliance ................................................................................................ 8

7.03    REA Compliance .................................................................................................. 8

7.04    Changes to Fire Suppression System ................................................................... 8

i

# TABLE OF CONTENTS

**ARTICLE 8:       INSURANCE/INDEMNITY** ........................................................... 8

8.01   Tenant's Insurance ................................................................................ 8

8.02   Landlord's Insurance ........................................................................... 9

8.03   General Insurance Provisions ............................................................. 9

8.04   Tenant's Damage Waiver .................................................................. 10

8.05   Landlord's Damage Waiver ............................................................... 10

8.06   Indemnity ........................................................................................... 10

8.07   Business Interruption ......................................................................... 10

8.08   Environmental Insurance ................................................................... 10

**ARTICLE 9:       CONDITION AND MAINTENANCE OF PREMISES [DISCUSS]** ................................................................... 11

9.01   Existing Condition ............................................................................. 11

9.02   Limitations ......................................................................................... 11

9.03   Landlord's Obligations ...................................................................... 11

9.04   Tenant's Obligations .......................................................................... 11

9.05   Tenant's Alterations ........................................................................... 12

9.06   Surrender ............................................................................................ 13

9.07   Exemption of Landlord from Liability ............................................... 13

9.08   Lease Governs .................................................................................... 13

**ARTICLE 10:     HAZARDOUS MATERIALS** ...................................................... 13

10.01  Hazardous Materials and Tenant's Permitted Use ............................. 13

10.02  Duty to Inform Landlord .................................................................... 14

10.03  Tenant Remediation ........................................................................... 14

10.04  Tenant Indemnification ...................................................................... 14

10.05  Investigations and Remediation ........................................................ 14

10.06  Landlord Representations and Warranties .......................................... 15

10.07  Notification ........................................................................................ 15

**ARTICLE 11:     CASUALTY AND CONDEMNATION** ....................................... 15

11.01  Damage to Premises ........................................................................... 15

11.02  Condemnation .................................................................................... 16

**ARTICLE 12:     ASSIGNMENT AND SUBLETTING** ......................................... 16

12.01  Landlord's Consent Required ............................................................. 16

12.02  No Release of Tenant ......................................................................... 16

4813-4762-2520.8\117486\000001

# TABLE OF CONTENTS

**ARTICLE 13:    DEFAULTS AND REMEDIES** ............................................................. 17

13.01   Covenants and Conditions .................................................................................... 17

13.02   Defaults ............................................................................................................... 17

13.03   Remedies .............................................................................................................. 17

13.04   Damages ............................................................................................................... 19

13.05   Cumulative Remedies ........................................................................................... 19

13.06   Notice to Landlord ............................................................................................... 19

13.07   Landlord's Right to Cure ...................................................................................... 19

13.08   No Lien for Rent .................................................................................................. 19

**ARTICLE 14:    PROTECTION OF LENDERS AND OWNERS** ............................... 20

14.01   Subordination ....................................................................................................... 20

14.02   Estoppel Certificates ............................................................................................ 20

14.03   Tenant's Financial Condition ............................................................................... 21

14.04   Landlord's Liability ............................................................................................. 21

**ARTICLE 15:    PURCHASE OPTION** ........................................................................ 21

15.01   Option and Price ................................................................................................... 21

15.02   Closing ................................................................................................................. 22

15.03   Title and Survey ................................................................................................... 22

15.04   Landlord Covenants .............................................................................................. 23

15.05   Closing Documents ............................................................................................... 24

15.06   Pro Rations ........................................................................................................... 24

15.07   Closing ................................................................................................................. 26

15.08   Memorandum of Lease and Purchase Option ...................................................... 26

**ARTICLE 16:    SIGNS** ................................................................................................. 26

16.01   Signs ..................................................................................................................... 26

**ARTICLE 17:    MISCELLANEOUS PROVISIONS** .................................................. 26

17.01   Radon Disclosure ................................................................................................. 26

17.02   Security of Premises ............................................................................................. 26

17.03   Tenant's Property ................................................................................................. 26

17.04   Signal Enhancing Device ..................................................................................... 27

17.05   Satellite Dish ........................................................................................................ 27

17.06   Tenant's Right to Vacate the Premises ................................................................ 27

17.07   Quiet Enjoyment .................................................................................................. 27

# TABLE OF CONTENTS

17.08   Force Majeure ........................................................................................................ 27

17.09   Legal Requirements and Sales Taxes ........................................................................ 28

17.10   Parking ................................................................................................................... 28

17.11   Termination of Existing Lease .................................................................................. 28

17.12   Representation of Authority; No Other Lease ............................................................ 28

17.13   Interpretation ......................................................................................................... 28

17.14   Incorporation of Prior Agreements; - Modifications .................................................... 29

17.15   Notices ................................................................................................................... 29

17.16   Waivers ................................................................................................................... 29

17.17   Memorandum of Lease and Purchase Option ............................................................. 30

17.18   Binding Effect; Choice of Law ................................................................................. 30

17.19   Execution of Lease .................................................................................................. 30

17.20   Survival ................................................................................................................. 30

17.21   No Brokers ............................................................................................................. 30

17.22   Attorney Costs ........................................................................................................ 30

17.23   Severability ............................................................................................................ 30

17.24   Rules and Regulations; Patriot Act ........................................................................... 31

17.25   Additional Provisions .............................................................................................. 31

17.26   Time of Essence ...................................................................................................... 31

## TABLE OF CONTENTS

Exhibits

A       Legal Description of Land
B       Memorandum of Lease and Purchase Option

4813-4762-2520.8\17486\000001

# LEASE

THIS LEASE (the "**Lease**") is made and entered into as of this _____ day of _____ (the "**Effective Date**"), by and between _____, a _____ ("**Landlord**"), and _____, a _____ ("**Tenant**"). This Lease replaces in its entirety any and all prior leases of the Premises (defined herein), oral or written.

## ARTICLE 1:    PREMISES

1.01    Lease of Premises.  For and in consideration of the rents, covenants and agreements herein contained, Landlord hereby leases to Tenant and Tenant leases from Landlord for the Term (as defined in Section 2.01), upon and subject to all of the terms, conditions and provisions of this Lease, the tract of the land legally described on **Exhibit A** attached hereto and incorporated herein (the "**Land**"), the [industrial/warehouse] facility located thereon, known as _____ (the "**Building**"), having an address of _____, together with the parking areas, landscaping, walkways and all other improvements related to the Building and located on the Land (collectively, the "**Premises**"). If the Premises is part of a larger complex of structures owned by Landlord and used by Landlord and/or leased to other tenants (such complex being referred to herein, as the "**Project**"), Landlord hereby grants to Tenant during the Term, for the benefit of the Premises, non-exclusive easements over the Common Area for ingress, egress and parking, and for the use, maintenance, repair and, if necessary, replacement of utility lines and related facilities serving the Premises.   In no event shall Tenant or its employees, customers or invitees be charged any fee to access or park in the Project.  As used herein, the term "**Common Area**" shall mean  the access drives, parking areas, landscaped areas and sidewalks, as they exist from time to time located within the Project (but situated outside of the Premises) that are made available for the joint use and benefit of Landlord and all owners and occupants of the Project and their respective customers, employees and invitees, together with the utility lines and storm water management facilities located in or serving the Project that serve multiple occupants of the Project, including Tenant, and/or that exclusively serve the Project.  The storm water management facilities may be located off site.  The "Common Area" does not include individual utility lines, any buildings or any areas or facilities available for use by only a limited number of owners or occupants, such as, but not limited to, loading docks, drive-thru lanes, porte-cocheres and dumpsters.

1.02    Acceptance of the Premises.  The Premises are demised and let subject to the (a) Permitted Encumbrances (defined in Section 1.03); (b) the requirements of all present and future laws applicable to the Premises and this Lease; (c) the provisions of this Lease; (d) the condition of the Premises as of the Commencement Date (defined in Section 2.01), and (e) subject to the Landlord Disclaimers (defined in Section 9.02).  Tenant has fully inspected the Premises and accepts the Premises and all improvements thereon as suitable for Tenant's business purposes in their present condition.

1.03    Permitted Encumbrances.  As used herein, the term "**Permitted Encumbrances**" means (i) those covenants, restrictions, reservations, liens, conditions, encroachments, easements, encumbrances and other matters of record, and (ii) all rights and interests (whether or not of

4813-4762-2520.8\117486\000001

record) that would be shown by a current survey or by an inspection of the Premises; to the extent any of the foregoing affect the Premises as of the date hereof, or arise due to the acts or omissions of Tenant after the date hereof, or arise due to the acts or omissions of Landlord with Tenant's consent, after the date hereof.

1.04    Security Deposit.  Tenant, concurrently with the execution of this Lease, has deposited with Landlord an amount equal to one (1) month of Base Rent in the amount of $_____ as the security deposit ("**Security Deposit**").  The Security Deposit shall be retained by Landlord as security for the payment by Tenant of the Rent herein agreed to be paid by Tenant and for the faithful performance by Tenant of the Lease terms and covenants.  Landlord shall not be required to pay Tenant any interest on said Security Deposit and may commingle it with other funds of Landlord.

## ARTICLE 2:    LEASE TERM

2.01    Lease Term.  The term of this Lease shall be for five (5) years and zero (0) months (the "**Initial Lease Term**"), shall commence on _____ \_\_\_, 2019 (the "**Commencement Date**"), and shall expire absolutely and without notice, at 11:59 p.m. on _____, 2024, unless sooner terminated as herein provided.

2.02    Option to Extend.  Provided Tenant is not in default under any of the terms and conditions of this Lease, Tenant will have the option to extend the term of this Lease for an additional term of five (5) years (the "**Extension Term**").  Tenant shall exercise the option by giving Landlord notice of its intent to exercise the option at least six (6) months prior to the expiration of the Initial Lease Term (hereinafter referred to as an "**Extension Notice**").  The term shall include the Initial Lease Term and the Extension Term, if any (the "**Term**").

If Tenant exercises its option to extend the term of the Lease for the Extension Term then the Extension Term shall be upon all of the same terms and conditions of this Lease except for Base Rent, which shall be calculated in the same manner as detailed in Section 4.01 herein.

2.03    Holding Over.  If Tenant does not vacate the Premises and surrender the Premises in the condition required hereby upon the expiration or earlier termination of this Lease, (i) Tenant will indemnify Landlord against all damages, costs, liabilities and expenses, including attorneys' fees, which Landlord incurs on account of Tenant's failure to vacate and surrender, and (ii) the Base Rent (defined in Section 4.01) will increase to one hundred fifty percent (150%) of the Base Rent then in effect and Tenant's obligation to pay Additional Rent (defined in Section 4.02) will continue.  Any holdover by Tenant shall constitute a tenancy at sufferance, subject to termination by Landlord at any time, and shall not constitute an extension of the Lease or recognition by Landlord of any right of Tenant to remain in the Premises.

2.04    Covenant of Quiet Enjoyment.  Tenant, on paying the Rent (defined in Section 4.02) and performing its obligations hereunder, will peacefully and quietly have, hold and enjoy the Premises throughout the Term without any manner of hindrance from Landlord, subject however to all the terms and provisions hereof.

## ARTICLE 3:    USE OF PREMISES

3.01    <u>Manner of Use</u>.  Tenant may use the Premises for any lawful commercial or industrial use with no obligation to operate or continuously operate (the "**Permitted Use**").  Tenant will not cause or permit the Premises to be used in any way which (i) constitutes a violation of any Legal Requirements (as defined below), or (ii) constitutes a nuisance or waste or will invalidate any insurance carried by Landlord.  The term "**Legal Requirements**" means all applicable Federal, State or local laws, statutes, ordinances, rules, regulations, recorded declarations or covenants, orders and other requirements of any government or public authority now in force or which may hereafter be in force.  The term "**Legal Requirements**" includes, but is not limited to, all requirements of any board of fire underwriters or other similar body now or hereafter constituted, and all directions and certificates of occupancy issued pursuant to any law by any governmental agency or officer, insofar as any of the foregoing relate to or are required by the condition, use or occupancy of the Premises, by the operation, use or maintenance of any personal property, fixtures, machinery, equipment or improvements in the Premises, or by the Permitted Use or other use of the Premises by Tenant and the regulation thereof, including, without limitation, the Occupational Safety and Health Act and the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) and regulations and guidelines promulgated thereunder, as all of the same may be amended and supplemented from time to time (collectively referred to herein as the "**ADA**").  Landlord represents and warrants that all Permitted Encumbrances, applicable zoning and Legal Requirements in effect as of the date hereof and as of the Commencement Date permit the Premises to continue to be used for all purposes consistent with the historical use of the Premises immediately prior to the Commencement Date and area uses accessory and incidental thereto.

