Michael Luskin
Richard Stern
Alex Talesnick
LUSKIN, STERN & EISLER LLP
Eleven Times Square
New York, New York 10036
Tel.: (212) 597-8200
Fax: (212) 974-3205

*Counsel for the Senior Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| REPUBLIC METALS REFINING ) | Case No. 18-13359 (SHL) |
| CORPORATION, *et al.*,[1] ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | **Related Doc. No. 325** |

**OBJECTION OF THE SENIOR LENDERS**
**TO MOTION OF THE UNITED STATES TRUSTEE FOR THE ENTRY OF AN ORDER**
**DIRECTING THE APPOINTMENT OF A CHAPTER 11 EXAMINER**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Republic Metals Refining Corporation, 15 West 47th Street, Suites 206 and 209, New York, NY 10036 (3194), Republic Metals Corporation, 12900 NW 38th Avenue, Miami, FL 33054 (4378), Republic Carbon Company, LLC, 5295 Northwest 163rd Street, Miami Gardens, FL 33014 (5833), Republic High Tech Metals, LLC, 13001 NW 38th Avenue, Miami, FL 33054 (6102), RMC Diamonds, LLC, 12900 NW 38th Avenue, Miami, FL 33054 (1507), RMC2, LLC, 12900 NW 38th Avenue, Miami, FL 33054 (4696), J & L Republic LLC, 12900 NW 38th Avenue, Miami, FL 33054 (7604), R & R Metals, LLC, 12900 NW 38th Avenue, Miami, FL 33054 (7848), Republic Metals Trading (Shanghai) Co., Ltd., 276 Ningbo Road, Huangpu District, Shanghai, P.R. 200001 China (1639), and Republic Trans Mexico Metals, S.R.L., Francisco I. Madero No. 55 Piso 5, Local 409, Centro Joyero Edificio Central, Delegación Cuauhtémoc, Mexico DF 6000 (2942).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

    A.   The Chapter 11 Cases ................................................................................................ 2

    B.   Cash Collateral Orders, Customer Inventory Dispute and Sale Process ................... 2

    C.   The Motion ................................................................................................................ 4

OBJECTION ........................................................................................................................... 5

    A.   The Court Has Discretion To Decline To Appoint an Examiner ............................... 5

    B.   The Appointment of an Examiner is Not in The Interest of Any Party ...................... 7

      (i)   The Debtors are Amply Represented by Independent Fiduciaries .......................... 8

      (ii)   Unnecessary Cost and Delay ................................................................................. 8

CONCLUSION ...................................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Bradlees Stores, Inc.*,
  209 B.R. 36 (Bankr. S.D.N.Y. 1997) ........................................................................... 6

*In re Dewey & LeBoeuf LLP*,
  478 B.R. 636 (Bankr. S.D.N.Y. 2012) ................................................................. 5, 6, 7, 8

*In re Residential Capital, LLC*,
  474 B.R. 112 (Bankr. S.D.N.Y 2012) ........................................................................... 7

*In re Spansion, Inc.*,
  426 B.R. 114 (Bankr. D. Del. 2010) ............................................................................. 7

*In re Terrestar Corporation*,
  No. 11-10612 (SHL) (Bankr. S.D.N.Y. Sept. 21, 2011) ............................................ 6, 8

**Statutes**

11 U.S.C. § 1104(c) .............................................................................................. passim

11 U.S.C. § 1107 ........................................................................................................... 2

11 U.S.C. § 1108 ........................................................................................................... 2

11 U.S.C. § 363 ............................................................................................................. 4

Coöperatieve Rabobank U.A., New York Branch ("Rabobank"), Brown Brothers

Harriman & Co. ("BBH"), Bank Hapoalim B.M. ("Hapoalim"), Mitsubishi International

Corporation ("Mitsubishi"), ICBC Standard Bank Plc ("ICBCS"), Techemet Metal Trading LLC

("Techemet"), Woodforest National Bank ("Woodforest") and Bank Leumi USA ("Leumi" and,

together with Rabobank, BBH, Hapoalim, Mitsubishi, ICBCS, Techemet and Woodforest, the

"Senior Lenders") hereby submit this objection (this "Objection") to the *Motion of the United*

*States Trustee for the Entry of an Order Directing the Appointment of a Chapter 11 Examiner*

(the "Motion")[2] [Docket No. 325], and in support thereof respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Senior Lenders understand the U.S. Trustee's concerns about issues relating

to whether inventory held by the Debtors is property of the estates.  However, the Senior Lenders

respectfully disagree that this issue (which is primarily legal in nature) justifies the extraordinary

remedy and expense of an examiner, especially in light of the substantial progress that has been

made by all interested parties to establish a practical and workable protocol for the determination

of customer claims and property of the estate issues.

