COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Seth Van Aalten
Robert Winning

*Proposed Counsel for*
*Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X

| | |
|---|---|
| In re: | Chapter 11 |
| : | |
| REPUBLIC METALS REFINING | Case No. 18-13359 (SHL) |
| CORPORATION, *et al.*,[1] : | |
| | (Jointly Administered) |
| Debtors, : | |
| : | Re: D.I. 325 |

------------------------------------- X

**OBJECTION OF THE COMMITTEE TO MOTION OF THE UNITED STATES**
**TRUSTEE FOR THE ENTRY OF AN ORDER DIRECTING THE APPOINTMENT**
**OF A CHAPTER 11 EXAMINER**

The Official Committee of Unsecured Creditors (the "Committee") of Republic Metals

Refining Corporation, *et al.*, as debtors and debtors-in-possession (the "Debtors"), by and through

its proposed counsel Cooley LLP, hereby submits this objection (the "Objection") to the United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Republic Metals Refining Corporation, 15 West 47th Street, Suites 206 and 209, New York, NY 10036 (3194), Republic Metals Corporation, 12900 N.W. 38th Avenue, Miami, FL 33054 (4378), Republic Carbon Company, LLC, 5295 Northwest 163rd Street, Miami Gardens, FL 33014 (5833), Republic High Tech Metals, LLC, 13001 NW 38 Avenue, Miami, FL 33054 (6102), RMC Diamonds, LLC, 12900 NW 38th Avenue, Miami, FL 33054 (1507), RMC2, LLC, 12900 NW 38th Avenue, Miami, FL 33054 (4696), J & L Republic LLC, 12900 NW 38th Avenue, Miami, FL 33054 (7604); R & R Metals, LLC, 12900 NW 38th Avenue, Miami, FL 33054 (7848), Republic Metals Trading (Shanghai) Co., Ltd., 276 Ningbo Road, Huangpu District, Shanghai, P.R. 200001 China (1639), and Republic Trans Mexico Metals, S.R.L., Francisco I. Madero No. 55 Piso 5, Local 409, Centro Joyero Edificio Central, Delegación Cuauhtémoc, Mexico DF 6000 (2942) (collectively, the "Debtors").

States Trustee for Region 2's motion [D.I. 325] (the "Examiner Motion")[2] seeking entry of an

order (the "Order") directing the appointment of an examiner pursuant to 11 U.S.C. § 1104(c)(1)

and (c)(2).  In support thereof, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

The Examiner Motion should not be approved because it would upend the uniform

procedures to adjudicate ownership disputes that were agreed to by the Debtors, Senior Lenders,

Committee, and dozens of customers (the "Uniform Procedures").  The Uniform Procedures were

the product of extensive negotiation by all of the parties with an economic stake in the outcome of

litigation over what assets constitute property of the Debtors' estates, and they obviate the need

for dozens of adversary proceedings.  They also minimize costs and maximize efficiency by

dispensing with unnecessary filings, expediting critical discovery, and establishing a framework

that will ultimately allow "buckets" of legal or factual issues common to multiple disputes to be

resolved efficiently and fairly.

In contrast, the relief sought by the Examiner Motion would complicate these cases and

add a completely new layer of expense, while providing no material benefit.  Specifically, the

Examiner Motion seeks appointment of an examiner to "investigate and report on the title to and

ownership of the raw materials, processed precious metals, inventory and other potentially

segregated items in the Debtors' possession." This report would be expensive and of little or no

value for a number of reasons.  First, each of the customers, the Debtors, and Senior Lenders are

entitled to their day in court, regardless of anything the examiner might report.  The parties would

(and should) be able to present this Court with their own arguments, and the issues would (and

should) be resolved based on those presentations.  There is simply no place in the adversary process

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Examiner Motion.

for an examiner to give a non-binding opinion on the merits of arguments or positions taken by parties to a live litigation. Second, certain of the disputes may turn on agreements or circumstances unique to a particular customer or group of customers, and it would be inefficient for an examiner to investigate each and every one of those issues. Third, unless the Uniform Procedures are set aside, numerous disputes could potentially be adjudicated or settled under those procedures before the examiner could even complete his investigation.

Accordingly, the investigation sought under the Examiner Motion is not "appropriate," as required by 11 U.S.C. § 1104(c), and the Examiner Motion should therefore be denied. In addition, the Examiner Motion must also be denied because the United States Trustee has not and cannot meet its burden of demonstrating that the Debtors have at least $5 million of fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider.

## BACKGROUND

1.      On November 2, 2018 (the "Petition Date"), the Original Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Subsequently, on November 21, 2018 (the "Second Petition Date"), the Additional Debtors, affiliates of the Original Debtors, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and properties as debtors-in-possession. No trustee or examiner has been appointed in these cases.

