**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIAMI METALS I, INC., *et al.*[1] | ) | Case No. 18-13359 (shl) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**ORDER GRANTING MOTION**
**FOR APPROVAL OF NON-PROSECUTION AGREEMENT**
**WITH THE UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN**
**DISTRICT OF FLORIDA PURSUANT**
**TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Upon the sealed motion (the "Motion")[2] of Miami Metals I, Inc. (*f/k/a* Republic Metals Refining Corporation) and its debtor affiliates (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases" or "Cases"), for entry of an Order approving the Non-Prosecution Agreement ("NPA") by and among Debtor Miami Metals II, Inc., *f/k/a* Debtor Republic Metals Corporation and the United States Attorney's Office for the Southern District of Florida ("USAO") pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Bankruptcy Rules"); *and whereas the Motion was filed under seal but the Court has determined that certain information pertaining to the Motion should be made public consistent with the importance of transparency in public proceedings; and* upon all of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), 15 West 47th Street, Suites 206 and 209, New York, NY 10036 (3194); Miami Metals II, Inc. (f/k/a Republic Metals Corporation), 12900 NW 38th Avenue, Miami, FL 33054 (4378); Miami Metals III LLC (f/k/a Republic Carbon Company), LLC, 5295 Northwest 163rd Street, Miami Gardens, FL 33014 (5833); Miami Metals IV LLC (f/k/a J & L Republic LLC, 12900 NW 38th Avenue, Miami, FL 33054 (7604); Miami Metals V LLC (f/k/a R & R Metals, LLC),  12900 NW 38th Avenue, Miami, FL 33054 (7848); Miami Metals VI (f/k/a RMC Diamonds, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Miami Metals VII (f/k/a RMC2, LLC, 12900 NW 38th Avenue, Miami, FL 33054 (4696); Miami Metals VIII (f/k/a Republic High Tech Metals, LLC), 13001 NW 38 Avenue, Miami, FL 33054 (6102), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Republic Metals Trading (Shanghai) Co., Ltd., 276 Ningbo Road, Huangpu District, Shanghai, P.R. 200001 China (1639); and Republic Trans Mexico Metals, S.R.L., Francisco I. Madero No. 55 Piso 5, Local 409, Centro Joyero Edificio Central, Delegación Cuauhtémoc, Mexico DF 6000  (2942).

[2] All capitalized terms not defined herein shall have the definitions set forth in the Motion.

48463139;1

proceedings had before the Court, and after due deliberation and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**

    A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

    B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    C.    The notice of the Motion as set forth in that certain Debtors' Unopposed Motion for Authority to File 9019 Motion, Related Pleadings, and Related Orders Under Seal (the "<u>Sealing Motion</u>"), and as approved by this Court in that certain Order Granting Debtors' Unopposed Motion for Authority to File 9019 Motion, Related Pleadings, and Related Orders Under Seal (the "<u>Sealing Order</u>") is sufficient under the unique and extraordinary circumstances of the relief requested in the Motion, and that no other or further notice need be provided.

    D.    The Court has considered the Motion, any objections thereto, the record and statements of counsel at the hearing hereon on March 28, 2019, and the relief requested in the Motion is in the best interests of the Debtors' estates, creditors, and parties-in-interest.

    E.    The NPA, ~~attached hereto as **Exhibit A**, falls above the lowest point in the range of reasonableness~~ *satisfies the requirements of Rule 9019 and applicable case law*.

    F.    *While originally filed under seal, the NPA (without attachments) may now be made public and is attached to this Order as <u>Exhibit A</u>.*

**IT IS HEREBY ORDERED THAT:**

    1.    The Motion is **GRANTED** as set forth herein.

    2.    Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 105(a), the NPA attached hereto as **Exhibit A** is hereby approved and is fully enforceable in all respects.

