**DLA PIPER LLP (US)**
Richard F. Hans
Richard A. Chesley
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, New York 10020-1104
Tel.: (212) 335-4500
Fax: (212) 335-4501
Richard.Hans@dlapiper.com
Richard.Chesley@dlapiper.com
Rachel.Albanese@dlapiper.com

*Counsel to Fundación Rafael Dondé, I.A.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MIAMI METALS I, INC., *et al.*, | Case No. 18-13359 (SHL) |
| Debtors. | (Jointly Administered) |
| | Related to ECF No. 1003 |

**OBJECTION OF FUNDACIÓN RAFAEL DONDÉ, I.A.P. TO DEBTORS'
EMERGENCY MOTION (I) TO ENFORCE AUTOMATIC STAY AGAINST
FUNDACIÓN RAFAEL DONDÉ I.A.P., (II) TO HOLD FUNDACIÓN RAFAEL DONDÉ
I.A.P. IN CONTEMPT OF COURT, (III) FOR AN AWARD OF SANCTIONS AGAINST
FUNDACIÓN RAFAEL DONDÉ I.A.P., AND (IV) FOR RELATED RELIEF**

Fundación Rafael Dondé, I.A.P. (the "Foundation") hereby submits this objection

(the "Objection") to the *Debtors' Emergency Motion (I) to Enforce Automatic Stay Against*

*Fundación Rafael Dondé I.A.P., (II) to Hold Fundación Rafael Dondé I.A.P. in Contempt of Court,*

*(III) for an Award of Sanctions Against Fundación Rafael Dondé I.A.P., and (IV) for Related Relief*

[ECF No. 1003] (the "Stay Motion") filed by the above-captioned debtors (the "Debtors").  In

support of the Objection, the Foundation submits the *Declaration of Alejandro Jaimes Gutierrez*

1

(the "Jaimes Declaration"), the *Declaration of Ricardo Morales Paredes* ("Paredes Declaration"),[1]

and the *Declaration of Rachel Ehrlich Albanese* ("Albanese Declaration"), each filed concurrently

herewith, and states as follows:

## **PRELIMINARY STATEMENT**[2]

1.      The Foundation is a not-for-profit organization that, for more than 100 years, has

provided high-impact educational programs, emotional support and health and wellness services

to nearly 75,000 children living in poverty in Mexico.  As a not-for-profit, the Foundation has a

fiduciary obligation under Mexican law to protect the integrity of the Foundation and the members

of the Board of Trustees of the Foundation ("Trustees"), which includes reporting to Mexican

authorities the commission of any act of trust abuse ("*Abuso de Confianza*").  This is the only

action that the Foundation has taken against debtor Republic Trans Mexico Metals, S. de R.L. de

C.V. ("RTMM"), a Mexican entity.

2.      As the Foundation stated in its previous objection, the purpose of the Criminal

Action is *not* to collect a debt in Mexico; it is *not* to obtain priority over the Debtors' other

customers or creditors; it is *not* to initiate a "parallel" ownership proceeding in Mexico; and it is

certainly *not* to disrupt the ongoing bankruptcy proceedings or, in particular, the customer

ownership disputes pending in this Court.  Rather, having learned of RTMM's abuse of its

obligations, the Foundation was required by Mexican law to report RTMM's misconduct and to

permit the Mexican judicial system to decide whether crimes have been committed under the

Mexican trust abuse statute.

---

[1] The Foundation is submitting the Paredes Declaration in Spanish, but will submit an English translation as soon as possible.
[2] Capitalized terms used but not defined in this section are defined elsewhere in this Objection.

3.      The Trustees have been entrusted with powers and authority to perform any act to manage the Foundation estate to fulfill the Foundation's purposes, including among others, to provide aid, including that of financial nature, to low-income individuals in Mexico for different basic needs, but importantly for education.  As a result, those members are liable and accountable and must comply with fiduciary duties, being one to act diligently and carefully with respect to the administration of the estate of the Foundation with a standard of a "*bonus pater familias*".  If the Trustees of the Foundation refrain from acting to exercise rights granted by Mexican laws intended to protect the Foundation estate, they will be responsible and liable, even criminally, for the suspected breach of their duties.  The filing of a criminal action is not only a right but an obligation of the Trustees; it is not intended to collect from RTMM—but to report a potential felony to the public prosecutor in view of a possible damage to the estate of the Foundation and ultimately to the interests of those low-income persons who would otherwise have benefited from the assets stolen by RTMM and its managers.

4.      For these reasons, on or about April 8, 2019, the Foundation commenced a criminal action in Mexico by filing a criminal complaint.[3]  The Criminal Action falls squarely within the exception to the automatic stay provided in section 362(b)(1) of the Bankruptcy Code.

