**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIAMI METALS I, INC., *et al.*[1] | ) | Case No. 18-13359 (shl) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION OF DEBTORS

John E. Mitchell (*Admitted Pro Hac Vice*)
Yelena Archiyan (*Admitted in New York*)
AKERMAN LLP
2001 Ross Avenue, Ste. 3600
Dallas, TX 75201
Tel.: (214) 720-4300
Fax: (214) 981-9339

Andrea S. Hartley (*Admitted Pro Hac Vice*)
Joanne Gelfand (*Admitted in New York*)
Esther A. McKean (*Admitted Pro Hac Vice*)
Katherine C. Fackler (*Admitted Pro Hac Vice*)
AKERMAN LLP
98 Southeast Seventh Street, Ste. 1100
Miami, FL 33131
Tel.: (305) 374-5600
Fax: (305) 374-5095

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), 15 West 47th Street, Suites 206 and 209, New York, NY 10036 (3194); Miami Metals II, Inc. (f/k/a Republic Metals Corporation), 12900 NW 38th Avenue, Miami, FL 33054 (4378); Miami Metals III LLC (f/k/a Republic Carbon Company), 5295 Northwest 163rd Street, Miami Gardens, FL 33014 (5833); Miami Metals IV LLC (f/k/a J & L Republic LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7604); Miami Metals V LLC (f/k/a R & R Metals, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7848); Miami Metals VI LLC (f/k/a RMC Diamonds, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Miami Metals VII LLC (f/k/a RMC2, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (4696); Miami Metals VIII LLC (f/k/a Republic High Tech Metals, LLC), 13001 NW 38 Avenue, Miami, FL 33054 (6102), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Republic Metals Trading (Shanghai) Co., Ltd., 276 Ningbo Road, Huangpu District, Shanghai, P.R. 200001 China (1639); and Republic Trans Mexico Metals, S.R.L., Francisco I. Madero No. 55 Piso 5, Local 409, Centro Joyero Edificio Central, Delegación Cuauhtémoc, Mexico DF 6000 (2942).

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARTICLE 1 DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION .......... 1

A.    Scope of Definitions .......................................................................... 1

B.    Definitions ........................................................................................ 1

1.1.    503(b)(9) Claim ................................................................................ 2

1.2.    503(b)(9) Fund ................................................................................. 2

1.3.    Administrative Claim ........................................................................ 2

1.4.    Administrative Claims Bar Date ........................................................ 2

1.5.    Adequate Protection Liens ................................................................ 2

1.6.    Adequate Protection Superpriority Claims ......................................... 2

1.7.    Allowed _____ Claim or Allowed Class _____ Claim .......................... 2

1.8.    Allowed Claim or Allowed Interest ................................................... 2

1.9.    Asahi .............................................................................................. 2

1.10.   Asahi Sale Order .............................................................................. 3

1.11.   Assets .............................................................................................. 3

1.12.   Assigned Claims ............................................................................... 3

1.13.   Assigned Proceeds of Auditor Claims ................................................ 3

1.14.   Auditor/Lender Claim ...................................................................... 3

1.15.   Auditor Claim Waterfall ................................................................... 3

1.16.   Ballot .............................................................................................. 3

1.17.   Bankruptcy Code ............................................................................. 3

1.18.   Bankruptcy Court ............................................................................ 3

1.19.   Bankruptcy Rules ............................................................................. 4

1.20.   Bar Date ......................................................................................... 4

1.21.   Bankruptcy Estates or Estates. ......................................................... 4

1.22.   Business Day .................................................................................... 4

1.23.   Carbon Orders ................................................................................. 4

1.24.   Cash ................................................................................................ 4

1.25.   Cash Collateral Order ...................................................................... 4

1.26.   Cause of Action ............................................................................... 4

1.27.   Chapter 11 Cases ............................................................................. 4

1.28.   Claim. ............................................................................................. 4

1.29.    Class ................................................................................................... 4

1.30.    Collateral ............................................................................................ 4

1.31.    Committee ........................................................................................... 4

1.32.    Committee Members ........................................................................... 5

1.33.    Confirmation ....................................................................................... 5

1.34.    Confirmation Date .............................................................................. 5

1.35.    Confirmation Hearing ......................................................................... 5

1.36.    Confirmation Order ............................................................................ 5

1.37.    Convenience Claim ............................................................................. 5

1.38.    Creditor .............................................................................................. 5

1.39.    CRO ..................................................................................................... 5

1.40.    Debtors ............................................................................................... 5

1.41.    Disclosure Statement ......................................................................... 5

1.42.    Disputed Claim or Disputed Interest .................................................. 5

1.43.    Disputed Claims Reserve .................................................................... 5

1.44.    Distribution ......................................................................................... 5

1.45.    Distribution Record Date .................................................................... 6

1.46.    Effective Date ..................................................................................... 6

1.47.    Entity .................................................................................................. 6

1.48.    Estate Litigation Fund ........................................................................ 6

1.49.    Exculpated Parties .............................................................................. 6

1.50.    File or Filed ......................................................................................... 6

1.51.    Final Distribution ................................................................................ 6

1.52.    Final Distribution Date ....................................................................... 6

1.53.    Final Order .......................................................................................... 6

1.54.    Final Tax Day ...................................................................................... 7

1.55.    General Unsecured Claim .................................................................... 7

1.56.    GUC Sharing Formula ........................................................................ 7

1.57.    Impaired ............................................................................................. 7

1.58.    Initial Distribution Date ...................................................................... 7

1.59.    Interest ............................................................................................... 7

1.60.    Interest Holder .................................................................................... 7

1.61.    Interim Cash Collateral Orders ........................................................... 7

1.62.    IRC ...................................................................................................... 7

49282315;5

1.63.    Lien .................................................................................................................. 7

1.64.    Litigation Claims ........................................................................................... 7

1.65.    Litigation Recoveries .................................................................................... 8

1.66.    Litigation Trust .............................................................................................. 8

1.67.    Litigation Trust Agreement ........................................................................... 8

1.68.    Litigation Trustee .......................................................................................... 8

1.69.    Non-Title Property Claims ............................................................................ 8

1.70.    Ownership Reserve ........................................................................................ 8

1.71.    Person ............................................................................................................ 8

1.72.    Petition Date .................................................................................................. 8

1.73.    Plan ................................................................................................................ 9

1.74.    Plan Documents ............................................................................................. 9

1.75.    Plan Support Agreement ................................................................................ 9

1.76.    Plan Term Sheet ............................................................................................ 9

1.77.    Prepetition Obligations .................................................................................. 9

1.78.    Priority Claim ................................................................................................ 9

1.79.    Priority Tax Claim ......................................................................................... 9

1.80.    Priority Reserves ........................................................................................... 9

1.81.    Professional ................................................................................................... 9

1.82.    Professional Claim ........................................................................................ 9

1.83.    Proof of Claim ............................................................................................... 9

1.84.    Proof of Interest ............................................................................................ 9

1.85.    Released Claims ............................................................................................ 9

1.86.    Releasees ..................................................................................................... 10

1.87.    Releasors ..................................................................................................... 10

1.88.    Retained Causes of Action .......................................................................... 10

1.89.    Scheduled .................................................................................................... 10

1.90.    Schedules ..................................................................................................... 10

1.91.    Secured Claim .............................................................................................. 10

1.92.    Secured Credit/Lease Documents ............................................................... 10

1.93.    Secured Parties ............................................................................................ 10

1.94.    Secured Party Claims .................................................................................. 10

1.95.    Secured Party Releasees .............................................................................. 11

1.96.    Settlement Agreement .................................................................................. 11

iii

1.97.    Solicitation Materials ........................................................................... 11

1.98.    Solicitation Motion .............................................................................. 11

1.99.    Supporting Parties ............................................................................... 11

1.100.   Title Property ...................................................................................... 11

1.101.   Title Property Claims .......................................................................... 11

1.102.   Transfer ............................................................................................... 11

1.103.   Trust Assets ......................................................................................... 11

1.104.   Uniform Procedures Order .................................................................. 11

1.105.   Unimpaired .......................................................................................... 11

1.106.   United States Trustee .......................................................................... 11

C.    Rules of Interpretation ......................................................................... 11

D.    Computation of Time ............................................................................ 12

ARTICLE 2 TREATMENT OF UNCLASSIFIED CLAIMS ...................................... 12

2.1.    Administrative Claims ......................................................................... 12

2.2.    Statutory Fees ...................................................................................... 13

2.3.    Professional Claims ............................................................................ 13

2.4.    Deadline for Filing Administrative Claims ......................................... 13

2.5.    Priority Tax Claims ............................................................................. 14

2.6.    Other Priority Claims .......................................................................... 14

2.7.    503(b)(9) Claims ................................................................................. 14

2.8.    Title Property Claims .......................................................................... 15

ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
INTERESTS ................................................................................................ 16

3.1.    General ................................................................................................ 16

3.2.    Classification ....................................................................................... 16

ARTICLE 4 IDENTIFICATION OF CLASSES OF CLAIMS AND  INTERESTS
IMPAIRED AND NOT IMPAIRED BY THE PLAN .............................. 17

4.1.    Unimpaired Classes of Claims and Interests ...................................... 17

4.2.    Impaired Classes of Claims and Interests ........................................... 17

ARTICLE 5 PROVISIONS FOR THE TREATMENT OF IMPAIRED CLAIMS AND
INTERESTS ................................................................................................ 17

A.    Summary. ............................................................................................. 17

B.    Classification and Treatment. .............................................................. 17

5.1.    Class 1 (Miscellaneous Secured Claims) ............................................ 18

5.2.    Class 2 (Priority Non-Tax Claims) ...................................................... 18

iv

5.3.    Class 3 (Secured Party Claims)..................................................................... 18

5.4.    Class 4 (General Unsecured Claims). ............................................................ 18

5.5.    Class 5 (Convenience Claims) ...................................................................... 19

5.6.    Class 6 (Intercompany) ................................................................................. 19

5.7.    Class 7 (Subordinated Claims)...................................................................... 19

5.8.    Class 8 (Intercompany Interests and Interests in Miami Metals I, Inc. and Miami Metals II, Inc.)............................................................................................... 19

5.9.    Reservation of Right to Cramdown Objecting Classes.................................. 20

5.10.   Reservation of Rights to Object to Claims or Interests................................. 20

5.11.   No Interference with Intercreditor Agreements ........................................... 20

ARTICLE 6 TREATMENT OF EXECUTORY CONTRACTS .....................................20

6.1.    Rejection ....................................................................................................... 20

6.2.    Assumption and Cure.................................................................................... 20

6.3.    Approval of Rejection; Rejection Damages Claims Bar Date ....................... 21

6.4.    Insurance ...................................................................................................... 21

