**HEARING DATE AND TIME: SEPTEMBER 26, 2019 AT 11:00 A.M. (ET)**
**OBJECTION DEADLINE DATE AND TIME:  SEPTEMBER 19, 2019 AT 4:00 P.M. (ET)**

John E. Mitchell (*Admitted Pro Hac Vice*)
Yelena Archiyan (*Admitted in New York*)
AKERMAN LLP
2001 Ross Avenue, Ste. 3600
Dallas, TX  75201
Tel.: (214) 720-4300
Fax: (214) 981-9339

Andrea S. Hartley (*Admitted Pro Hac Vice*)
Katherine C. Fackler (*Admitted Pro Hac Vice*)
Joanne Gelfand (*Admitted in New York*)
AKERMAN LLP
98 Southeast Seventh Street, Ste. 1100
Miami, FL 33131
Tel.: (305) 374-5600
Fax: (305) 374-5095

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIAMI METALS I, INC., *et al.*[1] | ) | Case No. 18-13359 (shl) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**NOTICE OF HEARING ON DEBTORS' MOTION FOR APPROVAL OF
SETTLEMENT AGREEMENT BY AND AMONG DEBTORS, SENIOR LENDERS,
AND FIRST MAJESTIC SILVER CORP. AND ITS SUBSIDIARIES,
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

**PLEASE  TAKE  NOTICE**  that  a  hearing  on  *Motion  for  Approval  of  Settlement*

*Agreement by and Among Debtors, Senior Lenders, and First Majestic Silver Corp. and its*

*Subsidiaries, Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "**Motion**"), will be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), 15 West 47th Street, Suites 206 and 209, New York, NY 10036 (3194); Miami Metals II, Inc. (f/k/a Republic Metals Corporation), 12900 NW 38th Avenue, Miami, FL 33054 (4378); Miami Metals III LLC (f/k/a Republic Carbon Company), 5295 Northwest 163rd Street, Miami Gardens, FL 33014 (5833); Miami Metals IV LLC (f/k/a J & L Republic LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7604); Miami Metals V LLC (f/k/a R & R Metals, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7848); Miami Metals VI (f/k/a RMC Diamonds, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Miami Metals VII (f/k/a RMC2, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (4696); Miami Metals VIII (f/k/a Republic High Tech Metals, LLC), 13001 NW 38 Avenue, Miami, FL 33054 (6102), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Republic Metals Trading (Shanghai) Co., Ltd., 276 Ningbo Road, Huangpu District, Shanghai, P.R. 200001 China (1639); and Republic Trans Mexico Metals, S.R.L., Francisco I. Madero No. 55 Piso 5, Local 409, Centro Joyero Edificio Central, Delegación Cuauhtémoc, Mexico DF 6000  (2942).

held before the Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004, on **September 26, 2019 at 11:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

 **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion (the "**Objections**") must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (b) the Chambers of the Honorable Sean H. Lane ("**Chambers**"), United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004; (c) the Debtors, Miami Metals I, Inc. f/k/a Republic Metals Refining Corporation, (Attn: Scott Avila); (d) the attorneys for the Debtors, Akerman LLP, 2001 Ross Avenue, Suite 3600, Dallas, TX 75201 (Attn: John Mitchell, Esq.) and 98 Southeast Seventh Street, Suite 1100, Miami, FL 3313 (Attn: Andrea S. Hartley, Esq. and Katherine C. Fackler, Esq.); (e) the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Shannon Scott, Esq.); (f) the attorneys for the Creditors' Committee, if a committee is formed; (g) counsel to any other statutory committee appointed in the Chapter 11 Cases, and (h) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002 so as to be received no later than **September 19, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

49870281;3

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served

with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the

Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard.

Dated:  August 21, 2019

AKERMAN LLP


By: _____ */s/John Mitchell*

        John E. Mitchell
        *(Admitted Pro Hac Vice)*
        Yelena Archiyan
        *(Admitted in New York)*
        2001 Ross Avenue, Suite 3600
        Dallas, TX  75201
        Tel.: (214) 720-4300
        Fax: (214) 981-9339
        E-Mail: john.mitchell@akerman.com
        E-Mail: yelena.archiyan@akerman.com

- and -

        Andrea S. Hartley
        (Admitted *Pro Hac Vice*)
        Katherine C. Fackler
        (Admitted *Pro Hac Vice*)
        Joanne Gelfand
        (Admitted in New York)
        98 Southeast Seventh Street, Suite 1100
        Miami, FL 3313
        Tel.: (305) 374-5600
        Fax: (305) 374-5095
        E-Mail: andrea.hartley@akerman.com
        E-Mail: katherine.fackler@akerman.com
        E-Mail: joanne.gelfand@akerman.com

        *Counsel for Debtors and Debtors-in-Possession*

**HEARING DATE AND TIME: SEPTEMBER 26, 2019 AT 11:00 A.M. (EASTERN TIME)**
**OBJECTION DEADLINE DATE AND TIME: SEPTEMBER 19, 2019 AT 4:00 P.M. (EASTERN TIME)**

John E. Mitchell (*Admitted Pro Hac Vice*)
Yelena Archiyan (*Admitted in New York*)
AKERMAN LLP
2001 Ross Avenue, Ste. 3600
Dallas, TX 75201
Tel.: (214) 720-4300
Fax: (214) 981-9339

