## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No. _____**

| | |
|---|---|
| COÖPERATIEVE RABOBANK U.A., NEW YORK BRANCH, BROWN BROTHERS HARRIMAN & CO., BANK HAPOALIM B.M., MITSUBISHI INTERNATIONAL CORPORATION, ICBC STANDARD BANK PLC, TECHEMET METAL TRADING, LLC, MERCED PARTNERS LTD. PARTNERSHIP, ATHILON CAPITAL CORP., and HAIN CAPITAL INVESTORS MASTER FUND, LTD., | Removed from: <br><br> Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida <br><br> Civil Division <br><br> Case No.: 2020-007685-CA-01 |

Plaintiffs,

v.

EISNERAMPER LLP,

Defendant.

_____/

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant EisnerAmper LLP ("EisnerAmper"), pursuant to 28 U.S.C. §§ 1334(b), 1441, 1446, and 1452, hereby removes the entire above-captioned civil action, and all claims and causes of action in that action, from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Civil Division, to the United States District Court for the Southern District of Florida.[1]  The Complaint in this action is related to a pending bankruptcy proceeding in the Bankruptcy Court for the Southern District of New York, under Chapter 11 of the Bankruptcy Code.

---

[1] EisnerAmper will promptly file a motion to transfer this case to the United States District Court for the Southern District of New York.

EisnerAmper respectfully provides the following statement in support of this removal:

1.      On or about April 3, 2020, Plaintiffs filed this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  The case was assigned Case Number 2020-007685-CA-01.

2.      Defendant EisnerAmper was served on April 24, 2020.

3.      Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint is attached to this Notice of Removal as Exhibit 1. A copy of the docket in the action is attached as Exhibit 2.[2]  There are no pending motions, and no responsive pleading or motion has been filed yet.

**Statutory Basis for Jurisdiction and Removal**

4.      28  U.S.C. § 1441(a) provides for removal of this action:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

5.      28 U.S.C. § 1334(b) provides for original jurisdiction in the district courts in cases related to certain bankruptcy cases:

---

[2] Also attached are Exhibits 3 through 12, consisting of the all of the remaining documents filed in the Circuit Court action removed to this Court, *Coöperatieve Rabobank U.A., New York Branch et al. v. EisnerAmper LLP*, Case No. 2020-007685-CA-01, Eleventh Jud. Cir. Court, Miami-Dade County, FL: Electronic Civil Summons 20 Day (Ex. 3); Issued Civil Summons. (Ex. 4); Order on Motions and Memo Requirements (Ex. 5); Mandatory Order to Confer and Certification Requirement (Ex. 6); Notice and Order of Adherence to Complex Business Litigation Section Procedures (Ex. 7); Notice of Designation of Email Address (Ex. 8); Verified Motion to Appear Pro Hac Vice Pursuant to Rule 1-3.11, Rules Regulating the Florida Bar and Florida Rule of Judicial Administration 2.510 of Andrew Solomon (Ex. 9); Order Granting Motion for Admission to Appear Pro Hac Vice Pursuant to Florida Rule of Judicial Administration 2.510 (of Andrew Solomon) (Ex. 10); Notice of Special Set Hearing CMC (Ex. 11); Notice and Order of Adherence to Complex Business Litigation Section Procedures and Notice of Hearing and Order on Case Management Conference (this document is not available to download as it is listed as "Pending Redaction" and therefore not attached although it appears on the docket); and Notice of Appearance and Designation of Email Addresses (Ex. 12).

Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

6.      28 U.S.C. § 1452(a) provides for removal to this Court, as the action is currently

pending in Miami-Dade County, which is within this District.

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

**The Republic Bankruptcy**

7.      As the Complaint demonstrates, the claims in this action are related to the pending

Chapter 11 bankruptcy proceedings of Republic Metals Corporation ("Republic"), which was filed

in November 2018 in the Southern District of New York and remains pending. *See* Complaint

(Exhibit 1 hereto) ¶¶ 4, 68-69.

8.      Republic and several of its affiliated companies filed Chapter 11 bankruptcy

petitions in the U.S. Bankruptcy Court for the Southern District of New York on November 2,

2018. [3] *See In re Republic Metals Refining Corporation*, Case No. 18-13359 (U.S. Bankr. Ct.

S.D.N.Y.) (the "*Republic Bankruptcy*"), D.E. 1.

**Parties**

9.      The Plaintiffs in this case (or their predecessors), Coöperatieve Rabobank U.A.,

New York Branch, Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi

International Corporation, ICBC Standard Bank PLC, Techemet Metal Trading, LLC, Woodforest

---

[3] Republic Metals Corporation and its subsidiaries and affiliates each filed bankruptcy petitions, and all are jointly administered under Case No 18-13359.

National Bank[4], and Bank Luemi USA[5],  appeared in the Republic Bankruptcy and asserted their

rights as senior secured lenders to the Debtors.  *Republic Bankruptcy*, D.E. 21.

10.    Defendant EisnerAmper was Republic's auditor for the year ended December 31,

2016.  Complaint ¶ 1, 22.

11.     According to the Plaintiffs, at the time of the Bankruptcy Petition, Republic was

indebted to the Plaintiffs for more than $177 million.  Complaint ¶ 69.  They allege that they relied

on EisnerAmper's audit of Republic for the year ended December 31, 2016, *id*. ¶ ¶ 47-62, 74, and

that their damages exceed $60 million. *Id*. ¶ 76.

**Relatedness**

12.    Each of the Plaintiffs was a secured lender to Republic. They are included in the

reference to Secured Parties in Republic's Plan of Liquidation in the *Republic Bankruptcy*.

13.    Each of the Plaintiffs alleges that it received and relied on a copy of EisnerAmper's

Audit Report in connection with its lending relationship with Republic.  Complaint ¶¶ 47-62.

### *Republic's Confirmed Plan and Plaintiffs' Assignment of Claims*

14.    As set forth below, any claims (or proceeds of claims) that the Plaintiffs may have

against EisnerAmper are assigned to the Liquidation Trust established in connection with

Republic's Plan of Liquidation.

15.    The Plan of Liquidation for Republic was confirmed on December 23, 2019 (the

"Plan").  *Republic Bankruptcy*, D.E. 1668.  It became effective on January 7, 2020.  *Id.,* D.E. 1682.

16.    "Secured Parties" in the Plan are defined as

---

[4] Woodforest is the predecessor in interest to Athilon Capital Corp.. LLC and Merced Limited
Partnership, plaintiffs in this matter.  *See* Complaint ¶ 13.

[5] Bank Leumi is the predecessor in interest to Hain Capital Investors Master Fund, Ltd., plaintiff in
this matter.  *See* Complaint ¶ 14,

**1.92. Secured Parties**. Coöperatieve Rabobank U.A., New York Branch, Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi International Corporation, ICBC Standard Bank Plc, Techemet Metal Trading LLC, Woodforest National Bank, Bank Leumi USA, and including their transferees and successors in interest, including but not limited to Hain Capital Investors Master Fund, Ltd., Merced Partners Limited Partnership and Athilon Capital Corp. LLC.

*Id.* D.E. 1668 at 56. These are the Plaintiffs in this action.

17.    The Debtor's confirmed plan of liquidation provides for "MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN" via a Litigation Trust in Article 8*.* *Republic Bankruptcy***,** D.E., 1668 at 68.

18.    The claims (or proceeds of claims) in this action were assigned to the Litigation Trust:

a.    **¶ 8.1.5. Assignment of Claims to Litigation Trust**. On the Effective Date, the . . . the Secured Parties shall assign and be deemed to have assigned the Assigned Claims and the Assigned Proceeds of Auditor Claims to the Litigation Trust…

*Republic Bankruptcy*, D.E. 1668 at 68.

b.    Assigned claims and Assigned proceeds are defined as

¶ 1.13. **Assigned Claims**. All Causes of Action that any Secured Party may have against any . . . . auditor, [or] accountant, . . . arising out of or relating in any way to the Secured Parties relationship or transactions with the Debtors, including without limitation, . . .(y) the *Auditor/Lender Claims*.

**¶ 1.14. Assigned Proceeds of Auditor Claims**. The Litigation Trust's portion of the net proceeds of any Auditor/Lender Claim pursuant to the Auditor Claim Waterfall.

*Id.,* D.E. 1668 at 49 (emphasis added)

c.    Auditor/Lender Claims are defined as :

¶ **1.15. Auditor/Lender Claim**. Any rights, claims, and causes of action that Secured Parties have or may have against Maria I. Machado, P.A., Crowe LLP and EisnerAmper LLP that arise out of or relate in any way to the Secured Parties' relationship or transactions with the Debtors, . . .

*Id.,* D.E. 1668 at 49.

19.     Proceeds of claims such as those set forth in the Complaint in this action become

the source of funds for the Litigation Trust:

> **¶ 1.16. Auditor Claim Waterfall**. Subject to any reasonable agreement with respect to a contingency fee, the net proceeds of any Auditor/Lender Claim shall be distributed (i) first, 100% to the Secured Parties until the Secured Parties receive $3,000,000; (ii) second, 50% to the Secured Parties and 50% to the Litigation Trust until the Secured Parties receive an additional $5,500,000; and (iii) third, 100% to the Litigation Trust.

*Republic Bankruptcy*, D.E. 1668 at 50.

> **¶ 1.66. Litigation Recoveries**. The Assigned Proceeds of Auditor Claims plus the net proceeds, other than the Secured Party Litigation Recovery Right, of (a) the Assigned Claims and (b) Retained Causes of Action.

*Id.* at 54

> **¶ 1.102. Trust Assets**. The Estate Litigation Fund, 503(b)(9) Fund, the Retained Causes of Action, the Assigned Claims, the Assigned Proceeds of Auditor Claims, the Ownership Reserve, and the Priority Reserve, Disputed Claims Reserve, together with any and all income earned on and proceeds of such assets, and any and all other Assets of the Debtors that have not been abandoned.

*Id.* at 57.

20.     Indeed, the Plaintiffs cannot resolve the claims in the Complaint without consent

from the Litigation Trustee:

> **¶ 8.5.2.** The Secured Parties shall not terminate or withdraw from any Auditor/Lender Claims, except as provided for under this Section 8.5 or upon the consent of the Litigation Trustee, which consent shall not be unreasonably withheld. The Secured Parties shall not settle any Auditor/Lender Claims without the prior approval of the Litigation Trustee, which approval shall not be unreasonably withheld.
> **. . . .**
> **¶ 8.5.5.** The Secured Parties shall consult with the Litigation Trustee on any significant matters relating to the prosecution of the Auditor Claims.

