**Hearing Date and Time: February 10, 2022 at 10:00 a.m. (EST)**
**Objection Deadline: February 3, 2022 at 5:00 p.m. (EST)**

**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Ian Shapiro
Reed A. Smith
Christopher L. Martin, Jr.
*Attorneys for Donna H. Lieberman,*
  *Litigation Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MIAMI METALS I, INC., *et al.*, | Case No: 18-13359 (SHL) |
| Debtors. | |

## NOTICE OF HEARING ON APPROVAL OF SETTLEMENT AND COMPROMISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

**PLEASE TAKE NOTICE** that Donna H. Lieberman, in her capacity as the litigation trustee of the Miami Metals Litigation Trust (the "Litigation Trustee"), by and through her undersigned counsel, hereby files this *Motion for Approval of Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion") seeking approval of the settlement agreement entered into by and among (i) the Litigation Trustee and (ii) Coöperatieve Rabobank U.A., Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi International Corporation, ICBC Standard Bank Plc, Techemet Metal Trading, LLC, and Hain Capital Investors Master Fund, Ltd., as successor to Woodforest National Bank and Bank Leumi USA (collectively, the "Secured Parties"), (iii) Rose Rubin, Jason Rubin, and Lindsey Rubin Davis (the "Rubin Parties"), and (iv) David Comite.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion in the above-captioned case will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, telephonically, on **February 10, 2022 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted remotely via Zoom for Government (Zoomgov).  Parties wishing to appear at the Hearing, whether in a "live" or "listen only" capacity, must make an electronic appearance through the "eCourtAppearances" tab on the Court's website (https://www.nysb.uscourts.gov/ecourt-appearances) no later than 4:00 p.m. (prevailing Eastern Time) the business day before the Hearing (the "Appearance Deadline").  Following the Appearance Deadline, the Court will circulate by email the Zoom link for the Hearing to those parties who have made an electronic appearance.  Parties wishing to appear at the Hearing must submit an electronic appearance through the Court's website by the Appearance Deadline and not by emailing or otherwise contacting the Court.  Additional information regarding the Court's Zoom and hearing procedures can be found on the Court's website.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion (the "Objections") must: (i) be made in writing; (ii) state with particularity the grounds therefore; (iii) be filed in accordance with the electronic filing procedures for the United States Bankruptcy Court for the Southern District of New York, with proof of service, with a courtesy copy delivered by mail or email to the Chambers of the Honorable Sean H. Lane, One Bowling Green, New York, New York 10004; and (iv) served upon (a) Donna H. Lieberman, the Litigation Trustee for the Miami Metals Litigation Trust, dlieberman@halperinlaw.net; (b) counsel for the

Litigation Trustee, Cooley LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Ian Shapiro, ishapiro@cooley.com and Christopher L. Martin, Jr., cmartin@cooley.com); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Shannon Scott, Esq.); (d) counsel for the Secured Parties, Luskin, Stern & Eisler LLP, 50 Main Street, Suite 1640, White Plains, New York 10606 (Attn: Michael Luskin, luskin@lsellp.com and Alex Talesnick, talesnick@lsellp.com); (e) counsel for the Rubin Parties, Bast Amron LLP, SunTrust International Center, 1 SE 3rd Ave., Suite 1400, Miami, Florida 33131 (Attn: Brett Amron, bamron@bastamron.com and Hayley Harrison, hharrison@bastamron.com); (f) counsel for David Comite, Mark Migdal & Hayden, Brickell City Tower, 80 SW 8th Street, Suite 1999, Miami, Florida 33130 (Attn: Etan Mark, etan@markmigdal.com); and (g) any party who requested service of pleadings in these chapter 11 cases after January 7, 2020; so as to be received no later than **5:00 p.m. (prevailing Eastern Time) on February 3, 2022** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Litigation Trustee may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

3

Dated: January 13, 2022
      New York, New York

**COOLEY LLP**

By: */s/ Ian Shapiro*
Ian Shapiro
Reed A. Smith
Christopher L. Martin, Jr.
55 Hudson Yards
New York, New York 10001-2157
ishapiro@cooley.com
rsmith@cooley.com
cmartin@cooley.com

