Steven M. Berman, Esq.
*N.Y. Bar No. 5872247*
sberman@shumaker.com
Shumaker, Loop & Kendrick, LL
101 E. Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone: (813) 229-7600
*Counsel to Mitchell Levine, and*
*Erie Management Partners, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIAMI METALS I, INC., *et al.*, | ) | Case No. 18-13359 (SHL) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**OBJECTION TO MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 (DOC 2045)**

Mitchell Levine, Erie Management Partners, LLC, and Plat/Co. (collectively, "Levine"), by and through their undersigned counsel, hereby object to the Motion for Approval of Settlement and Compromise (Doc. 2045) ("Motion") filed by Donna H. Lieberman, as trustee of the Miami Metals Litigation Trust ("Litigation Trustee"), because the Litigation Trustee has not provided sufficient disclosure, either in the Motion or in response to requests from the undersigned, regarding the claims asserted as against Jason Rubin, Lindsey Rubin Davis, and Rose Rubin (the "Rubin Parties") or David Comite that are being compromised, such that neither Levine, other interested parties, nor this Court can "canvass the issues" and become familiar with the facts necessary to form an intelligent and objective opinion as to whether the settlement falls below the lowest point in the range of reasonableness. In support, Levine states:

1

1.     Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and other applicable law, this Court is authorized this Court to approve a compromise after notice and a hearing that is fair and reasonable.

2.     Rule 9019 "guarantees transparency in the process of compromise or settlement and provides other creditors an opportunity to voice their concerns. While compromise is favored in bankruptcy, Rule 9019(a) operates as an important check on the process, ensuring that any compromise or settlement will be effective only after it is disclosed to other creditors and reviewed by the bankruptcy court." *In re Big Apple Volkswagen, LLC*, 571 B.R. 43, 57 (S.D.N.Y. 2017). The "clear purpose" of Rule 9019 is "to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." *In re Iridium Operating LLC*, 478 F.3d 452, 461-62 (2d Cir. 2007) quoting *In re Masters, Inc.,* 141 B.R. 13, 16 (Bankr.E.D.N.Y.1992).

3.     On review of a proposed compromise, this Court's responsibilities "are to familiarize itself with all facts necessary for an intelligent and objective opinion, canvass the issues, and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Ambac Fin. Grp., Inc.,* 457 B.R. 299, 304 (Bankr. S.D.N.Y. 2011), aff'd, 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011), aff'd, 487 F. App'x 663 (2d Cir. 2012).  Thus, while the Court is not required to conduct a "mini-trial" of the facts or the merits of the underlying dispute, the Court "must inform itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," *In re Kerner*, 599 B.R. 751, 755 (Bankr. S.D.N.Y. 2019) (internal quotations omitted).

4.     Here, the Litigation Trustee's Motion is lacking any detail regarding the claims being asserted against the Rubin Parties or Comite, and therefore there is no ability for creditors

or this Court to inform themselves of all fact necessary for an intelligent and objection opinion regarding the reasonableness of the proposed settlement.

5. In an attempt to rectify this lack of disclosure, on January 24, 2022, the undersigned contacted counsel for the Litigation Trustee to request she produce to Levine the "draft complaint against the Rubin Parties and Comite;" transcripts of Rule 2004 examinations examined by the Litigation Trustee,[1] (other than those already in Levine's possession); and the Litigation Trustee's mediation statement, if any. All of the documents were asserted in the Motion as to being part of the Litigation Trustee's investigation into the claims being compromised, and ultimately part of the basis for reaching the proposed compromise.

6. After repeated follow up requests, and a call between Chris Martin and Seth Traub on January 27, 2021, in which Mr. Martin asked for a "better understanding" of the basis of Mr. Levine's request, counsel for the Litigation Trustee ultimately refused Mr. Levine's request for additional disclosure.[2]

7. The Litigation Trustee's Motion broadly describes the investigation she and her counsel performed—"building upon and continuing" the investigation of the same issues by the Unsecured Creditors Committee—related to "to the inventory accounting discrepancy described in the Debtors' chapter 11 petitions and certain prepetition transfers made to or for the benefit of the Rubin Parties." (Motion, at ¶ 10).

8. Yet, while the Motion provides great detail about the scope of the investigation and the time it took to reach the proposed compromise, the Motion is bereft of any detail as to the

---

[1] For convenience, the undersigned excluded all transcripts that were already in Levine's possession as a result of summary judgment briefing.
[2] This was not the first time that Mr. Levine's requests to counsel at Cooley have been refused. In March and April, 2019, when Cooley still represented the Unsecured Creditors Committee, the undersigned asked (similar to the requests now) that the Committee share documents it had obtained in its investigation and discovery in order to buttress Mr. Levine's ownership interest and independent claims investigation. Counsel would not do so.

