**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Ian Shapiro
Reed A. Smith
Christopher L. Martin, Jr.
*Attorneys for Donna H. Lieberman,*
  *Litigation Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MIAMI METALS I, INC., *et al.*, | Case No: 18-13359 (SHL) |
| Debtors. | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE PURSUANT TO FEDERAL RULE OF <u>BANKRUPTCY PROCEDURE 9019</u>**

## **TABLE OF CONTENTS**

| | Page |
|---|---|
| INTRODUCTION | II |
| THE TRUSTEE'S INVESTIGATION AND SETTLEMENT | 1 |
| THE LEVINE PARTIES' OBJECTION | 4 |
| THE SCMI LIMITED OBJECTION | 8 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................... 4, 6, 8

*In re Charter Commc'ns*,
  419 B.R. 221 (Bankr. S.D.N.Y. 2009) ................................................................... 3, 8, 9

*Collins v. Harrison-Bode*,
  303 F.3d 429 (2d Cir. 2002) ................................................................................... 9

*In re Dewey & LeBoeuf LLP*,
  478 B.R. 627 (Bankr. S.D.N.Y. 2012) ................................................................... 3

*In re Hilsen*,
  404 B.R. 58 (Bankr. E.D.N.Y. 2009) ..................................................................... 8

*In re Iridium Operating LLC*,
  478 F.3d 452 (2d Cir. 2007) ................................................................................... 2, 5

*In re Purofied Down Prods. Corp.*,
  150 B.R. 519 (Bankr. S.D.N.Y. 1993) ................................................................... 5

*In re Stone Barn Manhattan LLC*,
  405 B.R. 68 (Bankr. S.D.N.Y. 2009) ..................................................................... 9

*In re Trism, Inc.*,
  282 B.R. 662 (8th Cir. 2002) ................................................................................. 10

*In re Vazquez*,
  325 B.R. 30 (Bankr. S.D. Fla. 2005) ...................................................................... 5

*In re W.T. Grant Co.*,
  699 F.2d 599 (2d Cir. 1983) ................................................................................... 5

*In re WorldCom, Inc.*,
  347 B.R. 123 (Bankr. S.D.N.Y. 2006) ................................................................... 4

**Other Authorities**

Rule 2004 ........................................................................................................................ 6, 7

Rule 9019 ........................................................................................................................ 6

Donna H. Lieberman, in her capacity as the litigation trustee of the Miami Metals Litigation Trust (the "Litigation Trustee"), by and through her undersigned counsel, hereby files this reply memorandum in further support of the Motion[1] [ECF No. 2045] and in response to the objection filed by Mitchell Levine, Erie Management Partners, LLC, and Plat/Co. (collectively, the "Levine Parties") [ECF No. 2056] and the limited objection filed by SCMI US Inc. ("SCMI") [ECF No. 2057]. The Litigation Trustee respectfully states:

## THE TRUSTEE'S INVESTIGATION AND SETTLEMENT

1. The Motion seeks approval of a global settlement between the Miami Metals Litigation Trust, the Secured Parties, the Rubin Parties, and David Comite that will significantly benefit the Litigation Trust and its beneficiaries and avoid costly litigation that could last years and potentially result in an uncollectable judgment. The settlement was reached following a multi-year investigation by counsel to the Unsecured Creditors Committee and the Litigation Trustee (both Cooley LLP) and extensive, hard-fought settlement negotiations with the Rubin Parties, which lasted more than a year and a half, and with Comite, which lasted a period of several months.

2. As set forth in the Motion, the Litigation Trustee investigated potential claims against the Rubin Parties and Comite relating to the "significant discrepancy in [the Debtors'] inventory" that resulted in the Debtors filing voluntary chapter 11 petitions. [ECF No. 2].[2] Following the investigation, the Litigation Trustee concluded that the Litigation Trust had meritorious claims against Jason Rubin and David Comite related to the inventory discrepancy;

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[2] At the time the Debtors' bankruptcy petitions were filed, Jason Rubin was the Chief Executive Officer and a director; Rose Rubin was a Vice President and a director; Lindsey Rubin Davis

-1-

against each of the Rubin Parties and David Comite related to the discharge of their fiduciary duties as officers and directors of the Debtors; and against each of the Rubin Parties related to pre-petition transfers made to them or for their benefit during a period in which the Debtors were insolvent. The Litigation Trustee also concluded that maximum damages were substantial and could reach the size of the Debtors' net operating losses in the years in which the Debtors had an inventory discrepancy. The Rubin Parties and Comite disputed the Trustee's assertions and indicated that they would vigorously defend themselves against any such claims to the extent litigation was pursued by the Trustee.