The parties agree that (A) Landlord will be responsible for ADA compliance for all areas outside of the Building and (B) Tenant will be responsible for ADA compliance inside the Building, including any leasehold improvements or other work to be performed inside the Building under or in connection with the Lease, except to the extent such work is required by this Lease to be performed by Landlord.

3.02    <u>Landlord's Access</u>.  Landlord or its agents shall have the right to enter the Premises during all reasonable hours, upon seventy two (72) hours prior written notice to Tenant (except in the case of an emergency when no notice is required), to show the Premises to potential buyers, investors, or lenders when accompanied by a Tenant representative (at Tenant's option), for property inspections, for maintenance or for any other purpose Landlord deems reasonably necessary.  During the last nine (9) months of the Term, Landlord may place customary "For Lease" signs on the Premises.

## ARTICLE 4:    RENT

4.01    <u>Base Rent</u>.  Commencing on the Commencement Date, and thereafter on the first day of each calendar month during the Term, Tenant will pay to Landlord as base rent (the "**Base Rent**") the sum of $_____ in monthly installments, together with applicable sales taxes thereon in lawful money of the United States, in advance and without offset, deduction, prior notice or demand, except as otherwise provided herein.  If the first day of the Term does not commence on the first day of the month, a prorated amount of Base Rent shall be paid on the first day of the Term, using the percentage number of days in said month.  The obligation of

3

Tenant to pay Base Rent and other sums to Landlord and the obligations of Landlord under this Lease are independent obligations. The Base Rent is payable at Landlord's Rent Payment Address, as defined in Section 17.15, or at such other place or to such other person as Landlord may designate in writing from time to time. Payments of Base Rent for any partial calendar month will be prorated.

*
Note: If Landlord and Tenant are unable to determine the Base Rent prior to the Commencement Date, the broker calculation method would be used.

[Base Rent shall be calculated as follows:

i.    Tenant shall designate in writing a person to act as its broker for the purpose of establishing the Fair Market Rent of the Premises, and shall give notice in writing of such designation to the Landlord. Within ten (10) calendar days after Tenant gives such notice, Landlord shall either (A) accept Tenant's designee as the sole broker, in which event such broker's determination of the Fair Market Rent shall be conclusive or (B) designate in writing a person to act as a second broker for establishing the Fair Market Rent and shall give notice thereof in writing to Tenant, and the failure by Landlord to timely designate a second broker shall be deemed an election by Landlord to accept Tenant's designee as the sole broker.

ii.    Each broker so appointed shall promptly analyze the fair market rent of the Premises based upon the current use of the Premises as if vacant and unencumbered by the Lease or any other lease (the "**Fair Market Rent**"). If both Tenant and Landlord designate a broker, the Fair Market Rent shall be deemed to be the average of the two market analyses, unless the market analyses differ by more than ten percent (10%), in which case the two brokers shall together select a third broker and obtain market analysis from the third broker, and the Fair Market Rent shall be deemed to be the average of the two closest in value. Landlord and Tenant shall cause the brokers to render a prompt, written decision within thirty (30) days after the selection of broker to be appointed by the Landlord hereunder.

iii.    No broker shall have any personal or financial interest as would disqualify such broker from exercising an independent and impartial judgment as to the matter under analysis. Each broker shall be a Certified Commercial Investment Member (CCIM) (or any successor association or body of comparable standing if such institute is not then in existence), shall have at least ten (10) years' experience in the market analysis of real estate and shall be familiar with property values in the metropolitan area in which the Premises is located. Each party shall pay the fees and expenses of the broker appointed or selected by it and the fees and expenses of the third broker, if any, shall be paid equally by Landlord and Tenant.

iv.    In the event of the failure, refusal or inability of any broker to act, a new broker shall be appointed as his replacement, which appointment shall be made in the same manner as provided above for the appointment of such broker so failing, refusing or being unable to act. The decision of the brokers shall be final, conclusive and binding on Landlord and Tenant. Landlord and Tenant shall have the right to submit written information, arguments, supporting data, and other relevant matters to the brokers in writing.]

Once calculated as detailed in this Section 4.01, the Fair Market Rent shall equal the Base Rent for purposes of this Lease.

4

4.02    Additional Rent.  All sums payable to Landlord by Tenant under this Lease other than
Base Rent are "**Additional Rent**."  The term "**Rent**" includes both Base Rent and Additional
Rent.  It is the specific intention of the Landlord and the Tenant that this Lease is a "triple net
lease" (except as otherwise expressly set forth herein), that the Rent shall be absolutely net to the
Landlord, and that, except for any obligations under this Lease specifically assigned to the
Landlord without the right to reimbursement from Tenant, the Tenant shall pay all costs and
expenses (in whatever form) related in any way to the Premises or their upkeep and maintenance,
which expenses are attributable to any period during the Term.  Landlord will estimate in
advance and charge to Tenant the following costs, which Tenant will pay with the Base Rent on
a monthly basis throughout the Occupancy Period (defined below): all Operating Expenses under
Section 4.05 of this Lease, including Real Property Taxes (defined in Section 5.02), and all
insurance premiums maintained by Landlord for which Tenant is responsible under Article 8.
"**Occupancy Period**" means the period from the Commencement Date (or the time Tenant first
enters the Premises pursuant to this Lease, if earlier), throughout the Term and for as long as
Tenant remains in the Premises thereafter.

4.03    Interest.  Any Rent or other amount due to Landlord, if not paid when due, will bear
interest from the date due until paid at the annual rate equal to the lesser of eight and one-half
percent (8.5%) per annum or the highest rate legally permitted ("**Default Interest**").

4.04    Late Charge.  If any installment of Rent or any other sums due from Tenant is not
received by Landlord within ten (10) days following the due date, Tenant will pay to Landlord a
late charge equal to the lesser of (i) five percent (5%) of such overdue amount or (ii) $500.00;
provided, however, Landlord will not charge any late charge for the first time in each calendar
year that such payment is not made within ten (10) days of the due date if payment is received
within five (5) days of receipt of notice.  The parties hereby agree that such late charge
represents a fair and reasonable estimate of the costs Landlord will incur by reason of late
payment by Tenant.

4.05    Operating Expenses.

(a)    Operating Expenses.  Tenant will pay to Landlord all Operating Expenses incurred by
Landlord and allocable to the Occupancy Period.  "**Operating Expenses**" means all costs and
expenses incurred by Landlord with respect to the ownership, maintenance and operation of the
Premises, including, but not limited to, the following: Real Property Taxes (defined in Section
5.02), maintenance; all insurance premiums maintained by Landlord for which Tenant is
responsible under Article 8 of this Lease; repair and replacement of the items for which Landlord
is responsible for repairing under Section 9.03 of this Lease; personal property taxes; rentals or
lease payments paid by Landlord for rented or leased personal property used in connection with
Landlord's maintenance obligations for the Premises; any deductible portion of an insured loss
concerning the Premises; fees for required licenses and permits; costs and expenses required by
any governmental or quasi-governmental authority or by Legal Requirements, for any reason,
including capital improvements, whether capitalized or not, and the cost of any capital
improvements incurred in connection with Premises.  To the extent any such expenditure by
Landlord constitutes a capital expenditure as determined by Landlord in accordance with
generally acceptable accounting principles (GAAP), then such capital expenditure shall be
amortized, including interest on the unamortized cost at a rate of five percent (5%) per annum,

5

over its useful life as reasonably determined by Landlord in accordance with GAAP, and such amortized amount shall be included in the Operating Expenses charged to Tenant each month. Operating Expenses shall not include: (a) debt service under mortgages or ground rent under ground leases; (b) costs of restoration to the extent of net insurance proceeds received by Landlord; (c) leasing commissions and tenant improvement costs; (d) any/all management/administrative fees; and (e) Landlord's general corporate overhead costs. Additionally, and notwithstanding anything in this Lease to the contrary, Landlord covenants, acknowledges and agrees that Tenant shall have the absolute right to approve any and all capital Lease expenditures in excess of Five Thousand and No/100 U.S. Dollars ($5,000.00) on a fiscal year basis. GAAP shall be used to determine if a Lease expense item is a capital or repair expense.

Landlord shall inform Tenant of Landlord's best estimate of Tenant's proportionate share of the Operating Expenses and Tenant shall pay one-twelfth (1/12) thereof monthly in advance (beginning on the Commencement Date and continuing on the first day of each and every calendar month thereafter during the Term), together with the payment of Base Rent. Tenant covenants and agrees that Tenant shall remain liable for and shall pay its proportionate share of Operating Expenses in the amounts and times as set forth herein, notwithstanding the expiration or earlier termination of this Lease. Operating Expenses shall increase by no more than two percent (2.0%) each fiscal year during the Term.

(b)     Year-End Reconciliation. After the end of each fiscal year during the Term, Landlord will deliver to Tenant a statement setting forth, in reasonable detail, the Operating Expenses paid or incurred by Landlord during the preceding fiscal year. Within thirty (30) days after Tenant's receipt of such statement, there will be an adjustment between Landlord and Tenant, with payment to or credit given by Landlord (as the case may be).

## ARTICLE 5:   TAXES

5.01   Real Property Taxes. Tenant will pay to Landlord all Real Property Taxes incurred by Landlord and allocable to the Occupancy Period. Tenant shall have the right to contest in good faith the validity of the amount of any Real Property Taxes by appropriate proceedings in the appropriate jurisdiction, and may defer payments of such obligations, pay the same under protest, or take such other steps as Tenant may deem reasonably appropriate, provided Tenant's exercise of the foregoing right does not subject Landlord to any penalties or materially adversely affect Landlord's interest in or financing of the Premises. Landlord will cooperate with the institution and prosecution of any such proceedings and will execute any documents required therefor without cost or expense to Tenant. The expense of such proceedings will be borne by Tenant and any refunds or rebates secured will belong to Tenant. If any tax proceedings result in a reduction of Real Property Taxes, whether or not the proceedings are brought by Landlord or Tenant, Landlord will promptly return to Tenant, Tenant's proportionate share of the excess of the Real Property Taxes, including any equitable portion of refunds received after the expiration date of this Lease which are attributable to Real Property Taxes paid during the Term. If Landlord receives a refund of any Real Property Taxes that Tenant has paid, Landlord will refund to Tenant such refund after deducting therefrom all related costs and expenses.

5.02    Definition of Real Property Taxes. "**Real Property Taxes**" means all taxes (other than inheritance, personal income or estate taxes), assessments (special, betterment, or otherwise), levies, fees, rent taxes, excises, impositions, charges, water and sewer rents and charges, and all other government levies and charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are imposed or levied upon or assessed against any legal or equitable interest of Landlord in the Premises, or any Rent or other sums payable by any tenants or occupants thereof, or Landlord's business of leasing, including without limitation gross receipts and gross rental taxes. Real Property Taxes include Landlord's costs and expenses of review and contesting any Real Property Tax. If at any time during the Term the present system of ad valorem taxation of real property is changed so that in lieu of the whole or any part of the ad valorem tax on real property, or in lieu of increases therein, Landlord is assessed a capital levy or other tax on the gross rents received with respect to the Premises or a federal, state, county, municipal, or other local income, franchise, excise or similar tax, assessment, levy, or charge (distinct from any now in effect) measured by or based, in whole or in part, upon gross rents or any similar substitute tax or levy, then all of such taxes, assessments, levies or charges, to the extent so measured or based, will be deemed to be a Real Property Tax.