2.      The Debtors' chapter 11 petitions indicate that the Debtors have no fixed,

liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider.

Accordingly, Section 1104(c)(2) of the Bankruptcy Code does not support appointment of an

examiner.  Likewise, Section 1104(c)(1) of the Bankruptcy Code, which allows the Court to

appoint an examiner in its discretion if "such appointment is in the interests of creditors, any

equity security holders, and other interests of the estate," does not justify the appointment of an

examiner.  Here, an examiner would provide no tangible benefit to the Debtors' estates, would

---

[2]      All capitalized terms used but not defined herein have the meaning ascribed to such terms in the Motion.

waste limited resources, and could jeopardize the substantial progress being made toward

moving these cases forward through the consensual efforts of the Debtors, the Senior Lenders,

the Committee and the Debtors' customers.

3.       Under these circumstances, appointment of an examiner is unnecessary and not in

the best interests of the Debtors' estates or creditors.  The Motion should therefore be denied.

## BACKGROUND

### A.  The Chapter 11 Cases

4.       Each of the above-captioned debtors and debtors in possession (collectively, the

"Debtors") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy

Code (the "Bankruptcy Code") on November 2, 2018 (the "Petition Date") or November

21, 2018.

5.       The Debtors are continuing to operate and manage their properties and assets as

debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee

or examiner has been appointed in the chapter 11 cases.

6.       On November 19, 2018, the Office of the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the Official Committee of Unsecured

Creditors in these cases (the "Committee") [Docket No. 113].

7.       The factual background relating to the commencement of these cases is set forth

in detail in the *Declaration of Scott Avila, as Chief Restructuring Officer, in Support of*

*Chapter 11 Petitions and First Day Motions* (the "Avila Declaration") [Docket No. 3].

### B.  Cash Collateral Orders, Customer Inventory Dispute and Sale Process

8.       To finance the Debtors' chapter 11 cases, the wind down of their operations and

the liquidation of their assets, the Debtors required the use of the Senior Lenders' cash collateral.

2

The Court has entered three interim cash collateral orders [Docket Nos. 54, 277 and 373] and the parties are negotiating the terms of a consensual final order.

9.      Many of the Debtors' customers have asserted that certain precious metals delivered or transferred to the Debtors on or before the Petition Date and the proceeds thereof are not property of the Debtors' estates.  The Debtors and the Senior Lenders dispute the customers' claims and maintain that all such precious metals and proceeds are property of the Debtors' estates and subject to the Senior Lenders' prepetition and adequate protection liens.  At the Court's direction, the Debtors, the Senior Lenders, the Committee and an ad hoc group of customers engaged in extensive negotiations on the terms of a protocol governing this dispute (the "541 Protocol").

10.      The 541 Protocol sets forth detailed procedures and schedules governing, among other things, the statement of claims and defenses, discovery by all parties, status reports to the Court and a mechanism to group like claims together and resolve them jointly, by dispositive motion or trial.  The Court approved the 541 Protocol on the record at a hearing held on December 14, 2018 and entered an order approving the 541 Protocol on January 11, 2019 [Docket No. 395].  Not a single party (including the U.S. Trustee) objected to the entry of the 541 Protocol or has raised any issues with the procedures and schedule established thereby.

11.      Under the 541 Protocol, customer statements of claim are due January 18, 2019; responses by the Debtors and the Senior Lenders are due February 18, 2019; and customer replies are due February 28, 2019.  Meanwhile, documents are to be produced on a rolling basis until February 28, 2019, with fact discovery to be closed by April 18, 2019 and expert discovery to be closed by May 10, 2019.  The Court has reserved May 20, 2019 and May 21, 2019 for evidentiary hearings on the merits, as needed.  See Docket No. 395.