2.      On November 19, 2018, the Committee was appointed in these cases by the Office of the United States Trustee for the Southern District of New York (the "United States Trustee"). The Committee consists of the following seven members: (i) Coeur Rochester, Inc., (ii) Bayside Metal Exchange, (iii) So Accurate Group, Inc., (iv) Cyber-Fox Trading, Inc., (v) Minera Triton Argentina S.A., (vi) Pyropure Inc., and (vii) Minera Real de Ora S.A. de C.V. That same day, the

196054259 v9

Committee selected Cooley LLP as its proposed counsel.

3.  On the Petition Date, *inter alia*, the Debtors filed a Motion for the Entry of Interim and Final Orders (I) Authorizing the Debtors' Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Parties, (III) Scheduling a Final Hearing and (IV) Granting Related Relief (the "Cash Collateral Motion") [D.I. 10].

4.  On November 13, 2018, the Debtors filed a supplement to the Cash Collateral Motion (the "Cash Collateral Supplement") [D.I. 78], seeking authorization to pay the Prepetition Secured Parties the cash proceeds from the sale of the Debtors' inventory as adequate protection.

5.  On November 27, 2018, the Committee filed its objection to the Cash Collateral Motion and Supplemental Motion.  *See* [D.I. 193].  Preceding and following the Committee's objection, dozens of other interested parties also filed objections to the Cash Collateral Motion and Supplemental Motion.  *See, e.g.*, [D.I. 121] et seq.  In many of those objections or through other means, numerous customers asserted that goods in the Debtors' possession, or the proceeds thereof, were not property of the Debtors' estates or subject to the Senior Lenders' liens, but instead belonged to the customer.

6.  On December 6 and 14, 2018, the Court held status conferences regarding the Cash Collateral Motion, Supplemental Motion, and the objections by the Committee and others.  [D.I. 344, 354].  After extensive discussion, the Debtors, the Senior Lenders, the Committee and dozens of objecting customers reached an agreement in principle on the Uniform Procedures and, thereafter, agreed upon the form of an order that was presented to the Court for approval.  On January 11, 2019, the Court entered an order approving the Uniform Procedures [D.I. 395].

7.  On December 14, 2018, the Committee filed its Motion for an Order Pursuant to Bankruptcy Rule 2004 Authorizing Discovery of the Debtors and Third Parties [D.I. 306].

Subsequently, on December 21, 2018, the Court ordered the requested authority, authorizing the Committee to take this discovery. *See* [D.I. 353].

8.      On December 18, 2018, the United States Trustee filed the Examiner Motion.

## OBJECTION

**A.      The Appointment of an Examiner is Not in the Interests of Creditors so an Examiner Should not be Appointed Pursuant to 11 U.S.C. § 1104(c)(1)**

9.      The Examiner Motion's proffered basis for the appointment of an examiner under section 1104(c)(1) of the Bankruptcy Code is to investigate issues of ownership concerning certain property held by the Debtors. *See* Examiner Motion ¶ 37. However, the affected parties – the Debtors, Customers, Senior Lenders, and the Committee – spent weeks negotiating procedures that will ultimately resolve those questions in a fair and efficient manner. As such, the Examiner Motion's request for an examiner is not in the best interest of creditors.

10.     At best, the Examiner would consume these estates' limited resources in order to iterate work already undertaken by the parties with actual skin in the game of a live litigation. At worst, granting the Examiner Motion would derail the Uniform Procedures and significantly delay any adjudication of the ownership issues, eviscerating the considerable work done to date and creating significant uncertainty. Under these circumstances, the Examiner Motion should be denied. *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (denying appointment of examiner under section 1104(c)(1) where "it would only add needless expense and delays.").[3]

---

[3] The Examiner Motion, in a footnote, also raises the possibility that an examiner, once appointed, could potentially investigate the pre-petition inventory discrepancy. Examiner Motion n. 3. Like the investigation actually sought in the Examiner Motion, appointment of an examiner to investigate the Debtors' prepetition conduct would not be in the best interest of these estates. The Debtor, Senior Lenders, and other parties in interest have all indicated that they believe the Committee is the proper party to investigate the Debtors' prepetition conduct, and the Committee has already been granted authority and is in the process of conducting this investigation under Rule 2004. Creditors, who may be significantly out of the money absent a substantial litigation recovery, should not be forced to bear the expense of an additional, unnecessary investigation.