    3.    The NPA is incorporated into this Order as if fully contained herein.

    4.    The Debtors shall comply with all terms of the NPA.

5. Any liquidating trust, post-confirmation liquidating debtor entity, or similar successor in interest to these Debtors ("Liquidating Successor") shall not be bound by the provisions of the NPA, provided however, (i) that any order so establishing the Liquidating Successor (the "LS Order") and its governing documents shall provide that the purpose of the Liquidating Successor will be to hold and effectuate an orderly liquidation of any remaining assets and to make payments and distributions in accordance with the LS Order, with no objective or authority to engage in any trade or business (including without limitation in any metals or related industries), and (ii) the USAO shall be provided with notice of any proposed Liquidating Successor, the terms thereof, and an opportunity to raise and be heard on any issue related thereto.

6. The Debtors and any successor in interest thereto shall be authorized to request authority, upon notice and a hearing before this Court, to abandon or destroy corporate records and documents in the ordinary course of the wind up of the estates' affairs. The USAO shall be provided with notice of any hearing on any proposed abandonment or destruction, shall have standing to appear and challenge same, and if the Court were to otherwise grant authority to abandon or destroy such documents and information, the USAO shall be authorized to retrieve and take possession of same.

7. Notwithstanding the possible applicability of Bankruptcy Rules 6004(a) and 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and the requirements of Bankruptcy Rules 6004(a) and 6004(h) are hereby waived.

8. The Debtors and the USAO are hereby authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the NPA and the terms of this Order.

48463139;1

9. *To reflect the filing under seal of the Motion and previous related papers, the Clerk's Office shall enter a docket entry in this case with the following description: "Sealed Documents Pursuant to Court Order regarding NPA."*

10. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation and/or interpretation of this Order.

11. This Order shall be effective immediately upon entry by the Court.

Dated: New York, New York
      April 16, 2019

                                  */s/ Sean H. Lane*
                                  **HONORABLE SEAN H. LANE**
                                  **UNITED STATES BANKRUPTCY JUDGE**

# EXHIBIT A

## NPA



U.S. Department of Justice

United States Attorney
Southern District of Florida

*99 N.E. 4 Street*
*Miami, FL 33132*
*(305) 961-9100 - Telephone*
*(305) 530-6444 - Facsimile*

March 8, 2019

Roy K. Altman, Esq.
Podhurst Orseck
One SE 3rd Avenue
Suite 2300
Miami, FL 33131
305-358-2800

Re:     Republic Metals Corporation

Dear Mr. Altman:

The United States Attorney's Office for the Southern District of Florida (the "Office"), and Republic Metals Corporation (the "Company") pursuant to authority granted by the Company's Board of Directors, enter into this Non-Prosecution Agreement ("Agreement"). On the understandings specified below, the Office will not bring any criminal, civil, or regulatory case against the Company for any of the categories of gold trading and refining conduct described in the Statement of Facts (attached hereto as Attachment A). To the extent there is conduct by the Company that is not set forth in the attached Statement of Facts, such conduct will not be exempt from prosecution and is not within the scope of or relevant to this Agreement. The Company, pursuant to authority granted by the Company's Board of Directors, also agrees to certain terms and obligations of the Agreement as described below.

The Office enters into this Agreement based on the individual facts and circumstances presented both by this case and by the Company, including:

(a)     the Company received full credit for its voluntary cooperation with the Office's investigation, including by conducting a thorough and extensive internal investigation, making factual presentations to the Office, voluntarily producing over 100,000 emails and WhatsApp messages, and collecting, analyzing, and organizing voluminous evidence and information for the Office;

(b)     the Company provided to the Office all relevant information known to it relating to the Office's probe as outlined in the Statement of Facts, and this

1

1.6.2017v

information, which tended to show that the Company has made significant efforts to create a culture of proper compliance, has been corroborated by other evidence;

(c) the Company has, at a cost of well over $1,000,000.00, hired and trained a five-person compliance team and implemented a sourcing model—Peace of Mined—that has effectively eliminated metal aggregators from the supply chain, thereby significantly reducing the likelihood that the Company's business would or could be used to launder or transfer ill-gotten gains;