5.      Now, nearly a month after receiving notice of the filing of the Criminal Complaint, the Debtors have the temerity to ask this Court to award them sanctions against the very same entity that it effectively looted.  The Debtors' newfound objection to the filing of the Criminal Complaint is both belated and disingenuous.  Indeed, Debtors' counsel previously recognized and

---

[3] A true and correct copy of the complaint (the "Criminal Complaint") commencing the criminal action (the "Criminal Action") is attached to the Jaimes Declaration as Exhibit 1, together with a certified translation as Exhibit 2.

admitted in open court the propriety of customers commencing criminal actions under Mexican law, notwithstanding the automatic stay:

> Just so the Court understands as well as the parties in interest here today, that if this proceeding were in Mexico, the forty customers behind me would be able to commence such similar criminal proceedings. It's based on just an allegation that you're holding product that belongs to me that such a proceeding can be commenced, and as mentioned before, not only against the company, but against the legal representatives of the company.

Hr'g Tr. 107:2-9, Dec. 14, 2018 [ECF No. 395].[4] Debtors' counsel further stated: "Under Mexican law, we've been advised by our Mexican counsel the Basham Law Firm, located in Mexico, who is representing RTMM, that *if RTMM fails to return product, that such customer can commence criminal proceedings, not only against the company but also the legal representatives of that company* . . ." Hr'g Tr. 105:15-20 (emphasis added). Tellingly, the Stay Motion now proffered here is supported by *no evidence,* much less a declaration from the Debtors' Mexican law firm in support of the Stay Motion.

6.     The Stay Motion is founded on two fundamentally false premises.  First, the Debtors contend that the Criminal Action violates the automatic stay because the Foundation is seeking to collect a debt.  In fact, the Foundation filed the Criminal Action in accordance with its fiduciary duties to permit the Mexican public prosecutor to determine whether crimes have been committed and, if so, to fashion an appropriate remedy in accordance with Mexican law.  Plain and simple, this is not a debt collection action, but rather a proper exercise of the Trustees' fiduciary obligations under Mexican law.  Second, the Debtors attempt to frame the Criminal Action as a "parallel" proceeding to determine ownership of the Foundation's Assets.  In fact, the

---

[4] A true and correct excerpt of the December 14, 2018 hearing transcript is attached to Declaration of Rachel Ehrlich Albanese as Exhibit 1.

Criminal Action is intended to determine whether RTMM's conduct constitutes a crime under Mexican law; ownership of the Foundation's Assets will be resolved in this Court pursuant to the Uniform Procedures Order.

7.      For the reasons set forth herein, the Foundation respectfully requests that this Court deny the Stay Motion.  In the alternative, if the Court were to determine that the Foundation's conduct constitutes a violation of the automatic stay, the Foundation submits that annulment of any violations is appropriate and that the automatic stay should be lifted to permit the Criminal Action to proceed.

## BACKGROUND

**A.      The Foundation Is a Lifeline to 75,000 Underprivileged Children and Their Families**

8.      The Foundation is a Mexican "Private Assistance Institution" and not-for-profit organization that, for more than 100 years, has provided high-impact educational programs, emotional support and health and wellness services to nearly 75,000 low-income children in Mexico.  The Foundation's principal mission is to educate disadvantaged youth who would otherwise be exposed to deadly violence, devastating economic prospects, widespread poverty, and a lifetime of instability that plague many communities in Mexico.

9.      The Foundation also offers financial products and services that benefit economically disadvantaged families, such as providing low interest rate consumer loans, pledge agreements and other services free of charge.  The Foundation's philanthropic programs are financed, in part, by periodically melting and selling gold and silver it receives as collateral from customers.

10.     For several years, the Foundation has employed the services of RTMM to safeguard the Foundation's gold and silver, and upon authorization, to melt the metals for the Foundation's

benefit.[5]  The Foundation and RTMM entered into a bespoke services agreement on April 18, 2016

(the "Services Agreement"), memorializing certain substantive terms of their arrangement.

## B.    The Chapter 11 Cases

11.    Although the Foundation never had any dealings with the RTMM's U.S. affiliates,

it has participated in the consolidated chapter 11 cases out of necessity.  The Foundation helped to

organize and has actively participated in the *ad hoc* customer group that facilitated the consensual

resolution of numerous disputes with the Debtors and their lenders in these cases, including cash

collateral and the protocol governing the customer ownership disputes (as amended, the "Uniform

Procedures Order").

### i.    *RTMM Settlement Motion*

12.    On January 11, 2019, the Court approved a narrow settlement between the

Foundation and the Debtors with respect to the Foundation's segregated and identifiable gold and

silver located in Mexico (the "Product") [ECF No. 398].  By this settlement, RTMM agreed to

return to the Foundation approximately US$3,000,000 of Product and the Foundation agreed to a

limited release of criminal claims specifically associated with the Product:  "The settling Customer

shall agree to waive any and all rights to commence a criminal prosecution against RTMM and its

authorized representatives in Mexico for claims arising out of or related to the Product."[6]

13.    As the Debtors' conspicuous silence reveals, the filing of the Criminal Complaint

does not violate this settlement because the crimes alleged therein relate specifically to the

Foundation Assets, as defined below—property wholly separate from the Product.