ARTICLE 7 SUBSTANTIVE CONSOLIDATION OF THE DEBTORS........................21

ARTICLE 8 MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ..........22

8.1.    The Litigation Trust ...................................................................................... 22

8.2.    Dismissal of RTMM and Republic Shanghai Chapter 11 Cases .................. 23

8.3.    Termination of the Debtors ........................................................................... 23

8.4.    Closing of the Chapter 11 Cases ................................................................. 23

ARTICLE 9 POST-CONFIRMATION LITIGATION .................................................24

9.1.    Transfer and Enforcement of Causes of Action............................................ 24

9.2.    Objections to Claims...................................................................................... 24

9.3.    Disallowance of Claims ................................................................................. 24

9.4.    Compromise and Settlement of Claims and Retained Causes of Action................. 24

ARTICLE 10 DISTRIBUTIONS ..............................................................................24

10.1.   Delivery of Distributions in General............................................................. 24

10.2.   Cash Payments .............................................................................................. 25

10.3.   Interest on Claims .......................................................................................... 25

10.4.   No De Minimis Distributions ......................................................................... 25

10.5.   Face Amount .................................................................................................. 25

10.6.   Undeliverable Distributions ........................................................................... 25

10.7.   Interim Distributions ...................................................................................... 25

10.8.   Final Distribution ........................................................................................... 25

| | | |
|---|---|---|
| 10.9. | Disputed Claims Reserves | 26 |
| 10.10. | Compliance with Tax Requirements | 26 |
| ARTICLE 11 CONDITIONS PRECEDENT | | 26 |
| 11.1. | Conditions to Confirmation | 26 |
| 11.2. | Conditions to the Effective Date | 26 |
| 11.3. | Termination of Plan for Failure to Become Effective | 26 |
| 11.4. | Waiver of Conditions | 26 |
| 11.5. | Notice of Effective Date | 26 |
| ARTICLE 12 EFFECT OF CONFIRMATION | | 27 |
| 12.1. | Jurisdiction of Court | 27 |
| 12.2. | Binding Effect | 27 |
| 12.3. | Exculpation | 27 |
| 12.4. | Injunction; Bar Order | 27 |
| 12.5. | RTMM Injunction. | 28 |
| 12.6. | Secured Party Release. | 28 |
| 12.7. | Limitation of Liability | 29 |
| 12.8. | Cancellation and Release of Existing Indebtedness and Liens | 29 |
| ARTICLE 13 RETENTION OF JURISDICTION | | 29 |
| 13.1. | Ongoing Bankruptcy Court Jurisdiction | 29 |
| ARTICLE 14 ACCEPTANCE OR REJECTION OF THE PLAN | | 32 |
| 14.1. | Persons Entitled to Vote | 32 |
| 14.2. | Acceptance by Impaired Classes | 32 |
| 14.3. | Acceptance by Impaired Interests | 32 |
| 14.4. | Presumed Acceptances by Unimpaired Classes | 32 |
| 14.5. | Summary of Classes Voting on the Plan | 32 |
| 14.6. | Impaired Classes | 32 |
| ARTICLE 15 MISCELLANEOUS PROVISIONS | | 32 |
| 15.1. | Modification of Plan | 32 |
| 15.2. | Revocation of the Plan | 32 |
| 15.3. | Governing Law | 32 |
| 15.4. | No Admissions | 33 |
| 15.5. | Severability of Plan Provisions | 33 |
| 15.6. | Successors and Assigns | 33 |
| 15.7. | Preservation of Rights of Setoffs | 33 |

15.8.    Preservation of Rights And Defenses ........................................................ 33

15.9.    No Injunctive Relief............................................................................... 34

15.10.   Non-Business Day .................................................................................. 34

15.11.   Entire Agreement.................................................................................... 34

15.12.   Notices ................................................................................................... 34

49282315;5

## **SCHEDULES**

The Debtors will file a supplement to the Plan (the "Plan Supplement") no later than ten (10) days prior to the deadline to vote to accept or reject the Plan.  The Plan Supplement will include the Schedules listed below.  The Debtors reserve the right to add or remove any Schedule to or from the Plan Supplement.

| | |
|---|---|
| Schedule 1 | Litigation Trust Agreement for the Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), Miami Metals II, Inc. (f/k/a Republic Metals Corporation), Miami Metals III LLC (f/k/a Republic Carbon Company), Miami Metals IV LLC (f/k/a J & L Republic LLC), Miami Metals V LLC (f/k/a R & R Metals, LLC), Miami Metals VI LLC (f/k/a RMC Diamonds, LLC), Miami Metals VII LLC (f/k/a RMC2, LLC), and Miami Metals VIII LLC (f/k/a Republic High Tech Metals, LLC). |
| Schedule 2 | Assumed Executory Contracts and Unexpired Leases |
| Schedule 3 | Retained Causes of Action |

49282315;5

**INTRODUCTION**

Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), Miami Metals II, Inc. (f/k/a Republic Metals Corporation), Miami Metals III LLC (f/k/a Republic Carbon Company), Miami Metals IV LLC (f/k/a J & L Republic LLC), Miami Metals V LLC (f/k/a R & R Metals, LLC), Miami Metals VI LLC (f/k/a RMC Diamonds, LLC), Miami Metals VII LLC (f/k/a RMC2, LLC), Miami Metals VIII LLC (f/k/a Republic High Tech Metals, LLC), Republic Metals Trading (Shanghai) Co., Ltd., and Republic Trans Mexico Metals, S.R.L., as debtors and debtors-in-possession (collectively, the "Debtors") in the above-referenced jointly-administered Chapter 11 Cases, propose this Joint Chapter 11 Plan of Liquidation (the "Plan") for the resolution and satisfaction of all Claims against and Interests in the Debtors. The Debtors are the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. All capitalized terms not defined in this introduction have the meanings ascribed to them in Article 1 of this Plan. Reference is made to the Joint Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, resolution of material disputes, significant asset sales, financial projections for the liquidation and distribution of the Debtors' remaining assets and a summary and analysis of the Plan and certain related matters.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from holders of claims and/or interests until such time as the Disclosure Statement has been approved by the Bankruptcy Court. The Debtors urge all holders of Claims and Interests entitled to vote on this Plan to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. To the extent, if any, that the Disclosure Statement is inconsistent with this Plan, this Plan will govern. No solicitation materials other than the Disclosure Statement and any schedules and exhibits attached thereto or referenced therein, or otherwise enclosed with the Disclosure Statement served by the Debtors on interested parties, or as otherwise ordered by the Bankruptcy Court, have been authorized by the Debtors or the Bankruptcy Court for use in soliciting acceptances of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Federal Bankruptcy Rule 3019 and Article 15 of this Plan, the Debtors expressly reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ARTICLE 1**
**DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION**

**A.    Scope of Definitions**. For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 1 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, respectively. Whenever the context requires, capitalized terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.    Definitions**. In addition to such other terms as are defined in other Sections of this Plan, the following terms (which appear in this Plan as capitalized terms) shall have the meanings ascribed to them in this Article 1 of this Plan.

**1.1.** **503(b)(9) Claim**. A claim asserted pursuant to section 503(b)(9) of the Bankruptcy Code.

**1.2.** **503(b)(9) Fund**. The $2,000,000 reserve for Allowed 503(b)(9) Claims funded by the Secured Parties on the Plan Effective Date.

**1.3.** **Administrative Claim**. A Claim for any cost or expense of administration (including Professional Claims) of the Chapter 11 Cases asserted or arising under sections 503, 507(a)(1), or 507(b) of the Bankruptcy Code, including any (i) actual and necessary cost or expense of preserving the Debtors' Estates arising on or after the Petition Date, (ii) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under section 330(a) or section 331 of the Bankruptcy Code, (iii) compensation or reimbursement for actual, necessary expenses in making a substantial contribution in the Chapter 11 Cases, and (iv) fees or charges assessed against the Debtors' Estates under section 1930 of title 28 of the United States Code**; provided, however, that Administrative Claims shall not include 503(b)(9) Claims.**

**1.4.** **Administrative Claims Bar Date**. The Administrative Claims Bar Date shall be the date that is thirty (30) days after the Effective Date.

**1.5.** **Adequate Protection Liens**. The meaning set forth in the Cash Collateral Order.

**1.6.** **Adequate Protection Superpriority Claims**. The meaning set forth in the Cash Collateral Order.

**1.7.** **Allowed _____ Claim or Allowed Class _____ Claim**. A Claim of the type specified or in the Class specified that is also an Allowed Claim (*e.g.*, an Allowed Class 3 Claim is a Claim classified in Class 3 that is also an Allowed Claim).

**1.8.** **Allowed Claim or Allowed Interest**. A Claim against or Interest in the Debtors or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no Proof of Claim or Interest has been filed with the Bankruptcy Court and (ii) the liquidated amount of which is Scheduled, other than a Claim that is Scheduled at zero or marked as contingent or disputed, or (c) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the applicable periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court sought pursuant to Article 9.2 of this Plan or otherwise entered by the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in this Plan. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" or "Allowed Interest" shall not include interest, fees (including but not limited to late charges and attorneys' fees), or penalties on such Claim or Interest accruing after the Petition Date; provided that, no Claim shall be an Allowed Claim if it is subject to disallowance in accordance with section 502(d) of the Bankruptcy Code and this Plan.

**1.9.** **Asahi**. Asahi Refining Florida Inc., a Delaware corporation.

2

**1.10.    Asahi Sale Order**.  The Order (A) Approving Sale of Substantially All of Debtors' Assets "Free and Clear" of All Liens, Claims, Encumbrances and Other Interests, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [Doc. No. 658].

**1.11.    Assets**.  All legal or equitable pre-petition and post-petition interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, causes of actions, and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

**1.12.    Assigned Claims**.  All Causes of Action that any Secured Party may have against any employee, director, officer, agent, auditor, accountant, "insider" (as defined in Section 101(31) of the Bankruptcy Code) or any other person or entity that was employed by or provided professional services to the Debtors, arising out of or relating in any way to the Secured Parties relationship or transactions with the Debtors, including without limitation, the Secured Parties' respective claims asserted in the complaint dated February 1, 2019 filed in the US District Court for the Southern District of Florida, Case No. 19-20429-cv-Williams, against Lindsey Rubin, but not including any claims of the Secured Parties against Rose Rubin under (i) that certain Limited Guaranty Agreement, dated as of August 31, 2018, made by Rose Rubin in favor of the Secured Parties or (ii) that certain Forbearance Agreement, dated as of August 7, 2018, among the Senior Lenders and Republic Metals Corporation, as amended.

**1.13.    Assigned Proceeds of Auditor Claims**.  The Estate's portion of the net proceeds of any Auditor/Lender Claim pursuant to the Auditor Claim Waterfall.

**1.14.    Auditor/Lender Claim**.  Any rights, claims, and causes of action that Secured Parties have or may have against Maria I. Machado, P.A., Maria Machado, Crowe LLP and EisnerAmper LLP that arise out of or relate in any way to the Secured Parties relationship or transactions with the Debtors.

**1.15.    Auditor Claim Waterfall**.  Subject to any reasonable agreement with respect to a contingency fee, the net proceeds of any Auditor/Lender Claim shall be distributed (i) first, 100% to the Secured Parties until the Secured Parties receive $2,000,000; (ii) second, 50% to the Secured Parties and 50% to the Debtors' estates until the Secured Parties receive an additional $5,500,000; and (iii) third, 100% to the Debtors' estates.