Andrea S. Hartley (*Admitted Pro Hac Vice*)
Katherine C. Fackler (*Admitted Pro Hac Vice*)
Joanne Gelfand (*Admitted in New York*)
AKERMAN LLP
98 Southeast Seventh Street, Ste. 1100
Miami, FL 33131
Tel.: (305) 374-5600
Fax: (305) 374-5095

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIAMI METALS I, INC., *et al.*[1] | ) | Case No. 18-13359 (shl) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## DEBTORS' MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BY AND AMONG DEBTORS, SENIOR LENDERS, AND FIRST MAJESTIC SILVER CORP. AND ITS SUBSIDIARIES, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Miami Metals I, Inc., *et al.*, as debtors and debtors-in-possession (collectively the

"Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"), by and through

their undersigned counsel hereby file this Motion for Approval of the Settlement Agreement

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), 15 West 47th Street, Suites 206 and 209, New York, NY 10036 (3194); Miami Metals II, Inc. (f/k/a Republic Metals Corporation), 12900 NW 38th Avenue, Miami, FL 33054 (4378); Miami Metals III LLC (f/k/a Republic Carbon Company), 5295 Northwest 163rd Street, Miami Gardens, FL 33014 (5833); Miami Metals IV LLC (f/k/a J & L Republic LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7604); Miami Metals V LLC (f/k/a R & R Metals, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7848); Miami Metals VI (f/k/a RMC Diamonds, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Miami Metals VII (f/k/a RMC2, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (4696); Miami Metals VIII (f/k/a Republic High Tech Metals, LLC), 13001 NW 38 Avenue, Miami, FL 33054 (6102), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Republic Metals Trading (Shanghai) Co., Ltd., 276 Ningbo Road, Huangpu District, Shanghai, P.R. 200001 China (1639); and Republic Trans Mexico Metals, S.R.L., Francisco I. Madero No. 55 Piso 5, Local 409, Centro Joyero Edificio Central, Delegación Cuauhtémoc, Mexico DF 6000 (2942).

attached hereto an incorporated herein as **Exhibit A** (the "Settlement Agreement"), by and among the Debtors, the Senior Lenders (as defined below), and First Majestic Silver Corp. ("FMSC"), on behalf of itself and its subsidiaries Nusantara de Mexico, S.A. de C.V. ("Nusantara") and Primero Empresa Minera, S.A. de C.V. ("PEM" and together with FMSC and Nusantara, collectively, "FM"), pursuant to Federal Rule of Bankruptcy Procedure 9019.    In support of this Motion, the Debtors say:

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code, and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On November 2, 2018 (the "First Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), initiating these Chapter 11 Cases.  On November 21, 2018, certain additional debtors (collectively with the Debtors, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code, initiating their Chapter 11 Cases.

5.      The Debtors continue in possession of their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1109.  On November 19, 2018, the United States Trustee gave notice of the appointment of an Official Committee of Unsecured Creditors (the "Committee") [ECF No. 113].

2

6.     Additional details regarding these Chapter 11 Cases are available in the Declaration of Scott Avila, as Chief Restructuring Officer (the "CRO"), in Support of Chapter 11 Petitions and First Day Motions [ECF No. 2].

7.     Coöperatieve Rabobank U.A., New York Branch, Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi International Corporation, ICBC Standard Bank PLC, Techemet Metal Trading LLC, Merced Partners Limited Partnership and Athilon Capital Corp. LLC, and Hain Capital Investors Master Fund, Ltd. (collectively, the "Senior Lenders") are each party to a credit agreement, master netting agreement or lease agreement with the Debtors entered into prior to the Petition Date.

The Debtors and the Senior Lenders assert, and FM disputes, that the obligations under the Secured Credit/Lease Documents (the "Prepetition Obligations") are secured by valid and perfected liens (the "Prepetition Liens") on substantially all of the Debtors' assets, including the Debtors' purported inventory and cash.

8.     On the Petition Date, the Debtors filed the *Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Secured Parties, (III) Scheduling a Final Hearing and (IV) Granting Related Relief* (the "Initial Cash Collateral Motion") [ECF No. 10].

9.     On November 13, 2018, the Debtors and the Senior Lenders filed the *Joint Supplement of the Debtors and the Senior Lenders to the Cash Collateral Motion* (together with the Initial Cash Collateral Motion, the "Cash Collateral Motion") [ECF No. 78].

10.    The Bankruptcy Court has entered nine interim cash collateral orders [ECF Nos. 54, 277, 372, 538, 675, 864, 987, 1160 and 1237] (collectively, the "Interim Cash Collateral Orders").

49870281;3

11.     Pursuant to the Interim Cash Collateral Orders, among other things, the Senior Lenders consented to the Debtors' use of their cash collateral to fund the costs and expenses of administering the Chapter 11 Cases, and the Senior Lenders were granted superpriority claims ("Superpriority Claims") and adequate protection liens on substantially all of the Debtors' assets (the "Adequate Protection Liens") to protect against any diminution in value of the Prepetition Collateral.