D.E. 1668, at 70.

21.     The Litigation Trust funds Republic's Plan of Liquidation.

**¶1.4 Nature and Purpose of Litigation Trust.**
(a) Purpose. The purposes of the Litigation Trust are to hold and effectuate an orderly disposition of the Trust Assets, to resolve Claims and prosecute Retained Causes of Action and Assigned Claims, to attend to matters concerning the Auditor/Lender Claims pursuant to Section 8.5 of the Plan, to distribute or pay over the Trust Assets, or proceeds thereof, in accordance with this Agreement and the Plan, and to wind-down the Estates of the Debtors, with no objective or authority to engage in any trade or business.

*Republic Bankruptcy*, D.E. 1668 at 90, Litigation Trust Agreement.

### Removal Jurisdiction

22.     Based upon the foregoing, the claims in the Complaint are related to the Republic Chapter 11 Bankruptcy.

23.     Therefore, removal is appropriate because this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1334 (b) and 1452(a), and the action could have been brought in this Court originally.

24.     The Complaint is pending in Miami-Dade County, which is within the Southern District of Florida. Thus, jurisdiction on removal is appropriate in this Court.

### Timeliness

25.     Defendant EisnerAmper was served on April 24, 2020.

26.     This notice is timely filed under 28 U.S.C.§ 1441(a), as it is filed within 30 days of service.

### Legal Authority

27.      "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.  The proceeding need not necessarily be against the debtor or the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and

7

which in any way impacts upon the handling and administration of the bankruptcy estate." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) (*quoting Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir. 1990)). This jurisdictional grant is "extremely broad." *Toledo*, 170 F.3d at 1345. Because these claims or their proceeds are assigned in part to the Litigation Trust which forms an integral part of the Plan, they impact the handling and administration of the bankruptcy estate.

28.    An action is "related to" a bankruptcy proceeding even when the claims are between third parties.

> Congress did not delineate the scope of "related to"[5] jurisdiction, but its choice of words suggests a grant of some breadth. The jurisdictional grant in § 1334(b) was a distinct departure from the jurisdiction conferred under previous Acts, which had been limited to either possession of property by the debtor or consent as a basis for jurisdiction. . . . Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate . . .

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307–9 (1995) (citations and quotations omitted).

**Other Procedural Matters**:

29.    In 2019, Plaintiffs or their predecessors in interest sued the previous auditors for Republic. *Coöperatieve Rabobank U.A., New York Branch, et. al, v. Crowe, LLP,* Case No. 2019-018945 (CA 01) (Fla. 11th Jud. Cir.). That case was promptly removed to this Court as related to the pending Republic Bankruptcy. *Coöperatieve Rabobank U.A., New York Branch, et. al, v. Crowe, LLP,* Case No. Case 1:19-cv-23100-DPG (S.D. Fla.). Although Plaintiffs moved for an order of remand [D.E. 7], the District Court, on the motion of Crowe, transferred the action to the United States District Court for the Southern District of New York, allowing the motion for remand to be determined in New York.. *Id.*, D.E. 16 (S.D. Fla. Feb. 20, 2020). The Southern District of New York then transferred the case to the Bankruptcy Court. *Coöperatieve Rabobank U.A., New York Branch, et. al, v. Crowe, LLP,* Case No. 1:20-cv-01556-LGS, D.E. 24 (S.D.N.Y. Mar. 16,

2020). The action is pending in the Bankruptcy Court as *Coöperatieve Rabobank U.A., New York Branch, et. al, v. Crowe, LLP,* Adv. Proc. No. 20-01061-shl (S.D.N.Y Bktcy.). The Plaintiffs did not contest subject matter jurisdiction under the "related to" test.

30.    This is not a core proceeding. EisnerAmper does not waive its right to a jury trial, nor does it consent to trial by or entry of a final judgment by the Bankruptcy Court.

31.    A copy of this Notice will be served immediately after its filing with this Court by email on counsel for the Plaintiffs and filed electronically with the Circuit Court for the Eleventh Judicial Circuit of Florida, where the Complaint is presently pending.

32.    Copies of all filings in the action pending in the state court are attached hereto.

33.    Shortly after filing this Notice of Removal, Defendant intends to move this Court to transfer the matter to the United States District Court for the Southern District of New York, where by standing order of that Court, the action will likely be further transferred to the Bankruptcy Court for the Southern District of New York for all appropriate pretrial matters.

34.    Defendant further intends to respond to the Complaint with a motion to dismiss.

**WHEREFORE,** Defendant EisnerAmper requests that the Court accept the removal of this entire action from the Circuit Court for the Eleventh Judicial Circuit of Florida, in Miami-Dade County, Florida.

Dated:  May 13, 2020

Respectfully submitted,

/s/ Deborah S. Corbishley
Deborah S. Corbishley
Richard H. Critchlow
KENNY NACHWALTER, P.A.
Four Seasons Tower - Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile:  (305) 372-1861
rcritchlow@knpa.com
dcorbishley@knpa.com

*Attorneys for Movant Defendant
EisnerAmper LLP*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 13, 2020, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via electronic mail upon counsel listed on attached the service list.

s/ *Deborah S. Corbishley*
Deborah S. Corbishley

**SERVICE LIST**

Andrew T. Solomon
SOLOMON & CRAMER LLP
1441 Broadway, Suite 6026
New York, NY 10018
Telephone:  (212) 884-9102
Facsimile:  (516) 368-3896
asolomon@solomoncramer.com

Scott Jay Feder, P.A.
4649 Ponce de Leon Boulevard
Suite 402
Coral Gables, FL 33146
Telephone:  (305) 669-0060
Facsimile: (305) 669-4220
Scottj8@aol.com

*Attorneys for Plaintiffs*

Richard H. Critchlow, Esq.
Deborah S. Corbishley, Esq.
KENNY NACHWALTER, P.A.
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
rhc@knpa.com
dsc@knpa.com

*Attorneys for Movant Defendant EisnerAmper LLP*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**I. (a) PLAINTIFFS** COÖPERATIEVE RABOBANK U.A., NEW YORK BRANCH, BROWN BROTHERS HARRIMAN & CO. BANK HAPOALIM B.M.

**DEFENDANTS** EISNERAMPER LLP,

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott Jay Feder, P.A.; 4649 Ponce de Leon Blvd., Suite 402
Coral Gables, FL 33146 (305) 669-0060

Attorneys *(If Known)*
Richard H. Critchlow; Kenny Nachwalter, P.A.; 1441 Brickell
Avenue, Suite 1100; Miami, FL 33131 (305) 373-1000

**(d)** Check County Where Action Arose: ☒ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Re-filed *(See VI below)*
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

**VI. RELATED/ RE-FILED CASE(S)**
*(See instructions):* a) Re-filed Case ☐ YES ☒ NO
b) Related Cases ☐ YES ☒ NO
JUDGE: Darrin P. Gayles
DOCKET NUMBER: 19-cv-23100

**VII. CAUSE OF ACTION** Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1446, Removal related to bankruptcy proceeding; Lenders assert negligent misrepresentation in audit.
LENGTH OF TRIAL via 7 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
DATE May 13, 2020
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ IFP _____ JUDGE _____ MAG JUDGE _____

# EXHIBIT  1

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO:

| | |
|---|---|
| COÖPERATIEVE RABOBANK U.A., NEW YORK BRANCH, BROWN BROTHERS HARRIMAN & CO., BANK HAPOALIM B.M, MITSUBISHI INTERNATIONAL CORPORATION, ICBC STANDARD BANK PLC, TECHEMET METAL TRADING, LLC, MERCED PARTNERS LIMITED PARTNERSHIP, ATHILON CAPITAL CORP., LLC, and HAIN CAPITAL INVESTORS MASTER FUND, LTD., | : : : : : : : |
| Plaintiffs, | : |
| v. | : |
| EISNERAMPER LLP, | : |
| Defendant. | / |

## **COMPLAINT**

Plaintiffs Coöperatieve Rabobank U.A., New York Branch ("Rabobank"), Brown Brothers

Harriman & Co. ("BBH"), Bank Hapoalim B.M. ("Hapoalim"), Mitsubishi International

Corporation ("Mitsubishi"), ICBC Standard Bank Plc ("ICBCS"), Techemet Metal Trading, LLC

("Techemet"), Merced Partners Limited Partnership ("Merced") and Athilon Capital Corp., LLC

("Athilon"), as successors to Woodforest National Bank ("Woodforest"), and Hain Capital

Investors Master Fund, Ltd. ("Hain Capital"), as successor to Bank Leumi USA ("Leumi"), by and

through their undersigned attorneys, for their Complaint against Defendant EisnerAmper LLP

("Eisner"), allege as follows:

## NATURE OF THE CASE

1.    Plaintiffs (or their predecessors in interest) provided secured credit facilities and associated loans and precious metal leases to Republic Metals Corporation ("Republic")[1], a precious metals refiner based in Opa Locka, Florida.  They bring this lawsuit against Republic's former auditor, Eisner, to recover damages caused by the inaccurate clean audit report recklessly issued by Eisner for Republic's 2016 financial statements.  Eisner issued its audit opinion knowing that it would be used and relied upon by Republic's creditors, including Plaintiffs.  The audited financial statements represented that Republic had precious metals inventory valued at $134.8 million.  In fact, the number was a fiction and the true value of Republic's actual inventory was a fraction of that amount.

2.    In conducting its audit, Eisner knew that Republic's inventory valuation was based on nearly 2,000 drums of hydroxide—a refinery byproduct—that purportedly contained millions of dollars of extractable silver and gold.  This inventory was the most significant asset on Republic's balance sheet, representing over 50% of the current assets reported on its 2016 balance sheet.  For an auditor, high-value inventory items always require careful scrutiny, but this is especially so when each unit of inventory—here, a drum of a hydroxide mixture—differs in value, weight, and composition from unit to unit.  But Eisner, evidently lacking the requisite industry knowledge and in derogation of Generally Accepted Audit Standards ("GAAS"), blindly accepted Republic's counts and valuation methodologies at face value, without conducting any independent testing, verification, or other assurance procedures, and without even understanding what Republic was doing. Moreover, in failing to audit inventory, Eisner ignored red flags showing that Republic's inventory values were wildly overstated—including the very fact that Republic was

---

[1] Now known as Miami Metals II, Inc.

sitting on so many unprocessed drums of byproduct of substantial value (over $100 million in precious metals), which it had yet to monetize.