*Attorneys for Donna H. Lieberman, Litigation Trustee*

Hearing Date and Time: **February 10, 2022 at 10:00 a.m. (EST)**
Objection Deadline: **February 3, 2022 at 5:00 p.m. (EST)**

**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Ian Shapiro
Reed A. Smith
Christopher L. Martin, Jr.
*Attorneys for Donna H. Lieberman,*
  *Litigation Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> MIAMI METALS I, INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No: 18-13359 (SHL) |

**MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

Donna H. Lieberman, in her capacity as the litigation trustee of the Miami Metals Litigation Trust (the "Litigation Trustee"), by and through her undersigned counsel, hereby files this *Motion for Approval of Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion"), seeking entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), approving the settlement agreement (the "Settlement Agreement") entered into by and among (i) the Litigation Trustee and (ii) Coöperatieve Rabobank U.A., Brown Brothers Harriman & Co., Bank Hapoalim B.M., Mitsubishi International Corporation, ICBC Standard Bank Plc, Techemet Metal Trading, LLC, and Hain Capital Investors Master Fund, Ltd., as successor to Woodforest National Bank and

Bank Leumi USA (collectively, the "Secured Parties"), (iii) Rose Rubin, Jason Rubin, and Lindsey Rubin Davis (the "Rubin Parties"), and (iv) David Comite. A copy of the Settlement Agreement is attached hereto as **Exhibit B,** and the Litigation Trustee's Declaration in Support of the Settlement (the "Trustee Declaration") is attached hereto as **Exhibit C**. In support this Motion, the Litigation Trustee respectfully states:

## BACKGROUND

1. On November 2, 2018 or November 21, 2018 (as applicable) (the "Petition Date"), each of the Debtors filed a voluntary petition with the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code. On November 8, 2018, the Bankruptcy Court entered an order authorizing the joint administration of the original Debtors' chapter 11 cases [ECF No. 44].[1]

2. On December 23, 2019, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan of Liquidation* [ECF No. 1668] (the "Confirmation Order" and the "Plan").

3. The Plan became effective on January 7, 2020 (the "Effective Date"), and as authorized by the Bankruptcy Court in the Confirmation Order, the Plan was substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code. Pursuant to the Confirmation Order, Donna H. Lieberman was appointed Litigation Trustee as of the Effective Date. A Litigation Trust Agreement was entered into setting forth the rights, duties, and obligations of the Litigation Trustee.

4. Pursuant to the Plan, Confirmation Order, and the Litigation Trust Agreement, the Litigation Trustee holds the power to investigate, commence, prosecute, abandon, compromise, and settle "Retained Causes of Action" and "Assigned Claims," including the claims against the Rubin Parties and David Comite that are the subject of this Motion. *See* Plan §§ 9.1, 9.4; Litigation Trust Agreement § 3.6.

5. The Litigation Trustee may only compromise and settle a Retained Cause of Action for an amount exceeding $500,000 upon notice, a hearing, and this Court's approval pursuant to Federal Rule of Bankruptcy Procedure 9019. *See* Plan § 9.4.

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. In addition, Section 3.6(d) and Section 9.4 of the Plan specifically reserve the Bankruptcy Court's authority to hear and determine motions to approve compromises and settlements of "Retained Causes of Action" where the amount in controversy exceeds $500,000.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The Bankruptcy Court has authority to grant the relief requested in this Motion pursuant to Federal Rules of Bankruptcy Procedure 9013 and 9019.

---

[1] The cases of all the Debtors other than Miami Metals I, Inc. either have been dismissed or closed.

## THE LITIGATION TRUSTEE'S INVESTIGATION

9.  Since the Litigation Trust's formation in January 2020, the Litigation Trustee has been investigating potential claims against the Rubin Parties and David Comite, who served as officers and/or directors of Miami Metals II, Inc. (f/k/a Republic Metals Corporation), and in the case of the Rubin Parties, owners, in the years immediately preceding the chapter 11 cases.[2] These claims relate to the inventory accounting discrepancy described in the Debtors' chapter 11 petitions and certain prepetition transfers made to or for the benefit of the Rubin Parties.