3

conclusions the Litigation Trustee reached. Instead, the Motion merely states that the Litigation Trustee "asserted that the claims against the Rubin Parties and Comite were meritorious and represented a significant asset of the Litigation Trust." (Motion, at ¶ 12). The Motion fails to disclose or provide any specificity as to what "claims" were or could be asserted against the Rubin Parties or Comite.

9. The Litigation Trustee must have reached such conclusions and identified specific claims because she states that a "draft complaint" was prepared and disseminated, but neither the draft complaint nor the claims asserted therein have been disclosed, failing to provide the transparency required by applicable law. Critically, the amount of damages identified by the Litigation Trustee and the factual bases for any claims that could be brought, but are now being settled, must be disclosed. The Litigation Trustee's *ipse dixit* assertions that the settlement is reasonable cannot be evaluated without knowing the claims asserted and the underlying proofs supporting such claims.

10. Here, as set forth above, this Court must "canvass the issues" that are subject to compromise. It is impossible to do that without any disclosure of the actual issues involved. This Court cannot familiarize itself with "all facts necessary for an intelligent and objective opinion" when it has been provided no facts whatsoever.

11. While the apparent time and effort spent investigating claims and reaching a significant settlement appears to have been great,[3] that does not ameliorate the need for the Litigation Trustee to disclose the specific conclusions reached and the specific claims that would be asserted absent a settlement. After all, a $15 million settlement on a $30 million claim is potentially more reasonable than a $15 million settlement on a $300 million claim. Since we know

---

[3] According to its Third Interim and Final Application (Doc. 1704), the Committee incurred more than $1.7 million in fees for "litigation" prior to February 2020, and the same firm now represents the Litigation Trustee.

4

hundreds of millions of dollars of precious metals, entrusted to the prospective defendants, somehow disappeared, creditors need to know what claims were asserted, what evidence supported them, and why the settlement is reasonable under the circumstances.

12.    It is critical, in evaluating the proposed compromise, for all interested parties and the Court to understand the specific claims that could have been asserted, for which the Litigation Trustee asserts she is avoiding a drawn out and expensive litigation by reaching a compromise.

13.    The only claim that is described in the Motion with any certainty is the Secured Parties' guaranty claim against Rose Rubin, for which the Secured Parties appear to be recovering 100%, while the Litigation Trustee is accepting a far lower percentage in order to compromise the unspecified claims held by the Litigation Trust, for which the Unsecured Creditors Committee counsel and the Litigation Trust counsel were paid $1.7 million to investigate through February 2020, and presumably even more in the last two years. Surely there is discovery, documentation and draft litigation that could be produced in order to assess the *bona fides* of the compromise.

14.    Additionally, the Litigation Trustee asserts that the proposed compromise ensures a significant recovery to the Litigation Trust and its beneficiaries. But the Motion provides no detail as how and how much of the funds will flow to the Litigation Trust's beneficiaries, including what amounts will go to pay counsel,[4] what amounts go to the secured creditors, what amounts go to administrative claims, and ultimately what amounts flow to unsecured creditors.

---

[4] That the Litigation Trust's counsel will be paid from these and other funds received, which reduces the amount available to unsecured creditors, is further basis to compel the Litigation Trust to share the conclusions reached through an investigation essentially funded by the unsecured creditors.

WHEREFORE, Mitchell Levine, Erie Management Partners, LLC, and Plat/Co. respectfully request this Court deny the Motion or, alternatively, continue the hearing on the Motion to such time after the Litigation Trustee discloses the information sought herein, and further requests this Court provide such other and additional relief as is necessary and proper.

Dated: February 3, 2022

**SHUMAKER, LOOP & KENDRICK, LLP**

By: /s/ Steven M. Berman
    Steven M. Berman, Esq.
    N.Y. Bar No. 5872247
    Shumaker, Loop & Kendrick, LLP
    101 E. Kennedy Blvd., Suite 2800
    Tampa, FL  33602
    Phone: (813) 227-2332
    Email:  sberman@slk-law.com
    *Counsel to Mitchell Levine,*
    *Erie Management Partners, LLC, and*
    *Plat/Co.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 3, 2022, a true and correct copy of the foregoing was served to all counsel of record via CM/ECF service.

By: /s/ Steven M. Berman
    Attorney