3. Notwithstanding the strength of the claims and the substantial size of maximum damages, the Litigation Trustee agreed to compromise on the terms set forth in the Settlement Agreement after weighing the immediate and considerable benefit of the settlement against the expense, delay, and risks associated with litigating the claims against the Rubin Parties and Comite to conclusion. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (noting that two of the *Iridium* factors are "the balance between the litigation's possibility of success and the settlement's future benefits" and "the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment") (quotations omitted).

4. In the Litigation Trustee's judgment, the overarching risk in litigating the Litigation Trust's claims against the Rubin Parties and Comite was collection risk. As explained in the Motion, there was no directors and officers insurance policy covering the Rubin Parties and Comite, and no other potential sources of assets to satisfy a judgment other than the personal assets of the Rubin Parties and Comite. For this reason, the Litigation Trustee and her counsel

---

was the Secretary and Director; and David Comite was the Treasurer and Chief Financial

2

spent well over a year assessing the Rubin Parties' and Comite's financial wherewithal and the Litigation Trust's ability to collect on a judgment in excess of the amount that could be obtained through a pre-complaint settlement. The Litigation Trustee and her counsel discussed this issue on numerous occasions and at length with the Litigation Trust Oversight Committee, which is comprised by three of the Secured Parties and four holders of general unsecured claims.

5.    Based on all of the information available to the Litigation Trustee and her counsel, and in the exercise of her business judgment, the Litigation Trustee determined that the settlement embodied in the Settlement Agreement was reasonable and in the best interest of the Litigation Trust and its beneficiaries. *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012) ("In evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and the professionals.").

6.    The Litigation Trustee believes that the settlement represents "the best settlement that could be achieved under the circumstances," *In re Charter Commc'ns*, 419 B.R. 221, 257 (Bankr. S.D.N.Y. 2009), and if it is not approved, there is no guarantee that the parties will be able to reach another pre-litigation settlement. If that is turns out to be the case, the Litigation Trustee would have no choice but to litigate, potentially for years, and take on substantial collection risk for any judgment in excess of the amount the Litigation Trustee has secured for the Litigation Trust and its beneficiaries under the Settlement Agreement.

7.    Only two objections have been filed during the required notice period, and there is no indication that the objectors speak for or reflect the views of any other creditors, let alone a majority of them. The settlement has the full support of the Secured Parties, who have aggregate outstanding secured claims of more than $100 million and aggregate minimum deficiency claims

---

Officer.

3

of $55 million. Collectively, these deficiency claims account for roughly one quarter of the aggregate balance of unsecured claims.[3] The terms of the settlement were also approved by the Litigation Trust Oversight Committee, which is charged with protecting the interests of all creditors.

8. As explained in further detail below, both objections to the settlement should be overruled. *See In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) ("While the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling . . . ."). Neither objection addresses the Litigation Trustee's reasoned judgment about collection risk, which was the primary driver of the settlement, or raises a genuine question as to whether the settlement falls below the lowest point in the range of reasonableness. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007).

## THE LEVINE PARTIES' OBJECTION

9. As the Court is aware, the Levine Parties[4] have been serial objectors in the Miami Metals bankruptcy cases.[5] In their latest objection, the Levine Parties admit that the settlement is "substantial" but argue that neither they nor the Court has sufficient information about the settlement to "'canvass the issues' and become familiar with the facts necessary to form an

---

[3] The proportion could be higher depending on the resolution of outstanding ownership disputes.

[4] The Court recently ruled against certain of the Levine Parties in an ownership dispute between the Secured Parties and the Levine Parties, finding that the claims at issue are unsecured claims. [ECF No. 2008].

[5] One or more of the Levine Parties have objected to the motion for entry of interim and final cash collateral orders [ECF No. 147], the motion for approval to sell the Debtors' remaining assets [ECF No. 619], the motion for approval of settlement with prepaid customers [ECF No. 620, 800], the Debtors' and Secured Parties' joint motion for summary judgment as to "Bucket 1" customers [ECF No. 1096], the Debtors' notice of submission of cash collateral order and blackline order [ECF No. 1451], and the motion for confirmation of the Debtors' bankruptcy plan [ECF No. 1582].

4

intelligent and objective opinion as to whether the settlement falls below the lowest point in the range of reasonableness." (Levine Obj. at 1.)

10. The papers submitted by the Levine Parties' in support of the objection suggest that their desire for more information has little to do with the reasonableness of the settlement and much to do with "buttress[ing] Mr. Levine's ownership interest and independent claims investigation." (Levine Obj. ¶ 6 fn. 2). That is not an appropriate basis upon which to object to a reasonable settlement that was reached after years of investigation and arm's-length negotiations. But regardless of the Levine Parties' motivations, their objection is meritless and should be overruled.