5.03    Personal Property Taxes. Tenant will pay directly all taxes charged against trade fixtures, furnishings, equipment, inventory or any other personal property belonging to Tenant. Tenant will use its best efforts to have personal property taxed separately from the Premises. If any of Tenant's personal property is taxed with the Premises, Tenant will pay Landlord the taxes for such personal property within fifteen (15) days after Tenant receives a written statement from Landlord for such personal property taxes.

5.04    Sales Tax. Payment of all sales taxes ("**Sales Taxes**") shall be made by Tenant on a monthly basis, concurrently with payment of the Rent.

## ARTICLE 6:    UTILITIES

6.01    Utilities. Tenant shall be solely responsible for and shall promptly pay, directly to the appropriate supplier, the cost of all natural gas, heat, cooling, energy, light, power, sewer service, telephone, water, refuse disposal and other utilities and services supplied to the Premises, together with any related installation or connection charges or deposits (collectively, "**Utility Costs**") incurred during the Occupancy Period. Upon Tenant's failure to pay any such Utility Costs, Landlord shall have the right, at Landlord's option, to pay the same, in which event Tenant shall repay such amount to Landlord upon demand, together with Default Interest thereon from the date of demand until paid. If utilities are not separately metered, Landlord shall provide Tenant with a reasonable estimate thereof based upon the size and use of the Premises. Landlord agrees to work diligently to separately meter the Premises for all utilities.

## ARTICLE 7:    COMPLIANCE WITH LAW

7.01    Use. Except as specifically detailed herein, Tenant acknowledges that neither Landlord nor any agent of Landlord has made any representation as to the condition of the Premises or the suitability of the Premises or the Premises for Tenant's intended use. Tenant shall be responsible for obtaining all permits and approvals required by the Legal Requirements in connection with Tenant's specific manner of use, and specific character of, operations at the Premises and if

7

requested, shall provide a copy of the same to Landlord upon receipt of such, if and as applicable.

7.02    <u>Legal Compliance</u>.    Tenant, at its expense, shall comply with all Legal Requirements (including any Environmental Laws) with respect to the Premises and Tenant's use, occupancy and operations at the Premises, including any Legal Requirements that may require alterations, repairs or replacements, whether structural or nonstructural, exterior or interior to the Premises. Upon Landlord's request, Tenant shall evidence to Landlord Tenant's compliance with such Legal Requirements, including, without limitation, by providing to Landlord copies of all operating permits and other approvals, licenses, registrations and the like required by Legal Requirements in connection with Tenant's operations at the Premises.

7.03    <u>REA Compliance</u>.    Without limiting the foregoing Section or any other provisions of this Lease, Tenant agrees that Tenant is obligated to and shall perform all obligations of the owner of the Premises under and pay all expenses which the owner of the Premises may be required to pay in accordance with any reciprocal easement agreement or any other agreement or document of record now affecting the Premises, if any, herein referred to collectively as the "**<u>REAs</u>**", and that Tenant shall comply with all of the terms and conditions of any REA during the Term of this Lease.

7.04    <u>Changes to Fire Suppression System</u>.    If any bureau, department or official of the state or city government having jurisdiction shall require or recommend that any changes, modifications, alterations, additional sprinkler heads or other equipment be made or supplied to the fire suppression system by reason of Tenant's business, or any changes in the Premises after initial occupancy or if any such changes, modifications, alterations, additional sprinkler heads or other equipment become necessary to prevent the imposition of a penalty or charge against the full allowance for a fire suppression system in the initial insurance rate as fixed by the appropriate board or authority, or by a fire insurance company, then, in any such event, Tenant shall be liable for the cost of installing, repairing, or replacing as the case may be, any such equipment, and the cost of any such changes, modifications, alterations, additional sprinkler heads or such other equipment.

## ARTICLE 8:    INSURANCE/INDEMNITY

8.01    <u>Tenant's Insurance</u>.    Tenant, at its expense, will maintain the following insurance coverages during the Occupancy Period:

(a)    <u>Liability Insurance</u>.    Commercial general liability insurance insuring Tenant against liability for bodily injury, property damage (including loss of use of property) and personal injury at the Premises, including contractual liability.    Such insurance will name Landlord, its property manager (if any), any mortgagee, and such other parties as Landlord may designate, as additional insureds (the additional insured status under the commercial general liability insurance policy will be provided by additional insured endorsement on ISO Form CG 2026 0413 and provide contractual liability coverage).    The initial amount of such insurance will be Three Million Dollars ($3,000,000) per occurrence and will be subject to periodic increases reasonably specified by Landlord based upon inflation, increased liability awards, recommendations of Landlord's professional insurance advisers, and other relevant factors.    The liability insurance

obtained by Tenant under this Section 8.01 will (i) be primary and (ii) insure Tenant's obligations to Landlord under Section 8.06. The amount and coverage of such insurance will not limit Tenant's liability nor relieve Tenant of any other obligation under this Lease.

(b)    Worker's Compensation Insurance. Worker's Compensation Insurance in the statutory amount (and Employers' Liability Insurance) covering all employees of Tenant employed or performing services at the Premises, in order to provide the statutory benefits required by the laws of the state in which the Premises are located.

(c)    Automobile Liability Insurance. Automobile Liability Insurance, including but not limited to, passenger liability, on all owned, non-owned, and hired vehicles used in connection with the Premises, with a combined single limit per occurrence of not less than Three Million Dollars ($3,000,000) for injuries or death of one or more persons or loss or damage to property.

(d)    Personal Property Insurance. Personal Property Insurance covering leasehold improvements paid for and owned by Tenant and Tenant's personal property and fixtures owned by Tenant from time to time in, on, or at the Premises, in an amount not less than 100% of the full replacement cost, without deduction for depreciation, providing protection against events protected under a Causes of Loss–Special Form property insurance policy as well as against sprinkler damage, vandalism, and malicious mischief. Any proceeds from the Personal Property Insurance will be used for the repair or replacement of the property damaged or destroyed, unless the Term is terminated under an applicable provision herein. If the Premises are not repaired or restored in accordance with this Lease, Landlord will receive any proceeds from the personal property insurance allocable to Tenant's leasehold improvements.

8.02    Landlord's Insurance. During the Term, Landlord will maintain in effect a Causes of Loss–Special Form property insurance policy covering loss of or damage to the Premises in the amount of its replacement value with such endorsements and deductibles as Landlord determines from time to time. Landlord will also obtain flood, and windstorm insurance for the Premises. Landlord will not insure Tenant's Property. Landlord may obtain commercial general liability insurance in an amount and with coverage determined by Landlord insuring Landlord against liability with respect to the Premises. The liability insurance policy obtained by Landlord, if any, will not provide primary insurance, will not be contributory and will be excess over any liability insurance maintained by Tenant. Landlord may also maintain a rental income insurance policy, with loss payable to Landlord. Tenant will reimburse Landlord for the cost of premiums for the insurance policies maintained by Landlord and related to the Premises. Tenant shall reasonably approve all underwriters issuing Landlord-required insurance under this Lease. At Tenant's option, Tenant may obtain and maintain during the Term, at Tenant's expense, the Landlord's required insurance under this Lease, and if so, Landlord shall reasonably approve the underwriters issuing the same.

8.03    General Insurance Provisions. Any insurance which Tenant or Landlord is required to maintain under this Lease will include a provision which requires the insurance carrier to give Landlord or Tenant, respectively, not less than thirty (30) days' written notice prior to any cancellation or modification of such coverage. Not less than thirty (30) days prior to the expiration or termination of any such insurance, the party required to obtain the insurance shall deliver to the other party renewal certificates therefor. Each party will provide the other party

9

with copies of the policies it has obtained in accordance with this Lease promptly upon request from time to time.

8.04    Tenant's Damage Waiver.  Tenant shall, on or before the earlier of the Commencement Date or the date on which Tenant first enters the Premises for any purpose, at its sole cost and expense, obtain and keep in full force and effect at all times thereafter a waiver of subrogation from its insurer with respect to the property insurance maintained by Tenant in connection with the Premises and Tenant's Property located therein.

8.05    Landlord's Damage Waiver.  Landlord shall, at its sole cost and expense, obtain and keep in full force and effect at all times a waiver of subrogation from its insurer with respect to the Premises, Landlord's owned property located therein and Landlord's rent loss insurance, if any.

8.06    Indemnity.  Tenant shall indemnify, defend, and hold harmless Landlord and Landlord's employees, agents, contractors and manager (collectively, the "**Landlord Indemnitees**") from and against any and all loss, damage, claim, demand, liability or expense (including reasonable attorneys' fees) resulting from claims by third parties and based on (i) any acts or omissions of Tenant, its employees, agent or contractors, or (ii) any personal injury or property damage occurring within the Premises or arising out of Tenant's operations at the Premises, (BUT NOT TO THE EXTENT SUCH CLAIMS ARE BASED UPON THE INTENTIONAL MISCONDUCT OF THE LANDLORD INDEMNITEES).  Tenant shall have the right to assume the defense of any claim covered by this indemnity on behalf of both itself and the Landlord Indemnitees and the Landlord Indemnitees may not settle such claim without the consent of Tenant, provided (a) Tenant acknowledges to the Landlord Indemnitees in writing that it is responsible for such claim under the terms of this paragraph and (b) the lawyers selected by Tenant to handle such defense are reasonably satisfactory to the Landlord Indemnitees and such representation does not result in a conflict of interest for such lawyers.  The Landlord Indemnitees may participate in the defense of such claim at their own expense unless Tenant is not representing the Landlord Indemnitees in which case the reasonable expense of the Landlord Indemnitees in defending against such claim shall be paid by Tenant.  The provisions of this indemnity shall survive the expiration or earlier termination of this Lease.

8.07    Business Interruption.  Landlord shall not be responsible for, and Tenant releases and discharges Landlord from, and Tenant further waives any right of recovery from Landlord for, any loss for or from business interruption or loss of use of the Premises suffered by Tenant in connection with Tenant's use or occupancy of the Premises.  Tenant shall, on or before the earlier of the Commencement Date or the date on which Tenant first enters the Premises for any purpose, at its sole cost and expense, obtain and keep in full force and effect at all times thereafter a waiver of subrogation from its insurer with respect to any business interruption insurance maintained by Tenant in connection with the Premises.

8.08    Environmental Insurance.  Tenant may obtain and maintain environmental insurance in connection with the Premises.

**ARTICLE 9:      CONDITION AND MAINTENANCE OF PREMISES**

9.01    <u>Existing Condition</u>.  Except as specifically limited in this Lease, Tenant hereby accepts the Premises in their present "AS-IS" condition.  Tenant acknowledges that neither Landlord nor any agent of Landlord has made any representation as to the condition of the Premises or the suitability of the Premises for Tenant's intended use.  Tenant represents and warrants that Tenant has made its own inspection of and inquiry regarding the condition of the Premises and is not relying on any representations or warranties (express or implied) of Landlord or any broker with respect thereto.

9.02    <u>Limitations</u>.  Except as specifically limited in this Lease, Tenant agrees to the following (the "**Landlord Disclaimers**"): TENANT HEREBY ACKNOWLEDGES AND AGREES THAT TENANT HAS LEASED AND TAKES THE PREMISES "AS IS", "WHERE-IS" AND "WITH ALL FAULTS".

9.03    <u>Landlord's Obligations</u>.   Subject to the provisions of Article 11 (Casualty and Condemnation), to Tenant's express obligations hereunder, and to Tenant's obligation to pay Additional Rent pursuant to Section 4.02, and except for damage caused by any act or omission of Tenant or Tenant's employees, agents, contractors or invitees, Landlord, at Landlord's sole costs and expense, will keep the foundation, roof, structural supports and exterior walls of the improvements on the Premises in good order, condition and repair and in compliance with all Legal Requirements.  Landlord will not be obligated to maintain or repair windows, doors or plate glass, or to paint the exterior walls, which will be Tenant's responsibility.  Tenant will promptly report in writing to Landlord any defective or damage condition known to it which Landlord is required to repair under this Lease.  Landlord will repair, at Tenant's expense as an Operating Expense, any damage to the Premises caused by Tenant's acts or omissions which is Landlord's maintenance responsibility under this Section 9.03.  Notwithstanding anything herein to the contrary, in the event Landlord fails to timely fulfill any of Landlord's maintenance, repair, and replacement obligations under this Paragraph 9.03 and/or under the Lease, Tenant may exercise "self-help" remedies to cause any such maintenance, repair and/or replacement obligation to be fulfilled and off-set the cost of the same against the next occurring Base Rent with proof of payment therefor.