12.     In addition to the 541 Protocol, the Debtors have worked with the Senior Lenders and the Committee to establish procedures to address particular "buckets" of claims.  To this end, the Debtors filed standalone motions to deal with over $13.5 million of prepaid inventory claims [Docket Nos. 219 and 286], 44 reclamation demand claims [Docket No. 303] and claims by certain Mexican customers [Docket No. 307].  The Court has entered orders approving settlement procedures with prepaid customers [Docket No. 372] and Mexican customers [Docket No. 371] and a settlement with a prepaid customer facing financial hardship [Docket No. 324].  The Debtors, the Senior Lenders and the Committee also are currently in negotiations with certain of the Debtors' carbon customers, and anticipate filing motions seeking approval of settlements regarding over $5 million of carbon inventory in the near future.

13.     Concurrently with the cash collateral and customer claim negotiations, the Debtors filed a motion on December 21, 2018 (the "Sale Motion") [Docket No. 358] seeking authority to sell substantially all of their remaining assets pursuant to Section 363 of the Bankruptcy Code.  The auction contemplated by the bid procedures approved by the Court [Docket No. 399] is scheduled for January 31, 2019, with a sale hearing following on February 13, 2019.

14.     In short, significant progress has been made through the cooperation of the Debtors' major constituencies towards a speedy, efficient and consensual resolution of these cases, including the resolution of customer claims and property of the estate issues.

**C.  The Motion**

15.     On December 18, 2018, the U.S. Trustee filed the Motion, requesting that the Court appoint an examiner pursuant to Section 1104(c) of the Bankruptcy Code to "investigate and report on the issues presented regarding the ownership of the property in the Debtors'

4

possession, including the raw materials, processed precious metals, and potentially segregated items that may have been identified for shipment back to their respective owners." Motion, at p. 3.

16.     It appears that the U.S. Trustee seeks the appointment of an examiner to investigate and report on the same legal issue addressed by the 541 Protocol: namely, whether precious metals and proceeds held by the Debtors are property of the estates.

## OBJECTION

### A. The Court Has Discretion To Decline To Appoint an Examiner

17.     The appointment of an examiner is governed by Section 1104(c) of the Bankruptcy Code.  Section 1104(c) provides, in pertinent part, that:

> on request of a party in interest . . . the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate*, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
>> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>>
>> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c) (emphasis added).

18.     The moving party has the burden to prove that an examiner should be appointed. In re Dewey & LeBoeuf LLP, 478 B.R. 636, 640 (Bankr. S.D.N.Y. 2012).

19.     As a preliminary matter, the Motion does not and cannot establish that the Debtors have fixed, liquidated, unsecured debts, other than debts for goods, services or taxes, or owing to an insider, that exceed $5,000,000.  The consolidated list of 30 largest unsecured claims annexed to the Debtors' voluntary chapter 11 petitions does not schedule a single fixed or liquidated claim or a single claim unrelated to the provision of goods or services.  See Official

Form 204, List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders, on a Consolidated Basis, at 1-2 [Docket No. 1].[3]  The Motion relies on the Avila Declaration for the proposition that the Debtors' alleged $86 million of outstanding customer claims fulfill the requirement in Section 1104(c)(2).  However, the claims held by the customers are contingent and unliquidated claims for the sale of goods or services (i.e., the sale of precious metals or the refining of metals) and are wholly dependent on the outcome of the litigation governed by the 541 Protocol.  Therefore, these claims cannot be considered for purposes of meeting the threshold in Section 1104(c)(2).  See, e.g., Dewey, 478 B.R. at 638 (denying examiner appointment under Section 1104(c)(2) where movants failed to meet their burden to prove that the debtor had fixed, liquidated, unsecured debts in excess of $5 million other than debts for goods, services or taxes); In re Terrestar Corporation, No. 11-10612 (SHL) (Bankr. S.D.N.Y. Sept. 21, 2011), Tr. 12-14 (same).[4]

20.    Accordingly, Section 1104(c)(2) is not applicable and Section 1104(c)(1), which permits appointment of an examiner only if "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate," controls.  The Court clearly has the discretion to decline to appoint an examiner under Section 1104(c)(1).  See, e.g., Dewey, 478 B.R. at 640 (declining, in the court's discretion, to appoint an examiner under Section 1104(c)(1); Terrestar, No. 11-10612, Tr. 8-12 (same); In re Bradlees Stores, Inc., 209 B.R. 36 (Bankr. S.D.N.Y. 1997) (same).