196054259 v9

### B.    An Examiner Should not Be Appointed Pursuant to 11 U.S.C. § 1104(c)(2)

11.    To appoint an examiner pursuant to section 1104(c)(2) of the Bankruptcy Code, a moving party must at least show that (1) a chapter 11 trustee has not been appointed; (2) a plan has not been confirmed; and (3) the debtor owes in excess of $5 million in fixed, liquidated, unsecured debts, excluding debts for goods services, taxes, or transactions with insiders.  11 U.S.C. § 1104(c)(2).  The United States Trustee has not met that burden here.  According to the United States Trustee, because the "Debtors have more than $86 million outstanding customer obligations," the Debtors' qualifying debts exceed the $5 million threshold set forth in 11 U.S.C. § 1104(c)(2).  Examiner Motion at ¶ 41.  This is incorrect.

12.    The "$5 million requirement is typically satisfied 'where there is outstanding unsecured bank debt or outstanding publicly issued debentures in an aggregate sum in excess of $5,000,000.'" *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 637 (Bankr. S.D.N.Y. 2012) (*quoting* 7 COLLIER ON BANKRUPTCY ¶ 1104.03[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th rev. ed. 2012)).  Unsecured debt owed to vendors, insiders, or service providers does not count against the threshold.  11 U.S.C. § 1104(c)(2).

13.    The $86 million of outstanding customer obligations that the United States Trustee relies on cannot meet the $5 million threshold for two reasons.  First, it is not unliquidated because numerous customers have asserted that they are not creditors, but are instead property owners entitled to the return of their metals or the proceeds thereof.  *Cf. Dewey*, 478 B.R. at 637-638 (stating that a $129.6 million claim of the Pension Benefit Guaranty Corp. was unliquidated and did not meet the $5 million threshold set under section 1104(c)(2) because the amount of the claim remained subject to certain disputes and an unknown portion could be entitled to priority).  Second, to the extent the customer obligations were liquidated claims, those claims would still be for "goods" which are specifically excluded from the calculation.  *Cf. id.* at 637 (finding that an

6

equipment lessor's $44 million claim did not trigger the section 1104(c)(2) threshold because the statute excludes "debt for goods" and "equipment lease financing is debt for goods").

14.    Even if the $5 million threshold were met, numerous courts have also required a movant under section 1104(c)(2) to demonstrate that the facts and circumstances of a case do not render the appointment of an examiner inappropriate.  *See e.g.*, *id.*; *In re Residential Capital, LLC*, 474 B.R. 112, 116-117, 121 (Bankr. S.D.N.Y. 2012); *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 126-128 (Bankr. D. Del. 2010) (denying request for examiner under section 1104(c)(2) where "neither warranted nor appropriate and would cause undue cost to the estate"); *In re Washington Mutual Inc.*, No. 08–12229 (MFW) (Bankr. D. Del. May 5, 2010), Hr'g Tr. at 97:5-12 (ECF # 3699) (holding that the Court "has the discretion to determine what appropriate investigation of the debtor should occur and that, if the Court determines that there's no appropriate investigation that needs to be conducted, the Court has the discretion to deny the appointment of an examiner.").[4]

15.    Here, for the reasons set forth above, the parties to the ownership disputes are poised to litigate their disputes under efficient and fair procedures.  Accordingly, no investigation into the question of ownership is appropriate, and an examiner should not be appointed.  *Cf. Washington Mutual*, No. 08–12229 (MFW), H'rg Tr. at 97:14-24 (considering, among other factors, whether the appointment of an examiner would increase costs and cause a delay with no corresponding benefit); *Residential Capital*, 474 B.R. at 121 ("The appointment of an examiner would be inappropriate . . . if there is no factual basis to conclude that an investigation needs to be conducted.").

---

[4] A copy of the cited sections from this transcript is attached to this Objection as <u>Exhibit A</u>.

## **RESERVATION OF RIGHTS**

16.     The Committee reserves the right to raise additional issues with the Examiner

Motion and approval of a final order at or prior to the hearing on the same.

**WHEREFORE**, the Committee respectfully requests entry of an order denying the United

States Trustee's Examiner Motion for an Order directing the appointment of an examiner, and

granting such other and further relief as the Court deems just and proper.

Dated: January 16, 2019                          **COOLEY LLP**
         New York, New York

                                                  _/s/  Seth Van Aalten_
                                                  Seth Van Aalten
                                                  Robert Winning
                                                  1114 Avenue of the Americas
                                                  New York, New York 10036
                                                  Tel.: (212) 479-6000
                                                  Fax: (212) 479-6275
                                                  svanaalaten@cooley.com
                                                  rwinning@cooley.com

                                                  _Proposed Counsel for_
                                                  _Official Committee of Unsecured Creditors_