(d) the Company has further enhanced and committed itself to continuing to enhance its anti-money laundering ("AML"), compliance program and internal controls, including by ensuring that its compliance program satisfies the elements set forth in the Corporate Compliance, Agreed Reporting and Other Penalties Provisions (as set forth in Attachments B, C and D to this Agreement), which continuing commitment will cost at least $250,000.00 over the next three years and which amount the Company has promised to devote to the program;

(e) based on the Company's remediation and the state of its compliance program, as well as the Company's agreement to adhere to the Corporate Compliance, Agreed Reporting and Other Penalties Provisions, the Office determined that an independent compliance monitor was unnecessary;

(f) although the Company's compliance program had in the past failed to prohibit the on-boarding of several suppliers who ultimately proved suspicious, the Company, on its own, severed its relationships with each of these suppliers before it became aware of any governmental investigation and there is no evidence that any of these relationships was initiated with an intention to violate the money laundering statutes of this or any other country;

(g) although the nature of the conduct described in the Statement of Facts is serious and worthy of investigation, the Company has no prior criminal history and, to the contrary, has a history of cooperating voluntarily with the federal government; and

(h) the Company has agreed to continue to cooperate with the Office in any ongoing investigations.

The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, relating to this Agreement that in any way or respect contradicts any of the terms of this Agreement or the attached Statement of Facts. The Company agrees that if it, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Office and the Company; and (b) whether the Office has any objection to the release.

The Company's obligations under this Agreement shall have a term of three years from the date on which the Agreement is executed (the "Term"). The Company agrees, however, that, in the event the Office determines, in its sole discretion, that the Company has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Office, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Office's right to proceed as provided in the breach provisions of this Agreement below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the Corporate Compliance, Agreed Reporting and Other Penalties Provisions, for an equivalent period. Conversely, in the event the Office finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the Corporate Compliance, Agreed Reporting and Other Penalties Provisions, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated early.

At the request of the Office, the Company shall also cooperate fully with other domestic law enforcement and regulatory authorities and agencies in any investigation of the Company, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to this Agreement and the attached Statement of Facts, and other conduct (including conduct by current or former clients of the Company) at any time during the Term. The Company agrees that its cooperation shall include, but not be limited to, the following:

    a.    The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or attorney work product doctrine with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Office, upon request, any document, record or other tangible evidence about which the Office may inquire of the Company.

    b.    Upon request of the Office, and excepting situations under which the Company may validly assert any claim of privilege or work-product, the Company shall designate knowledgeable employees, agents or attorneys to provide to the Office the information and materials described above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

    c.    The Company shall, excepting situations under which the Company may validly assert any claim of privilege or work-product, use its best efforts to make available for interviews or testimony, as requested by the Office, present or former officers, directors, employees, agents, and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic law enforcement and regulatory authorities. Cooperation shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

1.6.2017v

    d.    With respect to any information, testimony, documents, records or other tangible evidence provided to the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities, of such materials as the Office, in its sole discretion, shall deem appropriate. The Office agrees and commits to keep the Company's cooperation, if any, confidential unless and until the public disclosure of any such cooperation becomes, in the Office's sole discretion, necessary to the Office's investigation or prosecution of the subject of the Company's cooperation.

    The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of money laundering, illegal gold smuggling, and violations of banking laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors including, but not limited to, the elements and reporting requirements set forth in the Corporate Compliance, Agreed Reporting and Other Penalties Provisions attached to this Agreement.

    In order to address, to the extent they exist, any alleged prior deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding AML compliance and other applicable banking laws. Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous AML compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of money laundering, gold smuggling laws, and other applicable banking laws. The compliance program, including the internal accounting controls system will include, but not be limited to, the elements set forth in the Corporate Compliance, Agreed Reporting and Other Penalties Provisions attached to this Agreement. Among these elements are that the Company not obtain gold from an entity considered an "aggregator," namely a company or individual that collects gold from multiple sources before suppling to the Company, and that the Company not make any payments to third parties in exchange for gold provided to the Company.

    This Agreement does not apply to, bind or restrict any other United States Attorney's Office, Department of Justice component, or federal department or agency. The Office may use any information related to the conduct described in the attached Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Agreement does not provide any protection against prosecution for any future conduct by the Company or any of its present or former parents or subsidiaries. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company or any of its present or former parents or subsidiaries.