---

[5] The Foundation identifies the material for casting, which is weighed in the presence of a smelter, who applies heat to the materials.  The metal is cast into a solidified bar and identified with a unique batch number by RTMM and with a sales number by the Foundation.

[6] *Debtors' Expedited Motion for Authority to Settle Compromises Pursuant to Bankruptcy Rule 9019 (RTMM Product Settlement)* [ECF No. 307] ("RTMM Settlement Motion") ¶ 14.B.

14.     On December 14, 2018, at the hearing on the RTMM Settlement Motion, Debtors' counsel recognized that criminal proceeding in Mexico were a viable option, notwithstanding the automatic stay: "*[I]f this proceeding were in Mexico, the forty customers behind me would be able to commence such similar criminal proceedings.*"  Hr'g Tr. 107:2-9 (emphasis added); *see also* Hr'g Tr. 105:15-20 ("*Under Mexican law . . . if RTMM fails to return product, that such customer can commence criminal proceedings, not only against the company but also the legal representatives of that company . . .*") (emphasis added).

### ii.     Customer Ownership Disputes

15.     On January 18, 2019 and March 11, 2019, the Foundation filed its Customer Statement and Supplemental Customer Statement (together, the "Customer Statements") in accordance with the Uniform Procedures Order, which governs the ownership dispute litigation between the customers and the Debtors (and their lenders).  Under the Uniform Procedures Order, this Court will determine ownership of the Foundation's Assets (as defined below).  The Uniform Procedures Order does not establish a venue for resolution of the Criminal Action.

16.     The Foundation has been transparent, from the outset of these proceedings, about its rights and intentions.  In its initial Customer Statement, the Foundation stated:

> The Foundation has the right, and is prepared, to immediately file a criminal complaint in Mexico pursuant to applicable Mexican law to commence a criminal proceeding against RTMM, its affiliated Debtors, and their respective representatives, including but not limited to Joseph Liberman and Jason Rubin, with respect to the misappropriation of the Foundation's Assets (as defined in paragraph 2 hereof).

Customer Statement ¶ 6.  Similarly, in the Supplemental Customer Statement, the Foundation expressly reserved the right, once again, "to take any and all appropriate action to protect its rights and interests, including the interests of the 75,000 children and their families who depend on the Foundation for educational, psychological and economic support."  Supplemental Customer

Statement ¶ 15.  The Debtors took no issue with the Foundation's position in their reply to the Customer Statement.[7]

## C.    RTMM's Crimes Under Mexican Law

17.    On October 31, 2018, prior to RTMM's November 21, 2018 voluntary chapter 11 filing, the Foundation sent to RTMM's facilities in Mexico 9,757.85 ounces of gold and 2,644.25 ounces of contained silver for processing.  The Foundation subsequently learned that RTMM transferred, ***without the Foundation's prior authorization or consent***, 7,363.07 ounces of gold and 2,394.77 ounces of silver to its affiliates' facilities in the United States, who at the time, already had commenced their chapter 11 cases.[8]  This transfer of approximately US$12.8 million of the Foundation's property to the U.S. Debtors was neither authorized by the Foundation nor permitted under the Services Agreement.  *Id.*

18.    As further detailed in the Customer Statements, the Debtors continue to unlawfully hold the following property owned by the Foundation[9]:

- 7,363.07 ounces of the Foundation's gold were transferred to RTMM between July 2, 2018 and October 30, 2018, as described in detail on Appendix 1 attached hereto (the "FRD Gold");

- 2,341.82 ounces of contained silver were transferred to RTMM between July 2, 2018 and October 30, 2018, as described in detail on Appendix 1 attached hereto (the "FRD Silver"); and

- An aggregate of MEX$ 75,520,712.40 (or USD$ 3,757,476.02, the "Sale Proceeds" and, together with the FRD Gold and the FRD Silver, the "Foundation's Assets")

---

[7] *Debtors' Omnibus Response to Customer Statements Pursuant to the Order Approving Uniform Procedures for Resolution of Ownership Disputes* [ECF No. 648-4] (the "Debtors' Statement").

[8] *Fundación Rafael Dondé, I.A.P.'s Limited Objection, Joinder and Reservation of Rights Regarding Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors' Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Parties, (III) Scheduling a Final Hearing and (IV) Granting Related Relief* [ECF. No. 227], Exhibit A (Declaration of Eduardo Dondé de Teresa) ¶ 10.

[9]  Although the Debtors have alleged that the Foundation's Assets were "Commingled, processed, and likely sold" as of the Petition Date and "Sold or otherwise irretrievable" as of February 15, 2019, they provide no evidence in support of these allegations.  *See* Debtors' Statement at 8.

obtained by RTMM on behalf of the Foundation following the sale of the Foundation's bars of fine gold and silver.[10]

19.     RTMM's conduct in withholding the Foundation's Assets and transferring them outside of Mexico without the Foundation's authorization gives rise to criminal liability under Mexican law and serves as the basis of the Criminal Action.  The Criminal Complaint alleges that RTMM illegally misappropriated and interfered with the Foundation's property.  The Criminal Complaint further alleges that the transfer of such property to a third party constitutes trust abuse under Mexican law.  The statute of limitations for these crimes is one year from the date of the last criminal act.[11]  *See* Article 110 of the Criminal Code.