**1.16.    Ballot**.  The form or forms distributed to each holder of an impaired Claim or Interest entitled to vote on this Plan, on which the holder indicates acceptance or rejection of this Plan and, where applicable, any election for treatment of such Claim or Interest under this Plan.

**1.17.    Bankruptcy Code**.  Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases.

**1.18.    Bankruptcy Court**.  The United States Bankruptcy Court for the Southern District of New York and, to the extent it may exercise jurisdiction in the Chapter 11 Cases, the United

States District Court for the Southern District of New York, or if either such court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that properly exercises jurisdiction over the Chapter 11 Cases.

**1.19.    Bankruptcy Rules**.    The Federal Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the Southern District of New York, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Cases.

**1.20.    Bar Date**. The deadline for filing and serving upon the Debtors all Proofs of Claim established by the Bankruptcy Court pursuant to the March 1, 2019 Order [Doc. No. 694] granting the Debtors' Motion for Order Setting Deadlines for Filing Proofs of Claim filed on January 31, 2019 [Doc No. 554].

**1.21.    Bankruptcy Estates or Estates.**    The estates created pursuant to section 541 of the Bankruptcy Code by the commencement of the Chapter 11 Cases of the Debtors.

**1.22.    Business Day**. Any day other than a Saturday, Sunday, or a "legal holiday" in the State of New York (as such term is defined in Bankruptcy Rule 9006(a)).

**1.23.    Carbon Orders**. The orders at Doc. Nos. 576, 574, 599 and 632.

**1.24.    Cash**. Legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars, including but not limited to, checks, bank deposits, or other similar items.

**1.25.    Cash Collateral Order**.    Any order authorizing the use of cash collateral in the Chapter 11 Cases, including but not limited to the Orders at Doc. Nos. 54, 277, 372, 538, 675, 864, 987, 1160, and 1237.

**1.26.    Cause of Action**. All claims, choses in action and causes of action, suits, debts, sums of money, damages, demands, and judgments, whether known or unknown, as well as any Cash and non-Cash proceeds thereof.

**1.27.    Chapter 11 Cases**. The Chapter 11 bankruptcy cases of the Debtors pending in the United States Bankruptcy Court for the Southern District of New York.

**1.28.    Claim.**    A right of a Creditor or Investor against the Debtors, whether or not asserted or allowed, of the type described in Bankruptcy Code section 101(5), as construed by Bankruptcy Code section 102(2).

**1.29.    Class**. A group of Claims or Interests as classified in a particular class under this Plan pursuant to Bankruptcy Code section 1122.

**1.30.    Collateral**. Any property or interest in property of the Debtors subject to a Lien to secure payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.31.    Committee**. The Official Committee of Unsecured Creditors.

**1.32.   Committee Members**.  Bayside Metal Exchange, Coeur Rochester, Inc. c/o Coeur Mining, Inc., Cyber-Fox Trading, Inc., Minera Real de Ora S.A. de C.V., Minera Triton Argentina S.A., Pyropure Inc., and So Accurate Group Inc.

**1.33.   Confirmation**.  Entry of the Confirmation Order by the Bankruptcy Court.

**1.34.   Confirmation Date**.   The date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.35.   Confirmation Hearing**.  The duly noticed hearing held by the Bankruptcy Court to consider Confirmation of this Plan pursuant to Bankruptcy Code section 1128, including any continuances thereof.

**1.36.   Confirmation Order**.  The order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129 in form and substance acceptable to the Debtors.

**1.37.   Convenience Claim**.  Any Claim (i) in an amount no greater than $2,500, or (ii) in an amount no greater than $20,000 which has been voluntarily reduced to $2,500 by the holder thereof pursuant to an election made on such holder's Ballot or any other agreement in writing.

**1.38.   Creditor**.  Any Entity who holds a Claim against any of the Debtors.

**1.39.   CRO**.  Scott Avila, in his capacity as Chief Restructuring Officer of the Debtors, whose appointment was approved by the Bankruptcy Court on December 4, 2018 at Doc. No. 245, as expanded by the Order entered on May 2, 2019 at Doc. No. 984.

**1.40.   Debtors**.  Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), Miami Metals II, Inc. (f/k/a Republic Metals Corporation), Miami Metals III LLC (f/k/a Republic Carbon Company), Miami Metals IV LLC (f/k/a J & L Republic LLC), Miami Metals V LLC (f/k/a R & R Metals, LLC), Miami Metals VI LLC (f/k/a RMC Diamonds, LLC), Miami Metals VII LLC (f/k/a RMC2, LLC), Miami Metals VIII LLC (f/k/a Republic High Tech Metals, LLC), Republic Metals Trading (Shanghai) Co., Ltd., and Republic Trans Mexico Metals, S.R.L.

**1.41.   Disclosure Statement**.  That certain joint disclosure statement that relates to this Plan approved by the Bankruptcy Court in the Chapter 11 Cases.

**1.42.   Disputed Claim or Disputed Interest**.  A Claim or Interest, respectively, that the Debtors have Scheduled as "disputed," "contingent" or "unliquidated," or as to which a proof of Claim or Interest has been Filed or deemed Filed as contingent or as to which an objection has been or may be timely Filed by the Debtors, the CRO, the Secured Parties, the Official Committee of Unsecured Creditors, the Litigation Trustee, or any other party in interest entitled to do so, which objection has not been withdrawn or has not been overruled or denied by a Final Order.

**1.43.   Disputed Claims Reserve**.  Shall have the meaning set forth in the Litigation Trust Agreement.

**1.44.   Distribution**.  Payment to a Creditor or Interest Holder on account of an Allowed Claim.

49282315;5

**1.45.    Distribution Record Date**.    The record date for the purposes of making distributions under this Plan on account of Allowed Claims or Interests, which date shall be designated in the Confirmation Order.

**1.46.    Effective Date**.  A date selected by the CRO that is no more than five (5) Business Days following the first date on which no stay of the Confirmation Order is in effect and all conditions to the Effective Date set forth in Article 11 of this Plan have been satisfied or, if waivable, waived pursuant to Section 11.4 hereof.

**1.47.    Entity**.  A Person, an estate, a trust, the United States Trustee, a "governmental unit" as that term is defined in Bankruptcy Code section 101(27), or any other entity as defined in section 101(15) of the Bankruptcy Code.

**1.48.    Estate Litigation Fund**.  The funds provided by the Secured Parties for the funding of the Litigation Trust for the prosecution of claims against the Debtors' insiders, auditors and other third parties and the administration of the Litigation Trust pursuant to the Settlement Agreement.

**1.49.    Exculpated Parties**.    The (i) Debtors and their past or present employees (including, without limitation, the CRO, but specifically excluding any and all other current or former officers or directors of the Debtors); (ii) Akerman LLP and its partners, counsel, associates, and employees; (iii) Armory Strategic Services and its affiliates, agents, officers, directors, employees, successors, and assigns; (iv) Paladin Management Group, LLC and its affiliates, agents, officers, directors, employees, successors, and assigns; (v) the Committee; (vi)  the Committee Members and their respective affiliates, managers, members, employees, attorneys, successors and assigns; (vii) Cooley LLP and its partners, counsel, associates, and employees; (viii) CBIZ, Inc. and CBIZ Accounting, Tax, and Advisory of New York, LLC, and their affiliates, agents, officers, directors, employees, successors, and assigns; (ix) Luskin, Stern & Eisler LLP and its partners, counsel, associates, and employees; (x) the Secured Parties and their respective affiliates, managers, and members (and any trustees, partners, affiliates, agents, managers and members of any of the Secured Parties), agents, employees, attorneys, successors and assigns; and (xi) RPA Advisors, and its affiliates, agents, officers, directors, employees, successors, and assigns.

**1.50.    File or Filed**.  To file, or to have been filed, with the Clerk of the Bankruptcy Court in the Chapter 11 Cases.

**1.51.    Final Distribution**.  Shall be the distributions described in Section 10.8 hereof.

**1.52.    Final Distribution Date**.  Shall be the date upon which the Final Distribution is made.  The Final Distribution Date shall be a date determined by the Litigation Trustee of the Litigation Trust, (a) which is after the liquidation into Cash of all assets of the Litigation Trust (other than those assets abandoned by the Litigation Trust) and collection of other sums due or otherwise remitted or returned to the Estates, and (b) on or after which the Litigation Trust makes a Final Distribution from the Disputed Claims Reserve.

**1.53.    Final Order**.  An order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on its docket, that has not been reversed, stayed, modified or

amended, and as to which (a) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such order under Rule 9024 of the Bankruptcy Rules, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 14 days after the entry of such order), or (b) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the order or judgment) to which the order or judgment was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken.

**1.54.    Final Tax Day**.  The last day in the taxable year of the Litigation Trust which includes the Termination Date (as defined in the Litigation Trust Agreement).

**1.55.    General Unsecured Claim**.  Any Claim against the Debtors that is not an Administrative Claim, 503(b)(9) Claim, Secured Claim, Professional Claim, Priority Tax Claim, or Priority Claim.

**1.56.    GUC Sharing Formula**.  Has the meaning set forth in Section 2.7 hereof.

**1.57.    Impaired**.  When used with reference to a Claim or an Interest, "Impaired" shall have the meaning ascribed to it in Bankruptcy Code section 1124.

**1.58.    Initial Distribution Date**.  The first date upon which the Litigation Trustee makes a Distribution from the Litigation Trust.

**1.59.    Interest**.  An issued or authorized outstanding membership unit or other equity interest in the Debtors or the Litigation Trust.

**1.60.    Interest Holder**.  A holder of an Interest.

**1.61.    Interim Cash Collateral Orders**.  The interim cash collateral orders at Doc. Nos. 54, 277, 372, 538, 675, 864, 987, 1160, and 1237.

**1.62.    IRC**.  The Internal Revenue Code of 1986, as amended from time to time.

**1.63.    Lien**.  A charge against, interest in or other encumbrance upon property to secure payment of a debt or performance of an obligation.

**1.64.    Litigation Claims**.  Except as provided otherwise herein or in the Confirmation Order, or any document, instrument, release or other agreement entered into in connection with this Plan, all claims, demands, actions, choses in action, Causes of Action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, any Chapter 5 avoidance or recovery actions under the Bankruptcy Code or avoidance or recovery claims recognized under any applicable state law) whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured

49282315;5

and whether assertable directly or derivatively in law, equity, or otherwise, that are or may be pending on the Effective Date or instituted after the Effective Date based on law or equity by the Debtors or their estates. Litigation Claims include, without limitation, those which are: (i) property of the Bankruptcy Estates under and pursuant to section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover including pursuant to section 542 of the Bankruptcy Code; (iv) for avoidable transfers and preferences under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code or any applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under section 506(c) of the Bankruptcy Code; (vii) for subordination under section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for breach of fiduciary duty or aiding and abetting breach of fiduciary duty; (xi) for theft of corporate opportunity; (xii) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xiii) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code; (xiv) which arise under or as a result of any section of the Bankruptcy Code; (xv) for common law torts or aiding and abetting common law torts; (xvi) contract or quasi contract; (xvii) derivative based; (xviii) statutory claims; (xix) arise out of or are related in any way to actions or claims pending as of the Effective Date; (xx) for negligence including professional negligence; (xxi) for unjust enrichment; (xxii) to disallow or subordinate any proof of claim filed in the Chapter 11 Cases; (xxiii) to recover an avoidable transfer from any mediate or subsequent transferee; or (xxiv) any claim held or assertable by either the Debtors' estates or Litigation Trustee.