12.     Numerous of the Debtors' customers (including FM) objected to the Cash Collateral Motion on the basis that the Debtors' purported precious metal inventory and its cash proceeds were property of such customers rather than property of the Debtors' estates, giving rise to a dispute (the "Ownership Dispute") concerning the ownership of such assets governed by uniform procedures approved by the Bankruptcy Court (as amended, the "Uniform Procedures") [ECF Nos. 395, 913, and 1196].

13.     Nusantara and Debtor Miami Metals II, Inc. (f/k/a Republic Metals Corporation) ("RMC") are parties to a certain letter agreement dated July 21, 2017 (as amended, restated, supplemented, or otherwise modified, the "Nusantara Contract") relating to the refining and forward/spot sales of precious metal produced by Nusantara's Santa Elena mine.

14.     PEM and RMC are parties to a certain letter agreement dated June 27, 2018 (as amended, restated, supplemented, or otherwise modified, the "PEM Contract" and together with the Nusantara Contract, the "FM Contracts") relating to the refining and forward/spot sales of precious metal produced by PEM's San Dimas mine.

15.     FM asserts that it retained ownership of the precious metals delivered to the Debtors pursuant to the FM Contracts (the "Disputed Materials") and that such metals and the proceeds thereof are not property of the Debtors' estates.

4

49870281;3

16.     The Debtors and the Senior Lenders assert that the Debtors own Disputed Materials and that such materials and the proceeds thereof are property of the Debtors' estates and are subject to the Prepetition Liens and Adequate Protection Liens of the Senior Lenders.

17.     On November 16, 2018, FM delivered a letter making a reclamation demand to the Debtors [Docket No. 102] (the "Reclamation Demand") and on November 21, 2018, FM filed an objection to the Cash Collateral Motion [Docket No. 147] (the "Cash Collateral Objection").

18.     On January 18, 2019, FM filed a *Customer Statement of First Majestic Silver Corp.* [Docket No. 460] (the "Initial Customer Statement") pursuant to the Uniform Procedures which asserted, among other things, FM's ownership claims to the Disputed Materials and incorporated the Cash Collateral Objection by reference.

19.     On March 11, 2019, FM filed an amendment to the Initial Customer Statement [Docket No. 781] (the "Supplemental Customer Statement" and together with the Initial Customer Statement, the "Customer Statement").

20.     On April 10, 2019 (a) FMSC filed proof of claim no. 306 against RMC, (b) Nusantara filed proof of claim nos. 300, as amended by 301, and 307 against RMC, and (c) PEM filed proof of claim nos. 304 and 308 against RMC and proof of claim no. 305 against Debtor Republic Trans Mexico Metals, S.R.L., and on May 9, 2019, Nusantara filed proof of claim no. 457, amending proof of claim no. 307 against RMC (collectively, the "Proofs of Claim").

21.     On June 21, 2019, the Debtors and the Senior Lenders filed a joint motion for summary judgment [Docket No. 1202] seeking, among other things, to dismiss the Customer Statement as a "Bucket 3" customer ownership claim and overrule the Cash Collateral Objection

## **RELIEF REQUESTED**

22.      Through this Motion, with the agreement of the Senior Lenders and the support of

the Committee, the Debtors request approval of the Settlement Agreement attached hereto and

incorporated herein as Exhibit A[2] by and among FM, RMC, and the Senior Lenders as to the all

of FM's claims against RMC, including but not limited to the following material terms:

(a)      Settlement Payment.  As consideration for the resolution of any and all existing disputes among the Parties, within five (5) business days of the Effective Date, the Debtors shall pay to FM $1,600,000 in immediately available funds.

(b)      Allowed Claims.  Upon the Effective Date:

(i)      FM shall be granted an allowed administrative expense claim against RMC under section 503(b)(9) of the Bankruptcy Code in the amount of $5,000,000 (the "Allowed 503(b)(9) Claim");

(ii)      FM shall be granted an allowed general unsecured claim against RMC in the amount of $5,302,290 (the "Allowed GUC Claim" and, together with the Allowed 503(b)(9) Claim, the "Allowed Claims"); and

(iii)      The Debtors shall instruct their claims agent, Donlin Recano & Company, Inc., to enter the Allowed Claims in the claims register and to expunge all other FM claims from the claims register (including the Proofs of Claim and any other claims scheduled by the Debtors).

(c)      Ownership Dispute.

(i)      Within five (5) business days of the Effective Date, FM shall withdraw the Reclamation Demand and the Customer Statement with prejudice.

(ii)      Upon entry into an agreement in principle concerning the Settlement Agreement, all deadlines under the Uniform Procedures solely with respect to FM are stayed pending the Bankruptcy Court's entry of the Settlement Order.

(d)      Consent to Plan.  Upon the Effective Date, FM shall vote in favor of and not, directly or indirectly, object to any plan of liquidation supported by the Senior Lenders and the Debtors so long as the plan provides treatment for administrative expense claims under section 503(b)(9) of the

---

[2] Interested parties should refer to the Settlement Agreement for a complete recitation of its terms.  Except as otherwise noted herein, capitalized terms from the Settlement Agreement are incorporated by reference herein.

49870281;3

Bankruptcy Code that is no less favorable than that set forth in the plan
filed at Docket No. 1295.