3.      In extending credit to Republic, Plaintiffs relied on Eisner's professional audit opinion, including that Republic's 2016 financial statements fairly presented, in all material respects, Republic's financial position and results of operations and that they were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"). Neither was true. Had Eisner exercised due professional care and the requisite degree of professional skepticism, the misstatements and errors in Republic's financial statements would have been easily detected. But Eisner did not conduct an audit in accordance with GAAS. Indeed, its "audit" of inventory amounted to no audit at all and its procedures were no more thorough than checking arithmetic based on inputs provided by Republic's management. When an auditor ignores obvious risks and utterly abandons the guidelines and principles that govern the profession, its culpability moves beyond mere negligence to extreme recklessness, and that is how Eisner's performance must be viewed here.

4.      In November 2018, Republic filed for Chapter 11 bankruptcy as a result of what Republic described as "a significant discrepancy in its inventory accounting." As of that date, Republic owed the Plaintiffs over $177 million under loans and metal leases, which it could not repay. Of this amount, approximately $135 million remains unpaid as of today and, of that amount, no less than $61.5 million is likely to remain outstanding after expected distributions from Republic's bankruptcy estate are made.

5.      This complaint brings claims for negligent misrepresentation, gross negligence, and common law fraud.

**PARTIES**

6.      The Plaintiffs are a group of financial institutions and precious metals lessors that

3

(directly or through their predecessors in interest) extended nearly $200 million in credit to Republic pursuant to certain secured credit and lease agreements.

7.      Plaintiff Rabobank is a foreign branch office of a financial institution incorporated and existing under the laws of the Netherlands with its principal place of business located as 245 Park Avenue, New York, New York 10167.

8.      Plaintiff BBH is a New York limited partnership with its principal place of business located at 140 Broadway, New York, New York 10005.

9.      Plaintiff Hapoalim is a foreign branch office of a financial institution incorporated and existing under the laws of Israel with its principal place of business in the United States located at 1120 Avenue of the Americas, New York, New York 10036.

10.     Plaintiff Mitsubishi is a New York corporation with its principal place of business located at 655 Third Avenue, New York, New York 10017.

11.     Plaintiff ICBCS is a corporation incorporated and existing under the laws of England and Wales with its principal place of business located at 20 Gresham Street, London, EC2V 7JE, United Kingdom.

12.     Plaintiff Techemet is a Texas corporation with its principal place of business located at 6025 Genoa Red Bluff Road, Pasadena, Texas 77507.

13.     Plaintiffs Merced and Athilon purchased Woodforest's rights, claims and privileges associated with Republic's obligations to Woodforest.  Plaintiff Merced is a Delaware limited partnership, and Plaintiff Athilon is a Delaware limited liability company, both maintaining a principal place of business located at 601 Carlson Parkway, Ste. 200, Minnetonka, Minnesota 55305. (Woodforest, is a national banking association with its principal place of business located at 1330 Lake Robbins, Suite 100, The Woodlands, Texas 77380.)

4

14.    Plaintiff Hain Capital purchased Leumi's rights, claims, and privileges arising in connection with Republic's obligations to Leumi.  Hain Capital is organized under the laws of the Cayman Islands, with its principal place of business located at 301 Route 17, 7th Floor, Rutherford, New Jersey 07070. (Leumi is a New York chartered bank with its principal place of business located at 579 Fifth Avenue, New York, New York 10017.)

15.    Defendant Eisner, is a national public accounting firm with offices around the country, including offices in Fort Lauderdale, West Palm Beach, and at 1001 Brickell Bay Drive, Miami, Florida 33131. It is registered as a limited liability partnership in the State of Florida with the Florida Secretary of State, Division of Corporations, and is licensed as a CPA Firm with the Florida Department of Business and Professional Regulation (License Number AD64074).

## JURISDICTION AND VENUE

16.    This Court has general subject matter jurisdiction because this is a civil dispute involving more than $25,000.  It has personal jurisdiction over Defendant Eisner under Florida's long-arm statute, Fla. Stat. § 48.193, in that Plaintiffs' causes of action arise out of Eisner's engaging in business in the state and from tortious acts and omissions committed within the state. Venue is proper in this Circuit under Fla. Stat. § 47.011, because Eisner resides in Miami-Dade County.

## FACTUAL BACKGROUND

**Republic Metals Corporation**

17.    Republic, incorporated in the State of Florida in 1980, was in the business of refining, selling, and brokering precious metals.  The company was family-owned and was operated by Chief Executive Officer Jason Rubin.  Its Chief Financial Officer was David Comite. Republic acquired minimally processed gold and silver and processed it into finished metal at its refinery located in Opa Locka, Florida.  Both Rubin and Comite worked out of Republic's offices

5

at the refinery site.

18.     In its early days, Republic primarily refined gold, but in 2013 it shifted its focus to silver. The process for refining gold and silver is not the same.  Gold refining involves melting, whereas silver refining is mainly a chemical process. Moreover, the silver refining process takes longer, and the process involves a much larger volume of raw materials. A byproduct from the silver refining process is a hydroxide sludge, which contains the remnants from the refining process, mainly water, copper, and various quantities of precious metals that were not extracted through the main refining process.

19.     As Republic ramped up its silver refining operations, it generated substantial quantities of the hydroxide byproduct, which it stored in drums (numbering nearly 2,000 in 2016). These drums of hydroxide sludge were reported in aggregate on Republic's balance sheet as inventory and represented the single largest asset for each year.

20.     Republic obtained working capital for its operations through precious metal leases and loans provided under the Intercreditor credit facilities further described below.  These credit facilities were secured by Republic's purported precious metals inventory.

**Eisner's Negligent Audit of Republic's Precious Metals Inventory**

21.     Republic's 2014 and 2015 financial statements were audited by Crowe Horwath LLP ("Crowe").  Crowe performed its audit functions negligently and failed to discover that Republic's inventory value was wildly overstated.[2]

22.     In October 2016, Republic fired Crowe and engaged Eisner to audit its 2016 financial statements.  Eisner's engagement agreement, dated December 2, 2016, was signed by

---

[2] Plaintiffs sued Crowe in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida. Crowe removed the case to the United States District Court for the Southern District of Florida and sought to transfer the case to the Southern District of New York; Plaintiffs moved to remand. The transfer motion was granted and the abstention/remand motion is sub judice in the federal court in New York.

Eisner partner Travis Epp and addressed to Republic's CFO Comite at Republic's offices in Florida, where Comite signed the engagement agreement.

23.     In mid-April 2017, Eisner's audit personnel visited Republic's Florida offices for an on-site inspection and to begin the 2016 year-end audit. In connection with that visit, Republic provided Eisner with a trial balance showing an inventory value of $134,455,218.96.

24.     Before Eisner's visit, Republic had supplied Eisner with a "narrative," which purported to explain its inventory processes. Republic claimed to maintain a "perpetual inventory system," which it tracked through its software system and verified with physical counts. The narrative also identified four categories of inventory, of which three contained precious metals: "The vault" (finished goods), "Bars inventory" (metals yet to be refined), and "Sweeps" (byproducts stored in "large drums" that contain "low grade materials"). The other inventory category (not relevant here) was "Diamonds."

25.     In designing and conducting its audit procedures, Eisner should have made inventory a major focus. It is well known that fictitious inventory has been at the center of numerous significant cases of fraudulent and misstated financial reporting. As a general matter, under GAAS, observation and verification of inventory counts are mandatory components of an audit, and the valuation of inventory is always a key part of an audit because of its materiality and the high risk of errors or misstatements.  At Republic, further scrutiny was required because its reported inventory value represented such a large proportion of the overall value of the current assets on the balance sheet.   From an audit perspective, inventory at Republic presented a significant risk of material misstatement and, thus, required an appropriate audit response.

26.     On April 18, 2017, Republic provided Eisner with accounting work papers, including a chart entitled "December 2016 INVENTORY." The chart purported to breakout

7

inventory by type (*e.g.*, Gold, Silver, Platinum, Palladium, *etc.*) and to classify it according to its category (*e.g.,* Vault, Bars, Sweeps, and Refinery). The largest component of inventory by weight and value was silver in the refinery (7,753,042.96 troy ounces valued at $125,909,417.67 (as of 12/31/16)), a category that was not described in Republic's inventory narrative.

27.    On April 19, 2017, Republic supplied Eisner with separate spreadsheets, corresponding to each of the precious metal inventory categories described in the inventory narrative. These spreadsheets were named: "December Bars Inventory.xlsx," "December Sweeps inventory.xlsx," and "December Vault Inventory.xlsx," and they reported the precious metal contents held by Republic for each category.  However, the combined weights of the precious metals shown on the three charts were a fraction of the total quantities necessary to support the $134,455,218.96 inventory value reported on Republic's trial balance.

28.    To close the substantial gap between the value of the precious metals calculable from Republic's "bars," "sweeps," and "vault" inventory charts and the $134 million value on the trial balance, on April 25, 2017, Republic's CFO, Comite, provided Eisner with another chart entitled "au-ag refinery calculation." According to the "au-ag refinery calculation," Republic estimated that its "refinery" inventory contained an additional 29,550 troy ounces of gold (worth $34 million at year end 2016 prices) and 6,304,000 ounces of silver (worth $102,376,960 at year end 2016 prices), which were stored in 1,973 drums of hydroxide sludge. The quantities shown on the "au-ag refinery calculation" were not based on actual inventory counts but were estimates derived from historical data.  In fact, the calculations were bogus, and the quantities did not exist.

29.    Incredibly, despite the materiality of the inventory values at issue, the significant risk of misstatement, the numerous testing requirements under GAAS for inventory specifically and significant balance sheet items generally, and the auditor's general duty of skepticism, Eisner

performed no audit procedures to test or verify Comite's "au-ag refinery calculation." Instead, it relied entirely on the say-so of the CFO of the company that it was auditing.