10.  The Litigation Trustee's investigation built upon and continued the investigation of the same issues by the statutory committee of unsecured creditors of the Debtors (the "Unsecured Creditors Committee"), which, pursuant to the Plan, was dissolved at the time the Litigation Trust was formed. During the Unsecured Creditors Committee's investigation of claims against the Rubin Parties and Comite, Cooley LLP, counsel for the Unsecured Creditors Committee, took Rule 2004 examinations of Jason Rubin, David Comite, several other former employees of the Debtors, and Maria I. Machado, the Debtors' former accountant. Counsel for the Unsecured Creditors Committee also reviewed tens of thousands of documents produced by the Debtors and third parties, including the Rubin Parties and the Debtors' former auditors, Crowe LLP and EisnerAmper LLP.

11.  As part of the Litigation Trustee's investigation, her counsel (also Cooley LLP) conducted examinations of Rose Rubin and Lindsey Rubin Davis pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and reviewed transcripts of Rule 2004 examinations of Jason Rubin, David Comite, and other former employees of the Debtors conducted by counsel to

---

[2] At the time of Republic's bankruptcy petition, Jason Rubin was the Chief Executive Officer and a director; Rose Rubin was a Vice President and a director; Lindsey Rubin Davis was the Secretary and a director; and David Comite was the Treasurer and Chief Financial Officer.

8

the Unsecured Creditors Committee. The Litigation Trustee's counsel also conducted an extensive review of the Debtors' books and records, which were transferred to the Litigation Trust pursuant to the Plan and Litigation Trust Agreement.

12. Based on the results of the investigation, the Litigation Trustee asserted that the claims against the Rubin Parties and Comite were meritorious and represented a significant asset of the Litigation Trust. The Litigation Trustee directed her counsel to prepare a draft complaint against the Rubin Parties and Comite.

13. As set forth in the Trustee Declaration, before filing suit, the Litigation Trustee directed her counsel to explore the possibility of a pre-litigation settlement of claims against the Rubin Parties and/or David Comite, which would spare the Litigation Trust and its beneficiaries the considerable expense associated with litigation and enable the Litigation Trust to realize the value of its claims against the Rubin Parties and/or Comite on a substantially faster timeline than would be possible once a complaint was filed.

14. Over a period of more than a year and a half, the Litigation Trustee's counsel engaged in numerous discussions with counsel for the Rubin Parties about the merits of, and potential defenses to, the Litigation Trust's claims. The Litigation Trustee's counsel engaged in similar discussions with counsel for Comite over a period of several months. As part of these discussions, the Litigation Trustee's counsel provided a copy of a draft complaint to counsel for the Rubin Parties and David Comite. On a number of occasions, the Litigation Trustee's counsel also provided documents the Litigation Trustee and her counsel believed supported the claims.[3]

---

[3] To ensure there was ample time for the parties and their counsel to weigh the various claims and defenses, the Litigation Trust and the Rubin Parties and the Litigation Trust and Comite entered into a number of tolling agreements that tolled the applicable statutes of limitations that apply to the Litigation Trust's claims. Those tolling agreements remain in full force and effect.

15. During discussions between the parties, counsel for the Rubin Parties and Comite denied the Litigation Trustee's allegations against them and asserted they had numerous factual and legal defenses to the Litigation Trust's claims.[4]

16. Counsel for the Litigation Trustee and counsel for the Rubin Parties and Comite also discussed extensively the ability of the Rubin Parties and David Comite to satisfy personally a judgment the Litigation Trustee might obtain at the conclusion of a trial on the Litigation Trust's claims. This issue became a central focus of the discussions between the parties because the Rubin Parties and Comite were not covered by a directors and officers liability insurance policy prior to the Debtors' filing of chapter 11 petitions.