11. As an initial matter, it is the Court—not the Levine Parties—that must assess whether the settlement satisfies the *Iridium* factors and falls above the lowest point in the range of reasonableness. *See In re Vazquez*, 325 B.R. 30, 37 (Bankr. S.D. Fla. 2005) ("It is not the creditors' task to determine the fairness of a proposed settlement; it is the court's obligation to make that determination while making certain not to ignore their legitimate views or concerns."). To conduct this inquiry, the Court need only "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (quotations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (Bankr. S.D.N.Y. 1993) ("The reviewing court need not conduct its own investigation concerning the reasonableness of the settlement and may credit and consider the opinion of the Trustee and counsel that the settlement is fair and equitable.").

12. The Court has ample information to understand the issues that resulted in the settlement before it. As the Litigation Trustee has explained, the settlement was reached based on her judgment about the collectability of a judgment substantially in excess of the settlement

5

amount.[6]  The Litigation Trustee has also provided the Court with an explanation of the steps she and her counsel took to assess fully that risk.  Among other things, they obtained and reviewed documents from the Rubin Parties and Comite relating to their ability to satisfy a judgment and engaged with the Rubin Parties on collectability issues in a full-day mediation session and through an information disclosure process facilitated by a "neutral" bankruptcy lawyer with expertise in Florida's asset protection laws.

13.    Misunderstanding the Rule 9019 inquiry entirely, the Levine Parties complain that they have not received detailed disclosures about "the factual bases for any claims that could be brought" and "the conclusions the Litigation Trustee reached." (*See* Levine Obj. ¶ 8). According to the Levine Parties, they and the Court can understand whether the settlement falls above the lowest point in the range of reasonableness only after reviewing a draft complaint, Rule 2004 examination transcripts, and mediation statements. (*Id.* ¶ 5).

14.    None of this required by Rule 9019.  *See In re Adelphia Commc'ns Corp.*, 368 B.R. at 225 (the Court "need not conduct an independent investigation into the reasonableness of the settlement," and "[i]t is not necessary for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute."). The Litigation Trustee is not obligated to lay out a detailed summary of her investigation or a roadmap of her legal theories against the Rubin Parties and

---

[6] This issue has been at the center of the Litigation Trust's investigation since it began. [*See* ECF No. 1763 (Litigation Trust counsel explaining to the Court in March 2020 that the Litigation Trustee needed access to certain documents to permit "the Trust to determine whether its substantial claims against the Rubins are collectible, which is important to ensuring that the Trustee and the Oversight Committee can make informed judgments about how much of the Trust's assets to invest in litigating its claims.")].

6

Comite. Nor is she required to disclose draft complaints, mediation statements, and deposition transcripts, or summarize those documents in her motion for settlement approval.[7]

15. What is required—and what the Litigation Trustee has provided—is an explanation as to why the Court should approve a compromise of claims that the Litigation Trustee believes are compelling and for which maximum recoverable damages vastly exceed the settlement amount. A deep dive into the Litigation Trustee's legal theories and the factual basis for those theories may be interesting to the Levine Parties, but they have no relevance to the dynamics that resulted in the settlement before the Court.

16. Moreover, the Levine Parties' assertion that they are effectively in the dark about the Litigation Trust's theories and strategy is not correct. Unlike many other creditors, Mitchell Levine and/or his counsel attended Rule 2004 examinations of Jason Rubin, Rose Rubin, and Lindsey Rubin Davis. The Levine Parties could have attended other Rule 2004 examinations conducted by counsel to the Unsecured Creditors Committee and the Litigation Trustee and pursued their own discovery requests pursuant to Rule 2004 but decided not to do so.

17. In sum, the settlement between the Litigation Trustee, the Secured Parties, the Rubin Parties, and Comite represents a reasonable outcome for the Litigation Trust and its beneficiaries in light of all relevant considerations, including, the issue of collection. The information provided by the Litigation Trustee in support of the Motion is more than adequate for the Court and all parties in interest to understand the basis for and reasoning behind the settlement. The settlement should not be delayed or derailed by the Levine Parties simply

---

[7] In presenting the settlement to the Court for approval, the Litigation Trustee has endeavored to provide sufficient information to allow the Court to understand the reasons for the settlement while also respecting the confidentiality of settlement discussions (including those that occurred in the context of a mediation) and information provided to the Litigation Trust pursuant to confidentiality agreements.