9.04    <u>Tenant's Obligations</u>.   Subject to the provisions of Article 11 (Casualty and Condemnation), Tenant, at its sole cost and expense, will keep all portions of the Premises (including without limitation, all systems and equipment, i.e., HVAC systems, dock levelers, bumpers, doors and floors including slabs and slab repairs, crack filling and joint repairs but specifically excluding the foundation and structural supports) in good order, condition and repair (including repainting and refinishing, as needed).  If any portion of the Premises or any system or equipment in the Premises which Tenant is obligated to repair can not be fully repaired or restored, Tenant will promptly replace such portion of the Premises or system or equipment.  Tenant will maintain and pay for a preventive maintenance contract providing for the regular inspection and maintenance of the heating and air conditioning system that exclusively serves the Premises by a heating and air conditioning contractor.

11

9.05    Tenant's Alterations.

(a)    Tenant's Work.  Tenant may, at its own cost and expense, without Landlord's prior consent, make interior, non structural changes, alterations, additions or improvements to the Premises ("**Alterations**") and install Tenant personal property in the Premises as will, in the judgment of Tenant, best adapt the Premises for its needs, provided that Tenant complies with the following provisions:

(i)    The Alterations will not result in a violation of or require a change in the certificate of occupancy applicable to the Building.

(ii)    The outside appearance of the Building will not be adversely affected; such Alterations will not weaken or impair the structure of the Building, or lessen the value of the Premises or the Building.

(iii)    No part of the Building outside of the Premises will be physically affected.

(iv)    The functioning of the building equipment will not be adversely affected.

(v)    Tenant will not install any materials, fixtures or articles or make any other alterations (other than such as would constitute Tenant's Property) which are subject to liens, conditional sales contracts, chattel mortgages or security interests, other than Tenant's use of equipment leased by Tenant for computers, office equipment, etc.

(b)    Tenant agrees that all Alterations will at all times comply with all applicable Legal Requirements and that Tenant, at its expense, will (i) obtain all necessary municipal and other governmental permits, authorizations, approvals and certificates for the commencement and prosecution of such Alterations, (ii) deliver copies of all governmental permits, authorizations, approvals and certificates to Landlord and (iii) cause all improvements to be performed in a good and workmanlike manner.  Tenant, at its expense, will promptly procure the cancellation or discharge of all notices of violation arising from or otherwise connected with Alterations issued by any public authority having or asserting jurisdiction.

(c)    Throughout the making of all Alterations (other than mere decorations), Tenant, at its sole cost and expense, will carry or cause its contractors and subcontractors to carry (i) workers' compensation insurance in statutory limits covering all persons employed in connection with such Alterations, (ii) comprehensive liability insurance covering any occurrence in or about the Premises in connection with such Alterations which complies with the requirements of Paragraph 8.

(d)    Tenant will not subject Landlord's interest in the Premises to any mechanic's lien or any other lien whatsoever.  If any mechanic's lien or other lien, charge or order for payment of money will be filed as a result of the act or omission of Tenant, Tenant will cause such lien, charge or order to be discharged or appropriately bonded or otherwise reasonably secured ("**Secured**") within sixty (60) days after notice from Landlord thereof.  If Tenant will fail to cause the lien or encumbrance to be Secured within the sixty (60) day period, then Landlord will be entitled, but not obligated to, discharge or bond same.  Tenant will indemnify and save Landlord harmless from all liabilities and costs to the extent resulting directly from Tenant's

12

failure to timely secure same. If Tenant fails to cause any such lien to be discharged within the period aforesaid, then, in addition to any other right or remedy, Landlord may discharge the same either by paying the amount claimed to be due or by deposit or bonding proceedings. Any amount so paid by Landlord, and all costs and expenses incurred by Landlord in connection therewith, will be payable by Tenant within thirty (30) days of demand.

9.06    Surrender. Upon the expiration or earlier termination of the Lease, Tenant will surrender the Premises to Landlord broom clean and in the condition which Tenant is required to maintain the Premises under this Lease. Tenant will not be obligated to repair any damage which Landlord is required to repair under Article 11 (Casualty and Condemnation). Landlord may require Tenant, at its expense, to remove any of Tenant's alterations, additions or improvements prior to the expiration or earlier termination of the Lease and to restore the Premises to their prior condition. With respect to any alterations, additions or improvements which require Landlord's approval, Landlord will specify if Tenant will be required to remove the same at the time of such approval. Any work which Tenant is not required to remove will, at Landlord's option, become Landlord's property and will be surrendered to Landlord upon the expiration or earlier termination of the Lease, except that Tenant may remove any of Tenant's Property which can be removed without damage to the Premises so long as Tenant repairs any damage caused by such removal. Landlord shall have the right to remove and dispose of, at Tenant's expense, Tenant's Property remaining in the Premises upon the expiration or earlier termination of this Lease.

9.07    Exemption of Landlord from Liability. Landlord will not be liable for any damage or injury to the person, business (or any loss of income therefrom), goods, wares, merchandise or other property of Tenant, Tenant's employees, invitees, customers or any other person on or about the Premises, whether such damage or injury is caused by or results from: (a) fire, steam, electricity, water, gas or rain; (b) the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures or any other cause; (c) conditions arising in or about the Premises, or from other sources or places; or (d) any curtailment or interruption in utility services. Tenant will give Landlord prompt notice upon the occurrence of any accident or casualty at the Premises. Notwithstanding Landlord's negligence or breach of this Lease, Landlord shall under no circumstances be liable for injury to Tenant's business or for any loss of income or profit therefrom.

9.08    Lease Governs. This Lease governs the parties' respective obligations for repair and maintenance of the Premises, and the parties waive the benefit of any existing or future statute that is inconsistent with the provisions hereof or affords Tenant the right to terminate the Lease or make repairs at the expense of Landlord.

## ARTICLE 10:    HAZARDOUS MATERIALS

10.01    Hazardous Materials and Tenant's Permitted Use. The term "**Hazardous Materials**" as used in this Lease shall mean any product, substance, or waste whose presence, use, manufacture, disposal, transportation, or release, either by itself or in combination with other materials, is either: (i) injurious to the public health, safety or welfare, the environment, or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for potential liability from any governmental agency or third party under any applicable statute or common law theory. Hazardous Materials shall include, but not be limited to, hazardous substances,

13

hazardous wastes, toxic substances, toxic wastes, polychlorinated biphenyls, asbestos, asbestos containing materials, hydrocarbons, petroleum, and/or crude oil or any products, by-products or fractions thereof. Landlord acknowledges, understands and agrees that Tenant's Permitted Use of the Premises as of the Commencement Date, including the use of Hazardous Materials, is acceptable to Landlord in all respects. Notwithstanding the foregoing, throughout the Term Tenant shall not use or cause the Premises to be used in any manner as to create an environmental violation.

10.02   <u>Duty to Inform Landlord</u>.  If Tenant knows that Hazardous Materials have come to be located in, on, under or about the Premises during the Term of this Lease, other than as previously consented to by Landlord and other than in accordance with Legal Requirements, Tenant shall immediately give written notice of such fact to Landlord, and provide Landlord with a copy of any report, notice, claim or other documentation which it has concerning the presence of such Hazardous Materials.

10.03   <u>Tenant Remediation</u>.  During the Term of this Lease, Tenant shall not cause or permit any Hazardous Materials to be spilled or released in, on, under, or about the Premises (including through the plumbing or sanitary sewer system) except in accordance with Legal Requirements and shall promptly, at Tenant's cost and expense, undertake investigatory and/or remedial action for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises that was caused by Tenant, or pertaining to or involving any Hazardous Materials brought onto the Premises during the Term of this Lease, by or for Tenant, in contravention of the Legal Requirements.

10.04   <u>Tenant Indemnification</u>.  Tenant shall indemnify, defend and hold Landlord, its agents, employees and lenders, if any, harmless from and against any and all loss of rents and/or damages, liabilities, judgments, claims, expenses, penalties, and attorneys' and consultants' fees arising out of or involving any Hazardous Materials brought onto the Premises during the Term of this Lease in contravention of Legal Requirements (provided, however, that Tenant shall have no liability under this Lease with respect to migration of any Hazardous Materials over, under, on or about the Premises from adjacent properties). Tenant's obligations shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or suffered by Tenant, and the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease for two (2) years.

10.05   <u>Investigations and Remediation</u>.  With respect to the existence of Hazardous Materials on the Premises prior to the Commencement Date, if any, Landlord shall defend, indemnify, and hold Tenant, its agents, employees and lenders, if any, harmless from and against any and all liabilities, damages, losses, costs, assessments, penalties, fines, judgments, claims, expenses, and fees, including but not limited to attorneys' and consultants' fees, arising out of or involving any Hazardous Materials on the Premises prior to the Term of the Lease (including, without limitation, any Hazardous Materials existing on the Premises prior to the Commencement Date, except to the extent, if any, that the same were introduced (or worsened) by Tenant (or Tenant's) except to the extent, if any, that the same were introduced (or worsened) by Tenant (or by Tenant's agents, employees, contractors); provided, however, the mere discovery by Tenant of existing Hazardous Materials at or near the Premises shall not be deemed to be an introduction (or worsening) by Tenant (or by Tenant's agents, employees or contractors), and Tenant shall

14

have no liability or obligation therefor) and Landlord shall retain the responsibility and pay for any investigations or remediation measures required by governmental entities having jurisdiction. Tenant shall cooperate fully in any such activities at the request of Landlord, including allowing Landlord and Landlord's agents to have reasonable access to the Premises at reasonable times in order to carry out Landlord's investigative and remedial responsibilities.

10.06 <u>Landlord Representations and Warranties</u>. Landlord represents, warrants and agrees that: (i) the Premises and its uses and operations complies, and will comply, with all Legal Requirements pertaining to Hazardous Materials, (ii) the Premises have never been the subject to any Federal or State Hazardous Materials related list; (iii) the Premises has never required closure or clean-up of Hazardous Materials; (iv) there have never been any release or storage of Hazardous Materials on the Premises in contravention of Legal Requirements; and (v) no asbestos, no asbestos containing materials, polychlorinated biphenyls or underground storage tanks exist or have existed on the Premises. Landlord covenants that it will be solely liable for the clean-up and removal of Hazardous Materials now and in the future existing on the Premises except to the extent generated, used and brought onto to the Premises by Tenant during the Term of this Lease. Landlord will defend, indemnify and hold Tenant, its agents, employees and lenders, if any, harmless from and against any and all liabilities, damages, losses, costs, assessments, penalties, fines, judgments, claims, expenses, and fees, including attorneys' and consultants' fees, related to Tenant, its agents, employees and lenders, if any, and Landlord's breach of any of the above representations and warranties.

10.07 <u>Notification</u>. Landlord and Tenant agree that should it receive notice of (i) any violation of any Legal Requirements related to Hazardous Materials in, on, at, under or near the Premises, or (ii) the escape or release of any Hazardous Materials in, on, at, under or near the Premises, such party shall promptly notify the other thereof in writing.

## ARTICLE 11:    CASUALTY AND CONDEMNATION

11.01 <u>Damage to Premises</u>.

(a)    If the Premises are so damaged by fire, other casualty, acts of God or the elements (a "**Casualty**") so that they cannot be restored or made suitable for Tenant's business needs within ninety (90) days from the date of the Casualty ("**Substantial Damage**"), either Landlord or Tenant may terminate this Lease by written notice given to the other party within thirty (30) days after the date of the Casualty. If the Lease is so terminated, the termination will be effective as of the date of the Casualty and the Rent will abate from that date, and any Rent paid for any period beyond such date will be refunded to Tenant.