21.    Even if the Court were to conclude that the requirements of Section 1104(c)(2) were met, the Court could still decline to appoint an examiner.  Although there is no controlling

---

[3]    All 30 claims listed are described as unliquidated claims for "trade debt".  Id.

[4]    A copy of the transcript is attached to this Objection as Exhibit A.

authority in the Second Circuit on whether Section 1104(c) should be construed as mandatory or permissive, courts in this and other Districts have interpreted Bankruptcy Code Section 1104(c) as permissive, not mandatory, focusing on the modifier "as is appropriate." See, e.g., Dewey, 478 B.R. at 640 (holding that the court "retains the discretion to deny a motion for appointment of an examiner" even where the debtor had fixed, liquidated, unsecured debts in excess of $5 million); In re Residential Capital, LLC, 474 B.R. 112, 121 (Bankr. S.D.N.Y 2012) (holding that "[w]hile Section 1104(c) expresses a Congressional preference for appointment of an independent examiner to conduct a necessary investigation, the facts and circumstances of the case may permit a bankruptcy court to deny the request for appointment of an examiner even in cases with more than $5 million in fixed debts"); In re Spansion, Inc., 426 B.R. 114, 127 (Bankr. D. Del. 2010) (despite the debt threshold having been met, court "[found] no sound purpose in appointing an examiner, only to significantly limit the examiner's role when there exists insufficient basis for an investigation.  To appoint an examiner with no meaningful duties strikes me as a wasteful exercise, a result that could not have been intended by Congress.").

**B.  The Appointment of an Examiner is Not in The Interest of Any Party**

22.      The Motion fails to establish any practical basis for the appointment of an examiner.  The Debtors and interested parties are in the process of investigating and settling substantial customer claims that would presumably fall under the proposed examiner's purview, and the just-implemented 541 Protocol will resolve virtually all the rest.  Accordingly, the investigation the U.S. Trustee suggests would be a duplicative waste of estate resources resulting only in unnecessary cost and delay.  There is simply no further investigation to perform with respect to customer claims.  The appointment of an examiner is therefore not in the interest of the Debtors' estates or creditors under the facts and circumstances of these cases.

7

(i)    The Debtors are Amply Represented by Independent Fiduciaries

23.    The appointment of an examiner may be "appropriate" under Section 1104(c) if there are "allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor." 11 U.S.C. § 1104(c). Here, the Motion makes no allegation (factual or otherwise) of wrongdoing with respect to the prepetition customer claims at issue, or to any post-petition misconduct by the Debtors.

24.    The Debtors have retained independent bankruptcy counsel, Akerman LLP [Docket No. 278], financial advisors, Paladin Management Group, LLC [Docket No. 245], and a chief restructuring officer, Scott Avila [Docket No. 245], who has been in place since July 2018. See Docket No. 58, p. 15. Accordingly, the Debtors' affairs are being managed by an independent fiduciary with the advice and assistance of experienced bankruptcy professionals.

25.    Moreover, to the extent that the U.S. Trustee is concerned about the Debtors' pre-petition inventory discrepancy (and it is not clear from the Motion that it is), any wrongful conduct would have taken place prior to the Debtors' appointment of Mr. Avila and is already being investigated by the Committee pursuant to its court-approved 2004 investigation. See Docket No. 353. A second concurrent, overlapping investigation is not warranted.

(ii)    Unnecessary Cost and Delay

26.    In determining whether the examiner's investigation would be appropriate and in the interests of the Debtors' estates and creditors, the Court should also consider whether the benefit (if any) of an examiner would be outweighed by the costs and delay associated with an investigation. Dewey, 478 B.R. at 640 (denying examiner appointment because "it would only add needless expense and delays"); Terrestar, No. 11-10612, Tr. 9:12-15 (noting the court must

8

"weigh the allegations presented in the request for an examiner, as well as the cost of an examiner to the estate, both monetarily and in terms of delay").