If, during the Term, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in this Agreement; (d) fails to implement a compliance program as set forth in this Agreement and the Corporate Compliance, Agreed Reporting and Other Penalties Provisions attached to this Agreement; or (e) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Office becomes aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, which may be pursued by the Office in the U.S. District Court for the Southern District of Florida or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Office's sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel, and may include the conduct described in the attached Statement of Facts or relating to conduct known to the Office prior to the date on which this Agreement was signed. The Company, however, does not agree that it has engaged in any violation of the law or that the conduct described in the Statement of Facts—or in the information the Company has voluntarily provided to the Office—constitutes a violation of the law. Any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term. However, on the date of the completion of the Term, it is agreed that the statute of limitations similarly expires for any conduct that occurred prior to the date of the signing of this Agreement. The Company agrees that the statute of limitations as to any violation of U.S. federal law that occurs during the Term, namely for conduct that occurred after the date of the signing of this Agreement, will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Office is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

In the event the Office determines that the Company has breached this Agreement, the Office agrees to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Office shall consider in determining whether to pursue prosecution of the Company.

In the event that the Office determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Office or to the Court, including the attached Statement of Facts and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any

such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.

The Office understands that the Company has declared bankruptcy, and that, as such, this agreement and any and all other actions relating to any sale, asset sale, merger, or liquidation of the Company, its assets, or its liabilities or obligations must be approved by the Bankruptcy Court. Nevertheless, the Company agrees and hereby commits that, if it emerges from the bankruptcy proceedings with its current ownership structure and continues to operate as the Company, including as a subsidiary of a larger corporation, it will seek Bankruptcy Court approval of a commitment to continue to abide by all of the obligations of this Agreement. Alternatively, if the Company does not emerge from the bankruptcy proceedings with its current ownership structure and does not continue to operate as the Company, including as a subsidiary of a larger corporation, the Office agrees that the commitment to continue to abide by all of the obligations outlined in the Corporate Compliance and Agreed Reporting attachments to this Agreement would not be applicable to the entity purchasing assets or other portions of the Company. As a result of the bankruptcy proceedings, the commitment to continue to abide by all of the obligations outlined in the Corporate Compliance and Agreed Reporting attachments to this Agreement would not apply to the Company for a period of six months from the date of the signing of this Agreement ("Non-Application Period"), and the Company will have the right to petition the Office for extensions of the Non-Application Period, as needed. The Company agrees, however, that the decision of whether to extend the Non-Application Period and the length of such extension is in the sole discretion of the Office. The Company shall provide notice to the Office in accordance with service requirements under bankruptcy rules prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Company's execution of this Agreement will not become effective until the Agreement is approved by the Bankruptcy Court.

This Agreement is binding on the Company and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company. The Office represents that it does not know of any other investigation into the Company or its employees as to the conduct described in the Statement of Facts, nor is the Office aware of any intention by any other governmental or regulatory agency, department, or office to prosecute, investigate, or bring any proceedings related to the conduct described in the Statement of Facts.

It is further understood that the Company and the Office may disclose this Agreement, without the Attachments, to the public. At the request of the Company, the parties agree that the Attachments may not be disclosed publicly absent a court order.

This Agreement and its attachments sets forth all the terms of the agreement between the Company and the Office. No amendments, modifications or additions to this Agreement shall be

6

valid unless they are in writing and signed by the Office, the attorneys for the Company, and a duly authorized representative of the Company.

Sincerely,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 3·8·19

By: WALTER M. NORKIN
ASSISTANT UNITED STATES ATTORNEY

Date: 3/8/19

By: ROY K. ALTMAN
ATTORNEY FOR REPUBLIC METALS CORPORATION

Date: 3/7/19

By: REPUBLIC METALS CORPORATION
By Jason Rubin, Chief Executive Officer

Date: 3/2/19

By: REPUBLIC METALS CORPORATION
By Scott Avila, Chief Restructuring Officer

7