**D.     Applicable Mexican Law and Commencement of the Criminal Action[12]**

20.     As set forth in the Jaimes Declaration and the Paredes Declaration, the Foundation has a fiduciary obligation to report criminal conduct with respect to the unlawful use or transfer of cash and property that has been entrusted to it for the purpose of furthering the Foundation's mission.  Article 45 of the *Ley de Instituciones de Asistencia Privada para el Distrito Federal* (the "IAP Law") requires the Foundation's Board to:  (i) ensure that the main purpose of the Foundation is fulfilled; (ii) manage the estate or wealth of the Foundation; and (iii) exercise any right, perform any action and carry out any defense as such necessary or convenient for the Foundation. If the Board fails to comply with its fiduciary obligations, the Board itself can be subject to "civil or criminal liabilities incurred in the exercise of their functions."  IAP Law, art. 46.  In addition, if

---

[10] For the avoidance of doubt, the Foundation's Assets do not include the Product that was the subject of the RTMM Settlement Motion.

[11] Article 229 of the Criminal Code for the Federal District contains the crime of confidence abuse for retention of property, and Article 222 of the National Code of Criminal Procedures requires any person who knows of a crime to denounce it.

[12] The statements of Mexican law in this section and otherwise in this Objection are supported by the Paredes Declaration.

the Foundation failed to report RTMM's conduct, if could be deemed a co-conspirator with RTMM or be liable for concealment.  Jaimes Decl. ¶ 3.

21.      In Mexico, the process of reporting a crime under these circumstances begins with a private party, here, the Foundation, filing a complaint with a public prosecutor.  Jaimes Decl. ¶ 4.  If the public prosecutor determines after his or her investigation that there is sufficient evidence to prove conversion of property or trust abuse under the *Código Penal para el Distrito Federal (currently, Ciudad de México)* (*i.e.*, the Mexico City criminal code), Article 229, such evidence will be presented to a judge who, as appropriate, will impose a sentence that may involve detaining the person illegally disposing of the claimant's property, imprisoning such person and/or ordering that damages be paid to the actual owner.[13]  *Id*.  The claimant's only involvement in the criminal case following the filing of the complaint with the public prosecutor is to provide evidence requested by the public prosecutor; the claimant is not involved with any decision to prosecute or take any further actions.  *Id*.  The defendant is under no obligation to oppose the criminal complaint.  *Id.*  Moreover, even if the defendant were to return the property converted through abuse of trust, the defendant may still be sanctioned.  *Id*.

22.      This is the process undertaken by the Foundation with the filing of the Criminal Complaint.  On or about April 8, 2019, Alejandro Jaimes Gutierrez ("Mr. Jaimes"), the Foundation's Mexican criminal counsel, filed the Criminal Complaint in Mexico City.  As required by Mexican criminal law and procedure, on April 11, 2019, Mr. Jaimes perfected the trust abuse claim by making a formal, in-person request to Mr. Liberman that RTMM return the property belonging to the party injured by the confidence abuse.  This was not an effort to enforce a debt,

---

[13] In the event criminal damages or sanctions were awarded to the Foundation, the Foundation would not seek to enforce that award against RTMM without leave of this Court.

but rather perfection of a criminal claim and a required element of trust abuse under Mexican law. Jaimes Decl. ¶ 7.

23.    Shortly thereafter, the Debtors sent a letter to the Foundation alleging that Mr. Jaimes's visit to Mr. Liberman violated the automatic stay.[14]  Mr. Jaimes responded on behalf of the Foundation and explained that:

> The purpose of my visit was to formally request from Mr. Liberman the return of the gold, contained silver and money property of [the Foundation] consistent with the criminal complaint that was filed against RTMM, Mr. Liberman and Mr. Rubin. . . . Such request for the return of [the Foundation's] property is fully aligned with the Mexico City Criminal Code and is consistent with other Mexican criminal laws and practices as applicable, given the fact that the confidence abuse criminal conduct is perfected upon request to the felon wrongfully in possession of the property belonging to the party injured by the confidence abuse (here, [the Foundation]).[15]

24.    Three weeks later, on May 3, 2019, the Debtors filed the Stay Motion and an "emergency" motion to shorten notice [ECF No. 1004] (the "Ex Parte Motion") with respect to the Stay Motion.[16]  The Debtors offer no evidence from Mr. Liberman or anyone else in support of the Stay Motion and, instead, mischaracterize and selectively quote from the Jaimes Letter in an effort to convince the Court that the Criminal Action is a debt collection proceeding.  As described in this Objection, when held up to scrutiny, the Debtors' selective recitation of the factual record falls far short of establishing a sanctionable violation of the automatic stay.

---

[14] *See* Letter from A. Hartley to R. Albanese, dated Apr. 11, 2019, attached to Stay Mot. as Ex. A.