**1.65.  Litigation Recoveries**.  The Assigned Proceeds of Auditor Claims plus the net proceeds of (a) the Assigned Claims and (b) Retained Causes of Action.

**1.66.  Litigation Trust**.  The liquidating trust established pursuant to the Litigation Trust Agreement.

**1.67.  Litigation Trust Agreement**.  The Miami Metals Litigation Trust Agreement, the form of which will filed with the Plan Supplement as Schedule 1.

**1.68.  Litigation Trustee**.  The trustee of the Litigation Trust.

**1.69.  Non-Title Property Claims**.  Claim asserted pursuant to a proof of claim filed by the holder of a Title Property Claim, which is based on the same conduct or transaction(s) underlying the holder's Title Property Claim.

**1.70.  Ownership Reserve**.  The reserve comprised of the proceeds generated from the sales of the Title Property.

**1.71.  Person**.  An individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization, or a governmental unit as defined in Bankruptcy Code section 101(41).

**1.72.  Petition Date**.  November 2, 2018 or November 21, 2018, as applicable.

49282315;5

**1.73.    Plan**.  This plan of liquidation, and all schedules annexed hereto or referenced herein, as it may be amended, modified or supplemented from time to time in accordance with the provisions of this Plan or the Bankruptcy Code and Bankruptcy Rules.

**1.74.    Plan Documents**.  All documents related to the Plan.

**1.75.    Plan Support Agreement**.  That certain agreement dated on or about May 22, 2019 by and among the Debtors, Secured Parties, Committee, and Committee Members, and attached as Schedule 1 to Exhibit A to the Debtors' Motion for Entry of an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement [ECF No. 1121].

**1.76.    Plan Term Sheet**.  The term sheet attached as Exhibit A to the Plan Support Agreement.

**1.77.    Prepetition Obligations**.  The obligations under the Secured Credit/Lease Documents.

**1.78.    Priority Claim**.  Any pre-petition claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than Administrative Claims, Priority Tax Claims, and 503(b)(9) Claims.

**1.79.    Priority Tax Claim**.  Any pre-petition claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.80.    Priority Reserves**.  Has the meaning set forth in Section 8.1.4.

**1.81.    Professional**.  A Person (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with section 156, 327, 328, or 363 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 156, 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.82.    Professional Claim**.  A Claim of (a) a Professional retained in the Chapter 11 Cases pursuant to a Final Order in accordance with section 156, 327, 328, or 363 of the Bankruptcy Code or otherwise, for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date or (b) a Professional which seeks compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.83.    Proof of Claim**.  Any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

**1.84.    Proof of Interest**.  Any proof of interest filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rule 3002.

**1.85.    Released Claims**.  Any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights existing as of the

49282315;5

Effective Date related in any way to the Debtors, the Prepetition Obligations, the Prepetition Liens, the Prepetition Collateral or the Secured Credit/Lease Documents or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity.

**1.86.    Releasees**. (i) The Debtors, (ii) the CRO, Armory, and Paladin, and Armory and Paladin's past or present employees; (iii) Akerman LLP and its partners, counsel, associates, and employees; (iv) the Committee; (v) the Committee Members and their respective affiliates, managers, members, employees, attorneys, successors and assigns; (vi) Cooley LLP and its partners, counsel, associates, and employees; (vii) CBIZ, Inc. and CBIZ Accounting, Tax, and Advisory of New York, LLC and their past or present employees; and (viii) the Secured Party Releasees; for the avoidance of doubt, other than the CRO, no current or former officers or directors of the Debtors are Releasees.

**1.87.    Releasors**.    Each Creditor and Interest Holder, including such entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals.

**1.88.    Retained Causes of Action**.    Any Cause of Action not released by Debtors, including but not limited to all Litigation Claims and any Cause of Action listed on Schedule of Retained Causes of Action included in the Plan Supplement.

**1.89.    Scheduled**.    Set forth on the Schedules.

**1.90.    Schedules**.    The Schedules of Assets and Liabilities Filed by the Debtors in accordance with Bankruptcy Code section 521 and Bankruptcy Rule 1007, as the same may be amended from time to time prior to the Effective Date in accordance with Bankruptcy Rule 1009.

**1.91.    Secured Claim**.    A Claim secured by a Lien on Collateral which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy laws.  A Secured Claim which is challenged by the Litigation Trustee shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in this Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**1.92.    Secured Credit/Lease Documents**.    The Credit and Lease Agreements and any and all related collateral and security documents, guarantees and other loan documents.

**1.93.    Secured Parties**.    Coöperatieve Rabobank U.A., New York Branch, Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi International Corporation, ICBC Standard Bank Plc, Techemet Metal Trading LLC, Woodforest National Bank, Bank Leumi USA, and including their transferees and successors in interest, including but not limited to Hain Capital Investors Master Fund, Ltd.

**1.94.    Secured Party Claims**.    The pre-Petition Date Claims of the Secured Parties against the Debtors, which were not less than $177,354,662.88 as of the Petition Date.

10

**1.95.   Secured Party Releasees**.  The Secured Parties and their respective predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, financial advisors, attorneys, accountants, consultants, representatives and other professionals (in their respective capacities as such).

**1.96.   Settlement Agreement**.  That certain Settlement Agreement, dated as of May 23, 2019, by and among the Debtors, the Committee, and the Secured Parties.

**1.97.   Solicitation Materials**.  The materials related to the solicitation of votes to accept or reject the Plan, as approved by the Bankruptcy Court.

**1.98.   Solicitation Motion**.  The motion to approve the Disclosure Statement and the Solicitation Materials.

**1.99.   Supporting Parties**.  The Secured Parties, Committee, Bayside Metal Exchange, Coeur Rochester, Inc. c/o Coeur Mining, Inc., Cyber-Fox Trading, Inc., Minera Real de Ora S.A. de C.V., Pyropure Inc., and So Accurate Group Inc.

**1.100.  Title Property**.  Precious metal or the proceeds thereof in the possession of the Debtors.

**1.101.  Title Property Claims**.  Claims by entities to ownership of Title Property asserted pursuant to the Uniform Procedures Order.

**1.102.  Transfer**.  To sell, use, assign, transfer or otherwise dispose of.

**1.103.  Trust Assets**.  The Estate Litigation Fund, 503(b)(9) Fund, the Retained Causes of Action, the Assigned Claims, the Assigned Proceeds of Auditor Claims, the Ownership Reserve, and the Priority Reserve, together with any and all income earned on and proceeds of such assets, and any and all other assets of the Debtors that have not been abandoned.

**1.104.  Uniform Procedures Order**.  That certain Second Amended Order Approving Uniform Procedures for the Resolution of Ownership Disputes, as amended from time to time [Doc. No. 1056].

**1.105.  Unimpaired**.  When used with reference to a Claim or an Interest, "Unimpaired" shall have the meaning ascribed to it in Bankruptcy Code section 1124.

**1.106.  United States Trustee**.  The United States Trustee appointed under section 581 (a)(3) of title 28 of the United States Code to serve in the Southern District of New York.

**C.   Rules of Interpretation**.

1.      In the event of an inconsistency, the provisions of this Plan shall control over the contents of the Disclosure Statement or the Litigation Trust Agreement.  The provisions of the Confirmation Order shall control over the contents of this Plan.

2.      For the purposes of this Plan.

49282315;5

(a)      any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms or conditions that is material to a party to such document shall not be modified without (i) such party's consent or (ii) upon order of the Bankruptcy Court, unless such document expressly provides otherwise;

(b)      any reference in this Plan to an existing document, exhibit or schedule Filed or to be Filed means such document, exhibit or schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c)      unless otherwise specified, all references in this Plan to "Sections," "Articles," and "Schedules" are references to Sections, Articles, and Schedules of or to this Plan;

(d)      the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan;

(e)      captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect interpretations of this Plan;

(f)      the rules of construction set forth in Bankruptcy Code section 102 shall apply, except to the extent inconsistent with the provisions of this Article of this Plan; and

(g)      the word "including" means "including without limitation."

3.      Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as reasonably practicable thereafter.

4.      All Schedules to this Plan are incorporated into this Plan and shall be deemed to be included in this Plan, regardless of when they are Filed.

5.      Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

**D.      Computation of Time**.

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.      Administrative Claims**.  No Administrative Expense shall receive a distribution under this Plan except to the extent that it is an Allowed Administrative Expense.  Except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment, or as otherwise set forth in this Plan, and subject to the Administrative Expenses Bar Date set forth in

49282315;5

the Section 2.4, the Litigation Trustee shall pay each Allowed Administrative Expense in full, in Cash, on the later of (i) one (1) day following the Effective Date or a soon as practicable thereafter, (ii) within ten (10) Business Days after the date such Administrative Expense becomes an Allowed Administrative Expense, and (iii) the date such Allowed Administrative Expense becomes due according to its terms; *provided, however*, that Professional Claims shall be paid in accordance with Section 2.3. Notwithstanding the foregoing, any Allowed Administrative Expenses representing obligations incurred in the ordinary course of post-petition operation of the Litigation Trust (including without limitation post-petition trade obligations and post-petition payroll obligations, but excluding any post-petition tax obligations), or that have been expressly authorized by the Bankruptcy Court or this Plan, shall be paid in full or performed by the Litigation Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

Claims asserted pursuant to 11 U.S.C. § 503(b)(9) are not included as Administrative Claims and are being treated separately.

Pursuant to the Plan Support Agreement, the Secured Parties' Adequate Protection Superpriority Claims are not included as Administrative Claims, and are being disallowed, waived, and automatically cancelled as of the Effective Date along with the Adequate Protection Liens.

**2.2.    Statutory Fees**. The Debtors or the Litigation Trustee, on behalf of the Debtors, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days after the entry of the Effective Date for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the Cash disbursements for the relevant period. The Litigation Trustee shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. 1930(a)(6) based upon all disbursements of the Litigation Trust for post-confirmation periods within the time period set forth in 28 U.S.C. 1930(a)(6), until the earlier of the closing of the Chapter 11 Cases, or upon the entry of an order by the Bankruptcy Court dismissing the Chapter 11 Cases or converting the Chapter 11 Cases to another chapter under the Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the Cash disbursements for the relevant period.

**2.3.    Professional Claims**. Immediately prior to the Effective Date, the Debtors shall pay all amounts owing to the Professionals for all outstanding Professional Claims, as approved by the Bankruptcy Court. On or prior to the Administrative Claims Bar Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date, except that the United States Trustee shall not be required to file its claims by the Administrative Claims Bar Date. Professional Claims due for periods that have not been billed as of the Effective Date, shall be paid by the Litigation Trustee in the ordinary course of business.