(e)  <u>Consent to Collateral Order</u>.  Upon the Effective Date, the Cash Collateral
Objection shall be deemed immediately withdrawn with prejudice and FM
shall not, directly or indirectly, object to any final cash collateral order
supported by the Senior Lenders

(f)  <u>Effective Date</u>. The Settlement Agreement is conditioned upon occurrence
of the "<u>Effective Date</u>," which means the first date by which each of the
following conditions has occurred:

(i)  the Settlement Agreement is executed by each of the Parties; and

(ii)  the Court enters an order approving the Settlement Agreement in a
form and substance acceptable to the Parties, <u>provided</u> that such order has
not been stayed.

## **BASIS FOR RELIEF REQUESTED**

23.    Bankruptcy Rule 9019 provides that, upon the motion of the debtor-in-possession,

"after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr.

P. 9019(a).  Section 105(a) of the Bankruptcy Code authorizes the Court to enter any order "that

is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11

U.S.C. § 105(a).

24.    A court must determine that a settlement under Bankruptcy Rule 9019 is fair,

equitable, and in the best interests of the estate before it may approve a settlement. *In re Drexel*

*Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88

S.Ct. 1157, 20 L.Ed.2d 1 (1968)); *see also In re Chemtura Corp.*, 439 B.R. 561, 593–94 (Bankr.

S.D.N.Y. 2010); *In re Lehman Bros. Holdings*, 435 B.R. 122, 134 (S.D.N.Y. 2010).

25.    A court's responsibility is to "canvass the issues and see whether the settlement

falls below the lowest point in the range of reasonableness." *Chemtura*, 439 B.R. at

594 (quoting *In re W.T. Grant, Co.*, 699 F.2d 599, 608 (2d Cir.1983)) (internal quotations

omitted). But the court is not required to go so far as to conduct a trial on the terms to approve a settlement. *See id.* Before making a determination, however, the court must inform itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (internal quotations omitted) (quoting *TMT Trailer Ferry*, 390 U.S. at 424, 88 S.Ct. 1157). Although courts have discretion to approve settlements, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis. *See JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009). "At the same time, a court may not simply defer to a debtor in possession's judgment, but must independently evaluate the reasonableness of the settlement." *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009) (citations omitted). In addition, courts may give weight to the opinion of bankruptcy counsel supporting the settlement. *See id.* ("In [approving the settlement agreement], the court is permitted to rely upon 'opinions of the trustee, the parties, and their attorneys.'"); *Chemtura*, 439 B.R. at 594.

26.     To that end, courts have developed standards to evaluate if a settlement is fair and equitable and identified factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry, Inc.*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). The Second Circuit outlined the test for consideration of settlements under the Bankruptcy Rules in *Iridium Operating LLC*, 478 F.3d at 462. The factors to be considered are interrelated and require the court to evaluate:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"

(4) whether other parties in interest support the settlement;

(5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

(6) "the nature and breadth of releases to be obtained by officers and directors;" and

(7) "the extent to which the settlement is the product of arm's length bargaining."

*Id.*

27.    The factors militate in favor of approving the Settlement Agreement with FM.

28.    Without this settlement, FM, the Debtors, and the Senior Lenders will incur costs in litigating FM's Reclamation Demand, Cash Collateral Objection, and Customer Statement, as well as issues related to FM's proofs of claim.  The interests of the creditors are served by the reduction of administrative expenses.

29.    The Debtors, the Senior Lenders, and FM are each represented by sophisticated counsel.

30.    The Settlement Agreement is the result of arm's length bargaining and the product of voluntary and independent negotiations by and among the Debtors, Senior Lenders, and FM. No special relationships among the parties exist.  Upon information and belief, neither the parties, nor their counsel, are related or affiliates of the other.

31.    The Settlement Agreement is in the best interest of the Debtors' estates, creditors and interested parties. The uncertainty and risk of litigation is avoided together with the attendant administrative expenses.  Professionals are freed up for other tasks in these related Chapter 11 cases.

32.    The Debtors submit that the Settlement Agreement represents a sound and good faith exercise of the business judgment of the Debtors and Scott Avila, in his capacity as CRO.

49870281;3

In exercising his business judgment, Mr. Avila reviewed the Settlement Agreement, considered the amounts involved, and weighed the benefits against the risk of litigation.

33.    Finally, the Senior Lenders support approval of the Settlement Agreement, and the Committee does not object to its approval.

34.    Accordingly, the Debtors respectfully request the Court grant this Motion and approve the Settlement Agreement.

## **NO PREVIOUS REQUEST**

35.    No prior motion for the relief requested herein has been made by the Debtors to this or any other court.

## **NOTICE**

36.    The Debtors have provided notice of this Motion to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the Debtors' Senior Lenders; (iii) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; (iv) counsel to the Official Committee of Unsecured Creditors; (v) parties settling disputes pursuant to this Motion; and (vi) any other party entitled to notice pursuant to Local Rule 9013-1(b) (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Debtors respectfully request the Court enter an Order in substantially in the form attached hereto as **Exhibit B** (i) approving the Settlement Agreement, and (ii) granting such other and further relief as requested herein or as the Court otherwise deems necessary and appropriate.