30.    Eisner did not even physically inspect or count the drums. Comite obtained (and forwarded to Eisner) an email from an employee in Republic's wastewater processing facility, who reported on February 17, 2017 that "We have a total of 1,973 drums of high grade hydroxides left." Eisner accepted that figure as accurate without verifying it.

31.    Despite being required to do so under GAAS,

(a)    Eisner did not observe, conduct or verify a physical inventory count of the drums of hydroxide;

(b)    Eisner did not observe or weigh the hydroxide drums or a random sample to verify that the weights in inventory matched the weights from the historical lots shown on the "au-ag refinery calculation";

(c)    Eisner did not test the contents of the hydroxide drums or a random sample of the drums to verify their supposed precious metal contents;

(d)    Eisner did not ascertain the cost or feasibility of extracting the gold and silver from the hydroxide;

(e)    Eisner did not ascertain or verify that the hydroxide sludge could or would be refined and sold within one year or that it was to be sold or consumed within the normal operating cycle, which are the characteristics of a "current" asset;

(f)    Eisner did not investigate or validate Republic's method for valuing the inventory of hydroxide sludge based on prior data shown on the "au-ag refinery calculation";

(g)    Eisner did not obtain a sufficient understanding of the derivation and meaning of the historical data on the "au-ag refinery calculation:" and

**(h)**    Eisner did not inquire why the drums of "high grade hydroxides," which were now the largest component of Republic's inventory, were not even listed in Republic's inventory "narrative."    The only "drums" identified in the narrative were those included in "sweeps" and were described as containing "low grade materials."

32.    Had Eisner performed even one of the above-listed procedures, it would have immediately recognized that Comite's inventory valuation methodology was flawed and unreliable:

**(a)**    First, had Eisner required an independent valuation of the hydroxide barrels or a statistically appropriate sample, it would have ascertained that they had little or no value. This type of testing is easily done and is a standard procedure for an auditor.

**(b)**    Second, had Eisner investigated Republic's valuation methodology, it would have easily determined its invalidity. Republic's methodology valued current inventory by extrapolating from purported historical data. But it was an apples-to-oranges comparison. The majority of the *current* inventory of hydroxide sludge was created at the end of the refining process (in the wastewater process), after virtually all the valuable materials had been refined out.  By comparison, the *historical* data on the "au-ag refinery calculation" was based on precious metal recoveries obtained from byproducts during the main refining process when larger amounts of valuable materials were present. Also, the current inventory was valued on a per-drum basis. By comparison, the historical data in the "au-ag refinery calculation" included lots that aggregated multiple drums (all of variable weights) collected over weeks or months of refining.

**(c)**    Third, had Eisner questioned Comite about the historical data set on the "au-ag refinery calculation," it would have instantly recognized that it was not a reliable basis for estimating current inventory values. The descriptions of the lots in this historical data refer to "pre-

precip" or "pre-precipitation." Eisner should have inquired whether the current inventory of hydroxides was "pre-" (when silver content is extremely high) or "post-" (when it is extremely low) precipitation—it was the latter. The descriptions in the data also contain date ranges for each clean up bar (which was the nomenclature and numbering system used on the chart to describe each lot). The ranges differed: some were collected in one month; others were collected over several months. As a result, the weights varied dramatically (a low of 40 pounds to a high of 1,500 pounds). The variability should have alerted Eisner to the plain fact that the "clean up" bars shown on the chart did not equate to a single 55-gallon drum and that it was unreasonable to assume, without any testing or independent validation, that the 1,973 drums in current inventory had the same average weight as the 160 line-item clean-up bars on the "au-ag refinery calculation" chart.

(d)    Fourth, had Eisner conducted a physical inspection of the drums, their storage, and Republic's record keeping, which could have been done easily and is required under GAAS, it would have observed that Republic's inventory controls, storage methods, and tracking methodologies were insufficient and unreliable.

(e)    Finally, an auditor reasonably knowledgeable in the industry, as Eisner was required to be, would have known that it was implausible that a refinery would hold nearly two thousand drums of hydroxide sludge, generated as byproducts of the refining process, with the average drum containing precious metals worth more than $69,000. Indeed, it is known in the industry (and disclosed in the Republic's own inventory narrative) that a refiner often pays others to dispose of these materials as they contain insufficient value to justify the cost of storage and extraction.

33.    On May 30, 2017, Eisner issued a clean audit opinion for Republic's financial statements for the fiscal year ending December 31, 2016.

34.     In its audit opinion, Eisner stated that it had conducted its audit of Republic "in accordance with auditing standards generally accepted in the United States of America", which it summarized as requiring it to "plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement." Eisner assured that in issuing its opinion it had obtained "audit evidence" that was "sufficient and appropriate to provide a basis" for its "audit opinion."

35.     With its assurance of having followed GAAS and of having obtained sufficient audit evidence to support its audit opinion, Eisner concluded: "In our opinion, the combined financial statements referred to above present fairly, in all material respects, the financial position of Republic Metals Corporation and Affiliates as of December 31, 2016, and the combined results of their operations and their cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America."

36.     In issuing a clean audit opinion for Republic's financial statements for 2016, Eisner breached the duty of care to which accounting professionals are held in conducting independent audits.  Eisner's auditors had insufficient knowledge of the industry and of the specific inventory that they were auditing to evaluate the information provided by Republic; they failed to conduct appropriate inquiries or obtain sufficient audit evidence to support the inventory valuation; they failed to obtain advice from an industry expert on how to value the hydroxides; they failed to follow an auditor's duty of skepticism; they failed to ensure that Republic had adequate accounting controls in place for inventory; all despite the materiality of the inventory at issue and the red-flag warnings that Republic's information and representations were false.

37.     As a direct result of these failures, Eisner issued its clean audit opinion for Republic's financial statements for the year ended December 31, 2016, even though the balance

12

sheet falsely reported an inventory value of $134.8 million (of which $113.8 million was described as silver inventory), mainly consisting of the purported precious metal contents of the drums of hydroxide sludge, which were worth only a small fraction of that amount.

38.     Eisner's failures as an auditor were not detected until 2018, in connection with the preparation of the year-end financial statements for 2017. For the 2017 financial statements, Republic's CFO, Comite, decided to recompute Republic's "refinery" inventory based on a lower per-barrel valuation. Reducing inventory instantly created a loss for 2017 (lower ending inventory means higher "costs of goods sold"). The revaluation and loss raised significant questions with Republic's secured creditors.

39.     On June 8, 2018, Republic hired Eisner to conduct a forensic analysis of its inventory and to advise regarding the discrepancies. Specifically, Eisner's forensic team was hired to attend a physical inventory count (occurring on June 9-11, 2018) and compare the inventory weights observed to Republic internal reports, which had been the basis for the financial statements' reported inventory figures.

40.     Although Eisner's work done in June 2018 was nominally "forensic" and on a "consulting" basis, in fact, Eisner did in 2018 what it should have done for the 2016 year-end audit. Its 2018 "forensic" objective, to understand Republic's inventory processes and count the inventory, is indistinguishable from what should have been its "audit" plan and objective a year prior.

41.     The conclusion of the forensic team was inevitable: Eisner was able to reconcile Republic's finished inventory and other observable components of inventory but was forced to exclude the "hydroxide barrels stored in the Warehouse," from the calculation. As to them, Eisner observed that they "required further refining" before a value could be assigned. It noted that the

hydroxide barrels were unlabeled and untested, and it directed that Republic "process a selection of barrels that we randomly select to identify the actual metal content."

42.    To summarize its finding, Eisner's forensic team produced the following inventory summary for inventory value as of June 2018 – with the line item for "Warehouse (Hydroxide Barrels)" blank ("**TBD**") because the value could not be determined:

**Exhibit 1 –Summary of Inventory Findings by Weight and Estimated Value as of June 8, 2018:**

| EisnerAmper Summary of Inventory Findings | Gold | | Silver | | Other | Total Value |
|---|---|---|---|---|---|---|
| | Weight Oz | Value | Weight Oz | Value | Value | |
| 1 Refinery (excluding Hydroxide Barrels | 24,339 | $ 31,640,925 | 1,001,385 | $ 16,823,263 | $ 1,546,032 | $ 50,010,219 |
| 2 Warehouse (Hydroxide Barrels) | | | | TBD | | |
| 3 Mint | 3,450 | $ 4,485,000 | 299,873 | $ 5,037,859 | | $ 9,522,859 |
| 4 Sweeps | 6,464 | $ 8,402,628 | 81,363 | $ 1,366,905 | $ 2,748,306 | $ 12,517,839 |
| 5 Bars | 11,555 | $ 15,021,268 | 1,099,538 | $ 18,472,246 | $ 2,161,213 | $ 35,654,728 |
| 6 Third Party Advances & In-Transit | 20,647 | $ 26,840,691 | 453,696 | $ 7,622,087 | $ 483,230 | $ 34,946,008 |
| 7 Vault | 7,128 | $ 9,266,876 | 534,990 | $ 8,987,825 | $ 481,122 | $ 18,735,823 |
| 8 Miscellaneous Inventory | 2,510 | $ 3,262,630 | 90,820 | $ 1,525,778 | $ 648,634 | $ 5,437,042 |
| **Total Inventory** | **76,092** | **$ 98,920,017** | **3,561,664** | **$ 59,835,963** | **$ 8,068,537** | **$ 166,824,518** |
| 9 Cash Assets & Deposits | | | | | | $ 15,749,156 |

| | | |
|---|---|---|
| Total Inventory (per above) | $ | 166,824,518 |
| Cash Assets & Deposits | $ | 15,749,156 |
| Total Inventory, Cash & Deposits | $ | 182,573,674 |
| Bank Obligations | $ | 173,198,067 |
| Difference | $ | 9,375,607 |

**The Lenders' Reliance on Eisner's Audits**

43.    From December 2014 on, Republic funded its working capital needs by drawing on credit facilities governed by an Intercreditor Agreement between Republic and a group of financial institutions and precious metals lessors, who are either Plaintiffs here or their predecessors in interest (collectively, the "Lenders").