17. On October 9, 2020, the Litigation Trust and the Rubin Parties engaged in mediation and continued to discuss a pre-litigation resolution of their dispute with the mediator after that date. The mediation did not result in a settlement. However, at the recommendation of the mediator, the Litigation Trust and the Rubin Parties engaged a third-party "neutral" with expertise in Florida debtor-creditor law to facilitate the analysis of the potential collectability of a judgment against the Rubin Parties. The Litigation Trustee, the Rubin Parties, and their counsel worked with the third-party neutral over a period of approximately three months at the beginning of 2021. As part of this process, the Rubin Parties provided confidential information that allowed the Litigation Trustee, her counsel, and the Litigation Trust Oversight Committee to make a reasoned judgment about a potential settlement.

18. The Litigation Trustee's counsel continued negotiating with counsel for the Rubin Parties for much of the remainder of 2021 and negotiated with counsel for Comite for several months in effort to resolve the Litigation Trust's claims without recourse to costly and time-

---

[4] These discussions also included the Secured Parties' demand for payment on Rose Rubin under

10

consuming litigation. As part of these negotiations, Comite provided confidential information that allowed the Litigation Trustee, her counsel, and the Litigation Trust Oversight Committee to make a reasoned judgment about a potential settlement.

19. The Rubin Parties made clear that they would not be willing to resolve the Litigation Trust's claims without simultaneously resolving any demands or claims that had been or could be asserted against them by the Secured Parties. On June 3, 2021, the Secured Parties made a demand for payment on Rose Rubin in connection with that certain Limited Guaranty Agreement, dated August 31, 2018 (the "Guaranty"), between the Secured Parties and Rose Rubin. The aggregate liability of Rose Rubin, the guarantor, under the Guaranty was One Million Dollars ($1,000,000.00), plus costs in seeking enforcement of the Guaranty, including all attorney's fees and costs.

20. The Litigation Trustee and the Rubin Parties also determined that any resolution between them had to address the dispute relating to commercial rent allegedly due and owing from the Debtors for the period from the Petition Date through and including June 30, 2019 to certain entities controlled by one or more of the Rubin Parties: the Second Amended and Restated Rose Rubin Revocable Trust u/d/a 9/25/2013, the Amended and Restated Richard Rubin Revocable Trust u/d/a 12/8/2008, Republic Metals Warehouse, LLC, Richard Rubin Lindjay Investments, LLC, Jason Ross Rubin Enterprises, LLC, and RRLJ12, LLC (collectively, the "Lessors"). Pursuant to orders entered by the Bankruptcy Court on March 29, 2019 [ECF No. 865] and October 10, 2019 [ECF No. 1487], Bast Amron LLP, as counsel to the Lessors, has been holding accrued post-petition rent and related charges in the amount of $439,351.49 (plus

---

a guaranty agreement, as further described in Paragraph 19.

accrued interest) in escrow pending further order of the Bankruptcy Court (the "<u>Rent Escrow Funds</u>").

## THE SETTLEMENT AGREEMENT

21. To avoid the costs and risks associated with litigating an adversary proceeding before this Court (and perhaps additional proceedings to resolve the Secured Lenders' guaranty claim and the Litigation Trustee's Rent Escrow Funds claim), the Litigation Trustee and the Secured Parties, the Rubin Parties and David Comite, determined and agreed to settle the disputes among them pursuant to the terms of the Settlement Agreement, a copy of which is attached hereto as **Exhibit B**. The terms of the Settlement Agreement were approved by the Litigation Trust Oversight Committee in advance of its drafting and execution.