7

because they want additional information to support their ownership claims and independent claims investigation.

18. Accordingly, the Levine Parties' objection should be overruled.

### THE SCMI LIMITED OBJECTION

19. Apart from the Levine Parties, the only other creditor to object to the settlement is SCMI. In its papers, SCMI states that it "does not object to the nature or amount of the settlements" but "is concerned that the Rubin Parties and Comite are being prematurely released prior to the full payments of the settlement amounts that are due under the Settlement Agreement." (SCMI Obj. at 1). SCMI urges the Court to "require that the releases be held in abeyance until full payment is received by the Litigation Trustee." (*Id.* at 4.)

20. All settlements are compromises, and this settlement is no different. The fact that SCMI can imagine a hypothetical settlement agreement involving fewer or different compromises than the ones made by the Litigation Trustee in connection with the Settlement Agreement is not a reason to reject the settlement. That is especially true given that SCMI has no objection to the "nature or amount of the settlements." *See In re Charter Commc'ns*, 419 B.R. at 252 ("The standard does not require that the settlement be the best the debtor could have obtained . . . ."); *see also In re Hilsen*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) ("It is not the court's task to determine whether the settlement proposed by the parties is the best possible, or the fairest, or most appropriate resolution of the dispute."). Rather, the Court must determine whether the settlement falls above the lowest point in the range of reasonableness. *See In re Adelphia Commc'ns Corp.*, 368 B.R. at 225. SCMI does not dispute that the settlement satisfies this standard.

8

21.     Unbeknownst to SCMI, the timing of the effectiveness of releases was one of many issues that were discussed and debated during arm's-length negotiations between the Litigation Trustee and the Rubin Parties over a period of many months. The Litigation Trustee, exercising her business judgment, determined that the final set of settlement terms, including the one to which SCMI now objects, collectively amounted to "the best settlement that could be achieved under the circumstances." *In re Charter Commc'ns Corp.*, 419 B.R. at 257. SCMI offers no reason for the Court to ignore the Litigation Trustee's business judgment. *See In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009) ("Although approval of a settlement rests in the Court's sound discretion . . . the debtor's business judgment should not be ignored.").

22.     SCMI does not explain—and it is not otherwise clear—why it is concerned that the releases benefiting the Rubin Parties and Comite become effective prior to the payment of all settlement payments owed to the Trust under the Settlement Agreement. If the Rubin Parties do not make the required payments under the Settlement Agreement, the Litigation Trust (or the Secured Parties, as applicable) will have a breach of contract claim against them. *See, e.g.*, *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) ("It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law.") (quotations omitted). In its objection, SCMI does not articulate why the Litigation Trust or its beneficiaries would be prejudiced by having a breach of contract claim against the Rubin Parties as opposed to any of the claims that will be released under the Settlement Agreement. SCMI simply says that it would prefer a different approach, which is not a reason to deny the Motion.

9

23. Finally, in the event SCMI's objection is sustained, the parties will be required to return to the negotiating table and may not be able to reach another agreement. It is not possible, as SCMI requests, for the Court to approve the settlement while also "requir[ing] that the releases be held in abeyance until full payment is received by the Litigation Trustee." (SCMI Obj. at 4); *see In re Trism, Inc.*, 282 B.R. 662, 667 (8th Cir. 2002) ("When considering contested motions, the court must determine the facts relevant to the legal inquiry, consider the motion and any objections, and must rule on the objections, either sustaining them, in which case the motion must be denied, or overruling the objections, in which case the motion can be granted. A court cannot sustain an objection and simultaneously grant a motion to approve a settlement."). Given the amount of time it took for the parties to negotiate and enter into the Settlement Agreement, sustaining SCMI's objection and sending the parties back to the negotiating table is not in the best interest of the Litigation Trust and its beneficiaries.

24. Accordingly, SCMI's objection should be overruled.

## CONCLUSION

25. For the foregoing reasons, the reasons set forth in the Motion, and any other reasons the Litigation Trustee may state on the record at any hearing held in respect of this Motion, the Litigation Trustee requests that the Bankruptcy Court grant the Motion.

| | |
|---|---|
| | **COOLEY LLP** |
| Dated: February 7, 2022<br>New York, New York | By: */s/ Ian Shapiro*<br>Ian Shapiro<br>Reed A. Smith<br>Christopher L. Martin, Jr.<br>55 Hudson Yards<br>New York, New York 10001-2157<br>ishapiro@cooley.com<br>reed.smith@cooley.com<br>cmartin@cooley.com<br><br>*Attorneys for Donna Lieberman,*<br>*Litigation Trustee* |

11