(b)    If this Lease is not terminated as provided in subparagraph (a) of this Paragraph, then Landlord will, at its sole cost and expense, restore the Premises as soon as practical to the condition existing prior to the Casualty. During the restoration period, the Rent will abate for the period during which the Premises are not suitable for Tenant's business needs. If only a portion of the Premises is damaged then the Rent will abate proportionately. If Landlord fails to complete such restoration within one hundred twenty (120) days from the date of the Casualty, Tenant shall have the right to terminate this Lease, provided (i) Tenant gives Landlord not less

15

than thirty (30) days prior written notice, and (ii) Landlord does not complete the restoration during such thirty (30) day period.

(c)    Notwithstanding the foregoing provisions of this Paragraph, in the event that (x) any portion of the Premises is damaged during the last six (6) months of the Term or (y) any other portion of the Property is damaged during the last six (6) months of the Term and such damage materially and adversely interferes with the conduct of Tenant's business, as reasonably determined by Tenant, then Tenant shall have the option to terminate this Lease upon thirty (30) days' prior written notice to Landlord.

(d)    In the event of the termination of this Lease pursuant to this Paragraph, Base Rent and Additional Rent shall be prorated as of the date of such termination.

(e)    The provisions of this Article 11 will govern the rights and obligations of Landlord and Tenant in the event of any damage or destruction of or to the Premises.  Tenant waives the protection of any statute, code or judicial decision which grants a tenant the right to terminate a lease in the event of the damage or destruction of the leased property.

11.02  <u>Condemnation</u>.  If more than twenty percent (20%) of the floor area of the Building is taken by eminent domain, then Landlord may terminate the Lease as of the date the condemning authority takes title or possession, by delivering notice to Tenant within ten (10) days after receipt of written notice of such taking (or in the absence of such notice, within ten (10) days after the condemning authority takes title or possession).  In addition, if more than twenty percent (20%) of the floor area of the Building or more than twenty five percent (25%) of the parking on the Premises is taken by eminent domain, either Landlord or Tenant may terminate the Lease as of the date the condemning authority takes title or possession, by delivering notice to the other within ten (10) days after receipt of written notice of such taking (or in the absence of such notice, within ten (10) days after the condemning authority takes title or possession).  If neither party terminates the Lease, this Lease will remain in effect as to the portion of the Premises not taken, except that the Base Rent will be reduced in proportion to the reduction in the floor area of the Building.  Any condemnation award or payment will be paid to Landlord. Tenant will have no claim against Landlord for the value of the unexpired Term or otherwise; provided, however, Tenant may make a separate claim with the condemning authority for its personal property and/or moving costs so long as Landlord's award is not reduced thereby. Notwithstanding anything herein to the contrary, Landlord shall notify Tenant in writing immediately upon receipt of any notice regarding any proposed condemnation of all or any part of the Premises.

## ARTICLE 12:    ASSIGNMENT AND SUBLETTING

12.01  <u>Landlord's Consent Required</u>.    Tenant shall have the right at any time to assign or transfer this Lease or sublease the Premises or any part thereof or interest therein, or mortgage, pledge or hypothecate its leasehold interest, with Landlord's prior written consent, which such consent shall not be unreasonably withheld or delayed.

12.02  <u>No Release of Tenant</u>.  Notwithstanding any assignment or subletting, Tenant will at all times remain fully responsible and primarily liable for the payment of Rent and compliance with

16

all of Tenant's obligations under this Lease.  If Tenant's assignee or transferee defaults under this Lease, Landlord may proceed directly against Tenant without pursuing remedies against the assignee or transferee.

## ARTICLE 13:    DEFAULTS AND REMEDIES

I. <u>Tenant's Default; Rights and Remedies</u>.

13.01    <u>Covenants and Conditions</u>.  Each of Tenant's obligations under this Lease is a covenant and a condition.  Tenant's right to continue in possession of the Premises is conditioned upon such performance.  Time is of the essence in the performance by Tenant of all covenants and conditions.

13.02    <u>Defaults</u>.  Each of the following constitutes an "**Event of Default**" under this Lease:

(a)    Tenant fails to pay Rent or any other sum payable under this Lease within ten (10) days after it is due; provided, however, with respect to the first such nonpayment in any calendar year, Tenant will have ten (10) days after receipt of notice that Rent is due to pay such amount;

(b)    Tenant fails to perform any of Tenant's other obligations under this Lease and such failure continues for a period of thirty (30) days after notice from Landlord; provided that if more than thirty (30) days are reasonably required to complete such performance, Tenant will not be in default if Tenant commences such performance within the thirty (30) day period and thereafter diligently pursues its completion as soon as reasonably possible; or

(c)    Tenant becomes insolvent or bankrupt, has a receiver or trustee appointed for any part of its property, makes an assignment for the benefit of its creditors, or any proceeding is commenced either by Tenant or against it under any bankruptcy or insolvency laws, which proceeding is not dismissed within sixty (60) days.

13.03    <u>Remedies</u>.  Upon each occurrence of an Event of Default and so long as such Event of Default shall be continuing, Landlord may at any time thereafter at its election:

(a)    <u>Terminate Lease</u>.  Landlord may terminate this Lease.  If Landlord terminates this Lease, Landlord may recover from Tenant the sum of:  all Base Rent and all other amounts accrued hereunder to the date of such termination; the value of any free or reduced rent provided for in this Lease; the cost of removing and storing Tenant's or any other occupant's property, and all reasonable expenses incurred by Landlord in pursuing its remedies, including reasonable attorneys' fees and court costs; and the excess of the then present value of the Base Rent and other amounts payable by Tenant under this Lease as would otherwise have been required to be paid by Tenant to Landlord during the period following the termination of this Lease measured from the date of such termination to the expiration date stated in this Lease, over the present value of any net amounts which Landlord can reasonably expect to recover by reletting the Premises for such period, taking into consideration the availability of acceptable tenants, the time period to secure future tenants (and the commencement of the payment of rents), and other market conditions affecting leasing.  Such present values shall be calculated at a discount rate equal to the ninety (90)-day U.S. Treasury bill rate at the date of such termination.

(b)    Terminate Right of Possession.  Landlord may terminate Tenant's right of possession of the Premises without terminating this Lease.  If Landlord terminates Tenant's right of possession (but not this Lease), Landlord may relet the Premises for the account of Tenant for such rent and upon such terms as shall be satisfactory to Landlord without thereby releasing Tenant from any liability hereunder and without demand or notice of any kind to Tenant.  For the purpose of such reletting Landlord is authorized to make any repairs, changes, alterations, or additions in or to the Premises as Landlord deems reasonably necessary or desirable.  If the Premises are not relet, then Tenant shall pay to Landlord as damages a sum equal to the amount of the rental reserved in this Lease for such period or periods, plus the cost of recovering possession of the Premises (including attorneys' fees and costs of suit), the unpaid Base Rent and other amounts accrued hereunder at the time of repossession, and the costs incurred in any attempt by Landlord to relet the Premises.  If the Premises are relet and a sufficient sum shall not be realized from such reletting to satisfy the Rent provided for in this Lease to be paid, then Tenant shall immediately satisfy and pay any such deficiency.  Any such payments due Landlord shall be made upon demand therefor from time to time and Tenant agrees that Landlord may file suit to recover any sums falling due from time to time.  Notwithstanding any such reletting, or termination of Tenant's right of possession, without termination, Landlord may at any time thereafter elect in writing to terminate this Lease for such previous breach.  With respect to any reletting by Landlord, Landlord and Tenant agree that, in addition to the provisions of Section 13.02(f): (i) Landlord shall not be obligated to lease the Premises for any use which is not commonly found at similar properties or for any use which, in Landlord's reasonable opinion, would be inappropriate for the Premises; and (ii) any proposed tenant or proposed use must meet all of Landlord's leasing criteria, including, without limitation, financial strength and operating experience.

(c)    Right to Re-Enter.  Upon the termination of this Lease or termination of Tenant's right of possession as provided in this Lease: (i) Tenant must immediately vacate and surrender the Premises to Landlord in the condition required by this Lease upon a termination; (ii) Landlord may enter and take custodial possession of the Premises in accordance with applicable law; and (iii) upon reentering the Premises, Landlord shall have the right to keep in place and use, or remove and store, at Tenant's expense, all Tenant's Property at the Premises, and if said Tenant's Property remaining on the Premises is not claimed by Tenant within forty five (45) days after such entry, title to the same shall vest in Landlord.

(d)    Waiver.  Any law, usage, or custom to the contrary notwithstanding, Landlord shall have the right at all times to enforce the provisions of this Lease in strict accordance with the terms hereof; and the failure of Landlord at any time to enforce its rights under this Lease strictly in accordance with same shall not be construed as having created a custom in any way or manner contrary to the specific terms, provisions, and covenants of this Lease or as having modified the same.  Tenant and Landlord further agree that forbearance or waiver by Landlord to enforce its rights pursuant to this Lease or at law or in equity, shall not be a waiver of Landlord's right to enforce one or more of its rights in connection with any subsequent default.  A receipt by Landlord of rent or other payment with knowledge of the breach of any covenant hereof shall not be deemed a waiver of such breach, and no waiver by Landlord of any provision of this Lease shall be deemed to have been made unless expressed in writing and signed by Landlord.

4813-4762-2520.8\117486\000001

(e)    Additional Remedies.  Landlord may pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the state in which the Premises is located.

(f)    Mitigation.    In connection with the exercise by Landlord of its rights and remedies in respect of any Event of Default, Landlord shall use reasonable efforts to mitigate its damages.

13.04    Damages.  On any termination, Landlord's damages will include all costs and fees, including reasonable attorneys' fees that Landlord incurs in connection with any bankruptcy court or other court proceeding with respect to the Lease, the obtaining of relief from any stay in bankruptcy restraining any action to evict Tenant, or the pursuing of any action with respect to Landlord's right to possession of the Premises.  All such damages suffered (apart from Rent payable hereunder) will constitute pecuniary damages which will be paid to Landlord prior to assumption of the Lease by Tenant or any successor to Tenant in any bankruptcy or other proceedings.

13.05    Cumulative Remedies.  Except as otherwise expressly provided herein, any and all rights and remedies which Landlord may have under this Lease and at law and equity are cumulative and will not be deemed inconsistent with each other, and any two or more of all such rights and remedies may be exercised at the same time to the greatest extent permitted by law.

13.06    Notice to Landlord.  Tenant will give written notice of any failure by Landlord to perform any of its obligations under this Lease to Landlord and to any ground lessor, mortgagee or beneficiary under any Security Document (as defined in Section 14.01) encumbering the Premises whose name and address have been furnished to Tenant.  Landlord will not be in default under this Lease unless Landlord (or such ground lessor, mortgagee or beneficiary) fails to cure such non-performance within thirty (30) days after receipt of Tenant's notice or such longer period as may be required to diligently complete such matter.  If Landlord (or such ground lessor, mortgagee or beneficiary) cannot perform any of its obligations due to events beyond its reasonable control, the time provided for performing such obligations will be extended by a period of time equal to the duration of such events.  Events beyond Landlord's reasonable control include, but are not limited to, acts of God, war, civil commotion, labor disputes, strikes, fire, flood or other casualty or weather conditions, shortages of labor or material, and Legal Requirements.

13.07    Landlord's Right to Cure.  If Tenant defaults in the performance of any obligation under this Lease, Landlord will have the right (but is not required) to perform such obligation and, if necessary, to enter upon the Premises.  All costs incurred by Landlord in connection with such performance, together with Default Interest thereon from the date incurred by Landlord, will be deemed to be Additional Rent under this Lease and will be payable to Landlord immediately on demand.  Landlord may exercise the foregoing rights without waiving any of its other rights or releasing Tenant from any of its obligations under this Lease.

13.08    No Lien for Rent.  Landlord hereby waives any and all statutory and/or contractual liens for Rent in Landlord's favor, including, without limitation, those arising under the Uniform Commercial Code in the State in which the Premises is located and under Florida law.

II.  Landlord's Default; Rights and Remedies.

(a)    <u>Landlord Default</u>.  Each of the following also constitutes an "<u>Event of Default</u>" under this Lease: Landlord fails to observe or perform any covenant, agreement, condition or provision of this Lease, and such failure continues for thirty (30) days after receipt of written notice from Tenant to Landlord, except that if such failure cannot be cured within such thirty (30) day period, this period will be extended, provided that Landlord commences to cure such failure within such thirty (30) day period and proceeds diligently thereafter to seek to effect such cure, provided that in a situation requiring immediate response, Tenant need only give Landlord such notice as is reasonable under the circumstances.