27.     Here, the appointment of an examiner would impose unnecessary administrative expenses on the Debtors' estates and would delay the resolution of these cases.  The very investigation that the U.S. Trustee seeks is wholly duplicative of the investigation and claim resolution process governed by the 541 Protocol, a process that the Debtors and their extremely active creditor base spent considerable time, effort and expense negotiating, without any objection by the U.S. Trustee.  Substantial customer claims have already been negotiated and resolved consensually.  Discovery and briefing under the 541 Protocol to resolve all the remaining customer claims has commenced.  Deadlines for the statement of claims and defenses, fact and expert discovery, status reports to the Court and dispositive motions and trial dates have been set.  The Debtors, the Senior Lenders, the Committee and the Debtors' customers are represented by sophisticated professionals and are fully capable of litigating the property dispute to its conclusion, with the Court as the arbiter of the merits of the underlying legal arguments.

28.     Moreover, an examiner could only investigate claims, not negotiate settlements or litigate claims that cannot be settled.  Substantial involvement by the interested parties would therefore still be required if an examiner were appointed.  As a result, an examiner would not streamline or expedite the existing process or resolve the disputed issues.

29.     The Senior Lenders respectfully submit that the 541 Protocol adequately addresses the U.S. Trustee's concerns, rendering the appointment of an examiner wasteful and unnecessary.  In these circumstances, appointing an examiner solely to duplicate the investigative efforts that have already been undertaken by capable parties would serve no

purpose other than to waste estate resources.  For these reasons, the appointment of an examiner

is not necessary, appropriate or in the interests of the Debtors' estates or creditors.

[*Remainder of page intentionally left blank.*]

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Senior Lenders respectfully request that the Court (i) deny the Motion in its entirety and (ii) grant such other and further relief as is just and proper.

Dated:  New York, New York
        January 16, 2019

Respectfully submitted,

LUSKIN, STERN & EISLER LLP

/s/      Michael Luskin
Michael Luskin
Richard Stern
Alex Talesnick
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205
E-Mail: luskin@lsellp.com
E-Mail: stern@lsellp.com
E-Mail: talesnick@lsellp.com

*Counsel for the Senior Lenders*

## **EXHIBIT A**

In re Terrestar Corporation, No. 11-10612 (SHL) (Bankr. S.D.N.Y. Sept. 21, 2011)

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 11-10612(SHL)

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    TERRESTAR CORPORATION, et al.,

9

10           Debtors.

11

12    - - - - - - - - - - - - - - - - - - - - - -x

13

14               U.S. Bankruptcy Court

15               One Bowling Green

16               New York, New York

17

18               September 21, 2011

19               3:06 PM

20

21    B E F O R E:

22    HON. SEAN H. LANE

23    U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    Telephone Conference on the Record:   Decision Re: Doc. #190 &

3    179 Scheduling Order Signed on 9/7/11, Re: Valuation Objections

4    of Jeffrey Swarts In Response to the TSC Debtors First Plan of

5    Reorganization Disclosures Exhibits D & F and Reconsideration

6    Request for an Examiner and/or Official Equity Committee.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sharon Meyer

1

2   A P P E A R A N C E S :

3   AKIN, GUMP, STRAUSS, HAUER & FELD, LLP

4          Attorneys for Debtors

5          One Bryant Park

6          New York, NY 10036

7

8   BY:   ASHLEY R. BEANE, ESQ. (TELEPHONICALLY)

9

10   AKIN, GUMP, STRAUSS, HAUER & FELD, LLP

11          Attorneys for Debtors

12          1700 Pacific Avenue

13          Suite 4100

14          Dallas, TX 75201

15

16   BY:   SARAH LINK SCHULTZ, ESQ. (TELEPHONICALLY)

17

18   OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

19          Attorneys for TSN Official Creditors' Committee

20          230 Park Avenue

21          New York, NY 10169

22

23   BY:   DAVID POSNER, ESQ. (TELEPHONICALLY)

24

25

Page 4

1

2    WACHTELL, LIPTON, ROSEN & KATZ

3          Attorneys for Highland Capital Management LP

4           And It's Affiliated and Managed Funds

5          51 West 52nd Street

6          New York, NY  10103

7

8    BY:   SCOTT CHARLES, ESQ. (TELEPHONICALLY)

9

10   WEIL GOTSHAL & MANGES LLP

11         Attorneys for Harbinger Capital Partners LLC

12         767 Fifth Avenue

13         New York, NY  10153

14

15   BY:   FRANK GRESE, ESQ. (TELEPHONICALLY)

16

17   QUINN, EMANUEL, URQUHART & SULLIVAN

18         Attorneys for Solus

19         51 Madison Avenue

20         New York, NY  10010

21

22   BY:   SCOTT C. SHELLEY, ESQ. (TELEPHONICALLY)

23

24

25

1

2  SULLIVAN AND WORCESTER LLP

3        Attorneys for Sullivan and Worcester LLP

4        One Post Office Square

5        Boston, MA  02109

6

7  BY:   PAMELA HOLLEMAN, ESQ. (TELEPHONICALLY)

8

9  ALSO:

10  JEFFREY M. SWARTS, PRO PER (TELEPHONICALLY)

11  MARK TAUB, MOHAWK CAPITAL, LLC (TELEPHONICALLy)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good afternoon, and those of you present,