[15] *See* Letter from A. Jaimes Gutierrez to A. Hartley, dated Apr. 15, 2019, attached to Stay Mot. as Ex. B (the "Jaimes Letter").

[16] The Foundation objected to the Ex Parte Motion on May 5, 2019 [ECF No. 1008], and the Court entered an order granting the Ex Parte Motion in part on May 6, 2019 [ECF No. 1012].

## OBJECTION

### A.    The Criminal Action Does Not Violate the Automatic Stay

25.    The Debtors are seeking to hold the Foundation in contempt for alleged violations of the automatic stay.  The party moving for damages for a violation of the automatic stay bears the burden of proof.  *In re Salov*, 510 B.R. 720, 733 (Bankr. S.D.N.Y. 2014).  This burden is satisfied only by the moving party "present[ing] evidence in support of the allegations . . . that defendants willfully violated the automatic stay and . . . prov[ing] those allegations by a preponderance of the evidence."  *In re Grinspan*, 597 B.R. 725, 733 (Bankr. E.D.N.Y. 2019).

26.    The Debtors cannot satisfy their burden.  Indeed, the Debtors submitted no declarations in support of the Stay Motion, highlighting the absence of evidence in support of their position.[17]  The Foundation's filing of the Criminal Complaint and related actions in Mexico are not prohibited by the automatic stay.

### i.    *The Automatic Stay Does Not Apply to the Criminal Action*

27.    Section 362(b)(1) of the Bankruptcy Code exempts from the stay "the commencement or continuation of a criminal action or proceeding against the debtor."  11 U.S.C. § 362(b)(1).  Since criminal proceedings are not subject to the automatic stay, it is clear that "a state's interest in enforcing its criminal statutes supersedes a debtor's interest in obtaining a 'fresh start'" in bankruptcy.  *Dennison v. Davis (In re Dennison)*, 321 B.R. 378, 383–84 (Bankr. D. Conn. 2005).

28.    Courts have held that reporting a debtor's criminal conduct to the appropriate government authorities is not subject to the automatic stay pursuant to section 362(b)(1) of the

---

[17]  The Debtors have indicated that they may seek to call witnesses at the hearing on the Stay Motion.  As any such effort would effectively preclude the Foundation from conducting necessary discovery, any such belated evidence must be stricken.  Fed. R. Bankr. P. 9004.

Bankruptcy Code. *Dovell v. The Guernsey Bank*, 373 B.R. 533, 540 (S.D. Ohio 2007) (bank reporting debtor's conduct to police did not violate the stay); *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) (holding no violation of the stay by debtor's ex-wife who complained to the district attorney that debtor failed to support dependent children); *In re Maness*, 497 B.R. 326, 329 (B.A.P. 8th Cir. 2013) (noting that "§ 362(b)(1) . . . excepts all criminal prosecutions of the debtor from the automatic stay with 'no hint of any exception for prosecutorial purpose or bad faith'") (quoting *Bartel v. Walsh (In re Bartel)*, 404 B.R. 584, 590 (1st Cir. BAP 2009)); *In re Altchek*, 124 B.R. 944, 959 (Bankr. S.D.N.Y. 1991) (finding no violation of the automatic stay to the extent debtor's former spouse "instituted an action for criminal contempt as a result of the debtor's alleged [contemptuous] conduct").

29.    Here, the commencement of the Criminal Action by the filing of the Criminal Complaint and other related actions, including the actions of Mr. Jaimes to perfect the confidence abuse claim, fall squarely within the section 362(b)(1) exception to the automatic stay.  Even the Debtors' counsel has recognized that criminal proceedings can be commenced in Mexico if there is "an allegation that [Debtors are] holding product that belongs to [other customers]."  Hr'g Tr. 107:2–9; *see generally* Hr'g Tr. 104–20.  The failure of the Debtors to file a declaration of their Mexican counsel in support of the Stay Motion is telling.

30.    Fundamentally, the Foundation's commencement of the Criminal Action is not an action to collect a debt; it is an action to allow the Mexican criminal justice system to determine whether RTMM committed a crime. ***Even if RTMM were to return the Foundation's Assets (relief not requested in the Criminal Action), RTMM could still be sanctioned by a Mexican court under the confidence abuse statute.***  Jaimes Decl. ¶ 7.  Moreover, the Foundation was required under Mexican law to commence the Criminal Action, and given the short statute of

limitations for trust abuse claims, the Foundation could not wait until the ownership disputes were resolved in this Court. The Trustees could not and would not risk violating the fiduciary duties it owes to the children and families it serves by *not* reporting RTMM's conduct.

31.    The Debtors' multiple references to the Jaimes Letter in the Stay Motion are, in any event, misleadingly taken out of context. *See, e.g.*, Stay Mot. ¶¶ 21–22. As Mr. Jaimes stated, and as required under Mexican criminal law, the formal demand for the return of the Foundation's Assets is not an effort to collect a debt; it is a necessary and ministerial step in the crime reporting process. Jaimes Decl. ¶¶ 6, 7; Jaimes Letter at 2 ("[T]he confidence abuse criminal conduct is perfected upon request to the felon wrongfully in possession of the property belonging to the party injured by the confidence abuse (here, [the Foundation]).").