**2.4.    Deadline for Filing Administrative Claims**. Other than with respect to Administrative Claims for which the Bankruptcy Court may have previously established a Bar Date, any and all requests for payment or proofs of Administrative Claims, including Claims of all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 363 for services rendered on or before

13

the Effective Date, must be Filed and served on the Litigation Trustee, his counsel, and the United States Trustee no later than the Administrative Claims Bar Date.  Except for with respect to Professional Claims, objections to any Administrative Claims must be Filed and served on the claimant no later than sixty (60) days after the Administrative Claims Bar Date, subject to further extensions by the Bankruptcy Court. The Litigation Trustee shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Claims.  In the event the Litigation Trustee is unable to resolve any of the disputed Administrative Claims, such unresolved disputes will be heard and determined by the Bankruptcy Court.

Objections to Professional Fee Claims must be filed no later than thirty (30) days after the Administrative Claims Bar Date.

The deadline for filing 503(b)(9) Claims was April 11, 2019, pursuant to the Bankruptcy Court's Order at ECF No. 690.

Holders of Administrative Claims, including all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, or 503(b) for services rendered on or before the Effective Date, that are required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the Debtors, their Estates, the Litigation Trust, the Litigation Trustee, any other Person or Entity, or any of their respective property.

**2.5.    Priority Tax Claims**.  Except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment, the Debtors shall pay each holder of an Allowed Priority Tax Claim the amount of such Allowed Priority Tax Claim in full, in Cash, on the Effective Date, or the Litigation Trustee shall pay each holder of an Allowed Priority Tax Claim in full, in Cash, no later than ten (10) Business Days after the date such Priority Tax Claim becomes Allowed. Allowed Priority Tax Claims shall not include any interest or penalties accruing subsequent to the Petition Date unless otherwise required by applicable law.  No Priority Tax Claim shall receive a distribution under this Plan except to the extent that it is an Allowed Priority Tax Claim.

**2.6.    Other Priority Claims**.  Except to the extent that the holder of an Allowed Priority Claim agrees to a different treatment, the Debtors shall pay each holder of an Allowed Priority Claim the amount of such Allowed Priority Claim in full, in Cash, on the Effective Date or Litigation Trustee shall pay each holder of an Allowed Priority Claim the amount of such Allowed Priority Claim in full, in Cash, no later than ten (10) Business Days after the date such Priority Claim becomes an Allowed Priority Claim.  No Priority Claim shall receive a distribution under this Plan except to the extent that it is an Allowed Priority Claim.

**2.7.    503(b)(9) Claims**.  On or as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date such 503(b)(9) Claim becomes an Allowed 503(b)(9) Claim, a Holder of an Allowed 503(b)(9) Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed 503(b)(9) Claim, (i) a *pro rata* distribution from the 503(b)(9) Fund and (ii) subject to the GUC Sharing Formula, a *pro rata* distribution of Litigation Recoveries.

Once holders of Allowed 503(b)(9) Claims recover 75% on account of their Allowed 503(b)(9) Claim(s), then until all Allowed 503(b)(9) Claims are paid in full, 75% of Litigation Recoveries shall be made available for distribution to Holders of Allowed 503(b)(9) claims and 25% of Litigation Recoveries shall be made available for distribution to Holders of Allowed General Unsecured Claims (the "GUC Sharing Formula").

**The failure to object to confirmation of the Plan by a Holder of an Allowed 503(b)(9) Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.**

**2.8.    Title Property Claims.** Title Property Claims will be treated as follows:

1)    When a Holder of a Title Property Claim has also filed a Proof of Claim against the Debtors' Estates based on the same conduct or transaction(s) underlying their Title Property Claim(s) (a "Non-Title Property Claim"), no distribution will be made on account of such Holder's Non-Title Property Claim(s) until the Title Property Claim is withdrawn, adjudicated by Final Order of the Bankruptcy Court, or resolved by the agreement of the parties and the Non-Title Property Claim becomes an Allowed Claim.

2)    A Holder of a Title Property Claim may waive or withdraw its Title Property Claim(s) at any time prior to the effective date of the Plan, in which case it will recover on account of its Allowed Non-Title Property Claim(s), including any Allowed 503(b)(9) claim or general unsecured claim, in the same manner and at the same time as other Holders of similarly-situated Allowed Claims.  If a Holder of a Title Property Claim elects to waive or withdraw its Title Property Claim(s) prior to the effective date of the Plan, all litigation with respect to its Title Property Claim (whether under the Uniform Procedures or otherwise) shall be deemed discontinued with prejudice, and the Secured Parties and the Debtors will waive any right they may have to seek to recover litigation expenses incurred by the Debtors and the Secured Parties in connection with such Title Property Claim.

3)    Upon entry of a Final Order determining that a Holder of a Title Property Claim holds title to all or a portion of such Title Property, or the agreement of the parties that a Holder of a Title Property Claim holds title to all or a portion of such Title Property (in each case, with respect to the portion of the Title Property to which such entity is determined to hold title, an "Allowed Title Property Claim Holder"), the Allowed Title Property Claim Holder shall receive its Title Property from the Ownership Reserve; provided, however, that an appropriate portion of the Title Property will be withheld from such recovery so as to satisfy the Holdback Amount (defined below) until such time as (i) the amounts held in the Ownership Reserve exceed the aggregate face amount of the outstanding Title Property Claims, or (ii) all Title Ownership Claims have been resolved by the parties or adjudicated pursuant to a final order.

4)    In the event that, at any time, the Ownership Reserve does not exceed the aggregate face amount of the Allowed Title Property Claims plus the remaining outstanding Title Property Claims, then each Allowed Title Property Claim Holder shall recover only a portion of their Title Property such that a sufficient amount of assets remain in the Ownership Reserve to ensure a *pro rata* distribution to all Holders of outstanding

Title Property Claims from the Ownership Reserve assuming that all outstanding Title Property Claims become Allowed Title Property Claims. The portion of any Title Property that is withheld from immediate distribution in accordance with the foregoing is defined as the "Holdback Amount" herein. A portion of the Holdback Amount will be distributed to Allowed Title Property Claim Holders on a periodic basis as Title Property disputes are resolved. Upon the final adjudication of all Title Property Claims, if the Ownership Reserve does not exceed the aggregate face amount of the Allowed Title Property Claims, then each Allowed Title Property Claim Holder shall recover their *pro rata* share of the Ownership Reserve.

5)    The Litigation Trust shall be granted standing to seek to surcharge the Title Property of an Allowed Title Property Claim Holder for the costs incurred by the Debtors' Estates in liquidating such Title Property for the benefit of such Holder (if any).

6)    Upon entry of a Final Order determining that a Holder of a Title Property Claim does not hold title to such Title Property, or if a Holder of a Title Property Claim elects at any time after the Plan effective date to waive or withdraw its Title Property Claim, such Holder will recover on account of any Allowed Non-Title Property Claim it may have against the Debtors' estates in the same manner as other Holders of similarly-situated Allowed Claims (retroactive to the Plan Effective Date).

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**3.1.    General**. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in the Debtors. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class. A Claim or Interest is also placed in a particular Class for purposes of receiving a distribution under this Plan, but only to the extent such Claim or Interest is an Allowed Claim or Interest and has not been paid, released, or otherwise settled prior to the Effective Date. Except as otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim shall not receive any payments, rights or distributions under this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and 503(b)(9) Claims have not been classified and are treated as set forth in Article 2 above.

**3.2.    Classification**.

| Class of Claim | Type of Claim | Impaired / Unimpaired | Voting / Non-Voting |
|---|---|---|---|
| 1 | Miscellaneous Secured Claims | Unimpaired | Non-Voting |
| 2 | Priority Non-Tax Claims | Unimpaired | Non-Voting |
| 3 | Secured Party Claims | Impaired | Voting |

49282315;5

| Class of Claim | Type of Claim | Impaired / Unimpaired | Voting / Non-Voting |
|---|---|---|---|
| 4 | General Unsecured Claims | Impaired | Voting |
| 5 | Convenience Claims | Impaired | Voting |
| 6 | Intercompany Claims | Impaired | Non-Voting (presumed to reject) |
| 7 | Subordinated Claims | Impaired | Non-Voting (presumed to reject) |
| 8 | Intercompany Interests and Interests in Miami Metals I, Inc. and Miami Metals II, Inc. | Impaired | Non-Voting (presumed to reject) |

## ARTICLE 4
## IDENTIFICATION OF CLASSES OF CLAIMS AND
## INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**4.1.    Unimpaired Classes of Claims and Interests**.  Claims in Classes 1 and 2 are Unimpaired under the Plan. Therefore, Classes 1 and 2 are conclusively deemed to accept the Plan and, thus, are not entitled to vote on it.

**4.2.    Impaired Classes of Claims and Interests**.  Classes 3, 4, and 5 are Impaired by virtue of section 1124 of the Bankruptcy Code.  Votes from holders of Class 3 Secured Party Claims, Class 4 General Unsecured Claims, and Class 4 Convenience Claims will be solicited. Votes of holders of Class 6, 7, and 8 will not be solicited because there will be no distribution to holders of such Claims (unless all prior Classes of Claims are paid in full), and holders of claims in Classes 6, 7, and 8 are deemed to have rejected the Plan.

## ARTICLE 5
## PROVISIONS FOR THE TREATMENT OF IMPAIRED CLAIMS AND INTERESTS

**A.    Summary.**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to this Plan.  Administrative Claims, 503(b)(9) Claims, and Priority Claims have not been classified and are excluded from the following Classes, in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class.

**B.    Classification and Treatment.**

**5.1.    Class 1 (Miscellaneous Secured Claims)**.  Class 1 consists of Miscellaneous Secured Claims.  On or as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date such Miscellaneous Secured Claim becomes an allowed Miscellaneous Secured Claim, a holder of an allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such allowed Miscellaneous Secured Claim, (a) cash equal to the value of such Allowed Miscellaneous Secured Claim, (b) a return of the holder's collateral securing the Miscellaneous Secured Claim, (c) such treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be rendered unimpaired or (d) such other treatment as to which such Holder and the Debtors or the Litigation Trust, as applicable, shall have agreed upon in writing.

**5.1.1.    Voting**.  Class 1 is Unimpaired and not entitled to vote to accept or reject the Plan.

**5.2.    Class 2 (Priority Non-Tax Claims)**.  On or as soon after the Effective Date as practicable, unless otherwise agreed to by the Debtors and the holder of an Allowed Priority Non-Tax Claim (in which event such other agreement will govern), each holder of an allowed Priority Non-Tax Claim against the Debtors shall receive on account of and in full and complete settlement, release and discharge of such claim, at the Debtors' or Litigation Trust's election, as applicable, (i) cash in the amount of such Allowed Priority Non-Tax Claim in accordance with section 1129(a)(9) of the Bankruptcy Code and/or (ii) such other treatment required to render such claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

**5.2.1.    Voting**.  Class 2 is Unimpaired and not entitled to vote to accept or reject the Plan.

**5.3.    Class 3 (Secured Party Claims)**.  Class 3 consists of Secured Party Claims.  On or as soon after the Effective Date as practicable, the Secured Parties shall receive on account of and in full and complete settlement, release and discharge of, their Allowed Secured Party Claim, their pro rata share of (i) the consideration previously provided under the Settlement Agreement and the Cash Collateral Orders, (ii) funds in the Ownership Reserve that exceed the aggregate face amount of outstanding Title Property Claims, and (iii) any unused portion of the Priority Reserves.