Dated:  August 21, 2019

AKERMAN LLP


By: _____*/s/John Mitchell*_____
         John E. Mitchell
         (Admitted *Pro Hac Vice*)
         Yelena Archiyan
         (Admitted in New York)
         2001 Ross Avenue, Suite 3600
         Dallas, TX  75201
         Tel.: (214) 720-4300
         Fax: (214) 981-9339
         E-Mail: john.mitchell@akerman.com
         E-Mail: yelena.archiyan@akerman.com

         - and –

         Andrea S. Hartley
         (Admitted *Pro Hac Vice*)
         Katherine C. Fackler
         (Admitted *Pro Hac Vice*)
         Joanne Gelfand
         (Admitted in New York)
         98 Southeast Seventh Street, Suite 1100
         Miami, FL 3313
         Tel.: (305) 374-5600
         Fax: (305) 374-5095
         E-Mail: andrea.hartley@akerman.com
         E-Mail: katherine.fackler@akerman.com
         E-Mail: joanne.gelfand@akerman.com

         *Counsel for Debtors and Debtors-in-Possession*

49870281;3

# EXHIBIT A

# SETTLEMENT AGREEMENT

49870281;3

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Agreement") is made and entered into as of August [__], 2019, by and among the following "Parties": (a) Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), on behalf of itself and its affiliated debtors and debtors in possession in the Chapter 11 Cases described below (collectively, the "Debtors"); (b) First Majestic Silver Corp. ("FMSC"), on behalf of itself and its subsidiaries Nusantara de Mexico, S.A. de C.V. ("Nusantara") and Primero Empresa Minera, S.A. de C.V. ("PEM" and together with FMSC and Nusantara, collectively, "FM"); and (c) Coöperatieve Rabobank U.A., New York Branch, Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi International Corporation, ICBC Standard Bank Plc, Techemet Metal Trading LLC, Woodforest National Bank and Hain Capital Investors Master Fund, Ltd. (collectively, the "Senior Lenders").

## RECITALS

WHEREAS, on November 2, 2018 (the "Petition Date"), certain Debtors commenced chapter 11 cases (the "Chapter 11 Cases") under title 11 of the United States Code (the "Bankruptcy Code") that are presently pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

WHEREAS, each Senior Lender is party to a credit agreement, master netting agreement or lease agreement with the Debtors entered into prior to the Petition Date (as such agreements may be amended, restated, supplemented or otherwise modified from time to time, the "Credit and Lease Agreements" and together with any and all related collateral and security documents, guarantees and other loan documents, the "Secured Credit/Lease Documents").

WHEREAS, the Debtors and the Senior Lenders assert, and FM disputes, that the obligations under the Secured Credit/Lease Documents (the "Prepetition Obligations") are secured by valid and perfected liens (the "Prepetition Liens") on substantially all of the Debtors' assets, including the Debtors' purported inventory and cash.

WHEREAS, on the Petition Date, the Debtors filed the *Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Secured Parties, (III) Scheduling a Final Hearing and (IV) Granting Related Relief* (the "Initial Cash Collateral Motion") [Docket No. 10].

WHEREAS, on November 13, 2018, the Debtors and the Senior Lenders filed the *Joint Supplement of the Debtors and the Senior Lenders to the Cash Collateral Motion* (together with the Initial Cash Collateral Motion, the "Cash Collateral Motion") [Docket No. 78].

WHEREAS, the Bankruptcy Court has entered nine interim cash collateral orders [Docket Nos. 54, 277, 372, 538, 675, 864, 987, 1160 and 1237] (collectively, the "Interim Cash Collateral Orders").

WHEREAS, pursuant to the Interim Cash Collateral Orders, among other things, the Senior Lenders consented to the Debtors' use of their cash collateral to fund the costs and expenses of administering the Chapter 11 Cases, and the Senior Lenders were granted superpriority claims ("Superpriority Claims") and adequate protection liens on substantially all of the Debtors' assets

- 1 -

(the "Adequate Protection Liens") to protect against any diminution in value of the Prepetition Collateral.

WHEREAS, numerous of the Debtors' customers (including FM) objected to the Cash Collateral Motion on the basis that the Debtors' purported precious metal inventory and its cash proceeds were property of such customers rather than property of the Debtors' estates, giving rise to a dispute (the "Ownership Dispute") concerning the ownership of such assets governed by uniform procedures approved by the Bankruptcy Court (as amended, the "Uniform Procedures") [Docket Nos. 395, 913 and 1196].

WHEREAS, Nusantara and Debtor Miami Metals II, Inc. (f/k/a Republic Metals Corporation) ("RMC") are parties to a certain letter agreement dated July 21, 2017 (as amended, restated, supplemented, or otherwise modified, the "Nusantara Contract") relating to the refining and forward/spot sales of precious metal produced by Nusantara's Santa Elena mine.

WHEREAS, PEM and RMC are parties to a certain letter agreement dated June 27, 2018 (as amended, restated, supplemented, or otherwise modified, the "PEM Contract" and together with the Nusantara Contract, the "FM Contracts") relating to the refining and forward/spot sales of precious metal produced by PEM's San Dimas mine.

WHEREAS, FM asserts that it retained ownership of certain of the precious metals delivered to the Debtors pursuant to the FM Contracts (the "Disputed Materials") and that such metals and the proceeds thereof are not property of the Debtors' estates.

WHEREAS, the Debtors and the Senior Lenders assert that the Debtors own the Disputed Materials and that such materials and the proceeds thereof are property of the Debtors' estates and are subject to the Prepetition Liens and Adequate Protection Liens of the Senior Lenders.