44.    The Intercreditor Agreement provided the common framework for the Lenders to extend secured credit facilities to Republic in the form of cash loans and precious metals leases. The Intercreditor Agreement defined a common borrowing base for the Intercreditor facilities and required Republic to provide a Borrowing Base Report at regular intervals. The Intercreditor Agreement defined the borrowing base as "an amount equal to the sum of certain asset categories of [Republic] (principally accounts receivable and inventory)." The Intercreditor Agreement also

enabled the Lenders to share equally in all collateral securing Intercreditor facilities and in all recoveries obtained by any Lender.

45.    The Intercreditor Agreement contemplated that some Lenders would potentially terminate their participation in the Intercreditor group and that others would join from time-to-time.  It provided expressly that "[a]ny bank or financial institution which is not a party to this Agreement initially may, with the consent of each of the other [Lenders], become a party hereto and hereafter be deemed a [Lender] hereunder."

46.    The Intercreditor Agreement was amended from time to time, including in February 2016, but at all relevant times contained the provisions discussed in paragraphs 44 and 45.

47.    Plaintiff Mitsubishi was a party to the Intercreditor Agreement from December 2014 and provided Intercreditor credit facilities by leasing gold and silver to Republic.

48.    Mitsubishi received, reviewed, and relied on Eisner's audit of Republic's 2016 financial statements in continuing to execute leases of gold and silver to Republic, pursuant to the Intercreditor credit facilities.  At the time of Republic's bankruptcy petition, Republic owed Mitsubishi approximately $54,278,000 under the Intercreditor Agreement metal leases.

49.    On February 19, 2016, the Intercreditor Agreement was amended and restated to, among other things, add Plaintiff Hapoalim as a party.  It was a requirement of the Hapoalim credit facility that Republic provide the bank with copies of its annual audited financial statements within 150 days of the close of each fiscal year, "prepared by independent public accountants reasonably acceptable to the Bank."

50.    Hapoalim received, reviewed, and relied on Eisner's audit of Republic's 2016 financial statement in continuing to lend money and extending the maturities of existing loans to Republic pursuant to the Intercreditor credit facilities. At the time of Republic's bankruptcy

15

petition, Republic owed Hapoalim approximately $11,373,000 in Intercreditor Agreement loans.

51.    On March 24, 2016, Plaintiff ICBCS became a party to the Intercreditor Agreement.

52.    ICBCS received, reviewed, and relied on Eisner's audit of Republic's 2016 financial statements in continuing to lease metal to Republic pursuant to the Intercreditor credit facilities.  At the time of Republic's bankruptcy petition, Republic owed ICBCS approximately $20,034,000 under Intercreditor Agreement metals leases.

53.    On June 24, 2016, Plaintiff BBH became a party to the Intercreditor Agreement and extended credit facilities to Republic.  It was a requirement of the BBH credit facility that Republic's annual financial statements be "audited by Crowe Horwath or a firm acceptable to the Bank" and provided to BBH within 150 days of the end of each fiscal year.

54.    BBH received, reviewed, and relied on Eisner's audits of Republic's 2016 financial statements in continuing to lend money to Republic pursuant to the Intercreditor credit facilities. At the time of Republic's bankruptcy petition, Republic owed BBH approximately $9,098,000 under Intercreditor Agreement loans.

55.    On June 27, 2017, Plaintiff Rabobank became a party to the Intercreditor Agreement and executed a credit facility with Republic.  It was a requirement of the credit facilities that Republic deliver copies of its audited financial statements to Rabobank within 150 days of the fiscal year end.

56.    Rabobank received, reviewed, and relied on Eisner's audit of the Republic's 2016 financial statements in entering into Intercreditor credit facilities with Republic and in lending money to Republic pursuant to these credit facilities.  At the time of Republic's bankruptcy petition, Republic owed Rabobank approximately $31,730,000 under Intercreditor Agreement loans.

16

57.     On June 27, 2017, Plaintiff Techemet became a party to the Intercreditor Agreement and entered into metal leasing agreements with Republic.  It was a requirement of the agreements that Republic deliver copies of its annual audited financial statements to Techemet.

58.     Techemet received, reviewed, and relied on Eisner's audit of Republic's 2016 financial statements in executed leasing agreements, pursuant to the Intercreditor Agreement, with Republic and, pursuant to them, leasing metals to Republic.  At the time of Republic's bankruptcy petition, Republic owed Techemet approximately $14,477,000 under Intercreditor Agreement metals leases.

59.     On October 31, 2017, Woodforest became a party to the Intercreditor Agreement and executed credit facilities with Republic.  It was a requirement of the credit facilities that Republic deliver copies of its audited financial statements to Woodforest within 150 days of the fiscal year end.

60.     Woodforest received, reviewed, and relied on Eisner's audit of Republic's 2016 financial statements in entering into Intercreditor credit facilities with Republic and in loaning money to Republic pursuant to those facilities.  At the time of Republic's bankruptcy petition, Republic owed Woodforest approximately $13,648,000 under Intercreditor Agreement loans.

61.     On October 31, 2017, Leumi became a party to the Intercreditor Agreement and entered into Intercreditor credit facilities with Republic.  It was a requirement of the credit facilities that Republic deliver copies of financial statements to Leumi within 150 days of the fiscal year end.

62.     Leumi received, reviewed, and relied on Eisner's audit of Republic's 2016 financial statements in entering into Intercreditor credit facilities with Republic and in loaning money to Republic pursuant to those facilities.  At the time of Republic's bankruptcy petition, Republic

owed Leumi approximately $22,746,000 under Intercreditor Agreement loans.

**Eisner's Duties to The Lenders**

63.     As Republic's auditor, Eisner knew that Republic depended on the Intercreditor facilities described above, and that Republic would be providing Republic's audited financial statements to the Lenders.

64.     The 2016 audited financial statements note that "In February 2016, the Company and various creditors entered into the Second Amended and Restated Intercreditor Agreement including notes payable and metal leases" and that "the agreement has been amended and certain information on outstanding balances is included below."  The financial statements proceed to note the terms of various loans with origination dates of November 15, 2014, January 29, 2016, and May 26, 2016, to represent that Republic was in  compliance with various financial covenants applicable to these credit facilities, to describe Republic's metals leases with multiple "financial institutions," and to represent the total amount of Republic's borrowings as of December 31, 2016. The audited financial statements also summarize the Intercreditor Agreement's borrowing base and the associated limitations on Republic's total borrowings.  Specifically, the 2016 audited financial statements note that "The Company's borrowings under its agreements with the financial institutions are subject to a borrowing base.  Total borrowings cannot exceed 90% of the market value of its inventory and advances, or 90% of its accounts receivable."

65.     Given Eisner's knowledge of the Intercreditor Agreement and related loans and leases and their terms, Eisner knew and expected that Republic would share the audited financial statements with the Lenders and that the Lenders were relying on them in making lending decisions.

66.     Indeed, Eisner had direct communications with the Lenders, including to confirm

information for purposes of the audit and to substantiate its qualifications and experience to serve at Republic's auditor.

67.    Because of Eisner's knowledge concerning the Lenders and their reliance on the audited financial statements, Eisner had a duty of care to the Lenders, which it breached in issuing a clean audit for the financial statements described above.

**Republic's Bankruptcy**

68.    Republic never issued audited financial statements for 2017, and the reduction in inventory value ultimately led to Republic's default under its agreements with the Lenders and to Republic's bankruptcy.

69.    Republic and certain of its affiliates filed voluntary petitions for bankruptcy relief on November 2, 2018.  At the time of the petition, Republic owed more than $177 million to the Lenders who had relied on Eisner's audits.

**COUNT I**
*Negligent Misrepresentation*

70.    Plaintiffs reallege and incorporate each of the allegations set forth in ¶¶ 1 through 69 as though set forth here in full.

71.    Eisner issued an audit report for Republic's financial statements for 2016 that falsely represented Republic's financial condition, including the value of Republic's inventory. These misrepresentations were material to Republic's financial condition and to persons relying on the audited financial statements.

72.    Eisner should have known that the inventory valuation was false, and Eisner failed to exercise reasonable care and to conduct reasonable inquiries, as would be expected of an independent auditor under the circumstances, to ensure that the valuation was reasonably accurate.

73.    Eisner knew that Republic would transmit the 2016 audited financial statements to

the creditors in general and, specifically, to the Lenders, and Eisner thus expected and intended

that the audited financial statements would reach and would influence such financial institutions

and precious metals lessors.   Eisner's understanding of the Lenders' reliance on the audited

financial statements is further evidenced by its written communications with Republic concerning

the Lenders, and its written communications directly with the Lenders.

74.    The Lenders received and justifiably relied on Republic's 2016 audited financial

statements.

75.    The Lenders relied on the misrepresentations in the 2016 financial statements to

their detriment in lending money and leasing metal to Republic based on materially false

representations of Republic's financial condition and its compliance with covenants.   But for the

misrepresentations of Republic's financial condition in the audited 2016 financial statements, the

Lenders would not have extended these loans and leases to Republic and would have terminated

any outstanding loans or leases.

76.    As a result of the Lenders' reliance on the audited financial statements, Plaintiffs

have been injured in an amount in excess of $61.5 million.

## COUNT II
*Gross Negligence*

77.    Plaintiffs reallege and incorporate each of the allegations set forth in ¶¶ 1 through

76 as though set forth here in full.

78.    Eisner's negligence was so extreme that it constituted a reckless indifference to the

rights of others and, particularly, the Lenders, who loaned and leased millions of dollars and

precious metals in reliance on the accuracy and validity of Republic's audited financial statements.

79.    Eisner knew that the Lenders, who were extending credit to Republic based on a

"borrowing base," for which inventory was a major component, would be relying on Republic's

20

audited financials.

80.    Eisner's reckless indifference included, among other grossly negligent acts and omissions, its issuance of a clean audit opinion for Republic's 2016 financial statements without making any reasonable or discernable effort to assure that Republic had fairly and accurately valued the largest and most material asset on its balance sheet, the inventory, or that Republic had adequate internal controls to assure the accuracy of management's accounting for inventory.

81.    Eisner's reckless indifference also included, among other grossly negligent acts and omissions, its failure to obtain a basic understanding of Republic's business and the precious metals refining industry before taking on an audit assignment.

82.    The Lenders justifiably relied on Eisner's audit of Republic's financial statements in agreeing to extend credit to Republic and to do so on a secured lending basis.