22. The material terms of the Settlement Agreement include the following:

*(a) Settlement Payments*. Upon the Bankruptcy Court's entry of a final order approving the settlement for which the time to appeal has expired, and as to which no appeal is pending (a "<u>Final Non-Appealable Order</u>"):

    (i) The Rubin Parties will pay to the Litigation Trust the sum of Fifteen Million Five Hundred Thousand Dollars ($15,500,000.00). The sum will be paid in two installments: one in the amount of Four Million Five Hundred Thousand ($4,500,000.00) within thirty (30) days of the entry of a Final Non-Appealable Order and the second in the amount of Eleven Million Dollars ($11,000,000.00) within one hundred eighty (180) days of the entry of a Final Non-Appealable Order;

    (ii) The Rubin Parties will pay to the Secured Parties the sum of One Million Dollars ($1,000,000.00) on account of the guaranty claim against Rose Rubin. The sum will be paid within thirty (30) days of the entry of a Final Non-Appealable Order; and

    (iii) David Comite or an entity under his control will pay to the Litigation Trust the sum of One Hundred Thousand Dollars ($100,000.00). An initial installment will be paid within thirty (30) days of the entry of a Final Non-Appealable

Order, and the balance will be paid in monthly installments over a period of eighteen (18) months.

(b) **Proofs of Claim**.  Upon the Bankruptcy Court's entry of a Final Non-Appealable Order, all of the proofs of claim filed in the chapter 11 cases by the Rubin Parties and the entities in which one or more of them has an ownership interest will be disallowed and expunged, including the following claims:

| Claim No. | Entity | Amount |
|---|---|---|
| 398 | Jason Ross Rubin Enterprises LLC | $43,456.66 |
| 399 | Richard Rubin Lindjay Investments LLC | $2,407.50 |
| 400 | Richard Rubin Lindjay Investments LLC | $114,335.15 |
| 473 | Richard Rubin Lindjay Investments LLC | $120,432.00 |
| 391 | Rubin Real Estate Groups LLC | $593,054.82 |
| 395 | The Second Amended and Restated Rose Rubin Revocable Trust U/D/A 9/25/2013 | $375,818.70 |
| 396 | The Amended and Restated Richard Rubin Revocable Trust U/D/A 12/8/2008 | $375,818.70 |

(c) **Rent Escrow Funds**.  The Settlement Agreement requires the Litigation Trustee to seek an order from the Bankruptcy Court (which may be the Order approving the settlement) directing the release of the Rent Escrow Funds to the Rubin Parties.

(d) **Mutual Releases**.  The Settlement Agreement includes mutual releases of claims by the Litigation Trust and the Secured Parties, on the one hand, and the Rubin Parties and Comite, on the other hand.  The Settlement Agreement also includes mutual releases of claims by the Rubin Parties, on the one hand, and Comite, on the other hand.  Under the terms of the Settlement Agreement, the releases take effect after the Bankruptcy Court enters a Final Non-Appealable Order and (i) the Rubin Parties have made their initial payment to the Litigation Trust and their payment to the Secured Parties; and (ii) Comite has made his initial payment to the Litigation Trust.[5]  The failure of the Rubin Parties to make the first payments to the Litigation Trust and the Secured Parties will not delay the effectiveness of any releases other than the releases in favor of the Rubin Parties, and the failure of Comite to make the first payment to the Litigation Trust will not delay the effectiveness of any releases other than the releases in favor of Comite.

---

[5] The Settlement Agreement does not contain a release of the rights or claims of any party to the Settlement Agreement to enforce the Settlement Agreement or the rights or claims of any party to the Settlement Agreement that accrue after the Effective Date of the Settlement Agreement, except for certain indemnification and contribution claims. In addition, the Settlement Agreement makes clear that the releases contained therein do not limit, restrict, or impair the prosecution of asserted or unasserted claims by the Secured Parties against the former auditors of Republic Metals Corporation.

13

23. As set forth below, the Litigation Trustee respectfully submits the foregoing settlement consideration represents a fair and reasonable resolution, after consideration of the Rubin Parties' and Comite's defenses on the merits, the time and expense of complex litigation, and the various risks associated with enforcing a judgment against the Rubin Parties and Comite.

## APPROVAL OF THE SETTLEMENT

24. By this motion, the Litigation Trustee seeks the entry of an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing and approving the settlement.

25. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

26. "The decision of whether to approve a proposed settlement lies within the sound discretion of the bankruptcy court." In re Stanwich Fin. Servs. Corp., 377 B.R. 432, 436 (Bankr. D. Conn. 2007) (citing In re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)). However, compromises are favored in bankruptcy. In re Adelphia Commc'ns Corp., 361 B.R. 337, 349 (S.D.N.Y. 2007); In re Key3Media Group, Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005). The Court should approve a compromise when it is fair and equitable, and in the best interests of the estate. In re Liu, 166 F.2d 1200 (2d Cir. 1998).

27. The Second Circuit has summarized the factors that a court must consider when deciding whether a settlement falls above or below the lowest point in the range of reasonableness, as follows: "(1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, 'with its

14

attendant expense, inconvenience and delay,' including the difficulty in collecting on the judgment; (3) 'the paramount interests of the creditors,' including each affected class's relative benefits 'and the degree to which creditors either do not object to or affirmatively support the proposed settlement'; (4) whether other parties in interest support the settlement; (5) the 'competency and experience of counsel' supporting, and '[t]he experience and knowledge of the bankruptcy court judge' reviewing, the settlement; (6) 'the nature and breadth of releases to be obtained by officers and directors'; and (7) 'the extent to which the settlement is the product of arms' length bargaining.'" Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

28. The *Iridium* factors weigh in favor of approving the settlement. *First*, the settlement represents a significant benefit to the Litigation Trust. Although the Litigation Trustee believes that the Litigation Trust's claims are meritorious and that the Litigation Trust would prevail in litigation, litigating against the Rubin Parties and Comite would involve considerable time and expense, and the risks attendant to any significant litigation, and the risks and costs of collection. With respect to the merits, the parties would vigorously litigate their respective positions in connection with any claims pursued by the Litigation Trustee. With respect to collection risk, as noted above, one of the chief issues that arose during the parties' negotiations was the ability of the Rubin Parties and Comite to satisfy a judgment.

29. *Second*, the settlement ensures a significant recovery to the Litigation Trust and its beneficiaries very promptly. Approval of the settlement will obviate the need for additional and prolonged discovery, pre-trial motion practice, and possibly, a trial, thus conserving judicial

15

resources, and avoiding the costs, risks and delays that would be incurred were the case to proceed.

30. *Third*, the parties in interest directly affected by the proposed settlement support the Settlement Agreement, which is intended to resolve finally all disputes and controversies between the Litigation Trust, the Secured Parties, the Rubin Parties, and Comite.

31. *Finally*, all parties to the Settlement Agreement are represented by competent and experienced bankruptcy counsel, and the settlement is the product of arm's length negotiation between the parties, facilitated by a mediator, after they engaged in an informal, good-faith exchange of documents and information during settlement negotiations, which occurred over the course of more than a year and a half.

32. For all of these reasons, the Litigation Trustee respectfully submits that the settlement should be approved.

## WAIVER OF MEMORANDUM

33. Since the statutory provisions and authorities relied upon in support of this Motion are set forth herein, the Litigation Trustee respectfully submits that this Motion satisfies the requirement of Rule 9013-1(a) of the Local Bankruptcy Rules of the Southern District of New York.

## NO PRIOR REQUEST

34. No prior motion for the relief requested herein has been made to the Bankruptcy Court or any other court.

## CONCLUSION

35. For the foregoing reasons, and for any other reasons the Litigation Trustee may state on the record at any hearing held in respect of this Motion, the Litigation Trustee requests that the Bankruptcy Court grant this Motion.

**WHEREFORE**, the Litigation Trustee respectfully requests that the Bankruptcy Court enter an order, substantially in the form annexed hereto, approving the settlement and granting such other and further relief as the Bankruptcy Court may deem just or proper.

Dated: January 13, 2022
New York, New York

**COOLEY LLP**

By: */s/ Ian Shapiro*
Ian Shapiro
Reed A. Smith
Christopher L. Martin, Jr.
55 Hudson Yards
New York, New York 10001-2157
ishapiro@cooley.com
rsmith@cooley.com
cmartin@cooley.com

*Attorneys for Donna Lieberman,
Litigation Trustee*