(b)    <u>Tenant's Right to Cure; Interest</u>.  Tenant will have the right, but not the obligation, to cure any Landlord Event of Default.  If Tenant spends any money to cure such Landlord Event of Default, then Tenant will also be entitled to interest on such expenditure, at the highest rate of interest allowed by law (but not to exceed eighteen percent (18%) per annum) from the date due until paid unless otherwise specifically provided herein.

(c)    <u>Tenant's Right to Offset</u>.  If an Event of Default by Landlord occurs, Tenant will have all rights and remedies available at law or in equity, including, but not limited to, the right to set off against Rent the amount required to cure any Event of Default on the part of Landlord, plus interest.

## ARTICLE 14:    PROTECTION OF LENDERS AND OWNERS

14.01    <u>Subordination</u>.  This Lease will subordinate to any mortgage which from time to time may encumber all or part of the Premises; provided, however, that every mortgagee now existing or hereafter created intending to be superior in right must (a) recognize the validity of the Lease and be bound (or bind any successor in foreclosure) in the event of a foreclosure of Landlord's interest; and (b) not affect or disturb Tenant's peaceful and quiet use and enjoyment of the Premises so long as Tenant is not in default of this Lease.  The parties agree to execute, and Landlord (i) agrees to make best efforts to promptly furnish as to any existing mortgagee and (ii) will furnish immediately to Tenant as to any future mortgagee of the Premises, a subordination, non-disturbance and attornment agreement in form and content reasonably acceptable to Tenant.

14.02    <u>Estoppel Certificates</u>.  Within thirty (30) days after Landlord's request, Tenant will execute, acknowledge and deliver to Landlord a written statement certifying: (i) that none of the terms or provisions of this Lease have been changed (or if they have been changed, stating how they have been changed); (ii) that this Lease has not been canceled or terminated; (iii) the last date of payment of the Base Rent, Additional Rent and other charges and the time period covered by such payment; (iv) that Landlord is not in default under this Lease (or if Landlord is claimed to be in default, setting forth such default in reasonable detail); and (v) such other information with respect to Tenant or this Lease as Landlord may reasonably request or which any prospective purchaser or encumbrancer of the Premises may require.  Landlord may deliver any such statement by Tenant to any prospective purchaser or encumbrancer of the Premises, and such purchaser or encumbrancer may rely conclusively upon such statement as true and correct. If Tenant does not deliver such statement to Landlord within such 30-day period, Landlord, and any prospective purchaser or encumbrancer, may conclusively presume and rely upon (and Tenant will be estopped from denying): (a) that the terms and provisions of this Lease have not been changed except as otherwise represented by Landlord; (b) that this Lease has not been

canceled or terminated except as otherwise represented by Landlord; (c) that not more than one month's Base Rent, Additional Rent or other charges have been paid in advance; and (d) that Landlord is not in default under this Lease.  Landlord hereby agrees to provide to Tenant an estoppel certificate signed by Landlord, containing the same types of information, and within the same periods of time, as set forth above, with such changes as are reasonably necessary to reflect that the estoppel certificate is being granted and signed by Landlord to Tenant, rather than from Tenant to Landlord or a lender, and shall also contain any other factual information reasonably requested by Tenant.

14.03   Tenant's Financial Condition.  Within twenty (20) days after request from Landlord from time to time, but no more often than once in any calendar year, Tenant will deliver to Landlord Tenant's financial statements (audited, if available) for the most recent two fiscal years.  Such financial statements may be delivered to Landlord's mortgagees, lenders and investors and prospective mortgagees, lenders, purchasers and investors.   Landlord shall exercise commercially reasonable efforts to keep all non-public financial statements confidential to Landlord and such mortgagees and lenders or prospective mortgagees, lenders, purchasers and investors, and their respective attorneys, accountants and representatives, and Landlord will use them only in connection with the Premises and this Lease.

14.04   Landlord's Liability.  No owner of the Premises shall be liable under this Lease except for breaches of Landlord's obligations occurring while owner of the Premises.  Any liability of Landlord for a default by Landlord under this Lease, or a breach by Landlord of any of its obligations under the Lease, shall be limited solely to its interest in the Premises, and in no event shall any personal liability be asserted against Landlord in connection with this Lease nor shall any recourse be had to any other property or assets of Landlord, and Tenant shall not seek recourse against the individual partners or members of Landlord, nor its or their individual partners, directors, officers, managers, members, or shareholders, nor any of their personal assets.  The terms of this Section 14.05 shall also apply in the event the holder of any ground lease, deed of trust or mortgage encumbering the Premises, or any purchaser or transferee pursuant to the foreclosure or transfer of the Premises under any such instrument becomes the Landlord.

## ARTICLE 15:   PURCHASE OPTION

15.01   Option and Price.  Upon not less than one hundred twenty (120) days prior written notice to Landlord ("**PO Notice**"), Tenant shall have the option (the "**Purchase Option**") to purchase the Premises from Landlord upon a purchase price to be determined as follows:

i.      Tenant shall designate in writing a person to act as its appraiser for the purpose of establishing the Fair Market Value of the Premises, and shall give notice in writing of such designation to the Landlord.  Within ten (10) calendar days after the Tenant gives such notice, the Landlord shall either (A) accept Tenant's designee as the sole broker, in which event such broker's determination of the Fair Market Rent shall be conclusive or (B) designate in writing a person to act as a second appraiser for establishing the Fair Market Value and shall give notice thereof in writing to Tenant, and the failure by Landlord to timely designate a second broker shall be deemed an election by Landlord to accept Tenant's designee as the sole broker.

ii.      Each appraiser so appointed shall promptly appraise the fair market value of the Premises based upon the current use of the Premises as if vacant and unencumbered by the Lease (the "**Fair Market Value**").  If both Tenant and Landlord designate an appraiser, the Fair Market Value shall be deemed to be the average of the two appraisals, unless the appraisals differ by more than ten percent (10%), in which case the two appraisers shall together select a third appraiser and obtain an appraisal from the third appraiser, and the Fair Market Value shall be deemed to be the average of the two closest in value.  Landlord and Tenant shall cause the appraisers to render a prompt, written decision within thirty (30) days after the selection of appraiser to be appointed by the Landlord hereunder.

iii.      No appraiser shall have any personal or financial interest as would disqualify such appraiser from exercising an independent and impartial judgment as to the matter under appraisal.  Each appraiser shall be a member of the American Institute of Real Estate Appraisers (or any successor association or body of comparable standing if such institute is not then in existence), shall have at least ten (10) years' experience in the appraisal of real estate and shall be familiar with property values in the metropolitan area in which the Premises is located.  Each party shall pay the fees and expenses of the appraiser appointed or selected by it and the fees and expenses of the third appraiser, if any, shall be paid equally by Landlord and Tenant.

iv.      In the event of the failure, refusal or inability of any appraiser to act, a new appraiser shall be appointed as his replacement, which appointment shall be made in the same manner as provided above for the appointment of such appraiser so failing, refusing or being unable to act.  The decision of the appraisers shall be final, conclusive and binding on Landlord and Tenant.  Landlord and Tenant shall have the right to submit written information, arguments, supporting data, and other relevant matters to the appraisers in writing.  As used herein, the "**Fair Market Value**" of the Premises shall be the "**Purchase Price**" of the Premises.

15.02    Closing.  Once exercised, the Purchase Option must be closed and Tenant must complete its purchase of the Premises within ninety (90) days of Tenant's PO Notice to Landlord.

15.03    Title and Survey.

(a)      Within ten (10) days of determination of the Purchase Price, Landlord, at Landlord's sole cost and expense, shall cause a title company mutually acceptable to Landlord and Tenant ("**Title Company**") to furnish to Tenant a commitment for an owner's policy of title insurance ("**Owner's Policy**") covering the Premises in the amount of Purchase Price (the "**Commitment**"), and complete, legible copies of all instruments shown by the Commitment as exceptions.

(b)      Within ten (10) days after the determination of the Purchase Price, Landlord, at Landlord's expense, shall provide to Tenant a copy of any existing survey of the Premises (the "**Survey**").  Tenant, at Tenant's expense, may order an update of the Survey or a new survey of the Premises (the "**New Survey**").

(c)      Tenant shall notify Landlord of (i) any defects in or encumbrances upon Landlord's title to the Premises unacceptable to Tenant and (ii) Tenant's objections to matters shown by the Survey or New Survey (collectively, "**Tenant's Title Objections**") within ten (10) days after

Tenant's receipt of the last of the Commitment, complete and legible copies of all instruments shown as exceptions in the Commitment, and the Survey or New Survey. Landlord shall have the right, but not the obligation, to remove, correct, and/or satisfy Tenant's Title Objections prior to Closing. Landlord shall (A) notify Tenant within seven (7) days after receipt of Tenant's Title Objections ("**Landlord's Response Period**") as to whether Landlord will seek to remove, correct, and/or satisfy the same ("**Landlord's Response**"), and (B) keep Tenant reasonably apprised of Landlord's progress toward removing, correcting, and/or satisfying the same (and the manner in which such will be removed, corrected, and/or satisfied). If Landlord fails to notify Tenant of Landlord's Response within Landlord's Response Period, then Landlord shall be deemed to have elected not to seek to remove, correct, and/or satisfy Tenant's Title Objections. Title defects or encumbrances set forth on Schedule B of the Commitment to which Tenant does not object, shall be included within the term "**Closing Permitted Exceptions**"; provided that Monetary Liens (defined below) and Tenancy Rights (defined below), shall never be Closing Permitted Exceptions. If Landlord elects to so cure Tenant's Title Objections, Landlord shall diligently pursue the same to completion. If there remains at Closing any of Tenant's Title Objections, then Tenant may elect to: (1) consummate the Purchase Option transaction contemplated by this Lease without regard to such defects and encumbrances; or (2) terminate this Purchase Option and no party shall have any rights, duties, or obligations hereunder, except those specifically stated herein to survive termination of this Lease. Notwithstanding anything to the contrary contained herein, without the necessity of objection or request by Tenant, contemporaneous with the Closing Date, Landlord shall pay and obtain the release of all liens and encumbrances affecting the Premises which secure the payment of indebtedness of an ascertainable amount ("**Monetary Liens**"), excepting only the lien for ad valorem taxes for the year of Closing, if not then due and payable. In the event Tenant opts to terminate the Purchase Option prior to the termination of the Term, the Lease shall continue, at Tenant's option, in full force and effect.

15.04  Landlord Covenants. From and after the PO Notice until Closing, or earlier termination of this Lease, the Landlord or the Landlord's agents shall:

(a)  Operation. Operate and maintain the Premises substantially in accordance with the Landlord's past practices with respect to the Premises.

(b)  Contracts. Not execute any new contract or amend or terminate any existing contract in connection with the Premises without Tenant's prior written approval, which shall not be unreasonably withheld or delayed.

(c)  Leases. Not execute any new lease or amend, terminate or accept the surrender of any lease without Tenant's prior written approval, which shall not be unreasonably withheld or delayed.

(d)  Litigation; Violations. Advise the Tenant promptly of any litigation, arbitration proceeding or administrative hearing (including condemnation, foreclosure or bankruptcy) before any governmental authority which affects the Landlord or the Premises. Deliver to Tenant promptly after receipt thereof copies of any notices of violations or other notices regarding the Premises received by the Landlord.

4813-4762-2520.8117486\000001

(e)    Sale of Personal Property.  Not transfer or dispose of, or permit to be sold, transferred or otherwise disposed of, any item or group of items constituting personal property associated with the Premises, except for the use and consumption of inventory, office and other supplies and spare parts, and the replacement of worn out, obsolete and defective tools, equipment and appliances, in the ordinary course of business.

(f)    Actions.  Not waive, release, assign, settle or compromise any material actions against the Landlord or the Premises.

(g)    Zoning.  Not initiate or consent to any material zoning reclassification of the Premises or any material change to any approved site plan, special use permit, planned unit development approval or other land use entitlement affecting the Premises.