 3       Ms. Golden, please be seated, and all the rest of you wherever

 4       you are, please feel free to be seated.

 5              As I stated at the hearing on Monday, it was my

 6       intention to take the matter under advisement and then issue a

 7       ruling which given the need to move things in this courthouse,

 8       this case along, and as well as just things in the courthouse

 9       generally along, I wanted to do that in an oral fashion, rather

10       than writing it out, which always adds an extra layer of time,

11       and I think in the interest of all the parties, that that was

12       not a beneficial thing to do, when I think I can just lay my

13       reasoning out orally.

14              So my intention is to issue my ruling now.  Argument

15       has occurred, I've taken under advisement, under consideration

16       all of what everyone said at the hearing on Monday, so I'm not

17       expecting that there's anything else to do other than to listen

18       to what I say what the ruling is, and then I'll ask the

19       appropriate party to submit an order.

20              So with that said, let me begin.  Before me are

21       requests of several parties, Jeffrey Swarts dated August 28th,

22       2011, as well as a joinder by Mohawk Capital LLC and a letter a

23       by Aldo Perez & Associates dated September 13th, 2011.  And all

24       of these request an appointment of an examiner, and as

25       discussed at the hearing on Monday, I've reviewed all of the
```

Page 7

1   materials submitted to me by all the parties, but for the

2   reasons that I explained at the hearing, I have excluded one

3   document from my consideration, which is Exhibit I that was

4   provided by Mr. Swarts, which was a transcript from a criminal

5   jury trial.

6           So with that, the standard here for appointment of an

7   examiner is covered by Section 1104(c) of the Bankruptcy Code.

8   That section provides in relevant part "that on request of a

9   party in interest, the Court shall order the appointment of an

10  examiner to conduct such an investigation of the debtor, as is

11  appropriate, including an investigation of any allegations of

12  fraud, dishonesty, incompetence, misconduct, mismanagement, or

13  irregularity in the management of the affairs of the debtor, of

14  or by current or former management of the debtor if (1), such

15  appointment is in the interest of creditors, any equity

16  security holders, and other interests of the estate, or (2) the

17  debtors fixed liquidated unsecured debts other than debts for

18  goods, services, or taxes, or owing to an insider exceed five

19  million dollars."  And that again is 11 USC 1104(c).

20          Applying the statutory criteria to the facts before

21  me, I conclude that the appointment of an examiner is not

22  appropriate in this instance, and I will explain my rationale

23  for the ruling in more detail in a minute.  But before I do

24  that, I'd like to take this opportunity to say that I thought

25  Mr. Swarts, as a pro se litigant, did a very able job of

Page 8

1    presenting his arguments, and that I appreciate the quality of

2    his presentation.

3         It appears that he lost a significant amount of money

4    as an investor in the common stock of TSC and sadly, that is

5    not an uncommon situation here in bankruptcy court, where

6    creditors end up seeking recourse only because things have

7    taken a terrible turn.  And that -- but that doesn't make the

8    situation any less unfortunate in each case, and so I do

9    sympathize with Mr. Swarts, and of course, I have to keep that

10   sympathy separate from my job, which is to apply the Bankruptcy

11   Code as drafted by Congress to the facts of a given situation.

12        So turning to the details of my ruling, I conclude

13   that appointment is not appropriate under Section (c)(1) which

14   requires the Court to look at the interest of all creditors and

15   the estate.  There are a few cases that shed some light about

16   (c)(1).

17        For example, in James Phillip Sletteland, S-l-e-t-t-e-

18   l-a-n-d, a Chapter 11 case here in the Southern District of New

19   York, 260 Bankruptcy Reporter 657, in front of Judge Gropper,

20   it notes that under the relevant statute, that a particular

21   group of creditors, a creditor group, even if dominant, can't

22   justify the appointment of a trustee or examiner simply by

23   alleging it would be in its interest.  It must show the

24   appointment is in the interest of all who has a stake in the

25   case, including the debtor.

TERRESTAR CORPORATION, ET AL.

Page 9

1          That similar proposition is cited in Gliateck, Inc.,

2    G-l-i-a-t-e-c-k, which is a Chapter 11 case in the Northern

3    District of Ohio from 2004, 305 Bankruptcy Reporter 832 at page

4    -- I guess it's star 7 and 8.

5          Relatedly, in looking at this provision, the Court

6    must keep in mind that the benefit to the estate and the

7    attendant protections of the examiner's investigation must

8    outweigh the expenses, and that is -- observation is in In Re:

9    Gilman, G-i-l-m-a-n, Services, Inc. a bankruptcy case from the

10   District of Massachusetts from 1985, found at 46 Bankruptcy

11   Reporter 322.

12         So looking at this precedent, I'm asked to weigh the

13   allegations presented in the request for an examiner, as well

14   as the cost of an examiner to the estate, both monetarily and

15   in terms of delay, because as was stated at the hearing, and we

16   all know, it is expensive for a debtor company to be in Chapter

17   11.

18         So first I note that there's only -- there's very

19   little in the way of facts presented to support allegations of

20   fraud or misconduct.  There's a lot of the use term "may".

21   What is the allegations at least in Mr. Swarts' pleading are

22   primarily concern valuation of the estate assets, either value

23   of the spectrum, or what Mr. Swarts characterizes as a below

24   market lease.

25         And an issue of valuation, of course, is the subject