32.    The Foundation's actions in Mexico fall within the exception set forth in section 362(b)(1) of the Bankruptcy Code and do not violate the automatic stay.

### ii. Regardless, the Automatic Stay Does Not Prevent Criminal Actions to Collect a Debt

33.    To the extent the Court were to find that the Criminal Action is an attempt to collect a debt, courts have held that "the automatic stay does not apply to enjoin state criminal actions, even if the prosecution is motivated by the complaining witness's desire to collect a debt." *Gruntz*, 202 F.3d at 1087. The plain language of section 362(b)(1) of the Bankruptcy Code supports this outcome—section 362(b)(1) broadly exempts from the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor."

34.    When ascertaining a creditor's underlying motive, courts consider facts such as (i) the standard procedure to initiate criminal proceedings, (ii) the timeline of surrounding events, and (iii) whether the party is required to report the offense to law enforcement. *See In re Batt*, 322 B.R. 776, 780 (Bankr. N.D. Ohio 2005); *Dovell*, 373 B.R. at 539–40. The bankruptcy court in

*Batt* recognized that, "so long as the creditor's primary motive is not the collection of debt," and instead represents "a true desire" to ensure the debtor is punished for violating the applicable criminal laws, "no stay violation will exist for a creditor simply bringing the transgression to the attention and then cooperating with the person or agency charged with enforcing the criminal laws of the jurisdiction." *Batt*, 322 B.R. at 779.

35.     Each of these factors compels the conclusion that the Foundation did not commence the Criminal Action to collect a debt and, accordingly, did not violate the automatic stay.

36.     <u>First</u>, as detailed above, the standard procedure under applicable Mexican law to initiate criminal proceedings is for the victim to file a complaint. Jaimes Decl. ¶ 6. This is what the Foundation did when it filed the Criminal Complaint. Moreover, Mr. Jaimes's actions to perfect the confidence abuse claim were in furtherance of the Criminal Action and consistent with and necessary under criminal procedure in Mexico. *See generally*, Paredes Decl.; Jaimes Decl. ¶ 9. Mexican law enforcement will not begin a criminal investigation without such a complaint. Jaimes Decl. ¶ 4.

37.     <u>Second</u>, the Foundation is not taking this action in Mexico in order to collect a debt outside of bankruptcy. The Criminal Action permits the Mexican judicial system to decide if a crime was committed and, if so, to fashion an appropriate criminal remedy. Further evidence in support of this second factor is found in the clear and unmistakable fact that under the Uniform Procedures Order, the Foundation is pursuing its ownership claims in this Court, not the Mexican criminal court.

38.     <u>Third</u>, the Foundation and its Trustees have a fiduciary obligation to report RTMM's misconduct to law enforcement. Failure to do so could subject the Board to civil and criminal liability. *See* Article 222 of the National Code of Criminal Procedures in Mexico; Jaimes

Decl. ¶ 3.  This fact alone defeats any allegation that the Foundation's motives are improper.  *Cf.* *Dovell*, 373 B.R. at 539–40 ("Because a bank is required to report suspected criminal activity, the fact of reporting does not raise an inference that the action of the bank was taken to collect a debt.").  Moreover, the Foundation could be criminally responsible for concealment if it did not report RTMM's crimes.  *See* Article 222 of the National Code of Criminal Procedures in Mexico ("Any person who is aware that an act that is likely to constitute a crime has been committed is ***obligated to report it to the Public Prosecutor's Office*** and in case of urgency before any police officer.")(emphasis added); Jaimes Decl. ¶ 3.

39.    The circumstances here are analogous to the *Bartel* case, in which the debtor filed a motion for summary judgment, arguing that his creditors violated the automatic stay by cooperating with police.  404 B.R. at 587.  An officer came to the debtor's home, questioned him about the money he owed his creditors, and according to the debtor, attempted to intimidate him into paying his creditor's claim.  *Id.*  Yet, despite these actions, the court found the language of § 362(b)(1) controlling and held that "a criminal proceeding is not subject to the automatic stay, even where it relates to debt collection or where the debtor alleges that the state is proceeding in bad faith."  *Id.* at 590.  Mr. Jaimes's conduct was similar.  Rather than the police making the initial demand to, essentially, perfect and investigate a claim, Mr. Jaimes performed this step in accordance with Mexican law.  *See* Paredes Decl.; Jaimes Decl. ¶ 9.

40.    Therefore, even if this Court were to determine that the Criminal Action is an effort to collect a debt, the Foundation submits that the Criminal Action falls within the exception to the automatic stay under section 362(b)(1) of the Bankruptcy Code.