After giving effect to the foregoing distributions, any Allowed deficiency claim of the Secured Parties shall be treated as an Allowed General Unsecured Claim.

**5.3.1.    Voting**.  Class 3 is Impaired and entitled to vote to accept or reject the Plan.

**5.4.    Class 4 (General Unsecured Claims).**  Class 4 consists of General Unsecured Claims.  On the Effective Date, each holder of an allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed General Unsecured Claim, interests in the Litigation Trust ("Trust Units") commensurate with the dollar value of their Allowed General Unsecured Claims on a 1 Trust Unit per $1,000 in General Unsecured Claim amount.  Fractional Trust Units shall not be issued, and allowed General Unsecured Claims will be rounded up or down to the nearest whole Trust Unit.

Holders of Allowed General Unsecured Claims shall receive their *pro rata* share of Litigation Recoveries available after the payment in full of all Allowed 503(b)(9) Claims, except as provided for in the GUC Sharing Formula.

> **5.4.1.    Voting.** Class 4 is Impaired and is entitled to vote to accept or reject the Plan.

**5.5.    Class 5 (Convenience Claims)**. Class 5 consists of Convenience Claims (Claims (i) in an amount no greater than $2,500, or (ii) in an amount no greater than $20,000 which has been voluntarily reduced to $2,500 by the holder thereof pursuant to an election made on such holder's Ballot or any other agreement in writing). Each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim a distribution in cash equal to the lesser of (i) the amount of the Holder's Allowed Convenience Claim or (ii) $2,500,on the Initial Distribution Date for the Litigation Trust.

> **5.5.1.    Voting**. Class 5 is Impaired and is entitled to vote to accept or reject the Plan.

**5.6.    Class 6 (Intercompany)**. Class 6 consists of all Intercompany Claims. On the Effective Date, all Intercompany claims shall be deemed eliminated, cancelled and/or extinguished, except as otherwise provided for in the Plan.

> **5.6.1.    Voting**. Votes of holders of Class 6 Intercompany Claims will not be solicited because where will be no distribution to holders of such Claims, and holders of Class 6 claims are deemed to have rejected the Plan.

**5.7.    Class 7 (Subordinated Claims)**. Class 7 consists of all Subordinated Claims. On the Effective Date, all Subordinated claims shall be deemed eliminated, cancelled and/or extinguished and each holder thereof shall not be entitled to, and shall not receive or retain, any property under the Plan on account of such Subordinated Claims.

> **5.7.1.    Voting**. Votes of holders of Class 7 Subordinated Claims will not be solicited because where will be no distribution to holders of such Claims, and holders of Class 7 claims are deemed to have rejected the Plan.

**5.8.    Class 8 (Intercompany Interests and Interests in Miami Metals I, Inc. and Miami Metals II, Inc.)**. Class 8 consists of all Intercompany Interests and Interests in Miami Metals I, Inc. and Miami Metals II, Inc. On the Effective Date, all intercompany interests shall be cancelled except as otherwise provided in the Plan. On the Effective Date, all Interests in Miami Metals I, Inc. and Miami Metals II, Inc. shall be cancelled and each holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan on account of such interests.

> **5.8.1.    Voting**. Votes of holders of Class 8 Intercompany Interests and Interests in Miami Metals I, Inc. and Miami Metals II, Inc. will not be solicited because where will be no distribution to holders

19

of such Claims, and holders of Class 8 claims are deemed to have rejected the Plan.

**5.9.   Reservation of Right to Cramdown Objecting Classes**.  The Debtors reserve the right to seek to cramdown any Class of Claims that does not vote to confirm the Plan, pursuant to 11 U.S.C. § 1129(b).

**5.10.   Reservation of Rights to Object to Claims or Interests**.  Neither the Debtors nor the Litigation Trustee has reviewed the validity or amount of the Claims and Interests for which a Proof of Claim has been filed.  Accordingly, except as otherwise set forth herein, all rights to amend the Debtors' Schedules and to object to such Claims or Interests are reserved in favor of the Debtors and the Litigation Trustee, notwithstanding the right of the holder of such Claim or Interest to vote on this Plan.  The Litigation Trustee intends to file objections to filed proofs of claim within 90 days of the Effective Date of this Plan, but reserves the right to request a reasonable extension of that deadline from the Bankruptcy Court.

**5.11.   No Interference with Intercreditor Agreements**.  Nothing in this Plan is intended or shall be deemed to modify or alter the rights of any party relative to any other party under any intercreditor, subordination, or similar agreement governing their relative rights and priorities with respect to the Debtors or their assets, including, without limitation, the Intercreditor Agreement (as defined in the Cash Collateral Order).

## ARTICLE 6
## TREATMENT OF EXECUTORY CONTRACTS

**6.1.   Rejection**.  Except for (i) those executory contracts and unexpired leases set forth on Schedule 2 that are assumed pursuant to this Plan, (ii( those executory contracts and unexpired leases that are the subject of a motion to assume that is pending on the Confirmation Date, (3) those executory contracts and unexpired leases that are a contract, release, or other agreement or document entered into in connection with the Plan; or (4) those that are an insurance policy, if any, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of Bankruptcy Code; *provided, however*, that neither the inclusion of a contract or lease on Schedule 2 hereto nor anything contained in this Article 6 shall constitute an admission by the Debtors that such contract or lease is an executory contract or that the Debtors or their successors and assigns, including, but not limited to, the Litigation Trust, has any liability thereunder.  For the avoidance of any doubt, this Section 6.1 shall apply to any and all contracts or engagements the Debtors may have with professionals retained prepetition, including, but not limited to, attorneys, auditors, and financial advisors.

**6.2.   Assumption and Cure**.  The Debtors shall file a notice of proposed assumption and cure amounts setting forth the amount the Debtors have determined is required to cure defaults pursuant to 11 U.S.C. § 365 (a "Cure Amount"), if any, under the relevant executory contract or unexpired lease.  Any counterparty wishing to object shall file an objection to the assumption of its contract or lease or to a Cure Amount shall do so in accordance with the procedures set forth in the Debtors' Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, If Any, and (C) Related Procedures in Connection Therewith, filed and served as part of the Solicitation Materials.

20

**6.3.**   **Approval of Rejection; Rejection Damages Claims Bar Date**.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejection of executory contracts under Section 6.1 above pursuant to Bankruptcy Code section 365 as of the Effective Date.  Any Claim for damages arising from any such rejection must be Filed within thirty (30) days after the mailing of notice of the entry of the Confirmation Order, or such Claim shall be forever barred, shall not be enforceable against the Debtors, their Estates, the Litigation Trust, the Litigation Trustee, or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Claim.

**6.4.**   **Insurance**.  The Debtors do not believe that the insurance policies issued to, or insurance agreements entered into by, any Debtor prior to the Petition Date constitute executory contracts. To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything contained in this Section 6.3 to the contrary, the Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their respective estates and all parties in interest in the Bankruptcy Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.

## ARTICLE 7
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

Solely in connection with Distributions to be made to the holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Bankruptcy Court provide in the Confirmation Order for the substantive consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan and the Distributions hereunder. To the extent a Claim (including any Disputed Claim) becomes an Allowed Claim, such Claim shall be satisfied in accordance with the provisions of the Plan.

Pursuant to the Confirmation Order, upon the Effective Date and without further order of the Bankruptcy Court, except as expressly provided herein, (i) all assets and liabilities of the substantively consolidated Debtors will be deemed to be merged solely for purposes of this Plan and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of this Plan and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor hereunder will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of

21

assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim.

The substantive consolidation effected pursuant to this article of the Plan shall not affect (other than for purposes related to funding distributions under the Plan), among other things, (i) the legal and organizational structure of the Debtors, (ii) any Litigation Claims, (iii) defenses to any Litigation Claims or requirements for any third party to establish mutuality to assert a right of setoff, or (iv) distributions out of any insurance policies or proceeds of such policies.

Unless the Bankruptcy Court has approved the substantive consolidation of the Estates by a prior order, the Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Estates as set forth in this Plan. If no objection to substantive consolidation under this Plan is timely filed and served, then the holders of Claims will be deemed to have consented to substantive consolidation for the purpose of this Plan only and the Bankruptcy Court may approve substantive consolidation of the Debtors' Estates in the Confirmation Order. If such objection to the substantive consolidation provided for in this Plan is timely filed and served, a hearing with respect to the substantive consolidation of the Estates and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing may coincide with the Confirmation Hearing.

## ARTICLE 8
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**8.1.    The Litigation Trust**.

**8.1.1.    Establishment of the Litigation Trust**.  On the Effective Date, _____ (on behalf of the Debtors and their beneficiaries), shall execute the Litigation Trust Agreement and take all steps necessary to establish the Litigation Trust.  The Trust Assets will be transferred to the litigation Trust on the Effective Date.

**8.1.2.    Purpose of Litigation Trust**.  The Litigation Trust is being established for the purpose of liquidating and distributing cash and other property held by the Litigation Trust in accordance with this Plan and the Litigation Trust Agreement.  The Litigation Trust shall not continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  Unless otherwise required by law, it is intended that all parties shall treat the Litigation Trust as a liquidating trust for all federal income tax purposes.

**8.1.3.    Assignment of Claims to Litigation Trust**.  The Debtors shall assign the Retained Causes of Action to the Litigation Trust and the Secured Parties shall assign or be deemed to assign the Assigned Claims and the Assigned Proceeds of Auditor Claims to the Litigation Trust.

**8.1.4.    Priority Reserves**. On the Effective Date of the Plan, reasonable reserves shall be established from Cash Collateral for Administrative Claims (including Professional Fee Claims), Priority Tax Claims, Miscellaneous

Secured Claims, Allowed Claims in Class 5, Priority Non-Tax Claims and fees required to be paid pursuant to Section 2.2 of the Plan arising in connection with disbursements made (a) prior to the Effective Date, (b) in connection with the Effective Date, or (c) out of the Ownership Reserve (collectively, the "Priority Reserves").

**8.1.5. Ownership Reserves**. On the Effective Date of the Plan, the Ownership Reserve shall be segregated and administered in accordance with this Plan and the Liquidating Trust Agreement.

**8.1.6. Replacement of Automatic Stay with Continuing Plan Injunction.** In furtherance of the implementation of the Plan, all injunctions or stays provided for in the Chapter 11 Cases and in existence on the Confirmation Date, shall remain in full force and effect and apply to all Creditors, Interests, and beneficiaries holding Claims or Interests against the Debtors, the Estates, the Assets, the Litigation Trustee, the Litigation Trust and the Trust Assets.