WHEREAS, on November 16, 2018, FM delivered a letter making a reclamation demand to the Debtors [Docket No. 102] (the "Reclamation Demand") and on November 21, 2018, FM filed an objection to the Cash Collateral Motion [Docket No. 147] (the "Cash Collateral Objection").

WHEREAS, on January 18, 2019, FM filed a *Customer Statement of First Majestic Silver Corp.* [Docket No. 460] (the "Initial Customer Statement") pursuant to the Uniform Procedures which asserted, among other things, FM' ownership claims to the Disputed Materials and incorporated the Cash Collateral Objection by reference.

WHEREAS, on March 11, 2019, FM filed an amendment to the Initial Customer Statement [Docket No. 781] (the "Supplemental Customer Statement" and together with the Initial Customer Statement, the "Customer Statement").

WHEREAS, (i) on April 10, 2019 (a) FMSC filed proof of claim no. 306 against RMC, (b) Nusantara filed proof of claim nos. 300, amended by 301, and 307 against RMC, and (c) PEM filed proof of claim nos. 304 and 308 against RMC and proof of claim no. 305 against Debtor Republic Trans Mexico Metals, S.R.L.; and (ii) on May 9, 2019, Nusantara filed proof of claim no. 457, amending proof of claim no. 307 against RMC (collectively, the "Proofs of Claim").

49870081;4

WHEREAS, on June 21, 2019, the Debtors and the Senior Lenders filed a joint motion for summary judgment [Docket No. 1202] seeking, among other things, to dismiss the Customer Statement as a "Bucket 3" customer ownership claim and overrule the Cash Collateral Objection.

WHEREAS, absent approval of this Agreement, the Parties intend to litigate the ownership of the Disputed Materials.

WHEREAS, to avoid the expense and uncertainty of protracted litigation, the Parties desire to settle their disputes according to the terms of this Agreement.

## AGREEMENT

NOW, THEREFORE, after good faith, arms' length extensive negotiations without collusion, and for good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

1.      Effective Date.    This Agreement is conditioned upon occurrence of the "Effective Date," which means the first date by which each of the following conditions has occurred:

(a)   this Agreement is executed by each of the Parties; and

(b)   the Bankruptcy Court enters an order approving this Agreement in a form and substance acceptable to the Parties (the "Settlement Order"), provided that such order has not been stayed.

The conditions set forth in this Section 1 may be waived, in whole or in part, by mutual agreement of the Parties.  As soon as practicable following execution of this Agreement, the Debtors shall file a motion with the Bankruptcy Court, in a form reasonable satisfactory to the Parties, requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

2.      Settlement Payment.  As consideration for the resolution of any and all existing disputes among the Parties, within five (5) business days of the Effective Date, the Debtors shall pay to FM $1,600,000 in immediately available funds.

3.      Allowed Claims.  Upon the Effective Date:

(a)   FM shall be granted an allowed administrative expense claim against RMC under section 503(b)(9) of the Bankruptcy Code in the amount of $5,000,000 (the "Allowed 503(b)(9) Claim");

(b)   FM shall be granted an allowed general unsecured claim against RMC in the amount of $5,302,290 (the "Allowed GUC Claim" and, together with the Allowed 503(b)(9) Claim, the "Allowed Claims"); and

(c)   The Debtors shall instruct their claims agent, Donlin Recano & Company, Inc., to enter the Allowed Claims in the claims register and to expunge all other FM claims from the claims register (including the Proofs of Claim and any other claims scheduled by the Debtors).

- 3 -

4.    <u>Ownership Dispute</u>.

(a)    Within five (5) business days of the Effective Date, FM shall withdraw the Reclamation Demand and the Customer Statement with prejudice.

(b)    Upon entry into an agreement in principle concerning this Settlement Agreement, all deadlines under the Uniform Procedures solely with respect to FM are stayed pending the Bankruptcy Court's entry of the Settlement Order.

5.    <u>Consent to Plan</u>.  Upon the Effective Date, FM shall vote in favor of and not, directly or indirectly, object to any plan of liquidation supported by the Senior Lenders and the Debtors so long as the plan provides treatment for administrative expense claims under section 503(b)(9) of the Bankruptcy Code that is no less favorable than that set forth in the plan filed at Docket No. 1295.

6.    <u>Consent to Cash Collateral Order</u>.  Upon the Effective Date, the Cash Collateral Objection shall be deemed immediately withdrawn with prejudice and FM shall not, directly or indirectly, object to any final cash collateral order supported by the Senior Lenders.

7.    <u>Party Representations</u>.  Each Party hereby represents and warrants that: (a) such Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed and delivered by such Party and constitutes the legal, valid, and binding obligations of such Party, enforceable against it in accordance with their respective terms; (d) such Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Party; and (e) such Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

8.    <u>Mutual Releases</u>.