83.    As a result of the Lenders' reliance on the audited financial statements, Plaintiffs have been injured in an amount in excess of $61.5 million.

## COUNT III
*Fraud*

84.    Plaintiffs reallege and incorporate each of the allegations set forth in ¶¶ 1 through 83 as though set forth here in full.

85.    Eisner's clean audit opinion of Republic Metals 2016 financial statements (*i.e.*, that the financial statements present fairly, in all material respects, the financial position of Republic as of December 31, 2016) was a false statement in that Eisner's opinion included the representation that it had conducted its audit procedures in accordance with GAAS when it knew that it had not. The audit opinion was also false in that Eisner claimed that "the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion."

86.    Eisner acted recklessly in issuing its audit opinion for Republic. Eisner's auditing

21

practices were so deficient that the audit amounted to no audit at all. It failed to test the single largest item on Republic's balance sheet: current inventory. It took no steps to verify the quantities, weights, and contents of the hydroxide barrels. It unquestionably accepted Republic's methodology for valuing the inventory, without understanding the calculation, much less testing its validity. It also observed but failed to react to clear indications that Republic's methods were utterly and obviously deficient, including the very data that Republic's CFO, Comite, had supplied to Eisner to derive its current inventory valuations. Eisner also knew that Republic claimed to possess in these 1,973 hydroxide drums nearly 7 million ounces of silver and 15.5 thousand ounces of gold, which together would weigh about 437,500 pounds. That translates into 221 pounds of precious metal per drum. It would have been clear and obvious to Eisner that drums filled with *byproducts* from the refining process could not possibly contains such massive quantities of precious metals. Nor is it feasible that such quantities of precious-metal-rich byproduct could be generated within the regular yearly business cycle, raising significant questions about when these byproducts were generated and why they were being classified as *current* assets.

87. Eisner knew that the Lenders, who were extending credit to Republic based on a "borrowing base," for which inventory was a major component, would be relying on Republic's audited financials and the fact that Republic's financials were being audited.

88. The Lenders, who loaned and leased millions of dollars and precious metals, reasonably and justifiably relied on the accuracy and validity of Republic's audited financial statements and on the assurance that an auditor, here Eisner, was auditing their borrower, Republic, in accordance with GAAS.

89. The Lenders justifiably relied on Eisner's audit of Republic's financial statements in agreeing to extend credit to Republic and to do so on a secured lending basis.

90.     But for Eisner's false statements, the Lenders would not have loaned money, leased

metals, or extended existing credit facilities to Republic. Eisner's false statements proximately

caused the Lenders' losses.

91.     As a result of the Lenders' reliance on the audited financial statements, Plaintiffs

have been damaged in an amount in excess of $61.5 million.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request judgment on their Complaint as follows:

A.     Awarding Plaintiffs compensatory damages in an amount to be determined at trial.

B.     Awarding Plaintiffs such other or additional relief as the Court finds to be just and

proper.

Dated: April 3, 2020                          Respectfully Submitted

                                              Andrew T. Solomon
                                              SOLOMON & CRAMER LLP
                                              1441 Broadway, Ste. 6026
                                              New York, New York 10018
                                              (t) 212-884-9102
                                              (f) 516-368-3896
                                              asolomon@solomoncramer.com

                                              And

                                              SCOTT JAY FEDER, P.A.
                                              4649 Ponce de Leon Blvd., Ste. 402
                                              Coral Gables, Florida 33146
                                              (t) 305-669-0060
                                              (f) 305-669-4220
                                              Scottj8@aol.com
                                              assistantscottjfeder@hotmail.com

                                              *Attorneys for Plaintiffs*

# EXHIBIT 2



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us    My Account    

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

**COOPERATIEVE RABOBANK U.A,. NEW YORK BRANCH ET AL VS EISNERAMPER LLP**

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2020-007685-CA-01 | **Filing Date:** | 04/03/2020 |
| **State Case Number:** | 132020CA007685000001 | **Judicial Section:** | CA44 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Business Torts |
| **Case Status:** | OPEN | | |

👥 **Parties**    Total Of Parties: 10 **+**

🔧 **Hearing Details**    Total Of Hearings: 1 **+**

📡 **Dockets**    Total Of Dockets: 17 **−**

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 06/03/2020 | | Special Sets | Hearing | **CMC** |
| ○ | 15 | 05/12/2020 | | Order: | Event | **NOTICE AND ORDER OF ADHERENCE TO COMPLEX BUSINESS LITIGATION SECTION PROCEDURES AND NOTICE OF HEARING AND ORDER ON CASE MANAGEMENT CONFERENCE** |
| 📄 | 14 | 05/08/2020 | | Notice of Hearing- | Event | **JUNE 3, 2020 @ 10:30 AM/ ROOM DCC 1307** |
| | 12 | 05/06/2020 | | Receipt: | Event | RECEIPT#:2350065 AMT PAID:$100.00 NAME:FEDER, SCOTT JAY 4649 PONCE DE LEON BLVD CORAL GABLES FL 33146-2114 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3176-NON-FLA ATTORNEY F 1 $100.00 $100.00 TENDER TYPE:E-FILING ACH TENDER AMT:$ |
| 📄 | 13 | 05/05/2020 | | Order: | Event | **ON MOTION FOR ADMISSION TO APPEAR PRO HAC VICE IS GRANTED.** |
| 📄 | 11 | 05/04/2020 | | Motion for Pro Hac Vice | Event | |
| 📄 | 10 | 04/29/2020 | | Email Notice: | Event | **EMAIL ADDRESS:** |
| 📄 | 9 | 04/27/2020 | | Order: | Event | **NOTICE AND ORDER OF ADHERENCE TO COMPLEX BUSINESS LITIGATION SECTION PROCEDURES** |
| 📄 | 8 | 04/27/2020 | | Order: | Event | **MANDATORY ORDER TO CONFER AND CERTIFICATION REQUIREMENT** |
| 📄 | 7 | 04/27/2020 | | Order: | Event | **ON MOTIONS AND MEMO REQUIREMENTS** |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 04/14/2020 | | 20 Day Summons Issued | Service | |
| 📄 | 6 | 04/14/2020 | | ESummons 20 Day Issued | Event | Parties: EISNERAMPER LLP |
| | 5 | 04/09/2020 | | Receipt: | Event | **RECEIPT#:2340165 AMT PAID:$10.00 NAME:FEDER, SCOTT JAY 4649 PONCE DE LEON BLVD CORAL GABLES FL 33146-2114 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:E-FILING ACH TENDER AMT:$10** |
| 📄 | 4 | 04/07/2020 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| | 3 | 04/04/2020 | | Receipt: | Event | **RECEIPT#:2370066 AMT PAID:$411.00 NAME:FEDER, SCOTT JAY 4649 PONCE DE LEON BLVD CORAL GABLES FL 33146-2114 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 3102-MULTIPLE DEFENDANT 1 $10.00 $10.** |
| 📄 | 2 | 04/03/2020 | | Complaint | Event | |
| 📄 | 1 | 04/03/2020 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us

HAVE FEEDBACK?



# HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2020 Clerk of the Courts. All rights reserved.



# EXHIBIT 3

■ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>■ CIVIL ☐ OTHER<br>☐ DISTRICTS<br>PLAINTIFF(S) | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS<br><br>VS. DEFENDANT(S) | CASE NUMBER<br>2020-007685-CA-01<br><br>SERVICE |
|---|---|---|

**Coöperatieve Rabobank U.A.,**
**New York Branch, Brown Brothers**
**Harriman & Co., et al.,**

THE STATE OF FLORIDA:                                                                                    CLOCK IN

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this
action on defendant(s): **EISNERAMPER LLP c/o Registered Agent, Corporate Service**
**Company, 1201 Hays Street, Tallahassee, FL 32301.**

Each defendant is required to serve written defense to the complaint or petition on

Plaintiff's Attorney:_____**Scott Jay Feder, Esq.**_____
_____**Scott Jay Feder, P.A.**_____

whose address is: **4649 Ponce de Leon Blvd, Suite 402, Coral Gables, FL 33146**_____
_____

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,**
**or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.**
**When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons
on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before
service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for
the relief demanded in the complaint or petition.

DATE

**HARVEY RUVIN**

**CLERK of COURTS**                                        DEPUTY CLERK

### AMERICANS WITH DISABILITIES ACT OF 1990
### ADA NOTICE
**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled**
**at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator,**
**Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305)**
**349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this**
**notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**
CLK/CT. 314 Rev. 02/16                                                        Clerk's web address: www.miami-dadeclerk.com

# EXHIBIT 4

■ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | SUMMONS 20 DAY CORPORATE SERVICE | CASE NUMBER |
|---|---|---|
| ■ CIVIL ☐ OTHER | (a) GENERAL FORMS | **2020-007685-CA-01** |
| ☐ DISTRICTS | | |
| **PLAINTIFF(S)** | **VS. DEFENDANT(S)** | **SERVICE** |

Coöperatieve Rabobank U.A.,
New York Branch, Brown Brothers
Harriman & Co., et al.,

THE STATE OF FLORIDA:                                                      CLOCK IN

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this
action on defendant(s): **EISNERAMPER LLP c/o Registered Agent, Corporate Service
Company, 1201 Hays Street, Tallahassee, FL 32301.**

Each defendant is required to serve written defense to the complaint or petition on

Plaintiff's Attorney:        **Scott Jay Feder, Esq.**
                             **Scott Jay Feder, P.A.**

whose address is: **4649 Ponce de Leon Blvd, Suite 402, Coral Gables, FL 33146**

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,
or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.
When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons
on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before
service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for
the relief demanded in the complaint or petition.

DATE

**HARVEY RUVIN**                                                           4/14/2020

**CLERK of COURTS**                        DEPUTY CLERK

                                           324754

AMERICANS WITH DISABILITIES ACT OF 1990
ADA NOTICE
**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled,
at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator,
Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305)
349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this
notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**
CLK/CT. 314 Rev. 02/16                                                     Clerk's web address: www.miami-dadeclerk.com

# EXHIBIT 5

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2020-007685-CA-01
SECTION: CA44
JUDGE: William Thomas

**COOPERATIEVE RABOBANK U.A,. NEW YORK BRANCH et al**

Plaintiff(s)

vs.