15.05    Closing Documents.  At or prior to Closing, each party shall deliver to the other party documents reasonably required by the other party to establish the authority of such party to enter into and perform the transactions contemplated by this Agreement. Landlord shall, at its own cost and expense, also deliver to Tenant at Closing the following:  Landlord's warranty deed, any required corporate resolutions or authorizations, affidavit(s) of non-foreign status (federal or state), bill of sale conveying to Tenant all personal property (both tangible and intangible) with respect to the Premises (if any), to the extent not already delivered to Tenant all leases affecting the Premises, an assignment of all existing contracts (to the extent that such contracts are acceptable to Tenant in its sole discretion), termination of all contracts that Tenant has elected, in Tenant's sole discretion, not to assume, with Tenant being responsible for all termination costs applicable thereto, and assignment of all warranties relating the Premises, if any and Landlord's proof of payment of Sales Taxes through Closing.  The parties also shall deliver at Closing any other documents reasonably necessary to complete and evidence the acquisition of the Premises contemplated hereby, in a form reasonably satisfactory to the parties including, without limitation, a closing statement.

15.06    Pro Rations.

(a)    Transfer Taxes, Recording Fees and Other Fees.  Landlord shall pay any applicable grantor transfer taxes (including, without limitation, documentary transfer taxes), the cost to prepare the deed from Landlord, and the cost of recording all documents necessary to correct or remove defects in or encumbrances upon Landlord's title to the Premises (if applicable) and the cost of a base premium for an Owner's Policy of title insurance.  Tenant shall pay the cost of any New Survey obtained by Tenant, the cost of any endorsements or extended title insurance coverage, the cost of preparing and/or recording all documents to be recorded other than those referred to in the preceding sentence, and any other reasonable and customary costs related to the Closing. Each party shall pay its own attorneys' fees.  The Landlord and Tenant shall each pay one-half (½) of the Title Company's escrow fee to close the Purchase Option transaction.

(b)    Taxes.  Real Property Taxes and assessments ("**Taxes**") assessed against the Premises for the year in which Closing occurs shall be prorated as of 11:59 p.m. on the day preceding the Closing Date, and shall be based on the actual Taxes for the current year. If the actual Taxes for the current year are unavailable, then such pro-ration shall be based on the actual Taxes for the prior year, using the maximum discount, and shall be a final settlement at Closing.   In either

event, if the Premises is in the tax records as a separate parcel on the Closing Date, the Taxes shall be prorated on the basis of time and applied as an adjustment of the Purchase Price due at Closing. Landlord shall promptly provide Tenant with all relevant documentation relating to the Taxes (including, without limitation, any tax bills) received by Landlord after Closing. If the Premises is part of a larger parcel during the calendar year or tax year of the Closing, the Taxes shall be prorated on the basis of acreage (and improvements on such acreage, if any) as well as time, and Tenant shall pay to Landlord Tenant's resulting share of the Taxes at Closing.  In the event the Premises are subject to reduced taxes pursuant to an agricultural or open land use exemption, then Landlord shall be responsible for any and all rollback taxes assessed against the Premises, which obligation shall survive Closing.

(c)    Personal Property and Other Taxes.  Landlord shall, at its own cost, be responsible for, and shall indemnify Tenant against, all personal property taxes attributable to personal property owned and/or leased by Landlord and other taxes and assessments with respect to the Premises (including all deferred taxes and all subsequent tax assessments, if any, for years prior to Closing due to change in land usage or ownership [whether such change is deemed to have occurred before or after Closing]) for the period of time prior to the Closing. Tenant shall be responsible for its personal property taxes throughout the Term.  This covenant and indemnity shall survive Closing.

(d)    Sales Taxes.  Landlord shall, at its own cost, be responsible for, and shall indemnify Tenant against, all Sales Taxes with respect to the Premises (including all unpaid Sales Taxes, if any, for years prior to Closing) for the period of time prior to the Closing. This covenant and indemnity shall survive Closing.

(e)    Utilities. If any utility services are presently being provided to or serving the Premises, Landlord will pay for such services up to and including the Closing Date, but thereafter any such services in the name of Landlord shall be terminated and/or transferred by Landlord at Tenant's election. If necessary, the parties shall refund or repay such sums as shall be necessary to effect such apportionment. Tenant is responsible for obtaining its own utility account(s) for utility services to the Premises and for all utility charges associated therewith after the Closing Date. This Section 15.06 shall survive Closing.

(f)    Rents and Other Amounts.  All rents, if any, with respect to the Premises for the month in which the Closing occurs shall be pro-rated to the Closing Date. For the purposes of calculating pro-rated amounts, Tenant shall be deemed to be entitled to the Premises, and therefore entitled to the income from the Premises, beginning as of the date of the Closing Date. At Closing, all security deposits, advance rentals, and other deposits, if any, made pursuant to leases and other contracts concerning the Premises shall be retained by Landlord and credited against the balance of the Purchase Price due at Closing. If the balance due at Closing is less than the sum of all deposits to be transferred, all deposits will be remitted to Tenant in cash at Closing.  If there are any delinquent rents as of the Closing Date, Landlord shall have no right to pursue collection thereof.  However, in the event Tenant receives such delinquent rents (after application of all funds received by Tenant to current charges due and not such delinquencies), Tenant shall remit the amount of such delinquent rents received by Tenant to Landlord.  Tenant shall have no obligation to pursue collection of delinquent rents.  This Section 15.06 shall survive Closing.

4813-4762-2520.8117486\000001

15.07  Closing.  The Closing (the "**Closing**") of the acquisition shall occur, if at all, at the offices of the Title Company or at another place designated by Tenant and Landlord; provided, however, that neither party shall be obligated to attend Closing, as long as all documents and funds required to be delivered by such party at Closing have been delivered and are in the possession of the Escrow Agent.  The date of Closing shall be on a date mutually selected by Landlord and Tenant that occurs prior to the Closing Date.

15.08  Memorandum of Lease and Purchase Option.  Notwithstanding anything to the contrary in this Lease, Landlord may not terminate this Lease, whether as a result of a Default hereunder by Tenant or otherwise, unless (i) it has provided Tenant at least thirty (30) days prior written notice of its intent to terminate the Lease in accordance with the terms hereof and (ii) within such thirty (30) day period, Tenant has not delivered to Landlord a notice of Tenant's election to exercise the Purchase Option.  If Tenant does elect to exercise the Purchase Option within such thirty (30) day period, the Lease shall continue in effect for such additional period as is necessary for the Closing to occur in accordance with the terms of this Article 15.

**ARTICLE 16:   SIGNS**

16.01  Signs.  Tenant shall have the right to place an exterior sign on all sides of the Building, in accordance with the maximum signage allowed by the local authority.  Tenant shall be entitled to use any monument and pylon sign space located on the Premises.  Notwithstanding anything in this Lease to the contrary, Tenant has the right, without Landlord's consent, to place any and all signage within the interior of the Premises, including, without limitation, exterior doors and windows of the Premises, as Tenant may desire.

**ARTICLE 17:   MISCELLANEOUS PROVISIONS**

17.01  Radon Disclosure.  Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.  Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your county health department.

17.02  Security of Premises.  Landlord and Tenant agree that Tenant shall have the right to secure the Premises with any and all means, including but not limited to, an alarm system, security gate, security grills, security shutters, electronic or laser locks, which in Tenant's sole opinion will successfully secure the operations of Tenant.

17.03  Tenant's Property.  Notwithstanding anything stated in this Lease to the contrary, Landlord and Tenant expressly acknowledge that nothing in this Lease shall be deemed a grant by Tenant of a security interest, or other lien, in favor of Landlord, upon any goods or other Tenant's Property situated in or upon the Premises.  Landlord expressly waives any rights, whether statutory, contractual or otherwise, that it may have to any lien against Tenant's Property, unless said lien is obtained pursuant to a final judgment by a court of competent jurisdiction.  Tenant may remove Tenant's Property from the Premises at any time during the Term.  As used herein, "Tenant's Property" shall mean Tenant's personal property, furniture, furnishings, signs, telecommunications equipment, equipment and trade fixtures.

26

17.04   <u>Signal Enhancing Device</u>.   Landlord hereby consents to the installation by Tenant, at Tenant's sole cost and expense, of a signal enhancing antenna(s), or such technological evolution of the same (hereinafter the "<u>Antenna</u>" (whether one or more)) so that Tenant may provide adequate phone or other electronic device signal strength within the Premises.   Tenant and Landlord will mutually agree on the location of the Antenna on the Building.   Prior to any such installation, the specifications of such Antenna will be reviewed within fifteen (15) days of the submission thereof to Landlord, and approved by Landlord, which such approval will not be unreasonably withheld, delayed or conditioned.   Landlord will permit Tenant to install wiring between the roof and Premises in appropriate locations and through conduits in the Building and access to the roof to service and maintain equipment.   Tenant will be responsible to ensure that the installation, maintenance and removal and operation of the Antenna (i) complies with all Legal Requirements, and (ii) screening of the Antenna, if required by Landlord.   Other than the foregoing, there will be no additional Lease costs associated with such rooftop rights.   All other provisions of the Lease will apply to the Antenna.

17.05   <u>Satellite Dish</u>.   Landlord hereby consents to the installation by Tenant, at Tenant's sole cost and expense, of two satellite dishes or such technological evolution of the same ("<u>Dishes</u>"). Neither of the Dishes shall exceed three feet (3') in diameter.   The Dishes will be located on the roof of the Building, at the location mutually agreed upon by Tenant and Landlord.   Prior to any such installation, the specifications of such Dishes will be reviewed and approved by Landlord, which approval will  not  be unreasonably withheld, delayed or conditioned, and in no event later than fifteen (15) days after its submission to Landlord.   Other than the foregoing, there will be no additional Lease costs associated with such rooftop rights.   All other provisions of the Lease will apply to the Dishes.

17.06   <u>Tenant's Right to Vacate the Premises</u>.   Notwithstanding anything herein to the contrary, Landlord and Tenant agree that the Tenant will not be in default of this Lease if the Tenant vacates the Premises so long as the Tenant continues to pay the Landlord the Rent and all other charges due under this Agreement.

17.07   <u>Quiet Enjoyment</u>.   Landlord covenants that Tenant will have peaceful and quiet enjoyment and possession of the Premises for the Term, subject to the terms and conditions set forth in this Lease.

17.08   <u>Force Majeure</u>.  Force Majeure means if Landlord or Tenant is delayed or prevented from performing any act which it is obligated to perform under this Lease for causes beyond its reasonable control (including, without limitation, repair, restoration and/or maintenance obligations) related to acts of God, war, governmental restrictions, or the inability to procure the necessary labor or materials, ("<u>Force Majeure</u>").

Except as otherwise provided in this Lease, Landlord or Tenant's time for performance of such obligation(s) hereunder will be reasonably extended by the period during which Landlord or Tenant was unable to perform, and the non-performing party will have no liability to the other party (nor will either party be entitled to terminate this Lease or claim any abatement under this Lease) on account of any such delay.

4813-4762-2520.8117486\000001

17.09  <u>Legal Requirements and Sales Taxes</u>.  As of the Effective Date of this Lease, Landlord has paid all Sales Taxes applicable to the Premises and met all Legal Requirements related thereto.  Landlord indemnifies and holds Tenant harmless from any and all unpaid Sales Taxes related to any prior lease of the Premises.

17.10  <u>Parking</u>.  Landlord covenants that throughout the Term the Premises shall have adequate parking facilities for Tenant, its employees, contractors, representatives, customers and invitees. Landlord and Tenant agree that Tenant shall have the exclusive right to use ____ (___) parking spaces which are marked as "Tenant's Exclusive Parking" on the attached site plan, **Exhibit C**. Tenant will have the right to designate Tenant's Exclusive Parking by posting signs or marking the curb or the pavement.  In addition, Tenant shall have the nonexclusive right to use all other parking on the Premises at no additional charge.  In no event shall Tenant or any of Tenant's customers, employees, contactors, representatives or invitees be charged for parking during the Term of the Lease.  Landlord covenants that the nonexclusive parking on the Premises shall not be reduced below _____(___) parking spaces per one thousand (1,000) square feet of the total leasable square footage of the Premises.