1    of any plan and plan hearing, and therefore, objections to the

2    plan provided forum for all parties to challenge the valuation

3    assigned by the debtors to the estate assets.

4         Here, Mr. Swarts has pointed to one specific valuation

5    previously assigned to debtor assets four years prior to the

6    filing of this bankruptcy, namely a 2008 SEC filing, and he

7    also points to valuation of spectra in other bankruptcy cases,

8    which he views as similar to the spectra -- spectrum at issue

9    in this case.

10        As a threshold matter, I note that assets in question

11   are all held not by TSC, the debtor, but rather by a non-debtor

12   second level subsidiary which is not in bankruptcy, but TSC

13   indirectly holds equity in that entity.

14        At the hearing, the debtors noted that they dispute

15   the characterization of the leases below market, although I

16   don't need to decide that issue here today, because at the

17   hearing, as I said, it's not about -- we're not deciding any

18   valuation at this point, that's for later in the proceeding.

19   But certainly the debtors also noted the Court's inability to

20   alleviate the non-debtor from its obligations under that lease,

21   even if it is below market.

22        But addressing the SEC filing, I certainly assumed

23   that the historical valuation of these assets is a likely

24   subject for any plan confirmation hearing, and I'll consider

25   any arguments on valuation at that time, but as the Spansion,

1   S-p-a-n-s-i-o-n, Inc. case at 426 Bankruptcy Reporter 114, it's

2   a Delaware bankruptcy case noted that there's a distinction

3   between 1104(c)'s inquiry into fraud, mismanagement,

4   irregularities from straight valuation questions.  Certainly

5   valuation is something that might be looked at in connection

6   with fraud, mismanagement or irregularities, but the statute

7   really is not addressed to sheer valuation as a stand alone

8   issue.

9          But putting aside the SEC filing, I note that Mr.

10  Swarts has referenced other cases and other valuations, and I

11  have to note the valuation in each case is a unique inquiry and

12  it's the result of the facts and circumstances that result in a

13  determination of the worth of an asset at a particular time.

14         So as a result, valuations from other cases are of a

15  limited utility to me, and that's just something that the

16  parties should be aware of.

17         I also note that given the proposed disclosure

18  statement and plan before me, common shareholders appear to be

19  out of money in this case by at least several hundred thousand

20  dollars.  And that means in practical terms that several

21  hundred thousands of dollars of value would have to be found in

22  this case before common stockholders would recover anything.

23         In that connection, I have taken into account the

24  views of other parties who either filed objections or appeared

25  at the hearing to let their views be known, and note those

1    include the unsecured creditor Elektrobit as well as creditors

2    who hold either or both preferred and common shares, such as

3    Solus, Harbinger and Highland.  These creditors would stand to

4    gain if additional recovery was available in these cases.

5    Elektrobit and these other creditors oppose the request for an

6    examiner here, because of concerns about the costs of such an

7    examiner, both in terms of professional fees and delay in this

8    case.

9            And this is the case, even though as Elektrobit's

10   counsel stated in her presentation, those creditors will be

11   paying close attention to valuation issues as this case moves

12   forward to the disclosure statement and the plan.  The views of

13   those parties obviously are relevant in my determination of

14   whether appointment of an examiner is appropriate for the

15   benefit of all parties.

16           So given all these facts, I'm not persuaded that

17   there's a sufficient basis under (c)(1) to merit the

18   appointment of an examiner as in the interest of all creditors.

19           Turning to Section (c)(2), I conclude that quote,

20   "Debtor's fixed liquidated unsecured debts, other than debts

21   for goods, services, or taxes are owing to an insider," end

22   quote, do not exceed five million dollars.

23           In reaching this conclusion, I have reviewed the

24   schedules of assets and liabilities, the claims register, and

25   the summary chart of those claims provided at the hearing by

1    debtors, the title of which was breakdown of claims Re:

2    Section 1104(c)(2) debt threshold, which I'm taking essentially

3    as merely a summary of facts that are in the case, and so I was

4    just using it as a summary chart.

5         And so of all the claims filed in these cases, 874

6    million of the 905 million total are unsecured claims for goods

7    and services, and notably this includes the claim of

8    Elektrobit, which I had specifically inquired about at the

9    hearing.  I had inquired because that claim worth between

10   twenty-five million and twenty-seven million dollars, depending

11   upon which documents in this case you reviewed.  That claim was

12   listed on debtor's Schedule F of unsecured claims, and I had

13   asked because the status of that claim on that schedule did not

14   list it as unliquidated, and it was unclear whether it fell

15   into the category in (c)(2) that would necessitate the

16   appointment of an examiner, and so whether it counted against

17   the five million dollar ceiling.

18        At argument, counsel for both Elektrobit and the

19   debtor explained that the Elektrobit claim was, in fact, for

20   goods or services, and also was unliquidated, because it is the

21   subject of a pending state court action that has not yet

22   reached a resolution.  So accordingly, the existence of that

23   claim doesn't require the appointment of an examiner.

24        I also didn't see any other claims that either alone

25   or combined in all these cases would require the appointment of

Page 14