**B.      The Criminal Action Does Not Violate the Uniform Procedures Order**

41.      The Debtors allege that the Criminal Action is a "parallel proceeding" to determine asset ownership and, as such, violates the Uniform Procedures Order.  *See, e.g.*, Stay Mot. ¶¶ 35–37.  The Debtors are mischaracterizing both the Criminal Action and the Uniform Procedures Order.

42.      As has already been stated (and affirmed here), the Criminal Action was not commenced to determine ownership of the Foundation's Assets; it will determine whether RTMM and its principals have committed a crime under Mexican law.[18]  Moreover, this determination— whether a crime was committed under Mexican law—falls well outside the scope of the Uniform Procedures Order and this Court's jurisdiction.  Accordingly, this allegation lacks any basis in law or fact.

**C.      The Foundation Cannot Be Held in Contempt for Actions Beyond Its Control**

43.      The Debtors seek to hold the Foundation in contempt unless the Foundation causes the public prosecutor to pardon those charged in the Criminal Action.  Even if RTMM were to return the Foundation's Assets, it may still be sanctioned for its crimes and the Foundation has no control over this action.

44.      Now that the Foundation has complied with its duty to file the Criminal Complaint, it is the *public prosecutor's* decision, subject to the Foundation's pardon rights, whether to cease further prosecution.  Jaimes Decl. ¶ 10.  The Criminal Complaint alleges several crimes under Mexican law, and, while the Foundation has the ability to grant a pardon, it has neither discretion nor control over any prosecutorial decisions.  *See* Jaimes Decl. ¶ 10.  Accordingly, there is no basis

---

[18]  To the extent the Mexican judge ultimately determines that RTMM misappropriated the Foundation's Assets and, in addition to punishing its principals, orders damages to be paid to the Foundation, for example, any such judgment would be enforced consistent with the requirements of the Bankruptcy Code.

upon which to hold the Foundation in contempt or award sanctions to the Debtors. To the contrary, the Foundation and its beneficiaries continue to suffer the enormous costs of loss and litigation related to RTMM's misconduct.

**D.     To the Extent the Court Concludes That the Automatic Stay Applies to the Criminal Action, There Is Ample Cause to Annul the Actions Taken and Lift the Stay**

45.     The Foundation is confident that its actions were appropriate and did not violate the automatic stay, particularly in light of Debtors' counsel's representations to the Court on this issue. To the extent the Court finds that the automatic stay applies to the Foundation's actions in Mexico, however, the Foundation requests that the Court annul any such violations and lift the automatic stay to permit the Criminal Action to continue.

### i.     Annulment Is Appropriate

46.     Courts in this District consider the following non-exclusive factors in determining whether to annul an automatic stay violation:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay;
>
> (2) if the debtor has acted in bad faith;
>
> (3) if there was equity in the property of the estate;
>
> (4) if the property was necessary for an effective reorganization;
>
> (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation;
>
> (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and
>
> (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Marketxt Holdings, Corp.*, 428 B.R. 579, 587 (S.D.N.Y. 2010) (quoting *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001)). Not all of the *Stockwell* factors are relevant in each case. *Id.* Here, almost all of the factors weigh in favor of annulment:

- *Knowledge of Automatic Stay*.  Although the Foundation had knowledge of the stay, the Debtors represented in court that customers commencing criminal actions in Mexico would not violate the automatic stay.  Hr'g Tr. 107:2-9; *see also* Hr'g Tr. 105:15-20.  Relying on this representation, which is consistent with applicable U.S. and Mexican law, the Foundation commenced the Criminal Action.

- *Bad Faith of Debtor*.  RTMM plainly has not acted in good faith based on, among other things, RTMM's criminal conduct and numerous creditor allegations of the Debtors' bad faith and conversion.[19]

- *No Equity in Property*.  The Debtors do not have any equity in the Foundation's property.  The Foundation's Assets were converted through criminal trust abuse and sent to RTMM's U.S. affiliates without authorization, where they became mired in the chapter 11 process.

- *Property Not Necessary for Reorganization*.  The Foundation's Assets are not property of the estate, and these liquidating Debtors are not reorganizing.

- *Lift Stay Motion Would Succeed*.  As set forth below, if the Court determines that the automatic stay applies, relief from stay is appropriate.

- *Detriment to Creditor*.  In addition to applicable U.S. and Mexican law, the Foundation relied on representations of Debtors' counsel with respect to the inapplicability of the automatic stay to criminal proceedings in Mexico.  It would be unfair not to annul any violations of the stay here.

Thus, the *Stockwell* factors overwhelmingly support the Court exercising its discretion to annul any violations of the automatic stay, to the extent necessary.

### ii.    If Necessary, the Stay Should Be Lifted

47.    To the extent the automatic stay applies here, relief from the stay is appropriate.  Section 362(d) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay "for cause."  Because the Bankruptcy Code does not define "cause," courts must make this assessment on a case by case basis.  *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)).

---

[19] These allegations served as the impetus for the examiner motion filed by the Office of the U.S. Trustee.  *See Motion of the United States Trustee for the Entry of an Order Directing the Appointment of a Chapter 11 Examiner* [ECF No. 325-1] ¶¶ 20–23.