**8.2.    Dismissal of RTMM and Republic Shanghai Chapter 11 Cases**.  Upon the Confirmation Order becoming a Final Order, the Chapter 11 Cases of Debtors RTMM and Republic Shanghai shall be dismissed, and the equity interests in those entities shall be deemed abandoned.

**8.3.    Termination of the Debtors**.  As soon as practicable after the Effective Date, the Litigation Trustee shall cause the Debtors, except Debtors RTMM and Shanghai (collectively, the "United States Debtors") to be dissolved in accordance with applicable state law; *provided, however*, that pursuant to section 1124(b) of the Bankruptcy Code, the Litigation Trustee shall be authorized to file the United States Debtors' final tax returns, if any, and shall be authorized to file and shall file with the official public office for keeping corporate records in the each of the United States Debtors' state of incorporation a certificate of dissolution or equivalent document.  Such a certificate of dissolution may be executed by the Litigation Trustee without the need for any action or approval by any other party.  From and after the Effective Date, the United States Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

**8.4.    Closing of the Chapter 11 Cases**.  Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Cases, when all Assets contributed to the Litigation Trust have been liquidated and converted into Cash or other property, and such Cash and/or other property has been distributed in accordance with the Litigation Trust Agreement and this Plan, and the Final Distribution made, the Litigation Trustee shall seek authority from the Bankruptcy Court to all the Chapter 11 Cases, except the Lead Case, in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE 9
## POST-CONFIRMATION LITIGATION

**9.1.    Transfer and Enforcement of Causes of Action**.  Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order, all Retained Causes of Action are expressly preserved, reserved and retained by the Litigation Trust and, after transfer of the Assets to the Litigation Trust pursuant to Section 8.2.3 hereof, the Litigation Trustee or other appropriate party in interest including any designee or successor of the Litigation Trustee, will have the exclusive right to enforce any and all Retained Causes of Action and rights of the Debtors that arose before or after the Petition Date (including, but not limited to, the rights and powers of a trustee and debtor-in-possession) against potential targets of the Retained Causes of Action or Assigned Claims.  The right to bring all Retained Causes of Action against any targets is expressly and entirely preserved and retained.

**9.2.    Objections to Claims**.  Subject to applicable law, and except as otherwise set forth herein, from and after the Effective Date, the Litigation Trustee shall have the authority to litigate to Final Order objections to Claims or Interests pursuant to applicable procedures established by, or grounds set forth in, the Bankruptcy Code, the Bankruptcy Rules, the Litigation Trust Agreement and this Plan.  The deadline within which objections to Claims or Interests may be filed shall be one (1) year from the Effective Date; *provided, however*, that such deadline may be extended from time to time upon application to and approval by the Bankruptcy Court.

**9.3.    Disallowance of Claims**.  Except to the extent otherwise agreed to by the Debtors or the Litigation Trustee, as applicable, any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, as determined by a Final Order, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Retained Cause of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors or Litigation Trust by that Entity have been turned over or paid to the Debtors or Liquidating Trust, as applicable.

**9.4.    Compromise and Settlement of Claims and Retained Causes of Action.**  Pursuant to Bankruptcy Rule 9019(b), the Liquidating Trustee may settle any Disputed Claims (or aggregate of Claims if held by a single creditor), without notice, a hearing or Bankruptcy Court approval unless the amount in controversy for such Disputed Claim exceeds five hundred thousand dollars ($500,000).  Pursuant to Bankruptcy Rule 9019(b), the Liquidating Trustee may settle any Retained Causes of Action without notice, a hearing or Bankruptcy Court approval unless the amount in controversy for such Retained Cause of Action unless such amount in controversy exceeds five hundred thousand dollars ($500,000).

## ARTICLE 10
## DISTRIBUTIONS

**10.1.    Delivery of Distributions in General**.  Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the Proofs of Claim Filed by such holders; (b) at the

addresses set forth in any written notices of address change Filed with the Bankruptcy Court or delivered to the Litigation Trustee after the date on which any related Proof of Claim was Filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been Filed and the Litigation Trustee has not received a written notice of a change of address.

**10.2.   Cash Payments**.  Except as otherwise provided in the Litigation Trust Agreement or the Confirmation Order, Cash payments to be made pursuant to the Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Litigation Trustee.

**10.3.   Interest on Claims**.  Post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.  To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

**10.4.   No *De Minimis* Distributions**.  Other than in the Final Distribution, no payment of Cash in an amount of less than $250.00 shall be required to be made on account of any Allowed Claim or Interest.

**10.5.   Face Amount**.  Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article, the "Face Amount" of a Disputed Claim means the amount set forth on the Proof of Claim, unless no Proof of Claim has been timely Filed or deemed Filed, in which case the Face Amount shall be zero.

**10.6.   Undeliverable Distributions**.  If the distribution check to any Holder of an Allowed Claim is not cashed within ninety (90) days after issuance by the Litigation Trustee, a stop payment order shall be given with respect to the check and no further distributions shall be made to such holder on account of such Allowed Claim.  Such Allowed Claim or Interest shall be discharged and the holder of such Allowed Claim shall be forever barred from asserting such Claim against the Litigation Trust, the Litigation Trustee, the Debtors, their Estates or their respective property.  In such cases, any Cash held for distribution on account of such Claim shall remain property of the Litigation Trust and be distributed to other Creditors in accordance with the terms of this Plan and the Litigation Trust Agreement.

**10.7.   Interim Distributions**.  Unless otherwise provided in the Plan, the Litigation Trustee in his discretion may make periodic distributions to the beneficiaries entitled thereto in accordance with the Litigation Trust Agreement.

**10.8.   Final Distribution**.  The Litigation Trustee shall make a final distribution in accordance with the Litigation Trust Agreement.

25

**10.9.   Disputed Claims Reserves**.   The Litigation Trustee shall establish reserves for Disputed Claims in accordance with the terms of the Litigation Trust Agreement.

**10.10.  Compliance with Tax Requirements**.   In connection with the Plan and the distributions made in accordance thereto, to the extent applicable, the Litigation Trust shall comply with all tax withholding and reporting requirements imposed by any governmental unit, if any, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.   The Litigation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.   If any Holder of an Allowed Claim fails to provide the Litigation Trustee with information reasonably requested by the Litigation Trustee for purposes of withholding and reporting requirements, the Litigation Trustee may elect to treat such Holder's distribution as an Undeliverable Distribution in accordance with 9.6 hereof.

**ARTICLE 11**
**CONDITIONS PRECEDENT**

**11.1.   Conditions to Confirmation**.   As a condition to entry of the Confirmation Order:

The Confirmation Order shall be in form and substance satisfactory to the Debtors, Committee, and Secured Parties.

**11.2.   Conditions to the Effective Date**.   The Plan shall not become effective and the Effective Date shall not occur unless and until:

The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors, Secured Parties, and the Committee;

No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 11.2 are satisfied, or, if permitted, waived; and

All documents, instruments and agreements, in form and substance satisfactory to Scott Avila (as the CRO for the Debtors), the Secured Parties, and the Committee provided for under this Plan or necessary to implement this Plan, including, without limitation, the Litigation Trust Agreement, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

**11.3.   Termination of Plan for Failure to Become Effective**.   If the Effective Date shall not have occurred on or prior to the date that is forty-five (45) days after the Confirmation Date, then this Plan shall terminate and be of no further force or effect unless the provisions of this Section are waived in writing by the Debtors, Secured Parties, and the Committee.

**11.4.   Waiver of Conditions**.   The Debtors, Secured Parties, and/or the Committee may waive any or all of the conditions set forth in Sections 11.1 and/or 11.2 this Plan.

**11.5.   Notice of Effective Date**.   On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors shall file with the Bankruptcy Court a "Notice of Effective Date," which notice shall constitute appropriate and adequate notice that this Plan has become

26

effective; *provided, however*, that the neither the Debtors nor the Litigation Trustee shall have any obligation to notify any Person of such fact. This Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern time, on the Effective Date specified in such filing. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Debtors' option, by courier or facsimile) to those Persons who have filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## ARTICLE 12
## EFFECT OF CONFIRMATION

**12.1.   Jurisdiction of Court**. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including among other things, jurisdiction over the subject matters set forth in Article 12 of this Plan.

**12.2.   Binding Effect**. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.

**12.3.   Exculpation**. Except as otherwise specifically provided in this Plan, none of the Exculpated Parties shall have or incur, and all such parties are hereby released from, any Claim, obligation, cause of action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for (i) professional liability claims, and (ii) their fraud, gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan.

Notwithstanding any other provision of the Plan, neither any holder of a Claim or Interest, or other party in interest, shall have any right of action against the Exculpated Parties for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for such Persons' fraud, gross negligence or willful misconduct.

**12.4.   Injunction; Bar Order.  Except as otherwise specifically provided in this Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims, rights, causes of action, liabilities or any Interests based upon any act or omission, transaction or other activity of any kind or nature related to the Debtors or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim, Interest or any other right or claim against the Estates, the Litigation Trust or the Trust Assets, and regardless of whether such Entity has voted to accept this Plan, and any**

27

successors, assigns or representatives of such Entities shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or claim against the Estates, the Litigation Trust or the Trust Assets, which it possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim against the Debtors, their estates, the Litigation Trust or the Trust Assets, which such Entity possessed or may possess prior to the Effective Date, (c) the creation, perfection or enforcement of any encumbrance of any kind with respect to any Claim, Interest or any other right or claim against the Estates, the Litigation Trust or the Trust Assets, which it possessed or may possess prior to the Effective Date, and (d) the assertion of any Claims that are released, exculpated, settled or otherwise discharged hereby.

      12.5.    **RTMM Injunction.**

      In addition to the foregoing,  except as otherwise specifically provided in this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, rights, causes of action, liabilities, or any interests  based on any act or omission, transaction or other activity of any kind or nature related to RTMM or any officer, director, or employee thereof in their respective capacities as such shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action, or other proceeding of any kind under any law other than the Bankruptcy Code, including without limitation (i) the Mexican Political Constitution of the United Mexican States, (ii) the Mexican Criminal Code for Mexico City, and (iii) Private Aid Entities for the Federal District Act (collectively, "Mexican Laws") with respect to any Claim, Interest or any other right or claim against RTMM which is possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or other with respect to any Claim, Interest or any other right or claim against RTMM under any law other than the Bankruptcy Code, including without limitation the Mexican Laws, which such entity possessed or may possess prior to the Effective Date, (c) the creation, perfection or enforcement of any encumbrances of any kind with respect to any Claim, Interest or any other right or claim against RTMM under any law other than the Bankruptcy Code, including without limitation the Mexican Laws, which it possessed or may possess prior to the Effective Date, and (d) the assertion of any Claims under any law other than the Bankruptcy Code, including without limitation the Mexican Laws that are released, exculpated, settled or otherwise discharged hereby.