(a)    Upon the Effective Date, each Debtor, each Debtors' estate and each Senior Lender, each on behalf of itself, its respective successors and assigns and each of their respective affiliates, subsidiaries, employees, directors, officers, members, agents, advisors or counsel (each in their capacity as such) (collectively, the "<u>Debtor/Lender Entities</u>"), hereby irrevocably waives, releases and discharges all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action, and liabilities that the Debtor/Lender Entities have, may have or are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity, or otherwise, including, without limitation, all claims under chapter 5 of the Bankruptcy Code and state fraudulent conveyances, fraudulent transfer and other similar state laws (each, a "<u>Claim</u>"), against FM, and each of its affiliates, subsidiaries, employees, directors, officers, members, agents, advisors and counsel (each in their capacity as such) (collectively, the "<u>FM Entities</u>"), based in whole or in part upon any act or omission, transaction, or occurrence with respect to the FM Contracts and the Disputed

- 4 -

Materials; provided, however, that the foregoing shall not release or discharge (i) any obligations arising under and pursuant to this Agreement, or (ii) any claims relating to any breach of the obligations arising under and pursuant to this Agreement.

(b)    Upon the Effective Date, FM, on behalf of itself and each FM Entity (including, without limitation, Nusantara and PEM), hereby irrevocably waives, releases and discharges all Claims against each Debtor/Lender Entity based in whole or in part upon any act or omission, transaction, or occurrence with respect to the FM Contracts, the Disputed Materials, the Ownership Dispute, the Secured Credit/Lease Documents, the Prepetition Obligations, the Prepetition Liens and the Cash Collateral Motion; provided, however, that the foregoing shall not release or discharge (i) any obligations arising under and pursuant to this Agreement, (ii) the Allowed Claims or (iii) any claims relating to any breach of the obligations arising under and pursuant to this Agreement.

9.    <u>Continuing Bankruptcy Court Jurisdiction</u>.    Each Party agrees that the Bankruptcy Court shall have exclusive jurisdiction over any disputes regarding the validity, interpretation, or performance of this Agreement so long as the Bankruptcy Cases are pending, and each of the Parties consents to personal jurisdiction and venue in the Bankruptcy Court in connection with any such disputes; provided, however, that if the Bankruptcy Cases are no longer pending, or if the Bankruptcy Court cannot or does not exercise jurisdiction, such jurisdiction and venue shall belong to the federal courts in the Southern District of New York.

10.    <u>Voluntary Agreement</u>.    Each Party acknowledges that it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing, or has voluntarily waived such right and enters into this Agreement voluntarily and without duress.

11.    <u>Further Assurances</u>.    Each Party agrees, without further consideration, to execute and deliver such other documents and to take such other action as may be necessary to consummate the purposes of this Agreement.

12.    <u>No Admission</u>.    This Agreement is for settlement purposes only and shall not be construed or deemed an admission by any Party to this Agreement of wrongdoing, liability, fault, or the validity of any claims.    This Agreement shall not be introduced by any Party, and shall not be admissible for any purpose, in any action other than an action to enforce its terms.

13.    <u>Valid Provisions Remain Effective</u>.    If any provision in this Agreement shall be invalid, inoperative or unenforceable, the remaining provisions of this Agreement shall remain in effect if both the economic and legal substance of the terms contemplated hereby are not materially affected in any manner adverse to any Party.    Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

14.    <u>Construction</u>.    The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party, nor will any rule of construction that favors a non-draftsman be applied.    A reference to any statute will be deemed also to refer to all rules and regulations promulgated under the statute, unless the context requires otherwise.    Unless specifically otherwise provided or the context otherwise requires, the singular includes the plural and the plural the

49870081;4

singular; the word "or" is deemed to include "and/or", the words "including", "includes" and "include" are deemed to be followed by the words "without limitation", and references to sections are to those of this Agreement. Headings in this Agreement are included for convenience of reference only and do not constitute a part of this Agreement for any other purpose.

15.    <u>Counterparts</u>. This Agreement may be executed in counterparts which, taken together, shall constitute one original. Delivery of an executed counterpart of a signature page to this Agreement by .pdf format shall be effective as delivery of a manually executed counterpart thereof. The Parties authorize their counsel to sign this Agreement on their behalf.

16.    <u>Applicable Law</u>. The validity, interpretation, and performance of this Agreement shall be construed and interpreted according to the laws of the State of New York, except to the extent that (a) provisions of the Bankruptcy Code apply, in which event the Bankruptcy Code shall control, or (b) applicable federal law preempts state law.

17.    <u>Entire Agreement; Amendments</u>. This document contains the entire Agreement among the Parties as to the matters addressed herein, and may only be modified in writing signed by the Parties or their duly appointed agents. All prior agreements and understandings among the Parties concerning the subject matter hereof are superseded by the terms of this Agreement.

18.    <u>Successors and Assigns</u>. This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors, and assigns (including any chapter 11 or chapter 7 trustee hereafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor). In addition, this Agreement, including the releases provided in <u>Section 8</u> above, shall be binding on any and all representatives of the Debtors' bankruptcy estates, including any chapter 11 or chapter 7 trustee or any party that has or is granted standing to pursue claims or causes of action on behalf of the Debtors' estates.

19.    <u>Continuing Validity</u>. Provided the Effective Date occurs, all provisions of this Agreement that can be given effect without confirmation of a Chapter 11 plan for the Debtors, including, without limitation, payment of the Settlement Payment, the granting of the Allowed Claims and the mutual releases, shall be and remain effective. If any provision of a Chapter 11 plan conflicts with this Agreement, this Agreement shall govern.