**EISNERAMPER LLP**

Defendant(s)

_____/

## ORDER ON MOTIONS AND MEMO REQUIREMENTS

**This case is pending in the Complex Business Litigation division, and must follow the
Complex Business Litigation rules.  In addition,** it is

      **ORDERED** and **ADJUDGED** as follows:

### Short Motions

      As a general rule, ten-minute Motion Calendar motions do not require memoranda of law. Copies
of motions and any response shall be submitted through CourtMap in accordance with the Court's motion
calendar procedures posted on its website.

### Motions Requesting a Special Set Hearing

      Hearings must be requested using CourtMap which is available on the judge's webpage.  Motions
may be scheduled or ruled upon without a hearing, in the court's discretion.

      **Content of motions** shall state with particularity the grounds therefore, citing any statute or
rule of procedure relied upon; shall set forth the relief sought and shall include the required certification
of conferral.  The Court will not consider issues at a hearing on the motion that were not addressed in the

motion and memoranda in support of and in opposition to the motion.

**Memoranda Requirements**

**These requirements and deadlines may not be waived or altered except by court order.**

**ALL motions, opposition to motions and replies are REQUIRED to be emailed in WORD FORMAT to CBL44DOCS@jud11.flcourts.org**

**Failure to File and Serve Motion Materials:** CBL 4.4   A motion or opposition unaccompanied by a required memorandum may be summarily rejected or denied.   Failure to timely file a memorandum in opposition to a motion may result in the pending motion being considered and decided as an uncontested motion.   **Motion briefing deadlines are court orders.**

| Motion | Memoranda of law | Page limit | Time deadline | |
|---|---|---|---|---|
| Motion filed by movant | As required by CBL rules | 20 | When filing the motion | Memos which are not filed with the motion will be disregarded |
| Opposition to motion | At time of filing opposition, if needed | 20 | 10 days after service of motion as computed in Fla. R. Civ. P. 1.090 | If no response is timely filed, the Court will proceed and may grant the motion as unopposed |
| Reply | If needed, limited to matters raised in the opposition | 10 | 5 days after service of opposition as computed in Fla. R. Civ. P. 1.090 | If no reply is timely filed, the Court will proceed |
| Sur-reply | With Court permission only | | | |

**Motions Decided on Papers and Memoranda:** Motions may be considered and decided by the Court without a hearing. CBL 4.5 **A hearing is at the discretion of the Court.**

### Sealed and Confidential Documents

Sealed or confidential documents should be e-filed pursuant to the instructions on the Clerk's e-filing portal. In Camera inspections shall be conducted as instructed by the Court.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>27th day of April, 2020</u>.



<u>2020-007685-CA-01 04-27-2020 4:46 PM</u>
Hon. William Thomas

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Scott Jay Feder, assistantscottjfeder@hotmail.com
Scott Jay Feder, scottj8@aol.com

**Physically Served:**

# EXHIBIT 6

Filing # 106756281 E-Filed 04/27/2020 04:58:29 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2020-007685-CA-01
SECTION: CA44
JUDGE: William Thomas

**COOPERATIEVE RABOBANK U.A,. NEW YORK BRANCH et al**

Plaintiff(s)

vs.

**EISNERAMPER LLP**

Defendant(s)

_____/

## MANDATORY ORDER TO CONFER AND CERTIFICATION REQUIREMENT

This case is subject to the Complex Business Litigation Rules. The rules require that parties meet and confer prior to filing any motion to determine if issues can be narrowed, the appropriate amount of time required for hearing if hearing is requested, and any other issues such as the completion of related discovery. Meet and Confer under these rules requires **an actual effort** between attorneys, not staff.

It is therefore: **ORDERED** and **ADJUDGED** as follows:

All parties to a motion must meet the conferral requirements of the division. The motion must contain a certification of the efforts at meet and confer, which shall include:

- A description of all efforts at a meet and confer, including names of movant and respondent attorneys, dates and method (email, telephone, live meeting) requesting a meet and confer; and

- A description of all dates for meet and confer actually held and the method and names of participating attorneys; and

- Results achieved, including consensus as to amount of time required for hearing, if granted.

Case No: 2020-007685-CA-01

The only motions exempt from the meet and confer requirement are Motions for Injunctive Relief Without Notice; Motions for Summary Judgment and Motions to Amend to Add Punitive Damages.

**ANY OTHER MOTION** submitted without a certificate of conferral will be rejected by the Court without prejudice.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>27th day of April, 2020</u>.



<u>2020-007685-CA-01 04-27-2020 4:47 PM</u>
Hon. William Thomas

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Scott Jay Feder, assistantscottjfeder@hotmail.com
Scott Jay Feder, scottj8@aol.com

**Physically Served:**

# EXHIBIT 7

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2020-007685-CA-01</u>
SECTION: <u>CA44</u>
JUDGE: <u>William Thomas</u>

**COOPERATIEVE RABOBANK U.A,. NEW YORK BRANCH et al**

Plaintiff(s)

vs.

**EISNERAMPER LLP**

Defendant(s)

_____/

## <u>NOTICE AND ORDER OF ADHERENCE TO COMPLEX BUSINESS LITIGATION SECTION PROCEDURES</u>

 

**WHEREAS**, the Complex Business Litigation Procedures shall apply to all actions in the Complex Business Litigation Section and Fla. R. Civ. P. 1.201 Complex Litigation, except to the extent that, in any particular action, they are superseded by an Order.

**WHEREAS,** the Complex Business Litigation Procedures are designed to facilitate the proceedings of cases by the Eleventh Judicial Circuit Complex Business Litigation Section; to promote the transmission and access to case information by the Court, litigants, counsel, and the public; and to facilitate the efficient and effective presentation of evidence in the courtroom. These Procedures shall be construed and enforced to avoid technical delay, **encourage civility**, permit just and prompt determination of all proceedings, and promote the efficient administration of justice.

**NOTICE IS HEREBY GIVEN** that all outstanding and future motions pertaining to cases within the Complex Business Litigation Section must adhere to Complex Business

Litigation Section Procedures, which are available at the court's website www.jud11.flcourts.org.

**The Parties are ordered to provide courtesy copies of <u>all</u> motions and where required, memoranda pertaining thereto, hereinafter filed in this case, to the undersigned Judge by email.   Hard copies need not be delivered unless requested by chambers.  All e-mails must bear the case number first in the subject line, followed by the case name.**

**MOTIONS, OPPOSITIONS AND REPLIES FILED MUST BE EMAILED IN WORD FORMAT TO CBL44DOCS@JUD11.FLCOURTS.ORG**

**<u>Any previously filed motion not in compliance with procedures, e.g., memorandum of law where required, must be resubmitted in conformity with the Complex Business Litigation Procedures</u>.**

**Counsel for Plaintiff(s) and Third Party Plaintiff(s) is/are ORDERED** to confirm all parties subsequently named or appearing herein have been served copies of this Notice.  If any subsequently served or named party has not been served with a copy of this notice, Plaintiff and Third Party Plaintiff <u>shall</u> provide the party with a copy of this Notice.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>27th day of April, 2020</u>.



<u>2020-007685-CA-01 04-27-2020 5:06 PM</u>
Hon. William Thomas

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red; color:red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Scott Jay Feder, assistantscottjfeder@hotmail.com
Scott Jay Feder, scottj8@aol.com


**Physically Served:**

EXHIBIT 8

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

**COOPERATIVE RABOBANK U.A.**　　　　　　CIRCUIT CIVIL DIVISION
**NEW YORK BRANCH et al,**
　　　　Plaintiff(s),
vs.　　　　　　　　　　　　　　　　　　　Case Number:　**2020-7685-CA-44**

**EISNERAMPER LLP**
　　　　Defendant(s).
_____/

## **NOTICE OF DESIGNATION OF EMAIL ADDRESS**

NOTICE OF DESIGNATION OF EMAIL SERVICE ADDRESS OF COMPLEX BUSINESS LITIGATION SECTION
pursuant to F.R.Jud.Admin. 2.516

The Eleventh Judicial Circuit, by and through the Court, gives notice that consistent with the Complex
Business Litigation Rules, all documents filed in this case are to be served on the CBL section by the filing
party at time of filing.

The service email address for this case is:

CBL44@jud11.flcourts.org, **this email address has already been added to the service list in the E-portal
system. Therefore, you do NOT have to email filings directly to the above mentioned email address.**

CERTIFICATE OF SERVICE

　　　　I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic

mail through the Florida Court's E-Portal System to all counsel/parties of record on this 29th day of April

2020.

　　　　　　　　　　　　　　　　　　　/s/  Michelle Betancourt___
　　　　　　　　　　　　　　　　　　　Michelle Betancourt
　　　　　　　　　　　　　　　　　　　Case Manager

# EXHIBIT 9

IN THE CIRCUIT COURT OF THE 11ᵗʰ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO: 2020-007685-CA-01
SECTION: CA 44
JUDGE: William Thomas

| COÖPERATIEVE RABOBANK U.A., | : |
| NEW YORK BRANCH, BROWN | |
| BROTHERS HARRIMAN & CO., BANK | : |
| HAPOALIM B.M, MITSUBISHI | |
| INTERNATIONAL CORPORATION, | : |
| ICBC STANDARD BANK PLC, | |
| TECHEMET METAL TRADING, LLC, | : |
| MERCED PARTNERS LIMITED | |
| PARTNERSHIP, ATHILON CAPITAL | : |
| CORP., LLC, and HAIN CAPITAL | |
| INVESTORS MASTER FUND, LTD., | : |
| | |
| Plaintiffs, | : |
| | |
| v. | : |
| | |
| EISNERAMPER LLP, | : |
| | |
| Defendant | |

## VERIFIED MOTION FOR ADMISSION TO APPEAR PRO HAC VICE PURSUANT TO RULE 1-3.11, RULES REGULATING THE FLORIDA BAR AND FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.510

Comes now, Movant Andrew Solomon, and respectfully represents the following:

1.    Andrew Solomon, ("Solomon"), resides in Old Westbury, New York.  Solomon is

not a resident of the State of Florida.

2.    Solomon is an attorney and a member of the law firm of Solomon & Cramer LLP,

with offices at 1441 Broadway, Suite 6026, New York, New York 10018, telephone (212) 884-

9102.