17.11  <u>Termination of Existing Lease</u>.  Any and all existing leases related to the Premises between Landlord and Tenant, whether written or oral, including without limitation that certain lease listed on **Exhibit D** are hereby terminated upon the Commencement Date of this Lease. Landlord shall execute all additional documentation, if any, required by Tenant to with respect to such termination.  In no event shall Tenant be liable for any costs, expenses, Taxes, insurance, Rent or any other charges with respect to the lease on **Exhibit D**, or with respect to any other prior written or oral leases for the Premises.

17.12  <u>Representation of Authority; No Other Lease</u>.

(a)  Landlord hereby represents that it is the fee simple owner of the Premises, that there is no other outstanding lease of the Premises and that it has the full right, power and authority to enter into this Lease without the consent or approval of any other entity or person.  Tenant represents and warrants to Landlord that it has full right, power and authority to enter into this Lease without the consent or approval of any other entity or person.

(b)  The signatories on behalf of Landlord and Tenant further represent and warrant that they have full right, power and authority to act for and on behalf of Landlord and Tenant in entering into this Lease.

(c)  Both Landlord and Tenant hereby agree that they are making the representations set forth in (a) and (b) above knowing that the other party will rely thereon.

17.13  <u>Interpretation</u>. The captions of the Articles or Sections of this Lease are not a part of the terms or provisions of this Lease.  Whenever required by the context of this Lease, the singular includes the plural and the plural includes the singular.  The masculine, feminine and neuter genders each include the other.  In any provision relating to the conduct, acts or omissions of Tenant, the term "<u>Tenant</u>" includes Tenant, any others using or occupying the Premises or any portion thereof with Tenant's express or implied permission, and their respective agents, employees, contractors, invitees and guests.  This Lease does not, and nothing contained herein,

will create a partnership or other joint venture between Landlord and Tenant.  A determination by a court of competent jurisdiction that any provision of this Lease or any part thereof is illegal or unenforceable will not invalidate the remainder of such provision, which will remain in full force and effect.

17.14  <u>Incorporation of Prior Agreements; - Modifications</u>.  This Lease is the only agreement between the parties pertaining to the lease of the Premises.  All amendments to this Lease must be in writing and signed by all parties.  Any other attempted amendment will be void.

17.15  <u>Notices</u>.  All notices, requests and other communications required or permitted under this Lease will be in writing and personally delivered or sent by a national overnight delivery service which maintains delivery records.  Notices will be delivered as follows to Tenant's Notice Address or to Landlord's Notice Address, as appropriate:

Tenant's Notice Address                    _____
                                           _____
                                           _____

Tenant's Billing Address (if different)    _____
                                           _____
                                           _____

Landlord's Notice Address                  Mr. Jason Rubin
                                           12900 NW 38th Avenue
                                           Opa Locka, Florida  33054

With a copy to                             Mr. Alan Silverstein, Esq.
                                           700 Village Square Crossing, Suite 101
                                           Palm Beach Gardens, Florida  33410

Landlord's Rent Payment Address            Mr. Jason Rubin
                                           12900 NW 38th Avenue
                                           Opa Locka, Florida  33054

All notices will be effective upon delivery (or refusal to accept delivery).  Either party may change its notice address upon ten (10) days prior written notice to the other party given in accordance with the terms of this Section 17.15.

17.16  <u>Waivers</u>.  Any waiver, to be effective, must be in writing and signed by the waiving party.  Landlord's failure to enforce any provision of this Lease or its acceptance of Rent is not a waiver and will not prevent Landlord from enforcing that provision or any other provision of this Lease in the future.  No statement on a payment check from Tenant or in a letter accompanying a payment check will be binding on Landlord.  Landlord may, with or without notice to Tenant, negotiate such check without being bound by to the conditions of such statement.

17.17   <u>Memorandum of Lease and Purchase Option</u>.  Landlord and Tenant agree that Tenant may record a Memorandum of Lease and Purchase Option.

17.18   <u>Binding Effect; Choice of Law</u>.  This Lease will bind any party who legally acquires any rights or interest in this Lease from Landlord or Tenant, provided that Landlord will have no obligation to Tenant's successor unless the rights or interests of Tenant's successor are acquired in accordance with the terms of this Lease.  The laws of the state in which the Premises is located govern this Lease.  **THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PARTY(IES) AGAINST ANY OTHER PARTY(IES) ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE OR THE RELATIONSHIP OF THE PARTIES HEREUNDER.**

17.19   <u>Execution of Lease</u>.   This Lease may be executed in counterparts and, when all counterpart documents are executed, the counterparts will constitute a single binding instrument.  Landlord's delivery of this Lease to Tenant is not to be deemed to be an offer to lease and will not be binding upon either party until executed and delivered by both parties.

17.20   <u>Survival</u>.   Unless otherwise expressly provided in this Lease, all representations and warranties of Landlord and Tenant, Tenant's indemnity under Sections 2.02 (Holding Over) and 8.06 (Indemnity), the provisions of Article 10 (Hazardous Materials), the covenant and indemnification provisions of Section 15.06(b), (c), (d), (e) and (f), the indemnification provisions of Section 17.21 (No Brokers), and all obligations of Tenant to pay Additional Rent hereunder, shall survive the termination of this Lease.

17.21   <u>No Brokers</u>.  Except as specifically detailed herein, Landlord and Tenant each represent and warrant to the other that there are no agents, brokers, finders or other parties with whom it has dealt who may be entitled to any commission or fee with respect to this Lease or the Premises.  Landlord and Tenant each agree to indemnify and hold the other party harmless from any such claim, demand, cost or liability for a commission or fee, including, without limitation, attorneys' fees and expenses, asserted by any person or entity based upon dealings with the indemnifying party.

17.22   <u>Attorney Costs</u>.  In any enforcement proceeding brought by either party with respect to this Lease, the non-prevailing party will pay to the prevailing party in such proceeding all costs, including reasonable attorneys' fees and court costs, incurred by such other party with respect to said proceeding and any appeals therefrom.

17.23   <u>Severability</u>.  If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future laws, then and in that event, it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby.  It is also the intention of the parties to this Lease that in lieu of each clause or provision of this Lease that is illegal, invalid or unenforceable, there be added, as a part of this Lease, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

17.24  <u>Rules and Regulations; Patriot Act</u>.  Tenant agrees to abide by Landlord's rules and regulations for the Premises as such rules and regulations shall be reasonably determined and modified by Landlord from time to time, and each of Landlord and Tenant shall be responsible for the compliance of such rules and regulations by their employees, agents, customers and invitees.

Each of Landlord and Tenant represent and warrant that on behalf of themselves and their respective affiliates that neither is nor any affiliate of Landlord or Tenant is in violation of the USA Patriot Act, Executive Order 13224 or any anti-terrorism laws, and each of Landlord and Tenant acknowledges that if Landlord or Tenant were to violate the provisions of this paragraph, or if Landlord or Tenant or any affiliate of either Landlord or Tenant were to become identified on any blocked persons list, either at the time of execution of this Lease or any time thereafter, that Landlord or Tenant shall thereupon be in default of this Lease.

17.25  <u>Additional Provisions</u>.  The exhibits and riders, if any, attached hereto, are incorporated herein by reference.

17.26  <u>Time of Essence</u>.  Time is of the essence with respect to the performance of every provision of this Lease in which time of performance is a factor.  All reference to "days" as used in this Lease will mean calendar days unless otherwise so designated in this Lease.

[Signatures on the Following Page]

IN WITNESS WHEREOF, this Lease has been executed by the duly authorized representatives of Landlord and Tenant on the respective dates set forth below, to be effective for all purposes, however, as of the Effective Date as set forth above.

LANDLORD:

[LANDLORD ENTITY]

By: _____

Name: _____

Title: _____

Date: _____

WITNESSES:

_____

Name: _____

Address: _____

_____

Name: _____

Address: _____

TENANT:

_____

By: _____

Name: _____

Title: _____

Date: _____

4813-4762-2520.8\17486\000001

WITNESSES:

_____

Name: _____

Address: _____


_____

Name: _____

Address: _____

# EXHIBIT A

## Legal Description of the Land

[See attached]

**EXHIBIT B**

**Memorandum of Lease and Purchase Option**

THIS MEMORANDUM OF LEASE AND PURCHASE OPTION ("**Memorandum**") is entered into as of _____, 2018, by and between _____, a _____, whose address is _____, as Landlord, and _____, a _____, whose address is _____, as Tenant.

W I T N E S S E T H :

WHEREAS, Landlord and Tenant have heretofore entered into that certain Lease dated _____ (the "**Lease**"), covering certain Premises as more particularly described in the Lease (herein, the "**Premises**"), which Premises are located in the City of _____, _____County, Florida that is more particularly described on Exhibit A attached hereto, and

WHEREAS, it is the desire of both Landlord and Tenant to memorialize the Lease and set forth certain pertinent data with respect thereto,

NOW THEREFORE, with respect to the Lease, Landlord and Tenant hereby acknowledge and agree as follows:

1.    Demise. The Premises have been and are hereby demised, let and leased by Landlord to Tenant, and taken and accepted by Tenant from Landlord, all pursuant to and in accordance with the Lease.

2.    Term. The Term of the Lease is from the Commencement Date, until _____, unless extended by agreement of Landlord and Tenant.

3.    Possession. Landlord has delivered possession of the Premises to Tenant and Tenant has accepted delivery and taken possession of the Premises from Landlord.

4.    Purchase Option. Pursuant to the Lease, Tenant has been granted an option to purchase the Premises. Tenant's Purchase Option (as defined in the Lease) is an integral part of the Lease and is a major inducement for Tenant to execute the Lease. Landlord will not convey, sell, encumber, mortgage or assign the Premises or any interest of Landlord in the Premises.

5.    Inconsistent Provisions. The provisions of this Memorandum constitute only a general description of the content of the Lease with respect to matters set forth herein. Accordingly, third parties are advised that the provisions of the Lease itself shall be controlling with respect to all matters set forth herein. In the event of any discrepancy between the provisions of the Lease and this Memorandum, the provisions of the Lease shall take precedence and prevail over the provisions of this Memorandum.

6.    Termination of Lease. All rights of Tenant in the Premises shall terminate upon the expiration or earlier termination of the Lease, upon the terms and conditions stated therein.

7.    <u>Counterparts</u>.  This Memorandum may be executed in one or more counterparts, and all such counterparts taken together shall for all purposes constitute one and the same.

[The remainder of this page intentionally left blank]

4813-4762-2520.8117486\000001

IN WITNESS WHEREOF, Landlord and Tenant have caused this Memorandum to be duly executed effective as of the day and year first above written.

LANDLORD:

By: _____

Name: _____

Title: _____

Date: _____

WITNESSES:

_____

Name: _____

Address: _____

Name: _____

Address: _____

TENANT:

_____

By: _____

Name: _____

Title: _____

Date: _____

WITNESSES:

_____

Name: _____

B-3

Address: _____


Name: _____
Address: _____




After recording, return to:

Dykema Gossett PLLC
Attn: Teresa Ereon Giltner
1717 Main St #4200
Dallas, TX 75201

B-4

STATE OF _____
COUNTY OF _____

     The foregoing instrument was acknowledged before me this _____ day of _____, 2018, by _____, as _____ of _____, as the sole member of _____, a _____, on behalf of the _____. He/she is personally known to me or has produced _____ identification.

                             _____
                             Print Name: _____
                             Notary Public, State of _____
                             Commission #: _____
                             My commission expires: _____
                             (NOTARY SEAL)

STATE OF _____
COUNTY OF _____

     The foregoing instrument was acknowledged before me this _____ day of _____, 2018, by _____, as _____ of _____, a _____, on behalf of _____. He/she is personally known to me or has produced _____ identification.

                             _____
                             Print Name: _____
                             Notary Public, State of _____
                             Commission #: _____
                             My commission expires: _____
                             (NOTARY SEAL)

4813-4762-2520.8\17486\000001

## EXHIBIT A

## LEGAL DESCRIPTION

4813-4762-2520.8117486\000001

# EXHIBIT C

## Parking

# **EXHIBIT D**

**Existing Lease**

4813-4762-2520.8117486\000001