```
 1    an examiner, by virtue of triggering the five million dollar

 2    cap set forth in Section (c)(2) and contemplated by the Loral

 3    case found at 2004 West Law 297, 985.

 4          So for all those reasons, I am going to deny the

 5    motion of the appointment of an examiner.  I appreciate the

 6    arguments of the parties, and I thought they were very useful

 7    in illuminating the issues, and I would ask that since debtor

 8    is the prevailing party here, that they submit a proposed order

 9    to resolve the motion.

10          So with that business of the court being concluded,

11    that's my ruling, there's nothing else scheduled to be

12    discussed today.  I will see you all at the next appropriate

13    time when these cases are on the calendar.

14          Actually, if debtors would do me a favor as to

15    essentially settle the order, so that folks have seen it before

16    I get it.  If not, obviously, it's my ruling.  So if people

17    can't agree, I'll enter my own order.  But I would imagine you

18    should be able to settle something.

19          Thank you and have a good day.

20        (Whereupon these proceedings were concluded at 3:21 PM)

21

22

23

24

25
```

Page 15

1

2                          I N D E X

3

4                            RULINGS

5                                              Page      Line

6    Motion For Examiner - Denied               14        4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 16

1

2                    C E R T I F I C A T I O N

3

4    I, Sharon Meyer, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Sharon Meyer    Digitally signed by Sharon Meyer
                     DN: cn=Sharon Meyer, o=Veritext,
                     ou, email, c=US
8    _____    Date: 2011.10.21 15:35:49 -04'00'

9    SHARON MEYER

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  October 21, 2011

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of January, 2019, I caused a true and correct copy of the foregoing *Objection of the Senior Lenders to Motion of the United States Trustee for the Entry of an Order Directing the Appointment of a Chapter 11 Examiner* to be filed and served through ECF notification upon all parties who receive notice in this matter pursuant to the Court's ECF filing system.



/s/ Michael Luskin
Michael Luskin