"Cause" is "viewed as a broad and flexible concept" for purposes of a motion for relief from stay.

*In re M.J. & K. Co., Inc.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993) (granting relief from the

automatic stay and recognizing that "[a]lthough neither the statute nor its legislative history defines

'cause' sufficient to sustain a § 362(d)(1) motion, it is viewed as a broad and flexible concept").

48.     In determining whether "cause" exists to lift the stay, courts consider the following

factors:

> (1) whether relief would result in a partial or complete resolution of
> the issues; (2) the lack of any connection with or interference with
> the bankruptcy case; (3) whether the other proceeding involves the
> debtor as a fiduciary; (4) whether a specialized tribunal with the
> necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for
> defending it; (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests
> of other creditors; (8) whether the judgment claim arising from the
> other action is subject to equitable subordination; (9) whether
> movant's success in the other proceeding would result in a judicial
> lien avoidable by the debtor; (10) the interests of judicial economy
> and the expeditious and economical resolution of litigation; (11)
> whether the parties are ready for trial in the other proceeding; and
> (12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus.,* Inc.), 907 F.2d 1280,

1286 (2d Cir. 1990).

49.     A number of the above-referenced *Sonnax* factors are relevant here and compel

relief from the automatic stay:

- *Resolution of the Issues.*  The Criminal Action will address and result in the
complete resolution of the criminal issues under Mexican law.  The outcome of the
Mexican criminal proceeding may inform the outcome of the ownership dispute
litigation in this Court.  The Foundation is in its own "bucket" (Bucket 9).

- *Lack of Interference with Bankruptcy Case*.  The Criminal Action will not interfere
(and has not interfered) with the administration of the chapter 11 cases.  Indeed,
Mr. Liberman already has been questioned and the Debtors have not alleged that
the Criminal Action has interfered with the winding down of their estates,
particularly as the RTMM business is no longer operating.

20

- *Specialized Tribunal*. Mexico City's criminal court is a "specialized tribunal" for investigating, prosecuting and adjudicating RTMM's crimes under Mexican law.

- *No Prejudice to Other Creditors*. Resolution of the Criminal Action will not prejudice other customers or creditors; asset distribution and other matters of bankruptcy administration, including the Ownership Disputes (as defined in the Uniform Procedures Order) will be decided exclusively by this Court. To the extent RTMM is found guilty of the alleged misconduct, it may actually assist other creditors of RTMM in proving their claims against RTMM.

- *Judicial Economy*. The interests of judicial economy and the economic resolution of litigation require that the Criminal Action involving Mexican criminal matters beyond the jurisdiction of this Court be decided in the appropriate, Mexican criminal tribunal.

- *Balance of Harms*. Absent relief from the automatic stay, the Foundation would be punished for adhering to its fiduciary duties and exercising its rights under Mexican law. Moreover, criminal prosecutions against a debtor are carved out of the automatic stay, so the Foundation should be permitted to take whatever action is required in furtherance of the Mexican Criminal Action.

50.    In sum, to the extent this Court determines that filing of the Criminal Complaint and related actions constituted violations of the automatic stay, the Foundation respectfully submits that ample cause exists to annul any such violations and to lift or modify the automatic stay to permit the filing of the Criminal Complaint.

### E.    Sanctions Are Not Appropriate

51.    Even if the Court were to determine that stay violations occurred—and they did not—and declined to annul any such violations, an award of sanctions against the Foundation would be improper as a matter of equity and public policy.

52.    The Foundation has not acted with ill will or mal-intent. To the contrary, it has acted consistently with Mexican law to protect the interests of its many beneficiaries. The diversion of even one peso of the Foundation's limited resources as sanctions payable to the

Debtors and RTMM—a criminal under Mexican law—would be entirely inequitable and fundamentally unfair.  Equity and public policy militate against such an award.

## **RESERVATION OF RIGHTS**

53.    The Foundation expressly reserves its right to:  (i) supplement this Objection at any time in writing and at the hearing on the same; (ii) seek any and all remedies under applicable law; and (iii) raise different or further arguments in response to any additional arguments made by the Debtors or any other party.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

For the reasons set forth above, the Foundation respectfully requests that this Court deny the Stay Motion in its entirety.  In the alternative, and only in the event and to the extent this Court determines that the Foundation's conduct constitutes a violation of the automatic stay, the Foundation submits that annulment of any violations is appropriate and that the automatic stay should be lifted to permit the Criminal Action to proceed.

Dated: New York, New York
      May 13, 2019

              **DLA PIPER LLP (US)**

              */s/     Richard Hans*
              Richard F. Hans
              Richard A. Chesley
              Rachel Ehrlich Albanese
              1251 Avenue of the Americas
              New York, New York 10020-1104
              Tel.: (212) 335-4500
              Fax: (212) 335-4501
              Richard.Hans@dlapiper.com
              Richard.Chesley@dlapiper.com
              Rachel.Albanese@dlapiper.com

              *Counsel to Fundación Rafael Dondé, I.A.P*