      12.6.    **Secured Party Release.**

      (a)    Effective as of the Effective Date, the Releasors shall be deemed to provide a full release to the Secured Party Releasees and their respective property from any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, or otherwise, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective

Date, in each case arising from or related in any way to the Debtors, the Chapter 11 Cases, the Debtors' liquidation, any postpetition financing, any sale of the Debtors' interests in property, the Plan or the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, including those that the Debtors would have been legally entitled to assert or that any Holder of a Claim against or Interest in the Debtors or any other entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their estates, other than claims or causes of action arising out of or related to any act or omission of a Secured Party Releasee that constitutes fraud, gross negligence, or willful misconduct.

(b)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Section 11.5, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration and substantial contributions provided by the Secured Party Releasees; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasors asserting any claim released pursuant to such releases.

12.7.    **Limitation of Liability**.  Except as expressly set forth in this Plan none of the Releasees shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan or any contract, instrument, release or other agreement or document created in connection with this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for fraud, gross negligence or willful misconduct.

12.8.    **Cancellation and Release of Existing Indebtedness and Liens.**  Except as may otherwise be provided in this Plan, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, guaranties, invoices, contracts, agreements, and any other documents or instruments evidencing Claims against the Debtors, together with any and all Liens securing same, shall be cancelled, discharged, and released without further act or action by any Person under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors thereunder shall be deemed cancelled, discharged, and released.  To the extent deemed necessary or advisable by the Litigation Trustee, any holder of a Claim shall promptly provide the Litigation Trustee with an appropriate instrument of cancellation, discharge, or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge, or release, including the cancellation, discharge, or release of any Lien securing such Claim.

**ARTICLE 13**
**RETENTION OF JURISDICTION**

13.1.    **Ongoing Bankruptcy Court Jurisdiction**.  Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date and the transfer of the Assets to the

49282315;5

Litigation Trust, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the fullest extent legally permissible, including but not limited to jurisdiction to, among other things:

a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of, or subordinate for any purposes pursuant to section 510 of the Bankruptcy Code, any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

b) Hear and determine any and all causes of action and rights of the Debtors that arose before or after the Petition Date that are expressly preserved pursuant to, among other things, section 1123(b)(3) of the Bankruptcy Code, are yet to be liquidated and are preserved for prosecution by the Litigation Trustee or other appropriate party in interest, including any designee or successor, against any Person whatsoever, on account of any and all Litigation Claims defined in Section 1.52 herein (including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, and all non-avoidance actions owned by the Debtors' Estates including, but not limited to, claims of tort, breach of contract and claims lying in law or in equity, whether based in common law, Florida state law, another state's law, Federal law or otherwise);

c) Grant or deny any applications for allowance of compensation for Professionals authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

d) Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract to which either Debtor is a party or with respect to which the Debtors may be liable, including without limitation the determination of whether such contract is executory for the purposes of section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

e) Ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of this Plan and the Litigation Trust Agreement;

f) Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending in the Chapter 11 Cases on the Effective Date;

g) Hear and determine matters concerning state, local or federal taxes in accordance with sections 346, 505 or 1146 of the Bankruptcy Code;

49282315;5

h)  Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Litigation Trust Agreement, this Plan and the Confirmation Order;

i)  Hear and determine any applications by the Litigation Trustee to retain one or more professionals to assist the Litigation Trustee in carrying out his duties and obligations under the Litigation Trust Agreement;

j)  Resolve any disputes relating to monthly fee invoices for allowance of compensation submitted by the Litigation Trustee or his professionals;

k)  Hear and determine any matters concerning the enforcement of the provisions of Article 11 of this Plan and any other exculpations, limitations of liability or injunctions contemplated by this Plan;

l)  Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Litigation Trust Agreements, this Plan or the Confirmation Order;

m)  Permit the Litigation Trustee to the extent authorized pursuant to section 1127 of the Bankruptcy Code, to modify this Plan or any agreement or document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in this Plan or any agreement or document created in connection with this Plan;

n)  Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Litigation Trust Agreement, this Plan or the Confirmation Order;

o)  Enforce any injunctions entered in connection with Chapter 11 Cases, or relating to this Plan or the Confirmation Order;

p)  Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Litigation Trust Agreement or this Plan are enjoined or stayed;

q)  Determine any other matters that may arise in connection with or relating to this Plan or any agreement or the Confirmation Order;

r)  Order the complete or partial substantive consolidation of any non-Debtor Entity with or into the Litigation Trust *nunc pro tunc* to the Petition Date or otherwise;

s)  Enter any orders in aid or in extension of prior orders of the Bankruptcy Court; and

t)  Enter a final decree closing the Chapter 11 Cases.

31

# ARTICLE 14
## ACCEPTANCE OR REJECTION OF THE PLAN

**14.1.    Persons Entitled to Vote**.  Classes 1 and 2 are Unimpaired and therefore votes of such Classes will not be solicited.  Classes 3, 4, and 5 are Impaired and votes of Classes 3, 4 and 5 will be solicited.

**14.2.    Acceptance by Impaired Classes**.  An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**14.3.    Acceptance by Impaired Interests**.  An Impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

**14.4.    Presumed Acceptances by Unimpaired Classes**.  Classes 1 and 2 are Unimpaired by the Plan.  Under section 1126(f) of the Bankruptcy Code, such Claim holders are conclusively presumed to accept the Plan, and the votes of such Claim holders will not be solicited.

**14.5.    Summary of Classes Voting on the Plan**.  As a result of the provisions of Section Article 5 of this Plan, the votes of holders of Claims in Classes 3, 4, and 5 will be solicited with respect to this Plan.

**14.6.    Impaired Classes**.  Classes 3, 4, and 5 are impaired and votes of holders of Claims in Classes 3, 4, and 5 will be solicited with respect to this Plan.

# ARTICLE 15
## MISCELLANEOUS PROVISIONS

**15.1.    Modification of Plan**.  Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify this Plan before its substantial consummation.

**15.2.    Revocation of the Plan**.  The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan, or if Confirmation does not occur or if the Plan does not become effective, then this Plan shall be null and void, and nothing contained in this Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; (b) constitute an admission of any fact or legal conclusion by the Debtors or any other Entity; or (c) prejudice in any manner the rights of the Debtors in any further proceedings involving the Debtors.

**15.3.    Governing Law**.  Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with,

49282315;5

this Plan, the rights and obligations arising under this Plan and any agreements, contracts, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

**15.4.   No Admissions**.  If Confirmation or the Effective Date does not occur, nothing contained in this Plan or Disclosure Statement shall be deemed as an admission by the Debtors or any other party with respect to any matter set forth therein or herein including, without limitation, liability on any Claim or the propriety of any Claims classification.  If the Effective Date does not occur within thirty (30) days following entry of the Confirmation Order, this Plan will be null and void and of no further effect.

**15.5.   Severability of Plan Provisions**.  If prior to Confirmation any term or provision of this Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Debtors, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**15.6.   Successors and Assigns**.  The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**15.7.   Preservation of Rights of Setoffs**.  The Litigation Trustee may, but shall not be required to, set off against any Claim against the Debtors, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

**15.8.   Preservation of Rights And Defenses**.  Except to the extent such rights, Claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Chapter 11 Cases, (i) any and all rights, Claims, causes of action, defenses, and counterclaims accruing to the Debtors or the Estates (including, without limitation, any and all Litigation Claims) shall remain assets of and vest in the Litigation Trust, whether or not litigation relating thereto is pending on the Effective Date and whether or not any such rights, Claims, causes of action, defenses, and counterclaims have been listed in the Schedules or otherwise listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtors, nor the Estates, nor the Litigation Trustee waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim

that constitutes property of the Estates, (a) whether or not such right, Claim, cause of action, defense or counterclaim has been listed or referred to in the Schedules, this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known to the Debtors, or the Estates, or the Litigation Trustee, and (c) whether or not a defendant in any litigation relating to such right, Claim, cause of action, defense, or counterclaim filed a Proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against this Plan, or received or retained any consideration under this Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action, defense, or counterclaim in the Schedules, this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, shall in no manner waive, eliminate, modify, release, or alter the Litigation Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that the Debtors, the Estates, or the Litigation Trust have or may have as of the Confirmation Date.  The Litigation Trustee may commence, prosecute, defend against, recover on account of, and settle all rights, Claims, causes of action, defenses, and counterclaims in its sole discretion in accordance with what is in the best interests, and for the benefit, of the Litigation Trust, including through use of Federal Rule of Bankruptcy Procedure 2004.  The Litigation Trustee's right to recover against former directors and/or officers of the Debtors shall not be limited to the proceeds of the D&O Policies.

**15.9.    No Injunctive Relief**.  Except as otherwise provided in this Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

**15.10.    Non-Business Day**.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**15.11.    Entire Agreement**.  This Plan (together with the Litigation Trust Agreement) sets forth the entire agreement and undertaking relating to the subject matter hereof and supersedes all prior discussions and documents.  The Debtors' Estates shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein.

**15.12.    Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

49282315;5

To the Debtors:

Scott Avila
c/o Akerman LLP
Andrea S. Hartley, Esq.
John E. Mitchell, Esq.
Katherine C. Fackler, Esq.
98 Southeast Seventh Street, Suite 1100
Miami, FL 3313

To the Litigation Trustee:

_____
c/o Cooley LLP
Seth Van Aalten Esq.
Robert Winning, Esq.
1114 Avenue of the Americas
New York, NY 10036

Dated: August 1, 2019                  MIAMI METALS I, INC.

*/s/ Scott Avila*
By: Scott Avila
Title: Chief Restructuring Officer


Dated: August 1, 2019                  MIAMI METALS II, INC.

*/s/ Scott Avila*
By: Scott Avila
Title: Chief Restructuring Officer


Dated: August 1, 2019                  MIAMI METALS III LLC

*/s/ Scott Avila*
By: Scott Avila
Title: Chief Restructuring Officer


Dated: August 1, 2019                  MIAMI METALS IV LLC

*/s/ Scott Avila*
By: Scott Avila
Title: Chief Restructuring Officer


Dated: August 1, 2019                  MIAMI METALS V LLC

*/s/ Scott Avila*
By: Scott Avila
Title: Chief Restructuring Officer


Dated: August 1, 2019                  MIAMI METALS VI LLC

*/s/ Scott Avila*
By: Scott Avila
Title: Chief Restructuring Officer

49282315;5

Dated: August 1, 2019                    MIAMI METALS VII LLC

                                         */s/ Scott Avila*
                                         By: Scott Avila
                                         Title: Chief Restructuring Officer


Dated: August 1, 2019                    MIAMI METALS VIII LLC

                                         */s/ Scott Avila*
                                         By: Scott Avila
                                         Title: Chief Restructuring Officer


Dated: August 1, 2019                    REPUBLIC METALS TRADING
                                         (SHANGHAI) CO., LTD.

                                         */s/ Scott Avila*
                                         By: Scott Avila
                                         Title: Chief Restructuring Officer


Dated: August 1, 2019                    REPUBLIC TRANS MEXICO METALS,
                                         S.R.L.

                                         */s/ Scott Avila*
                                         By: Scott Avila
                                         Title: Chief Restructuring Officer

49282315;5