20.    <u>Third Party Beneficiaries</u>. Other than the Debtor/Lender Entities and the FM Entities not otherwise party hereto, there are no third party beneficiaries of this Agreement.

21.    <u>Notices</u>. All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when: (a) delivered by hand (with written confirmation of receipt) or (b) received by the addressee, if sent by email, in each case to the appropriate addresses and representative (if applicable) set forth in the signature page(s) attached hereto (or to such other addresses and representative as a Party may designate by notice to the other Parties in accordance with this paragraph).

*[Remainder of Page Intentionally Left Blank; Signature Pages Follow]*

49870081;4

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date written in the opening paragraph hereof.

**LECLAIRRYAN, PLLC**

By _____
    Janice B. Grubin
    885 Third Avenue, Sixteenth Floor
    New York, New York 10022
    Email: janice.grubin@leclairryan.com

*Attorneys for Counsel to First Majestic Silver Corp., Nusantara de Mexico, S.A. de C.V., and Primero Empresa Minera, S.A. de C.V*

**LUSKIN STERN & EISLER LLP**

By: _____
    Michael Luskin
    Eleven Times Square
    New York, New York 10036
    Email: luskin@lsellp.com

*Attorneys for Senior Lenders*

**AKERMAN LLP**

By: _____
    John E. Mitchell
    2001 Ross Avenue, Suite 3600
    Dallas, Texas 75201
    Email: john.mitchell@akerman.com

*Attorneys for the Debtors and Debtors in Possession*

- 7 -

# EXHIBIT B

# PROPOSED ORDER

49870281;3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
In re:                                                  )          Chapter 11
                                                        )
MIAMI METALS I, INC., *et al.*[3]                       )          Case No. 18-13359 (shl)
                                                        )
                                                        )          (Jointly Administered)
                              Debtors.                  )
                                                        )
———————————————————————

### ORDER GRANTING DEBTORS' MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BY AND AMONG DEBTORS, SENIOR LENDERS, AND FIRST MAJESTIC SILVER CORP. AND ITS SUBSIDIARIES, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Upon the motion (the "Motion")[4] **[ECF No. ___]** of Miami Metals I, Inc., *et al.*, as

debtors and debtors-in-possession (collectively the "Debtors") in the above-captioned Chapter 11

cases (the "Chapter 11 Cases"), for entry of an Order approving the Settlement Agreement by

and among Debtor Miami Metals II, the Senior Lenders, and First Majestic Silver Corp. and its

subsidiaries, Nusantara de Mexico, S.A. de C.V. and Primero Empresa Minera, S.A. de C.V.,

pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Bankruptcy Rules"); and it

appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this

proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that

notice of the Motion as set forth therein is sufficient under the circumstances, and that no other

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation), 15 West 47th Street, Suites 206 and 209, New York, NY 10036 (3194); Miami Metals II, Inc. (f/k/a Republic Metals Corporation), 12900 NW 38th Avenue, Miami, FL 33054 (4378); Miami Metals III LLC (f/k/a Republic Carbon Company), 5295 Northwest 163rd Street, Miami Gardens, FL 33014 (5833); Miami Metals IV LLC (f/k/a J & L Republic LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7604); Miami Metals V LLC (f/k/a R & R Metals, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (7848); Miami Metals VI (f/k/a RMC Diamonds, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Miami Metals VII (f/k/a RMC2, LLC), 12900 NW 38th Avenue, Miami, FL 33054 (4696); Miami Metals VIII (f/k/a Republic High Tech Metals, LLC), 13001 NW 38 Avenue, Miami, FL 33054 (6102), 12900 NW 38th Avenue, Miami, FL 33054 (1507); Republic Metals Trading (Shanghai) Co., Ltd., 276 Ningbo Road, Huangpu District, Shanghai, P.R. 200001 China (1639); and Republic Trans Mexico Metals, S.R.L., Francisco I. Madero No. 55 Piso 5, Local 409, Centro Joyero Edificio Central, Delegación Cuauhtémoc, Mexico DF 6000  (2942).

[4] All capitalized terms not defined herein shall have the definitions set forth in the Motion.

14

or further notice need be provided; and the Court having reviewed the Motion; no objections to the Motion having been filed; and it further appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, creditors, and other parties-in-interest; and the Court having determined that the terms of the proposed Settlement Agreement do not fall below the lowest point in the range of reasonableness; and upon all of the proceedings had before the Court on August 29, 2019; and after due deliberation and cause appearing;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 105(a), the Settlement Agreement is approved and is fully enforceable in all respects.

3.      The Settlement Agreement is incorporated into this Order.

4.      Debtor Miami Metals II, the Senior Lenders, and FM shall comply with all terms of the approved Settlement Agreement.

5.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(a) and 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and the requirements of Bankruptcy Rules 6004(a) and 6004(h) are hereby waived.

6.      Debtor Miami Metals II, the Senior Lenders, and FM are hereby authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of the Settlement Agreement and the terms of this Order.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation and/or interpretation of this Order.

49870281;3

8.      This Order shall be effective immediately upon entry by the Court.


Dated: New York, New York
       September ___, 2019

                                        **PROPOSED**

                                        _____

                                        HONORABLE SEAN H. LANE
                                        UNITED STATES BANKRUPTCY JUDGE

16