3.    Solomon has been retained personally and as a member of the above named law

firm on June 17, 2019 by Cooperatieve Rabobank U.A., New York Branch, Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi International Corporation, ICBC Standard Bank PLC, Techemet Metal Trading, LLC, Woodforest National Bank and Hain Capital Investors Master Fund, Ltd., to provide legal representation in connection with the above-styled matter now pending before the above-named court of the State of Florida.

4.     Solomon is an active member in good standing and currently eligible to practice law in the following jurisdictions:

New York, Attorney Bar #2758597
New Jersey, Attorney Bar #01001199

5.     There are no disciplinary proceedings pending against Solomon.

6.     There have been no disciplinary, suspension, disbarment, or contempt proceedings initiated against Solomon in the preceding 5 years.

7.     Solomon, either by resignation, withdrawal, or otherwise, never has terminated or attempted to terminate Solomon's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings.

8.     Solomon is not disbarred or suspended form practice in any jurisdiction.

9.     Solomon is not a Florida resident.

10.    Solomon is not an inactive member of The Florida Bar.

11.    Solomon is not now a member of The Florida Bar.

12.    Solomon is not a suspended member of The Florida Bar.

13.    Solomon is not a disbarred member of The Florida Bar nor has Solomon received a disciplinary resignation or disciplinary revocation from The Florida Bar.

14.    Solomon has not previously been disciplined or held in contempt by reason of misconduct committed while engaged in representation pursuant to Rule 1-3.11 of the Rules

2

Regulating the Florida Bar and Florida Rule of Judicial Administration 2.510.

15.    Solomon has filed motions to appear as counsel in Florida state courts during the past 5 years in the following matter:

Date of motion        Case Name    Case Number        Court Date Motion Granted/Denied

3/22/18 *Cash in Your Case v. Hogan & Hogan, P.A.* 18-CA-2350-O (9th Jud. Cir. Orange). granted 5/11/18

7/18/19 *Cooperative Rabobank UA et al v. Crowe* 2019-018945-CA 44 (11th Jud. Cir, Miami-Dade) granted 7/18/19

16.    Local counsel of record associated with Solomon in this matter is Scott Jay Feder, Esq., who is an active member in good standing of The Florida Bar, Bar #359300, and has offices at 4649 Ponce de Leon Blvd., Suite 402, Coral Gables, Florida 33146; telephone (305) 669-0060.

17.    Solomon has read the applicable provisions of Florida Rule of Judicial Administration 2.510 and Rule 1-3.11 and 4-5.5 of the Rules Regulating The Florida Bar and certifies that this verified motion complies with those rules.

18.    Solomon agrees to comply with the provisions of the Florida Rules of Professional Conduct and consents to the jurisdiction of the courts and the Bar of the State of Florida.

WHEREFORE, Andrew Solomon respectfully requests permission to appear in this court for this cause only.

DATED this __1st__ day of May, 2020.

3

Respectfully submitted,

Andrew T. Solomon
Solomon & Cramer LLP
1441 Broadway, Ste. 6026
New York, NY 10018
asolomon@solomoncramer.com
(c) (917) 664-5575
(dd) (646) 518-7822
(main) (212) 884-9102
(f) (516) 368-3896

STATE OF NEW YORK
COUNTY OF NASSAU

I, ANDREW T. SOLOMON, do hereby swear or affirm under penalty of perjury that I

am the Movant in the above-styled matter; that I have read the foregoing Motion and know the

contents thereof, and the contents are true of my own knowledge and belief.

_____

Andrew Solomon

I hereby consent to be associated as local counsel of record in this cause pursuant to

Florida Rule of Judicial Administration 2.510.

DATED this _4th_ day of May, 2020.

SCOTT JAY FEDER, P.A.
Attorneys for Plaintiff
4649 Ponce de Leon Blvd., Suite 402
Coral Gables, Florida 33146
Telephone:    (305) 669-0060
Facsimile:    (305) 669-4220
E mail: scottj8@aol.com
assistantscottjfeder@hotmail.com

By: _____
        Scott Jay Feder
        Florida Bar No. 0359300

CERTIFICATE OF SERVICE

4

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was served by mail to PHV Admissions, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2333 accompanied by payment of the $250.00 filing fee made payable to The Florida Bar, on this ____ day of May, 2020 and will be served on opposing counsel within 10 days of learning the identity of opposing counsel.

Scott Jay Feder

5



EXHIBIT 10

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2020-007685-CA-01</u>
SECTION: <u>CA44</u>
JUDGE: <u>William Thomas</u>

**COOPERATIEVE RABOBANK U.A,. NEW YORK BRANCH et al**

Plaintiff(s)

vs.

**EISNERAMPER LLP**

Defendant(s)

_____/

<u>**ORDER GRANTING MOTION FOR ADMISSION TO APPEAR PRO HAC VICE
PURSUANT TO FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.510**</u>

THIS CAUSE came before the Court upon Andrew Solomon's Verified Motion for
Admission to Appear Pro Hac Vice pursuant to Florida Rule of Judicial Administration 2.510.
The Court has carefully considered the Motion, and being otherwise fully advised in the
premises, it is ORDERED and ADJUDGED:

1. Said Motion be and is hereby GRANTED.

2. Andrew Solomon of the law firm of Solomon & Cramer LLP is permitted to appear
   *pro hac vice* in this Court as co-counsel to Scott Jay Feder, P.A., and attorney of
   record for Plaintiffs in the instant case.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>5th day of May, 2020</u>.



<u>2020-007685-CA-01 05-05-2020 9:32 PM</u>
Hon. William Thomas

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Andrew Solomon, asolomon@solomoncramer.com
Cbl Section 44 Case Mgr, cbl44@jud11.flcourts.org
Scott Jay Feder, assistantscottjfeder@hotmail.com
Scott Jay Feder, scottj8@aol.com

**Physically Served:**

# EXHIBIT  11

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.:** 2020-007685-CA-01

**SECTION:**          CA44

**COOPERATIEVE RABOBANK U.A,. NEW YORK BRANCH et al**
Plaintiff(s),

vs.

**EISNERAMPER LLP**
Defendant(s)

_____/

<u>**NOTICE OF SPECIAL SET HEARING**</u>
**CMC**

**YOU ARE HEREBY NOTIFIED** that, a Special Set hearing on the above cause is scheduled for _____**15 min**_____ on _____**06-03-2020 at 10:30 AM**_____ in Room _____**1307**_____ at the Miami-Dade County Courthouse, 73 West Flagler Street, Miami Florida 33130.

<u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above notice was delivered to the parties below on _____**05-08-2020**_____.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:
Electronically Served

Cbl Section 44 Case Mgr, cbl44@jud11.flcourts.org
Scott Jay Feder, assistantscottjfeder@hotmail.com
Scott Jay Feder, scottj8@aol.com

# EXHIBIT  12

**IN THE CIRCUIT COURT**
**OF THE 11TH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**Complex Business Litigation Division**

COÖPERATIEVE RABOBANK U.A., NEW
YORK BRANCH, BROWN BROTHERS
HARRIMAN & CO., BANK HAPOALIM
B.M., MITSUBISHI INTERNATIONAL
CORPORATION, ICBC STANDARD BANK      **Case No. 2020-007685-CA-44**
PLC, TECHEMET METAL TRADING, LLC,
WOODFOREST NATIONAL BANK, and
HAIN CAPITAL INVESTORS MASTER
FUND, LTD.,

      Plaintiffs,

v.

EISNERAMPER LLP,

      Defendant.

_____/

**NOTICE OF APPEARANCE AND**
**DESIGNATION OF EMAIL ADDRESSES**

      PLEASE TAKE NOTICE that Richard H. Critchlow and Deborah S. Corbishley of Kenny

Nachwalter, P.A. hereby enter their Appearance and Designation of Email Addresses in the above-

captioned matter as counsel for Defendant EisnerAmper LLP and respectfully request that all

pleadings, correspondence, and other papers in connection with this action be sent to them at the

following address:

              Richard H. Critchlow
        Primary e-mail: rhc@knpa.com
      Secondary e-mail: rma@knpa.com

            Deborah S. Corbishley
        Primary e-mail: dsc@knpa.com
      Secondary e-mail: mm@knpa.com

KENNY NACHWALTER, P.A.
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

Dated: May 7, 2020                           Respectfully submitted,

                                             s/ *Richard H. Critchlow*
                                             Richard H. Critchlow, Esq. (FL Bar No. 155227)
                                             Deborah S. Corbishley, Esq. (FL Bar No. 588229)
                                             KENNY NACHWALTER, P.A.
                                             Four Seasons Tower – Suite 1100
                                             1441 Brickell Avenue
                                             Miami, FL 33131
                                             Telephone: (305) 373-1000
                                             Facsimile: (305) 372-1861
                                             Email: rhc@knpa.com
                                             Email: dsc@knpa.com

                                             *Attorneys for Defendant EisnerAmper LLP*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 7, 2020, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF upon counsel in attached the service list.

                                             s/ *Richard H. Critchlow*
                                             Richard H. Critchlow

*Cooperatieve Rabobank U.A., et al.*
*v. EisnerAmper LLP*
Case No.: 2020-007685 CA-44

**SERVICE LIST**

| | |
|---|---|
| Andrew T. Solomon<br>SOLOMON & CRAMER LLP<br>1441 Broadway, Suite 6026<br>New York, NY 10018<br>Telephone:  (212) 884-9102<br>Facsimile:  (516) 368-3896<br>asolomon@solomoncramer.com<br><br>Scott Jay Feder, P.A.<br>4649 Ponce de Leon Boulevard<br>Suite 402<br>Coral Gables, FL 33146<br>Telephone:  (305) 669-0060<br>Facsimile: (305) 669-4220<br>Scottj8@aol.com<br><br>*Attorneys for Plaintiffs* | Richard H. Critchlow, Esq. (FL Bar No. 155227)<br>Deborah S. Corbishley, Esq. (FL Bar No. 588229)<br>KENNY NACHWALTER, P.A.<br>Four Seasons Tower – Suite 1100<br>1441 Brickell Avenue<br>Miami, FL 33131<br>Telephone: (305) 373-1000<br>Facsimile: (305) 372-1861<br>rhc@knpa.com<br>dsc@knpa.com<br><br>*Attorneys for Defendant EisnerAmper LLP* |